UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Anthony Cervantes, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

CRST International, Inc., CRST Expedited, Inc., and DOES 1 through 10,

    Defendants.

## CLASS AND COLLECTIVE ACTION COMPLAINT

### INTRODUCTION

1. This lawsuit seeks redress for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), for failing to pay required minimum wages and unlawfully deducting amounts from the wages of employees that Defendants misclassified as independent contractors.

2. Plaintiff brings this case under the collective action provision of the FLSA as set forth in 29 U.S.C. §216(b) on behalf of himself and a proposed collective action class of persons consisting of all drivers who were classified as independent contractors by CRST during the three years prior to the filing of the initial complaint through the date of final judgment and subject to any equitable tolling for any applicable portion of the limitations period (hereafter "Class Members").

3. Defendants include privately owned companies, CRST International, Inc. and CRST Expedited, Inc., (collectively, "CRST") which are owned and operated by related individuals and entities for a common business purpose: transportation of freight for CRST customers.

1

4. To accomplish its business purpose, CRST relies on thousands of long-haul, interstate truck drivers to deliver freight for CRST's customers across the United States.

5. According to its website, CRST "is one of the nation's largest transportation companies," provides "services to customers all over North America," has "annual revenues exceeding $1 billion," and has a fleet of "more than 4,500 trucks." According to the CRST website, CRST Expedited, Inc. alone has "more than 3,500 drivers on the road."

6. For at least three years prior to the filing of this action, Defendants knowingly misclassified its drivers, including Plaintiff and proposed Class Members (as defined above) (collectively referred to herein as "Drivers"), as independent contractors, failed to pay them statutorily-required minimum wages, and made unlawful deductions from their earned compensation.

7. CRST's classification of Drivers as independent contractors forms a significant part of a labor scheme crafted to pay its employees less than the minimum wage required by federal and state law, to shift virtually all related business expenses and risk to the employees, and to defeat all federal and state protections for employees, such as Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act, the National Labor Relations Act, and wage protection statutes such as the FLSA and similar state statutes.

8. By misclassifying Drivers as independent contractors, CRST also evades the tax burdens that it would bear for employees—e.g., Social Security, Federal Unemployment Tax, etc.—which burdens are also shifted to the misclassified Drivers.

9. By unlawfully treating Drivers as independent contractors, CRST obtains a vast competitive advantage over competitor trucking companies that properly treat their drivers as employees and pay required wages and taxes in compliance with federal and state law.

10. As one of the nation's largest trucking companies, CRST's unlawful practices drive down wages across the trucking industry and undercut fair labor practices throughout the United States.

11. Plaintiff brings this claim individually and on behalf of other similarly situated employees under the collective action provisions of the FLSA, 29 U.S.C. § 216(b).

12. Plaintiff seeks unpaid wages, liquidated damages, interest, costs and attorneys' fees, as well as declaratory relief under the FLSA.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, this action is brought under 29 U.S.C. § 216(b) of the FLSA. Jurisdiction over Plaintiff's claims for declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202.

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this case involves diversity of citizenship among the parties.

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1337 because the claims arise under federal laws regulating commerce.

16. The amount in controversy in this matter exceeds the sum or value of $75,000, exclusive of interest and costs.

17. Plaintiff and at least one member of the proposed collective action class is a citizen of a state different from that of at least one Defendant.

18. Citizenship of the members of the proposed collective action class is dispersed across the United States.

19. Plaintiff's claims involve matters of national and/or interstate interest.

20. Plaintiff and Class Members were engaged in commerce in their work for Defendants.

21. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391 because at least one of the Defendants resides in this District for venue purposes and/or is subject to the Court's personal jurisdiction in that it has substantial contacts with and conducts business in the Commonwealth of Massachusetts.

22. Venue is also proper in the District of Massachusetts because a related case against the same Defendants, *Montoya v. CRST Expedited, Inc. and CRST International, Inc*., No. 16-10095-PBS, is currently pending in this District and the rights of Plaintiff and proposed collective action Class Members have been and will be determined, in part, by decisions in the *Montoya* case. Litigating in this forum eliminates the risk of conflicting decisions regarding the same conduct by Defendants.

23. Upon information and belief, numerous putative Class Members in this case are also members of the *Montoya* class. The rights of these Class Members could be prejudiced or, as a practical matter, affected, by a settlement or judgment in *Montoya.* Accordingly, the interests of justice, comity, and judicial economy support resolution of this collective action by the District of Massachusetts.

24. For example, as in *Montoya*, Plaintiff and putative Class Members were harmed by the Defendants' failure to pay minimum wages for all compensable time including time spent in a sleeper berth or accompanying a trainee driver. The compensability of such time has been determined in *Montoya*. *See Montoya v. CRST Expedited, Inc*., CV 16-10095-PBS, 2019 WL 4230892, at *20 (D. Mass. Sept. 6, 2019) (finding time spent in the truck's sleeper berth beyond 8 hours is compensable working time as a matter of law) and, e.g., ¶¶ 56, 71, *infra* (alleging failure

4

to pay Plaintiff and proposed Class Members minimum wage when considering compensable time spent in the sleeper berth).

## PARTIES

25. Plaintiff Anthony Cervantes is a citizen and resident of Colorado.

26. Plaintiff worked for CRST as a truck driver from approximately January 2018 to August 2019.

27. Plaintiff was, at all relevant times, an "employee" of Defendants under the Fair Labor Standards Act.

28. As an employee of Defendants, Plaintiff drove and dropped off freight in the Commonwealth of Massachusetts.

29. Defendant CRST International, Inc. is a corporation formed under the laws of Iowa.

30. Defendant CRST Expedited, Inc. is a corporation formed under the laws of Iowa.

31. Defendants CRST International, Inc. and CRST Expedited, Inc. are related and integrated business corporations. They share principal corporate offices at 3930 16th Ave. SW, Cedar Rapids, Iowa, 52404, have common ownership, interrelated operations, and overlapping management, officers, and directors.

32. CRST International, Inc. provides management and operational services to other CRST companies, including CRST Expedited, Inc.

33. Defendants CRST International, Inc. and CRST Expedited, Inc. are enterprises engaged in interstate commerce for purposes of the Fair Labor Standards Act.

34. Defendants CRST International, Inc. and CRST Expedited, Inc. are operated as a single enterprise within the meaning of 29 U.S.C. § 203(r)(1).

35. Defendants CRST International, Inc. and CRST Expedited, Inc. are motor carriers engaged in interstate shipment of freight.

36. Defendants CRST International, Inc. and CRST Expedited, Inc. conduct business throughout the United States, including in Massachusetts.

37. All of the Defendants benefit from the scheme to misclassify the Drivers.

38. Upon information and belief, Defendants each grossed more than $500,000 in each of the last six calendar years, individually and collectively.

39. All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

40. Defendant CRST International, Inc. was, at all relevant times, Plaintiff's "employer" and is the "employer" of proposed Class Members under the Fair Labor Standards Act. Alternatively, CRST International, Inc. was, at all relevant times, a joint employer of Plaintiff and is a joint employer of proposed Class Members with one or more of the other Defendants.

41. Defendant CRST Expedited, Inc. was, at all relevant times, Plaintiff's "employer" and is the "employer" of proposed Class Members under the Fair Labor Standards Act. Alternatively, CRST Expedited, Inc. was, at all relevant times, a joint employer of Plaintiff and is a joint employer of the proposed Class Members with one or more of the other Defendants.

42. The true names and capacities, whether individual, corporate, associate or otherwise, of Does 1 through 10 are unknown to Plaintiff who therefore sues the Doe Defendants by fictitious names. Plaintiff will amend this Complaint to state their true names and capacities when they have been ascertained.

**FACTS**

43. Defendants hired Plaintiff and Drivers to transport goods in interstate commerce.

6

Case 1:20-cv-00075-CJW-KEM    Document 1    Filed 01/17/20    Page 6 of 13

44. While Defendants characterize Drivers as "independent contractors," Defendants treat Drivers as employees by exercising near complete control over Drivers' work.

45. Defendants control Drivers work schedules through their exclusive control over the assignment of loads to Drivers.

46. Defendants control when, where, and how Drivers deliver freight.

47. Defendants dispatch Drivers to jobs that Defendants wishes them to perform.

48. Defendants monitor and control the time of Drivers' departure and the time of arrival.

49. Defendants can dictate and monitor the route Drivers will travel. Defendants monitor Drivers' location, speed, control of the truck, route, estimated arrival time, rest time and driving time and other aspects of job performance by an on-board computerized system.

50. By way of example of the control exercised by Defendants over Drivers, Plaintiff Cervantes received communications and instructions on a daily or near daily basis by his "driver manager" regarding his driving speed, arrival times, rest times, etc.

51. Defendants control the amounts charged to the customers whose freight Drivers deliver.

52. Except in limited circumstances, Defendants require Drivers to operate in two-person teams and Defendants control the number of hours Drivers may drive in a week, thereby controlling how much money they can make.

53. Drivers are paid by the load with the amount set and fixed by Defendants.

54. The above-described controls give Defendants the power to determine Drivers' earnings.

7

55. The team driver requirement used by CRST allows it to ship goods across the United States in substantially less time it takes a single driver. This is because with two drivers CRST can comply with Department of Transportation regulations regarding hours of service while keeping the truck in virtually constant motion.

56. Despite the team driving model requiring close contact between individuals for long periods of time, limited (if any) privacy, and the truck being in near continuous motion, Defendants control who Drivers may work with in the two-person driving teams.

57. By the nature of the job and team driving requirement, Drivers cannot leave the truck for any blocks of time and must remain in the truck on long-haul trips across the country while the other team driver is operating the vehicle.

58. Defendants control what equipment Drivers use to perform their work, including the type of trucks, communication system used by Drivers, the electric on-board recorder (used to record the amount of time a vehicle is being driven), and the trailers used to complete the work for Defendants.

59. Defendants have complete control over whether and how Drivers may use such equipment. Defendants also control how the equipment is to be operated, whether and when Drivers must fuel trucks, maintenance requirements and schedules, and the appearance of the vehicles.

60. Defendants have complete control over whether Drivers can carry loads for other carriers and the terms under which Drivers may work for other companies.

61. Defendants require Drivers to pay for a wide variety of employer expenses and costs, including tens of thousands of dollars per year for trucks, "empty mileage" costs (i.e. the costs for travel when not transporting items for customers), necessary equipment (e.g., trailers and

8

communication equipment), fuel, oil, tires, spare parts, tolls, insurance, repairs, maintenance, road taxes, mileage taxes, federal heavy vehicle use taxes, registration, licensing, and permitting fees, among other expenses.

62. Defendants continue to deduct expenses and costs from Drivers regardless of how many loads CRST assigns a Driver in any given workweek, which could be none at all.

63. Despite characterizing Drivers as independent contractors, Defendants require Drivers to act as "Lead Drivers" and perform substantial training of CRST's "contract drivers" enrolled in CRST's employee driver training program.

64. For example, CRST required Plaintiff Cervantes to drive and train (for 28 days each) at least 12 of CRST's contract employee drivers.

65. For each of trip where Plaintiff Cervantes worked as a "Lead Driver" with a CRST contract driver, (i.e. a CRST employee/trainee driver), CRST deducted amounts from Plaintiff Cervantes' paychecks for every mile driven (in addition to the deductions set forth above), regardless of whether the employee/trainee driver or Plaintiff Cervantes was doing the work. On information and belief, these deductions were to cover the wages and related costs CRST paid the employee/trainee drivers.

66. CRST fails to pay FLSA minimum wages free and clear to Drivers.

67. Instead, CRST calculates the pay for Drivers by a weekly accounting that makes deductions from Drivers' pay for various expenses that are for the benefit of CRST, including those described in Paragraphs 60 and 64.

68. In some weeks, the deductions from Drivers' pay yield pay rates below federal minimum wage guarantees.

9

69. CRST's practice of paying mileage only, resulted in Drivers receiving no pay for certain compensable hours including, *inter alia*, time Drivers are engaged to wait during non-sleeping time in the sleeper berth, and non-driving time such as pre- and post-inspection time, waiting time, time filling out paperwork and other hours of work for which Plaintiff and Class Members were entitled to be paid.

70. In some weeks, Defendants failed to pay Plaintiff and the proposed Class Members the minimum wage for each hour worked, including compensable hours for which no compensation was paid.

71. Defendants unlawfully pay Drivers using a system that imposes charges for Drivers seeking to convert the payment to cash.

72. Defendants' treatment of Plaintiff and the proposed Class Members as independent contractors caused them loss of wages, additional tax burdens, insurance obligations, and a variety of other monetary and non-monetary compensable harm.

73. Defendants' failure to pay Plaintiff and the members of the proposed Class the proper wages required by federal law was willful.

74. Defendants' unlawful conduct, as set forth in this Collective Action Complaint, was intentional, willful, and/or in bad faith, and has caused significant damages to Plaintiff and proposed Class Members.

75. Defendants were aware or should have been aware that the law required them to pay Plaintiff and proposed Class Members minimum wages required by law.

76. Upon information and belief, Defendants apply the same unlawful policies and practices to the Drivers in every state in which they operate.

# FIRST CAUSE OF ACTION

## (FAIR LABOR STANDARDS ACT)

77. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

78. Defendants failed to pay minimum wages to Plaintiff and proposed Class Members in violation of the Fair Labor Standards Act, 29 U.S.C. §206 *et seq.* and its implementing regulations by failing to pay anything for certain hours worked and/or by failing to pay at least the minimum wage for each hour worked per work week.

79. Defendants' failure to pay proper minimum wages was willful within the meaning of the FLSA.

80. Defendants' failure to comply with the FLSA minimum wage protections caused Plaintiff and proposed Class Members to suffer loss of wages and interest thereon.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

a. Certification of an opt-in class pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*;

b. Permission for Plaintiff to notify fellow employees of their right to opt-in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. § 216(b);

c. Entry of a declaratory judgment that the practices complained of herein are unlawful;

d. An award of damages for all minimum wages, wrongfully withheld deductions, and other unpaid wages that are due to the named Plaintiff and all similarly situated employees under the FLSA;

e. Statutory liquidated damages under the FLSA;

f.  A finding that Defendants' violation of the FLSA was willful and that, therefore, the statute of limitations for the FLSA claim is three years exclusive of periods in which the statute of limitations should be equitably tolled;

g.  Attorneys' fees and costs;

h.  Pre- and post-judgment interest; and

i.  Any other relief to which the named Plaintiff and similarly situated employees may be entitled.

Respectfully submitted this 17th day of January 2020.

By: */s/ Harold L. Lichten*

LICHTEN & LISS-RIORDAN, P.C.
Harold L. Lichten
729 Boylston Street, Suite 2000
Boston, MA 02116
hlichten@llrlaw.com

GETMAN, SWEENEY & DUNN, PLLC
Michael J.D. Sweeney
(PHV motion to be filed)
260 Fair St.
Kingston, NY 12401
(845) 255-9370
dgetman@getmansweeney.com

MARTIN & BONNETT, P.L.L.C.
Susan Martin
Jennifer Kroll
Michael M. Licata
(PHV motions to be filed)
4747 N. 32nd St. Suite 185
Phoenix, Arizona 85018
(602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

Edward Tuddenham
(PHV motion to be filed)
23 Rue Du Laos
Paris, France
33 684 79 89 30
etudden@prismnet.com

ATTORNEYS FOR PLAINTIFFS