UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY CERVANTES and ADAM ST. AMOUR, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>CRST INTERNATIONAL, INC., CRST EXPEDITED, INC. and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 1:20-cv-10106-PBS<br><br>Honorable Judge Patti B. Saris |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. STATEMENT OF RELEVANT FACTS ............................................................................. 2

    A. CRST is a nationwide motor carrier headquartered in Iowa with no connection to Massachusetts except for occasional transient interstate work there. ............................................................................................................................. 2

    B. Plaintiffs agreed to bring all disputes arising from or in connection with their agreements to work as independent contractors in Iowa. ............................... 3

    C. Plaintiffs' FLSA claim is based on CRST's alleged misclassification of its drivers as independent contractors. ........................................................................... 5

III. ARGUMENT ......................................................................................................................... 5

    A. This Court should enforce the parties' agreement to litigate disputes like this in Iowa. ................................................................................................................. 5

        1. Plaintiffs' claims fall squarely within the scope of the forum-selection clause found in the ICOA. ............................................................ 6

        2. Enforcement of the forum-selection clause would not be unreasonable or unjust. .................................................................................. 9

            a. The forum-selection clause is not the product of fraud or overreaching. ................................................................................. 10

            b. Enforcement of the forum-selection clause would not be unreasonable and unjust. ................................................................. 11

            c. Transferring this case to the Northern District of Iowa will not deprive Plaintiffs of their day in court. .................................. 11

            d. Transferring this case to the Northern District of Iowa would not contravene Massachusetts public policy. ................................ 12

        3. Transfer is in the public interest. .............................................................. 12

    B. The convenience factors also favor transfer of this case to the Northern District of Iowa. ................................................................................................... 13

IV. CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*,
 571 U.S. 49 (2013) .................................................................................. 1, 2, 5, 6, 8, 11, 12, 14

*Capriole v. Uber Technologies, Inc.*,
 2020 WL 1536648 (D. Mass. Mar. 31, 2020) ...................................................................... 7, 8

*Carnival Cruise Lines, Inc. v. Shute*,
 499 U.S. 585 (1991) ................................................................................................................ 10

*Carter's of New Bedford, Inc. v. Nike, Inc.*,
 790 F.3d 289 (1st Cir. 2015) ............................................................................................ 6, 9, 11

*Claudio-De Leon v. Sistema Universitario Ana G. Mendez*,
 775 F.3d 41 (1st Cir. 2014) .............................................................................................. 6, 9, 11

*Deese-Laurent v. Real Liquidity, Inc.*,
 305 F. Supp. 3d 280 (D. Mass. 2018) ................................................................................. 5, 6, 9

*Kebb Management, Inc. v. Home Depot U.S.A., Inc.*,
 59 F. Supp. 3d 283 (D. Mass. 2014) ...................................................................................... 7, 9

*Lambert v. Kysar*,
 983 F.2d 1110 (1st Cir. 1993) ................................................................................................. 10

*May Trucking Co. v. Oregon Dep't of Transp.*,
 388 F.3d 1261 (9th Cir. 2004) ................................................................................................... 3

*Montoya v. CRST Expedited, Inc.*,
 285 F. Supp. 3d 493 (D. Mass. 2018) ...................................................................................... 14

*Reynoso v. LaserShip, Inc.*,
 332 F. Supp. 3d (D. Mass. 2018) ........................................................................................... 7, 8

*Rowen v. Soundview Commc'n, Inc.*,
 2015 WL 899294 (N.D. Cal. Mar. 2, 2015) ............................................................................. 11

*Silva v. Encyclopedia Britannica, Inc.*,
 239 F.3d 385 (1st Cir. 2001) .................................................................................................... 10

## Statutes

28 U.S.C. § 1404 .............................................................................................................. 2, 5, 7, 14

29 U.S.C. § 201 ....................................................................................................................... 1

29 U.S.C. § 206 ....................................................................................................................... 5

Defendants, CRST International, Inc. (CRST International) and CRST Expedited, Inc. (CRST), respectfully submit this Memorandum of Points and Authorities in Support of Motion to Transfer Venue.

## I. INTRODUCTION

Plaintiffs, Anthony Cervantes (Cervantes), a Colorado resident, and Adam St. Amour (St. Amour), a Florida resident, provided equipment (i.e., a tractor) and a DOT-qualified driver for the purpose of providing transportation services to CRST under Independent Contractor Operating Agreements (ICOAs). Plaintiffs seek to disregard the terms of their ICOAs, claiming they were actually employees of both CRST and CRST International and therefore covered by the Fair Labor Standards Act, as amended (FLSA), 29 U.S.C. § 201, *et seq.* Leaving aside the merits of their claims, their ICOAs required Plaintiffs to file suit in Iowa. The forum-selection clauses contained in each ICOA Plaintiffs signed require all claims "arising from or in connection with" the ICOAs be brought in the state or federal courts serving Cedar Rapids, Iowa, which in this case means the U.S. District Court for the Northern District of Iowa.

Plaintiffs' minimum wage claim, which is based on the relationship created by their ICOAs, falls within the scope of the forum-selection clause and should be transferred. The United States Supreme Court unequivocally held that forum-selection clauses like the ones here should be enforced "in all but the most exceptional cases." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). This is not an exceptional case. The ICOA's forum-selection clause is enforceable because it was not induced by fraud or coercion, will not deprive Plaintiffs or the putative class members of their day in court, and will not contravene public policy in Massachusetts. Moreover, there is nothing in the public interest that would prevent this Court from enforcing the forum-selection clause.

Defendants respectfully request the Court transfer this case to the U.S. District Court for the Northern District of Iowa under 28 U.S.C. § 1404.

## II. STATEMENT OF RELEVANT FACTS

### A. CRST is a nationwide motor carrier headquartered in Iowa with no connection to Massachusetts except for occasional transient interstate work there.

CRST[1] is a regulated, for-hire motor carrier authorized by the Federal Motor Carrier Safety Administration (FMCSA), an agency of the U.S. Department of Transportation (DOT), to provide trucking services to the shipping public nationwide. *Declaration of Chad Brueck in Support of Defendants' Motions to Dismiss and Transfer*, ¶ 3, attached as *Exhibit A* (Brueck Decl.). CRST is an Iowa corporation that has its principal place of business in Cedar Rapids, Iowa, where it is headquartered. *Id.*, ¶ 4. All of CRST's legal functions operate out of Iowa, and all of its business operations are managed from Iowa. *Id.*, ¶ 5-6. CRST makes all of its decisions regarding contracting with independent contractor owner-operators, such as Plaintiffs, out of its headquarters in Cedar Rapids, Iowa. *Id.*, ¶ 7. It also makes all decisions regarding the hiring and employment of company drivers out of that same location. *Id.*

CRST contracts with third-party independent contractor owner-operators who provide equipment and a DOT-qualified driver to provide transportation services to facilitate the delivery of freight for CRST's customers throughout the country. *Id.*, ¶ 8. CRST administers the ICOA from its corporate headquarters in Cedar Rapids, Iowa. *Id.*, ¶ 11. CRST also maintains all records

---

[1] Plaintiffs provided transportation services under ICOAs with CRST, not CRST International. CRST International is not a motor carrier, does not own or operate trucks, and neither employs nor trains truck drivers. *Declaration of Michael Gannon in Support of Defendants' Motions to Dismiss and Transfer*, ¶ 8 attached as *Exhibit B* (Gannon Decl.). While CRST International and CRST are owned by the same parent company, CRST International is not a party to the ICOAs and has no contractual or business relationship with Plaintiffs. *Id.*, ¶¶ 4, 11. Plaintiffs have not alleged a single fact supporting their vague suggestion that they were somehow jointly employed by both CRST and CRST International. Because Plaintiffs had no relationship with CRST International, this brief focuses on CRST only, but the case should be transferred to the Northern District of Iowa because CRST International has no ties to this District.

2

regarding the ICOAs and the owner-operators who sign ICOAs in Cedar Rapids. *Id.*, ¶ 11. And all dispatching and processing of owner-operator compensation takes place at its Iowa headquarters. *Id.,* ¶¶ 13, 14.

Neither CRST nor CRST International have any physical locations, employees, or bank accounts in Massachusetts, and neither is registered to do business in Massachusetts. *Id.*, ¶¶ 17-18; *Gannon Decl.*, ¶¶ 9-10. CRST's company-wide fuel tax records[2] reflect that for the years 2017-2019, only approximately 0.07% of the total miles driven by trucks hauling freight for CRST occurred in Massachusetts. *Declaration of Jan Wiltgen in Support of Defendants' Motion to Dismiss*, ¶ 9, attached as *Exhibit C* (Wiltgen Decl.). This means that CRST's fleet drove over 99.9% of their miles in states other than Massachusetts. CRST's business records reflect that, during this same time period, only 0.88% of is loads originated in or were destined for Massachusetts. *Brueck Decl.*, ¶ 29.

### B. Plaintiffs agreed to bring all disputes arising from or in connection with their agreements to work as independent contractors in Iowa.

Plaintiffs provided transportation services to CRST as owner-operators under the terms of their ICOAs. Cervantes, a Colorado resident, signed his first ICOA in Cedar Rapids, Iowa on January 3, 2018. *Brueck Decl., ¶* 19. He signed a second ICOA in March 2018, and, based on CRST's records, it appears he signed that ICOA in Humble, Texas. *Id., ¶ 20*. St. Amour, a Florida resident, executed his ICOA with CRST on April 15, 2015 in Cedar Rapids, Iowa. *Id., ¶* 22.

---

[2] States impose the fuel taxes, which are collected at the pump at the time of purchase. These taxes are intended to fund the maintenance and repair of the roads in that state. Over-the-road truck drivers frequently purchase fuel in one state but expend that fuel driving in different states. In order to ensure that taxes are distributed to the states where the trucks actually operate, states are parties to the International Fuel Tax Agreement (IFTA), under which they agree to apportion (and redistribute, as necessary) fuel taxes between the states based on the number of miles individual trucks travel in each state. *See International Fuel Tax Ass'n, Articles of Agreement, available at* https://www.iftach.org/manualnew.php*; May Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261 (9th Cir. 2004) (describing agreement).

Plaintiffs' ICOAs contain the following forum-selection clause:

> **THE PARTIES FURTHER AGREE THAT ANY CLAIM OR DISPUTE ARISING FROM OR IN CONNECTION WITH THE AGREEMENT, WHETHER UNDER FEDERAL, STATE, LOCAL, OR FOREIGN LAW . . . SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS SERVING CEDAR RAPIDS, IA. THE PARTIES HEREBY CONSENT TO THE JURISDICTION AND VENUE OF THE STATE AND FEDERAL COURTS SERVING CEDAR RAPIDS, IA.**

*Id.*, ¶ 24 (emphasis in original).

CRST allows prospective owner-operators to review the ICOAs and ask questions before they are signed. *Id.*, ¶ 10. Once an owner-operator signs an ICOA and begins driving for CRST, he or she drives throughout the country making interstate deliveries. *Id.*, ¶ 12.

During the approximately 20-month time period from January 2018 to August 2019 that Cervantes provided truck driving services as an owner-operator to CRST, he made just one delivery and travelled only 85 miles (out of a total of 303,669 miles, or just 0.028%) in Massachusetts.[3] *Brueck Decl.*, ¶ 21; *Wiltgen Decl.*, ¶ 7. St. Amour similarly had very little activity in Massachusetts—making just one delivery and two pickups in the state during the two-year period he provided services. *Brueck Decl.*, ¶ 23. St. Amour's available fuel tax reports[4] from April 2017 through December 2018, a period of almost 21 months, show that the trucks he drove travelled 311,985 total miles, with only 542 of them (or approximately 0.17%) in Massachusetts. *Wiltgen Decl.*, ¶ 8.

---

[3] Because Plaintiffs operated as part of two-driver teams, they would have only driven approximately half of the miles logged on their trucks.

[4] CRST has been unable to locate the fuel tax records for St. Amour's truck for the first quarter of 2017. *Wiltgen Decl.*, ¶ 8. However, his trip inquiry reports confirm he made no pick-ups or deliveries in Massachusetts during those months. *Brueck Decl.*, ¶ 23. The additional data would thus serve only to further decrease his percentage of miles incurred in Massachusetts.

### C. Plaintiffs' FLSA claim is based on CRST's alleged misclassification of its drivers as independent contractors.

Plaintiffs' claim in this case is based on their contention that CRST misclassified them as independent contractors when they were actually employees in order to avail themselves of the benefits and protections of the FLSA, which applies only to employees and their employers. Plaintiffs' sole cause of action seeks recovery for alleged minimum wage violations under the FLSA, 29 U.S.C. § 206. Because Plaintiffs' claim arises out of and is connected to the services they agreed to provide for CRST when they executed the ICOAs, it falls within the scope of the valid and enforceable forum-selection clause in their ICOAs. Defendants therefore ask this Court to enforce that clause and transfer this case to the Northern District of Iowa.

## III. ARGUMENT

### A. This Court should enforce the parties' agreement to litigate disputes like this in Iowa.

Motions to transfer based on forum-selection clauses are governed by 28 U.S.C. § 1404. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

In diversity cases, forum-selection clauses are analyzed under federal law. "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Deese-Laurent v. Real Liquidity, Inc.*, 305 F. Supp. 3d 280, 283 (D. Mass. 2018) (quoting *Atl. Marine*, 571 U.S. 49). "The enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests in the justice system." *Atl. Marine,* 571 U.S. at 63. This means "the plaintiff's choice of forum merits no weight," and a court "should not consider arguments about the parties' private interests" and, instead, "may consider arguments about public-interest factors only" in determining

whether to enforce a forum-selection clause. *Id.* at 63-64. "Because those factors will rarely defeat a transfer motion, the practical result is that *forum-selection clauses should control except in unusual cases*[;]" these unusual cases "will not be common." *Id.* (emphasis added). "The burden of proof, moreover, rests with the party opposing enforcement of the forum-selection clause." *Dees-Laurent*, 305 F. Supp. 3d at 283.

### 1. Plaintiffs' claims fall squarely within the scope of the forum-selection clause found in the ICOA.

In the First Circuit, "the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory." *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014). When, as here, the forum-selection clause is mandatory, it must be enforced. *Id.* at 46-47 (affirming dismissal where the agreement between the parties stated disputes "shall be submitted to the jurisdiction and competence of the Court of First Instance of the Commonwealth of Puerto Rico, San Juan Part."). As in *Claudio-De Leon*, the forum-selection clause in Plaintiffs' ICOAs states that disputes "shall be brought exclusively in the state or federal courts serving Cedar Rapids, [Iowa]." *Brueck Decl.*, ¶ 24. The clause is therefore mandatory.

The next step in the First Circuit's analysis is to determine the scope of the forum-selection clause. *Claudio-De Leon*, 775 F.3d at 47. "It is the language of the forum selection clause itself that determines which claims fall within its scope." *Carter's of New Bedford, Inc. v. Nike, Inc.*, 790 F.3d 289, 293 (1st Cir. 2015) (quotation omitted). In *Carter's*, the First Circuit found that language in the forum-selection clause purporting to cover "any action arising out of or in connection with" the agreements at issue was "unambiguously broad" and applied to any action arising out of the agreements. *Id.* at 293. Just so here; the forum-selection clause in Plaintiffs' ICOAs covers "any claim or dispute arising from or in connection with the agreement, whether

under federal, state, local, or foreign law." *Brueck Decl.,* ¶ 24. Forum-selection clauses covering "disputes relating to or in connection with" an agreement "are generally construed quite broadly." *Kebb Management, Inc. v. Home Depot U.S.A., Inc.*, 59 F. Supp. 3d 283, 289 (D. Mass. 2014). And where a "dispute between the parties would not have occurred but for" the agreement containing the forum-selection clause, the claims stemming from the dispute are subject to transfer under the clause. *Id.*

Here, there is no question that Plaintiffs' claims would not have arisen had they not signed the ICOAs containing a forum-selection clause; those contracts formed the entire basis of the parties' relationship and will have to be interpreted to determine Plaintiffs' misclassification claim. *See Reynoso v. LaserShip, Inc.*, 332 F. Supp. 3d 211 (D. Mass. 2018) (finding Massachusetts wage and hour claims in misclassification case fell within the forum-selection clause in the parties' agreement and transferring the case under 28 U.S.C. § 1404(a)); *Capriole v. Uber Technologies, Inc.*, 2020 WL 1536648 (D. Mass. Mar. 31, 2020) (same).

*Reynoso* and *Capriole* are directly applicable here. Like Cervantes and St. Amour, the plaintiffs in both cases alleged the defendants misclassified them and the classes they sought to represent as independent contractors when they were really employees. *Reynoso*, 332 F. Supp. 3d at 213; *Capriole*, 2020 WL 1536648, at *1. The plaintiffs in both cases alleged that, as a result of the misclassification, the defendants violated a variety of state wage and hour laws, including minimum wage and overtime laws. *Reynoso*, 332 F. Supp. 3d at 214; *Capriole*, 2020 WL 1536648, at *1. The forum-selection clauses at issue in both cases contained language nearly identical to that used in Plaintiffs' ICOAs. In *Reynoso*, the clause applied to "any legal proceeding between the parties arising from, in connection with, or relating to this Agreement . . . or to any aspect of the relationship between the parties to this Agreement." *Reynoso*, 332 F. Supp. 3d at 214. In *Capriole*,

7

the clause applied to "[a]ny disputes, actions, claims or causes of action arising out of or in connection with this Agreement." *Capriole*, 2020 WL 1536648, at *2. In *Reynoso*, LaserShip moved to transfer the case based on the forum-selection clause to Virginia, while the defendant in *Capriole*, Uber Technologies, moved to transfer that case to California. *Reynoso*, 332 F. Supp. 3d at 213; *Capriole*, 2020 WL 1536648, at *4.

In finding that the plaintiff's claims fell within the scope of the forum-selection clause, the *Reynoso* court reasoned that the language of the clause indicated the parties agreed to bring any actions in Virginia and, following *Atlantic Marine*, the plaintiff's selection of a Massachusetts forum was entitled to no weight. *Reynoso*, 332 F. Supp. 3d at 216. Likewise, in *Capriole*, the court concluded that the forum-selection clause "reaches claims that are brought 'in connection to' Capriole's relationship with Uber. Since Capriole asserts that he has been misclassified by Uber based on their relationship . . . the forum selection clause encompasses Capriole's claims." *Capriole*, 2020 WL 1536648, at *6. Both holdings comport with the Supreme Court's directive that "[t]he enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine*, 571 U.S. at 581.

As in *Reynoso* and *Capriole*, the forum-selection clause in Plaintiffs' ICOAs is broad and covers "any claim or dispute arising from or in connection with the [ICOA], whether under federal, state, local, or foreign law" and requires that a party bring those claims or disputes in the state or federal courts serving Cedar Rapids, Iowa. *Brueck Decl.*, ¶ 24. Plaintiffs' claims are premised on the theory that CRST misclassified them and the putative class members as independent contractors—a relationship created solely through and controlled entirely by the ICOAs. *See First Am. Class & Collective Action Compl.* (FAC), Doc. 27, ¶¶ 47-84. Like in *Reynoso* and *Capriole*,

Plaintiffs' claims fall within the broad language of the ICOA's forum-selection clause. *See Kebb Management, Inc.*, 59 F. Supp. 3d at 289 ("Here, the [agreement] controlled the entire relationship between Kebb and Home Depot. . . . The dispute between the parties would not have occurred but for the [agreement]. As such, all four of plaintiff's claims are subject to the forum-selection provisions."); *Deese-Laurent*, 305 F. Supp. 3d at 284 ("The First Circuit has construed the 'any action' language of the instant [forum-selection] clause to be 'unambiguously broad.'" (quoting *Carter's*, 790 F.3d at 293)). This Court should find that Plaintiffs' claims fall within the broad scope of their ICOAs' forum-selection clause.

### 2. Enforcement of the forum-selection clause would not be unreasonable or unjust.

In the First Circuit, forum-selection clauses are presumptively valid and enforceable. *Claudio-De Leon*, 775 F.3d at 48. "A forum selection clause is prima facie valid and, absent a strong showing by the resisting party that the clause is unreasonable under the circumstances, it should not be set aside." *Id.* (internal quotations and citations omitted). The First Circuit has identified four "exceptional cases" in which it would be unreasonable or unjust for a court to enforce a forum-selection clause:

> (1) the clause was the product of fraud or overreaching;
>
> (2) enforcement would be unreasonable and unjust;
>
> (3) proceedings in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court; or
>
> (4) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.

*Id.* at 48-49 (internal quotations and citation omitted). Here, the forum-selection clause in Plaintiffs' ICOAs is enforceable because it fits none of the "exceptional cases."

### a. The forum-selection clause is not the product of fraud or overreaching.

To invalidate a forum-selection clause on the basis of fraud or overreaching, a party must demonstrate some form of coercion in entering the agreement at issue. *Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385, 389 (1st Cir. 2001). The First Circuit rejects the arguments that a forum-selection clause is invalid because the parties did not bargain over the clause, the clause consists of boilerplate language, or because of the existence of an alleged differential in bargaining power. *Id.* (citing *Lambert v. Kysar*, 983 F.2d 1110, 1111 (1st Cir. 1993) and *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)). In *Silva*, the First Circuit affirmed the district court's dismissal of the case on the basis of a forum-selection clause when the clause appeared in small print on the back of the contract and was not discussed by the parties in reaching their agreement. "First, that the forum-selection clause is a 'boilerplate' provision does not *ipso facto* render it invalid. It is not the law that one must bargain for each and every written term of a contract." *Id.* With respect to the bargaining power differential, the court said "Britannica's alleged bargaining power is not relevant on these facts. Britannica used its bargaining power to do nothing more than offer an appealing employment opportunity to appellant, and no evidence suggests that he was coerced into entering the agreement. All that remains, then, is an arms-length transaction, the terms of which are binding on both parties." *Id.*

Here, Plaintiffs do not claim fraud or coercion related to the execution of the ICOAs containing the forum-selection clauses, nor could they because Plaintiffs voluntarily agreed to the terms of their ICOAs, including the forum-selection clause. Indeed, Cervantes executed contracts with CRST more than once. And, contrary to the facts in *Silva*, where the clause at issue appeared in "small print on the back of the contract," *Silva*, 239 F.3d at 389, the clause in Plaintiffs' ICOAs was highlighted through the use of bold, all-capitalized letters. *Brueck Decl.*, ¶ 24.

In addition, CRST's actions related to contract formation, even beyond clearly marking the clause in the contract, further demonstrate that the forum-selection clause was not the product of fraud or overreach. It is CRST's protocol to allow owner-operators like Plaintiffs time to review the ICOA and raise any questions they have prior to signing the document. *Id.*, ¶ 10. Indeed, Plaintiffs fail to even allege any form of fraud or coercion in their FAC.

### b. Enforcement of the forum-selection clause would not be unreasonable and unjust.

A contract provision, even one not bargained for, but rather unilaterally added by one party and agreed to by the other, remains a valid provision. *Carter's*, 790 F.3d at 293, n.4. "To the extent that Carter's argues that the enforcement of the forum selection clause is unreasonable or unjust because it never bargained for it, we remain unpersuaded. If the unilateral addition is a valid part of the contract, its enforcement is neither unreasonable nor unjust." *Id.* The same is true here.

### c. Transferring this case to the Northern District of Iowa will not deprive Plaintiffs of their day in court.

A forum-selection clause is unenforceable if it deprives a plaintiff of his day in court. *Claudio-De Leon*, 775 F.3d at 49. In *Atlantic Marine*, the Supreme Court held that a plaintiff who agrees to litigate in a particular forum has "waived[d] the right to challenge the preselected forum as inconvenient or less convenient." *Atl. Marine*, 571 U.S. at 64. And any argument relying upon a comparison between the parties' financial ability to bear the costs and inconvenience of litigating this case in Iowa falls flat. Cervantes is a Colorado resident, and St. Amour is a Florida resident. *FAC*, ¶¶ 25, 29. Litigating this case in Iowa instead of Massachusetts will not be more expensive or inconvenient for them. Moreover, the parties' relative convenience and expense are private interest factors that may not be considered in judging the enforceability of a valid forum-selection clause. *See Rowen v. Soundview Commc'n, Inc.*, 2015 WL 899294, at *7 (N.D. Cal. Mar. 2, 2015) (citing *Atl. Marine* in enforcing a forum-selection clause and stating: "As the Supreme Court noted

in *Atlantic Marine*, 'convenience' and expense are private interests that 'weigh entirely in favor of the preselected forum.'").

### d. Transferring this case to the Northern District of Iowa would not contravene Massachusetts public policy.

Last, although a court will not enforce a forum-selection clause if doing so will contravene a strong public policy in Massachusetts, the mere fact that Plaintiffs chose to sue in Massachusetts is no bar to transfer in this case. In the face of a forum-selection clause, "the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63. The absence of a policy concern by Massachusetts is underscored here where Plaintiffs' claims are singularly federal in nature, being brought under the FLSA. There is no reason to believe that the Northern District of Iowa is somehow less well equipped to adjudicate a FLSA claim than this Court.

### 3. Transfer is in the public interest.

After determining that a contract contains a valid forum-selection clause, a court must also look to public-interest factors to ensure that it is appropriate to transfer the case under Section 1404(a). *Atl. Marine*, 571 U.S. at 64. These factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6. These factors "will rarely defeat a transfer motion" meaning that, practically speaking, the forum-selection clause controls. *Id.* at 64.

Here, the factors favor transfer. First, the "court congestion" factor is at least neutral. *See* Federal Court Management Statistics, June 2019, *available at* https://www.uscourts.gov/file/26523/download (last visited April 10, 2020). Second, the local

interest in the controversy favors transfer. CRST is headquartered in Iowa. *Brueck Decl.*, ¶ 4. The key policy decisions that form the nexus of Plaintiffs' allegations emanated from CRST's headquarters in Iowa. *See id.*, ¶¶ 5-7, 13, 14; *see also, e.g., FAC, ¶¶* 7, 35, 38, 43, 48-58, 60, 62-63, 66, 70-71, 73-75, and 82. And Iowa has an interest in ensuring that businesses operating within its borders follow the law.

In contrast, Plaintiffs have virtually no connection to Massachusetts—they both live outside of Massachusetts, and almost all their work while under contract with CRST occurred outside the state. *Wiltgen Decl.*, ¶¶ 7, 8. In addition, all putative class members Plaintiffs hope to represent are interstate truck drivers who, like Plaintiffs, spend almost all their time outside of the state.[5]

Last, the interest in having the trial in a forum at home with the law also supports transfer. Plaintiffs bring their claim under the FLSA, and there can be no dispute that the Northern District of Iowa is capable of adjudicating their claim. The forum-selection clause in Plaintiffs' ICOAs should therefore be enforced.

### B. The convenience factors also favor transfer of this case to the Northern District of Iowa.

Transfer is also appropriate under Section 1404(a) because the convenience factors still favor litigating this case in Iowa. In cases where the agreement between the parties does *not* contain an enforceable forum-selection clause, courts weighing the question of transfer evaluate (1) the relative ease of access to sources of proof, (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of

---

[5] In fact, during the putative class period, CRST incurred only 0.07% of its total miles and 0.88% of its pick-ups and deliveries in Massachusetts. *Wiltgen Decl.*, ¶ 9; *Brueck Decl., ¶* 29. And CRST only contracted with seven Massachusetts residents (out of more than 2,680 total independent contractor owner-operators). *Brueck Decl., ¶* 27.

premises, if view would be appropriate to the action, and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Montoya v. CRST Expedited, Inc.*, 285 F. Supp. 3d 493, 500 (D. Mass. 2018). Here, both considerations militate toward transfer.

Every document related to the relationship between CRST and Plaintiffs is maintained at CRST's headquarters in Iowa. *Brueck Decl.*, ¶ 11. No documents related to Plaintiffs' relationships with CRST are maintained in Massachusetts. *Id.*, ¶ 17. Aside from the Plaintiffs, who reside in Colorado and Florida, every one of the individuals who could competently testify to the facts relating to the relationship between Plaintiffs and CRST is located in Iowa. *Id.*, ¶ 15. Plaintiffs' almost non-existent presence in Massachusetts is telling: Cervantes drove only 0.028% of his total miles in Massachusetts, and St. Amour drove approximately 0.17% of his total miles in the state. *Wiltgen Decl.*, ¶¶ 7, 8. There are no witnesses in Massachusetts who would testify to whether either Plaintiff was properly classified as an independent contractor or entitled to damages under the FLSA. *Brueck Decl.,* ¶ 15. Not even Plaintiffs reside in Massachusetts.

## IV. CONCLUSION

Cervantes and St. Amour, who are residents of Colorado and Florida, respectively, went to Cedar Rapids, Iowa to become owner-operators for CRST. They agreed to litigate all disputes arising from their ICOAs in Cedar Rapids, Iowa, which is the center of gravity of this case. The central issue in this case is whether CRST properly classified them as independent contractors. The Supreme Court dictates that "forum-selection clauses should control *except in unusual cases.*" *Atl. Marine*, 571 U.S. at 64 (emphasis added). By definition, unusual cases "*will not be common.*" *Id.* (emphasis added). Plaintiffs' case is not unusual. Under the terms of the ICOA and 28 U.S.C. § 1404(a), this case should be transferred to the Northern District of Iowa.

Dated: April 20, 2020					Respectfully submitted,

					*/s/ James H. Hanson*
					James H. Hanson
					(Admitted Pro Hac Vice)
					SCOPELITIS, GARVIN, LIGHT, HANSON &
					FEARY, P.C.
					10 West Market Street, Suite 1400
					Indianapolis, IN 46204
					P: 317-492-9205
					jhanson@scopelitis.com

					Adam C. Smedstad
					(Admitted Pro Hac Vice)
					SCOPELITIS, GARVIN, LIGHT, HANSON &
					FEARY, P.C.
					3214 West McGraw Street, Suite 301F
					Seattle, WA 98199
					P: 206-288-6192
					asmedstad@scopelitis.com

					Daniel R. Sonneborn (BBO #679229)
					PRETI FLAHERTY BELIVEAU & PACHIOS LLP
					60 State Street
					Boston, MA 02109
					P: 617-226-3800
					dsonneborn@preti.com

					Attorneys for Defendants,
					CRST International, Inc. and CRST Expedited, Inc.

4819-0998-7251, v. 9