IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

Anthony Cervantes and Mike Cross,
individually and behalf of all other similarly
situated persons,

CASE NO. 1:20-cv-75-CJW-KEM

**THIRD AMENDED COMPLAINT**

Plaintiff(s),

vs.

CRST International, Inc. and CRST
Expedited, Inc.

Defendant(s).

_____

## INTRODUCTION

1.      This lawsuit seeks redress for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), the Iowa Wage Payment Collection Law, Iowa Code § 91A.1, *et seq*., and the Iowa Minimum Wage Law, Iowa Code §91D.1, for failing to pay required minimum wages and unlawfully deducting amounts from the wages of drivers that Defendants misclassified as independent contractors.

2.      Plaintiffs also seek redress for unjust enrichment and for violations of the Truth in Leasing Act ("TILA") and its implementing regulations.

3.      Defendants include privately owned companies CRST International, Inc. and CRST Expedited, Inc. (collectively, "CRST" or "Defendants") which are owned and operated by related individuals and entities for a common business purpose: transportation of freight for CRST customers.

1

4.     To accomplish its business purpose, CRST relies on thousands of long-haul, interstate truck drivers to deliver freight for CRST's customers across the United States.

5.     CRST utilizes company drivers—i.e., drivers that CRST classifies as employees (hereafter "Employee Drivers")—and Drivers that CRST misclassifies as independent contractors (hereafter "Drivers").

6.     According to its website, CRST "is one of the nation's largest transportation companies," provides "services to customers all over North America," has "annual revenues exceeding $1 billion," and has a fleet of "more than 4,500 trucks."

7.     According to the CRST website, CRST Expedited, Inc. has "more than 3,500 drivers on the road."

8.     CRST's classification of Drivers as independent contractors forms a significant part of a labor scheme crafted to pay its Drivers less than the minimum wage required by federal and Iowa law, to shift CRST's business expenses and risk to the Drivers, and to defeat all federal and state protections for employees, such as Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act, the National Labor Relations Act, and wage protection statutes such as the FLSA and similar state statutes.

9.     By misclassifying Drivers as independent contractors, CRST also evades the tax burdens that it would bear for employees—e.g., Social Security, Federal Unemployment Tax, etc.—which burdens are also shifted to the misclassified Drivers.

10.     By unlawfully treating Drivers as independent contractors, CRST obtains a vast competitive advantage over competitor trucking companies that properly treat their drivers as employees and pay required wages and taxes in compliance with federal and state law.

2

11.     As one of the nation's largest trucking companies, CRST's unlawful practices drive down wages across the trucking industry and undercut fair labor practices throughout the United States.

12.     Since at least October 2014, if not before, CRST knowingly misclassified Drivers, including Plaintiffs and proposed class members, as independent contractors, failed to pay them statutorily-required minimum wages, and made unlawful deductions from their earned compensation.

13.     Plaintiffs bring their federal minimum wage claims under the collective action provision of the FLSA as set forth in 29 U.S.C. §216(b).

14.     Plaintiffs bring their Iowa state law claims and TILA claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, this action is brought under 29 U.S.C. § 216(b) of the FLSA. Jurisdiction over Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202.

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this case involves diversity of citizenship among the parties.

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1337 because the claims arise under federal laws regulating commerce.

18.     This Court has supplemental jurisdiction over the state law claims raised by virtue of 28 U.S.C. §§ 1332 and 1367, including § 1367(a).

19.     The amount in controversy in this matter exceeds the sum or value of $5,000,000 exclusive of interest and costs.

20.     Plaintiffs and at least one member of the proposed collective action class are citizens of a state different from that of at least one Defendant.

21.     Citizenship of the members of the proposed collective action class is dispersed across the United States.

22.     Plaintiffs' claims involve matters of national and/or interstate interest.

23.     Plaintiffs and Drivers were engaged in commerce in their work for Defendants.

24.     Venue is proper in the Northern District of Iowa pursuant to 28 U.S.C. § 1391 because Defendants reside in this District for venue purposes and/or are subject to the Court's personal jurisdiction in that it has substantial contacts with and conducts business in this District. In addition, a substantial part of the events giving rise to the claims occurred in the Northern District of Iowa.

## PARTIES

25.     Plaintiff Anthony Cervantes is a citizen and resident of Colorado.

26.     Plaintiff Cervantes worked for CRST as a truck driver from approximately January 2018 to August 2019.

27.     Although classified by CRST as an "independent contractor," Plaintiff Cervantes was, at all relevant times, an "employee" of Defendants under the Fair Labor Standards Act, the Iowa Wage Payment Collection Law, Iowa Code § 91A.1, *et seq*., and the Iowa Minimum Wage Law, Iowa Code § 91D.1.

28.     Plaintiff Mike Cross is a citizen and resident of Pennsylvania.

4

29. Plaintiff Cross works for CRST as a truck driver and has been misclassified by CRST as an independent contractor since approximately October 2018.

30. Although classified by CRST as an "independent contractor," Plaintiff Cross was, at all relevant times, an "employee" of Defendants under the Fair Labor Standards Act, the Iowa Wage Payment Collection Law, Iowa Code § 91A.1, *et seq.*, and the Iowa Minimum Wage Law, Iowa Code § 91D.1.

31. Defendants CRST International, Inc. and CRST Expedited, Inc. are corporations formed under the laws of Iowa.

32. Defendant CRST Expedited, Inc. is a motor carrier registered with the U.S. Department of Transportation.

33. Defendants are related and integrated business corporations.

34. Each of the Defendants' principal corporate offices are located at 3930 16th Ave. SW, Cedar Rapids, IA 52404.

35. Defendants have common ownership and interrelated operations.

36. Defendants have overlapping management, officers, and directors.

37. Defendant CRST International, Inc. is the owner of CRST Expedited, Inc. and owns all of the stock of CRST Expedited, Inc.

38. Defendant CRST International, Inc. provides management and operational services to Defendant CRST Expedited, Inc. This includes, for instance, providing management oversight, legal, accounting, treasury, risk management, safety oversight, and human resources services to CRST Expedited, Inc.

39. CRST's human resources and payroll matters are handled exclusively in Cedar Rapids, Iowa.

5

40.     On information and belief, CRST International, Inc. maintains employment records of Drivers and, alone or in conjunction with CRST Expedited, Inc., determines the wages, working conditions and classification for Drivers.

41.     Defendants operate as a single enterprise within the meaning of 29 U.S.C. § 203(r)(1).

42.     Defendants conduct business throughout the United States, including in Iowa.

43.     Each of the Defendants benefit from the scheme to misclassify Drivers.

44.     Upon information and belief, Defendants each grossed more than $500,000 in each of the last six calendar years, individually and collectively.

45.     All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

46.     Defendant CRST International, Inc. was, at all relevant times, Plaintiffs' "employer" and the "employer" of proposed class members under the Fair Labor Standards Act, the Iowa Wage Payment Collection Law, Iowa Code § 91A.1, *et seq.*, and the Iowa Minimum Wage Law, Iowa Code § 91D.1. Alternatively, CRST International, Inc. was, at all relevant times, a joint employer of Plaintiffs and the proposed Class Members along with CRST Expedited, Inc.

47.     Defendant CRST Expedited, Inc. was, at all relevant times, Plaintiffs' "employer" and the "employer" of proposed Class Members under the Fair Labor Standards Act, the Iowa Wage Payment Collection Law, Iowa Code § 91A.1, *et seq.*, and the Iowa Minimum Wage Law, Iowa Code § 91D.1. Alternatively, CRST Expedited, Inc. was, at all relevant times, a joint employer of Plaintiffs and the proposed Class Members along with CRST International, Inc.

## CLASS ALLEGATIONS

48.    Plaintiffs bring their federal minimum wage claims under the collective action provision of the FLSA as set forth in 29 U.S.C. § 216(b) on behalf of themselves and a proposed collective action class of persons consisting of: "all drivers who entered into independent contractor operating agreements ("ICOAs") with CRST Expedited, Inc. at any time on after the time that the terms set forth in ¶¶ 7(e) and 9(f) of Plaintiff Cervantes' ICOA were added to CRST Expedited's ICOAs." This proposed class is referred to herein as the FLSA Class.

49.    To facilitate the right of FLSA Class members to participate in this action, the Court should issue notice to the FLSA Class informing them of their right to participate in the suit by filing a consent to sue form. There are numerous similarly situated current and former employees of Defendants who have suffered from Defendants' common policies and practice of misclassifying Drivers who operate under an ICOA and not paying required minimum wages for all hours worked.  These similarly situated Drivers would benefit from the issuance of Court-supervised notice of the present lawsuit and the opportunity to join the lawsuit. Those similarly situated Drivers are known to Defendants and readily identifiable through Defendants' records.

50.    Plaintiffs bring their Iowa state claims under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of similarly situated persons identified as: "all drivers who entered into ICOAs with CRST Expedited, Inc. during the applicable limitations period subject to any equitable tolling and equitable estoppel." This class is referred to herein as the Iowa Class.

51.    Plaintiffs bring their TILA claims pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of similarly situated persons identified as: "all drivers who entered into ICOAs with CRST Expedited, Inc., during the applicable limitations

period subject to any equitable tolling and equitable estoppel." This proposed class is referred to herein as the TILA class.

52.     Excluded from the Rule 23 Classes and FLSA Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the relevant class period has had, a controlling interest in any Defendant. Also excluded are fleet drivers—i.e., drivers who entered into agreements to lease more than one truck at a time to CRST Expedited.

53.     The persons in the Rule 23 Classes are so numerous that joinder of all members is impracticable. The precise number of such persons is not known to Plaintiffs, however, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

54.     Plaintiffs are informed and believe, and based on such information and belief, allege that there are thousands of members of the putative Rule 23 Classes.

55.     There are questions of law and fact common to the Rule 23 Classes that predominate over any questions solely for affecting individual members of the Class, including but not limited to:

     a.     Whether the Rule 23 Class members have provided services to Defendants as employees rather than independent contractors under Iowa law;

     b.     Whether Defendants failed to compensate Rule 23 Class members minimum wages in violation of Iowa law;

     c.     Whether the operating expenses and losses that Rule 23 Class members incurred in performing their duties for Defendants were unlawful wage deductions under Iowa law;

d. Whether Defendants have made deductions from the compensation of Rule 23 Class members in violation of Iowa law;

e. Whether the terms of the ICOAs and Leases signed by Plaintiffs and the class members, either separately or in combination, were unconscionable and/or unlawful under Iowa law;

f. Whether Defendants were unjustly enriched by imposition of unconscionable contracts upon Rule 23 Class members;

g. Whether Defendants fraudulently induced Drivers to work for them in violation of Iowa law;

h. Whether Defendants failed to compensate Drivers in the manner and amounts specified in the ICOA, which Defendants required Drivers to sign, as required under 49 C.F.R. § 376.12(d);

i. Whether Defendants failed to give Drivers a copy of the rated freight bill at or before the time of settlement as specified in the ICOA, which Defendants required Drivers to sign, and as required under 49 C.F.R. § 376.12(g);

j. Whether Defendants failed to provide Drivers with copies of the documents necessary to determine the validity of charge-back items and the computation of those charges as specified in the ICOA, which Defendants required Drivers to sign, as required by 49 C.F.R. § 376.12(h);

k. Whether Rule 23 Class members are entitled to declaratory judgment as to any of the claims identified herein: and

l. The nature and extent of class-wide injury and the appropriate measure of damages.

9

56.     The claims of Plaintiffs are typical of the claims of the Rule 23 Class members they seek to represent insofar as they allege that (a) Defendants have a policy and pattern or practice of exercising powers of an employer with respect to Plaintiffs and members of the Rule 23 Class; (b) Defendants failed to pay Plaintiffs and Rule 23 Class members all wages due; (c) Defendants made unlawful deductions from Plaintiffs' wages and from the wages of the Rule 23 Class members; (d) Defendants failed to pay Plaintiffs and members of the Rule 23 Class minimum wages for all hours worked; (e) Defendants subjected Plaintiffs and Rule 23 Class members to unconscionable terms and conditions as set forth in the ICOA and Lease agreements; (f) Defendants had a policy and practice of recruiting and hiring Drivers, including Plaintiffs and members of the Rule 23 Class, based on fraudulent misrepresentations; and (g) Defendants had a policy and practice of failing to adhere to and perform the provisions of the ICOA that are required by the Truth in Leasing Act, in violation of the Truth in Leasing Act and its implementing regulations.

57.     Plaintiffs and their counsel will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

58.     Defendants have acted or refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

59.     The class claims are also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure. A class action is superior to other available methods for the fair and efficient adjudication of this case, particularly in the context of wage litigation like the present action, where individual members of the class may lack the financial resources to vigorously prosecute a lawsuit in federal court against Defendants of this size and

with far greater resources. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## FACTS

60.     Defendants hired Plaintiffs and Drivers to transport goods in interstate commerce.

61.     Defendants require Drivers to sign an Independent Contractor Operating Agreement ("ICOA") by which Drivers lease their trucks to Defendants. The ICOA purports to classify Drivers as "independent contractors."

62.     Upon information and belief, Defendant CRST International, Inc. drafts the ICOAs which are used by each of its operating companies, including CRST Expedited, Inc.

63.     Drivers leasing their truck from CRST are also required to sign an "Equipment Lease (With Maintenance)" ("Lease") with CRST Lincoln Sales, Inc., another one of CRST International Inc.'s operating companies, at the same time as, and as a package with, the ICOA. Together, the ICOA and Lease form a single contract.

64.     Both the ICOA and Lease provide that they are to be governed by the laws of the Iowa.

65.     The ICOA and Lease are both drafted by CRST and both are presented to Drivers on a "take it or leave it" basis.

66.     The ICOA and its various attachments are over fifty pages in length and their terms are not easily deciphered, especially for Drivers who are generally not sophisticated in analyzing or understanding form contracts like the ICOA and Lease. However, Drivers are not given adequate time to review the documents and are prevented from seeking legal advice before signing.

11

67. The ICOA must be signed by Drivers in order to work for Defendants.

68. The Drivers who do not otherwise have a truck to drive must sign both the Lease and ICOA in order to work for Defendants.

69. Drivers, including Plaintiffs, were provided a copy of the CRST Handbook, the same Handbook provided to Employee Drivers, and were trained in CRST's policies, practices and procedures in areas such as driving rules, handling loads, safety, pet policy, etc., along with Employee Drivers.

70. The ICOA and Lease make the Driver liable for costs of operating the truck, including, *inter alia*, fuel, insurance, and maintenance.

71. While the ICOA states that Drivers are "independent contractors," Defendants retain the authority to exert near complete control over Drivers' work and ensure Drivers cannot operate as independent businesses, but instead must remain economically dependent on Defendants.

72. Defendants control Drivers' work schedules through their exclusive control over the assignment of loads to Drivers and by requiring them to work exclusively for CRST.

73. Defendants control when, where, and how Drivers deliver freight.

74. Defendants dispatch Drivers to jobs that Defendants wish them to perform.

75. Defendants monitor and control the time of Drivers' departure and the time of arrival.

76. Defendants can dictate and monitor the route Drivers will travel.

77. Defendants monitor Drivers' location, speed, control of the truck, route, estimated arrival time, rest time, driving time, and other aspects of job performance by an on-board computerized system.

12

78. By way of example of the control exercised by Defendants over Drivers, Plaintiffs received communications and instructions on a daily or near daily basis by their "driver managers" regarding driving speed, arrival times, rest times, etc.

79. Defendants control the amounts charged to the customers whose freight Drivers deliver.

80. Drivers are paid by the load with the amount set and fixed by Defendants.

81. Defendants dictate the means by which Drivers are to perform their job and require Drivers to adhere to Defendants' policies.

82. For instance, except in limited circumstances, Defendants require Drivers to operate in two-person teams.

83. Drivers have no opportunity for profit and loss based on their entrepreneurial skill because CRST exercises exclusive control over their load assignments and compensation rates.

84. The team driver requirement used by CRST allows it to ship goods across the United States in substantially less time than it would take a single driver. This is because with two drivers, CRST can comply with Department of Transportation regulations regarding hours of service while keeping the truck in virtually constant motion.

85. When Drivers are transporting cargo, the trucks are usually in motion twenty hours a day or more.

86. Team driving is very arduous. This is because the truck is in close-to-continuous motion, and the drivers typically only go home once every three weeks or so (whereas, for many trucking companies, drivers can be home at least every week), Drivers are in close contact with another person for a long period of time, and they have limited (if any) privacy.

87. Defendants control who Drivers may work with in the two-person driving teams.

13

88. By the nature of the job and team driving requirement, Drivers cannot leave the truck for any significant period of time and must remain in the truck on long-haul trips across the country while the other team driver is operating the vehicle.

89. On information and belief, CRST has difficulty retaining experienced drivers and therefore aggressively recruits experienced drivers who are integral to their business model.

90. On information and belief, CRST also has a high employee turnover rate among its new, inexperienced employee drivers.

91. On information and belief, CRST has a turnover rate among its new drivers of approximately 160% per year, i.e., for every one-hundred truck driving jobs CRST needs to fill each year, it must hire one-hundred-sixty drivers.

92. On information and belief, because of the high turnover and inability to recruit enough experienced drivers who are willing to "team drive," CRST could not operate without its driver training program that recruits and trains inexperienced drivers.

93. As an integral part of its driver training program, CRST relies on Drivers, including Plaintiffs, to train CRST's Employee drivers.

94. Drivers are required to train CRST's Employee drivers in CRST's standards, policies, and protocols and pursuant to CRST's directions and instructions.

95. CRST assigns and supplies the Employee drivers to Drivers.

96. CRST required Plaintiff Cervantes to drive and train, for 28 days each, at least 12 of CRST's Employee drivers.

97. For each trip where Plaintiffs Cervantes and Cross worked training a CRST Employee driver, CRST deducted amounts from Cervantes' and Cross's paychecks for every mile driven (in addition to the numerous other deductions set forth below) regardless of whether the

14

CRST Employee driver or Plaintiffs were driving, and regardless of the fact that Plaintiffs were providing training services to Defendants while the Employee driver was driving. On information and belief, these deductions were to cover the wages and related costs CRST paid its Employee drivers.

98.     Drivers were financially responsible for damage to their trucks that CRST Employee drivers incurred while driving. For example, one of Plaintiff Cross's CRST Employee drivers drove his truck into a river, and Cross was responsible for the costs to repair the damage to the truck. Similarly, one of Plaintiff Cervantes' CRST Employee drivers backed his truck into a pole and damaged the truck, and Cervantes was responsible for the cost of the repair.

99.     Defendants control what equipment Drivers use to perform their work, including the type of truck, communication system used by Drivers, the electric on-board recorder (used to record the amount of time a vehicle is being driven), and the trailers used to complete the work for Defendants.

100.    Defendants have complete control over whether and how Drivers may use such equipment. Defendants also control how the equipment is to be operated, whether and when Drivers must fuel trucks, maintenance requirements and schedules, and the appearance of the vehicles.

101.    Defendants determine the schedule and requirements for Drivers to inspect, repair, and maintain the trucks, which are part of Drivers' job duties.

102.    Defendants determine the facilities and providers of such services that Drivers must use for inspections, maintenance, and repairs.

103.    Although the ICOA purports to allow Drivers to drive for other companies with CRST's permission and if certain conditions set by CRST are met, CRST does not grant such

permission. Both Plaintiffs Cervantes and Cross were told by CRST during their orientations to become Drivers that they could not drive for other companies.

104.     Although the ICOA purports to allow Drivers to turn down loads, as a practical matter, CRST can and does punish Drivers turning down a load by delaying or withholding subsequent assignments to the Driver.

105.     Defendants may terminate Drivers at will.

106.     Defendants retain exclusive control over other essential functions necessary for operation of the Drivers so-called "independent" operations, including, *inter alia*, locating customers, employing a sales force, employing brokers, purchasing and developing advertising, determining the freight that will be carried by Drivers, the terms and conditions under which that freight will be picked up and delivered, the rates that customers will be charged for the deliveries, employing dispatchers, assigning loads to Drivers, performing billing and payroll, and performing repair and maintenance services.

107.     The CRST driver Handbook provided to both Drivers and Employee Drivers sets forth policies of "the Company" (which is defined as "CRST International, Inc., and its subsidiary companies"), including, *inter alia*, the drug and alcohol policy, electronic communications and technology policy, equal employment opportunity policy, human rights policy and statement, outside employment policy, payroll and leave policy, personal appearance and dress code policy, safety policies, and "the Company's" Code of Business Conduct and Ethics.

108.     The Handbook also states that "the Company ha[s] the right to terminate employment at any time, with or without notice and with or without cause."

109.     Through deductions from Drivers' paychecks, Defendants require Drivers to pay for a wide variety of expenses and costs that are primarily for the benefit of CRST, including tens

16

of thousands of dollars per year for trucks, "empty mileage" costs (i.e. the costs for travel when not transporting items for customers), necessary equipment (e.g., use of trailers and communication equipment), fuel, oil, tires, spare parts, tolls, insurance, repairs, inspections, maintenance and repairs for the trucks and trailers owned by Defendants, road taxes, mileage taxes, federal heavy vehicle use taxes, registration, licensing, and permitting fees, among other expenses.

110. Defendants continue to deduct expenses and costs from Drivers regardless of how many loads CRST assigns a Driver in any given workweek, which could be none at all.

111. Defendants also control the payments received by Drivers for the work they perform.

112. Defendants control the Drivers' use of their earnings by requiring Drivers to fund and maintain so-called "maintenance" and "escrow" accounts and maintain minimum balances held by Defendants and funded through deductions made by Defendants from Drivers' paychecks. Defendants then use the funds siphoned from Drivers' paychecks to pay themselves for the numerous employer expenses listed above.

113. All of the above-described controls, including the setting of compensation rates, give Defendants the power to determine Drivers' earnings and working conditions.

114. On information and belief, CRST exercises similar controls over how its Employee Drivers operate and how its Drivers operate; there is no material difference in their dependence upon CRST for their livelihood.

115. On information and belief, Drivers generally follow the usual path of CRST Employee Drivers and have no more or less skill than Employee Drivers.

116. Because CRST offers to arrange to lease a truck to Drivers (which Drivers then lease back to CRST with their ICOA) for no money down and with no credit check, offers to

arrange for all insurance needed by Drivers and to advance the costs of that insurance, as well as other costs of operation including fuel, Drivers need no more business skill than Employee Drivers and need not make any more capital investment than Employee Drivers.

117.  Neither Plaintiff Cervantes nor Cross has made any significant capital investment in his operation; costs, including the costs of the lease payments, are advanced by CRST and paid for out of their earnings carrying loads for CRST.

118.  On information and belief, Drivers who complete the term of their ICOA are generally offered a new ICOA or continue to work under the same ICOA.

119.  In addition to the controls set forth above which render Drivers economically dependent on Defendants, the Lease signed by Plaintiffs and other Drivers give Defendants even more control over those who enter into a Lease.

120.  Defendants can place Drivers in default of the Lease by terminating the ICOA, which Defendants may do at will.

121.  The Lease also provides that Drivers are in default of the Lease if they are in default in payment or performance of any indebtedness or obligation owed by the Driver to any parent, affiliate, or subsidiary of CRST Lincoln Sales, Inc. under any other agreement or instrument. In other words, if Drivers fail to meet any of the numerous obligations under the ICOA or fail to pay any of the numerous fees/deductions set forth in the ICOA, Defendants can place Drivers into default of the Lease.

122.  Drivers who are placed into default of their Lease are subject to having their truck repossessed and, in addition, to having all of their remaining lease payments accelerated and deemed due and owing, which can amount to tens of thousands of dollars.

18

123.     Drivers who are placed into default under the Lease are also subject to having the amounts they owe on their Leases deducted from their paychecks and from the "escrow" and "maintenance" funds mandated by the ICOA.

124.     The threat of having the entire amount of the Lease become immediately due and owing coupled with the threat of having the truck repossessed, along with the additional fees and costs, results in CRST exerting additional control over Drivers who lease trucks; those Drivers have little or no choice but to keep working for CRST and submit to its control or they risk losing their truck and being saddled with additional charges even if they are not being paid required wages and the work is unprofitable.

125.     This scheme also shifts the risk of trucking business downturns from Defendants to Drivers as Defendants are not obligated to give Drivers any specific amount of work while Drivers have continuing obligations to CRST under the Lease.

126.     As a result of the facts alleged herein, Drivers are not independent contractors, but instead employees of CRST which has suffered and permitted and continues to suffer and permit Drivers to work.

127.     Defendants did not maintain payroll records of hours worked by Drivers each day and each workweek, as required by the Fair Labor Standards Act and Iowa law.

128.     CRST fails to pay FLSA and state minimum wages free and clear to Drivers.

129.     Instead, CRST calculates the Drivers compensation by a weekly accounting (a so-called "settlement") that makes deductions from Drivers' pay for various expenses that are for the benefit of CRST, including those described above.

130.     In some weeks, the deductions from Drivers' pay yield pay rates below federal and state minimum wage requirements.

131.    By way of example only, despite the many hours of work Plaintiff Cervantes performed including driving hundreds or thousands of miles for Defendants and performing other non-driving work, such as conducting pre- and post-trip inspections of the truck, waiting to load or unload, loading or unloading, fueling, repairing and maintaining the truck, hooking and unhooking empty trailers, preparing logbooks and other paperwork, training CRST's trainee drivers, compensable sleeper berth time, and performing other activities and services, Plaintiff Cervantes received a *negative* net settlement as reflected on his settlements for pay periods ending on April 10, 2018, April 12, 2018, April 19, 2018, and April 26, 2018. In other words, in each of these workweeks, Defendants' unlawful deductions resulted in Plaintiff Cervantes not being paid at least the minimum wage for each hour worked and, in fact, resulted in Plaintiff Cervantes *owing* Defendants money for each hour he worked.

132.    By way of example only, despite the many hours of work Plaintiff Cross performed including driving hundreds or thousands of miles for Defendants and performing other non-driving work, such as conducting pre- and post-trip inspections of the truck, waiting to load or unload, loading or unloading, fueling, repairing and maintaining the truck, hooking and unhooking empty trailers, preparing logbooks and other paperwork, training CRST's Employee drivers, compensable sleeper berth time, and performing other activities and services, Plaintiff Cross received a *negative* net settlement as reflected on his settlements for pay periods ending on January 31, 2018; February 14, 21, & 28, 2018; March 13, 2018; and April 10, & 17, 2018. In other words, in each of these workweeks, Defendants' unlawful deductions resulted in Plaintiff Cross not being paid at least the minimum wage for each hour worked and, in fact, resulted in Plaintiff Cross *owing* Defendants money.

133.     In some weeks, Defendants failed to pay Plaintiffs and Drivers the minimum wage for each hour worked.

134.     Defendants' conduct caused Drivers loss of wages, additional tax burdens, insurance obligations, and a variety of other monetary and non-monetary compensable harm.

135.     Defendants' failure to pay Plaintiffs and Drivers the minimum and other proper wages required by federal and state law was willful.

136.     Defendants' unlawful conduct, as set forth in this Third Amended Complaint, was intentional, willful, and/or in bad faith, and has caused significant damages to Plaintiffs and Drivers.

137.     Defendants were aware or should have been aware that the law required them to pay Plaintiffs and Drivers minimum wages required by federal and state law.

138.     Upon information and belief, Defendants apply the same unlawful policies and practices to the Drivers in every state in which they operate.

139.     The ICOA, individually and in combination with the Lease, is unlawful and unconscionable and unjustly enriches Defendants at the expense of Drivers insofar as, *inter alia*, they (a) call for the employment of Drivers but claim them to be independent contractors; (b) deduct substantial sums from Drivers' wages based on the claim that Drivers are independent contractors when in fact they are employees; (c) allow Defendants to place Drivers in default of their Leases at will and impose all of the draconian financial consequences such default entails; (d) shift Defendants' risk of business downturn to Drivers; (e) make Drivers responsible for the costs of carrying and maintaining Defendants' fleet; and (f) exact profits and reimbursements from Drivers who are, in fact, employees.

140.    The ICOA also purports to alter the rights of Drivers under the FLSA in the event they are reclassified as employees and purports to require Drivers to indemnify CRST for damages caused by Defendants' misclassification of the Drivers. These terms are unconscionable, illegal, and violate public policy. (*See* ICOA ¶¶ 7(E) & 9(F); Doc. 39-2 at pp. 15/57 & 18/57).

141.    As noted above, CRST has extremely high turnover rates among its Drivers and therefore requires a steady stream of new Drivers.

142.    To recruit persons who may be willing to work for CRST as a Driver, CRST relies on "recruiters."

143.    CRST recruiters use "hard-sell" tactics to recruit prospective Drivers.

144.    CRST recruiters do not rely on the terms of the ICOA to guide the discussions with prospective Drivers prior to the execution of the agreement. Instead, recruiters guide Drivers through the use of oral representations and specifically-designed recruiting materials. These include, for instance, information packets and CRST recruiting webpages that include statements regarding pay rates and compensation that are designed to mislead Drivers.

145.    On information and belief, the CRST recruiting webpage has also previously included representations regarding per mile compensation rates that have been removed and/or changed since the filing of the initial complaint in this case.

146.    To entice Plaintiffs to drive for CRST as lease operators, CRST and its agents made false representations to them regarding the amount of money they would make as lease operators.

147.    At various times, including in December 2017 and in February 2018, CRST, through its agents, including Driver Recruiter Matt Young and Driver Manager Phillip Klopp, represented to Plaintiff Cervantes that he would make more than $3,000 in net income a week and that he would earn an average revenue of $1.65 for each mile of freight that he hauled.

148.     In or around October 2018, CRST through its agents, including a CRST Driver Recruiter named Bob, represented to Plaintiff Cross that he would make at least $2,500 a week in net income as a lease operator.

149.     CRST, though its agents, made these representations verbally, in written materials such as emails, other drivers' paystubs, CRST's "earning calculator", and CRST web postings.

150.     Plaintiffs justifiably relied on CRST's representations when they entered into the Lease and ICOA with CRST.

151.     Despite their efforts, Plaintiffs did not earn the income promised or average the revenue per mile that was promised. In fact, CRST regularly assigned Plaintiffs loads that were far less profitable than promised and even unprofitable after accounting for the expenses of carrying the loads that CRST required Plaintiffs to bear.

152.     As a result, Plaintiffs did not earn the income that CRST represented they would earn.

153.     CRST was in sole possession of the information regarding the actual compensation rates paid to Drivers and was aware that Plaintiffs would not earn the income that it promised, but it made the promises anyway to entice Plaintiffs to sign the ICOA and Lease agreements that furthered its illegal labor scheme.

154.     Upon information and belief, CRST underpaid Drivers by paying them less than the percentage of its adjusted gross revenue specified in the ICOA, but because CRST failed to provide drivers with the freight bill or documentation of the amount CRST billed its customers for shipments, Drivers could not verify or dispute their compensation.

155.     CRST failed to pay Drivers accessorial amounts, including detention pay, and failed to provide Drivers with documentation showing whether CRST billed its customers for such

charges. When Drivers would ask CRST about detention pay or dispute CRST's failure to pay detention pay, CRST refused to provide documents or information to Drivers as to whether CRST charged or collected payment from its customers.

156.     Because of CRST's failure to provide Drivers with the freight bill or other documentation showing the rates CRST charged its customers for the shipments, Drivers were unable to ensure they were being properly paid, or to detect or dispute the disparity between what CRST had agreed to pay and what CRST actually paid, which caused Drivers to suffer financial injury.

157.     CRST violated TILA and its enforcing regulations by failing to adhere to the required lease provisions regarding Drivers' compensation and provision of the freight bill or other form of freight documentation, which caused Drivers financial injury.

## FIRST CAUSE OF ACTION

## (FAIR LABOR STANDARDS ACT)

158.     Plaintiffs individually and on behalf of the FLSA Class re-allege and incorporate by reference all allegations in all preceding paragraphs.

159.     At all relevant times, Plaintiffs and members of the FLSA Class are or were employees of Defendants within the meaning of 29 U.S.C. § 203(e).

160.     Defendants failed to pay minimum wages to Plaintiffs and FLSA Class members in violation of the Fair Labor Standards Act, 29 U.S.C. §206 *et seq*. and its implementing regulations by failing to pay at least the minimum wage for each hour worked per workweek.

161.     Defendants' failure to pay proper minimum wages was willful within the meaning of the FLSA.

24

162.     Defendants' failure to comply with the FLSA minimum wage protections caused Plaintiffs and Drivers to suffer loss of wages and interest thereon.

163.     Plaintiff and FLSA Class members are entitled to relief for Defendants' violations of the FLSA pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

## (IOWA MINIMUM WAGE VIOLATION)

164.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

165.     Pursuant to the Iowa Wage Payment Collection Law, Iowa Code 91A.1, *et seq*., Defendants are required to pay all wages owed to its employees.

166.     Pursuant to Iowa Code § 91D.1(1)(b), Defendants are required to pay its employees the required Iowa hourly minimum wage for each hour worked.

167.     Defendants had a policy and practice of intentionally failing to pay Plaintiffs and Drivers all wages due as set forth in the preceding paragraphs in violation of Iowa Code §§ 91A.1, *et. seq* and 91D.1(1)(b) by failing to pay Plaintiffs and Drivers at least the state hourly wage for each hour worked.

168.     Pursuant to Iowa Code § 91D.1(5), minimum wage violations are enforced pursuant to Chapter 91A.

169.     Pursuant to Iowa Code § 91A.1., *et seq*., and specifically Iowa Code § 91A.8, Defendants are liable to Plaintiffs and Drivers for unpaid wages, liquidated damages, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

170.     This claim is brought on behalf of Plaintiffs and all other similarly situated individuals pursuant to Federal Rule of Civil Procedure 23.

25

## THIRD CAUSE OF ACTION

## (UNLAWFUL DEDUCTIONS IN VIOLATION OF IOWA LAW)

171.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

172.     Pursuant to the Iowa Wage Payment Collection Law, Iowa Code 91A.1, *et seq*., Defendants are required to pay all wages owed to its employees.

173.     Pursuant to Iowa Code § 91A.5, employers such as Defendants are not permitted to withhold or divert any portion of an employee's wages for any purpose unless the employer has a written authorization to divert or withhold such wages for a lawful purpose and if the withholding is for the benefit of the employee.

174.     Defendants had a policy and practice of intentionally failing to pay Plaintiffs and Drivers all wages due as set forth in the preceding paragraphs in violation of the Iowa Wage Collection Law, Iowa Code § 91A.1., *et seq*. and Iowa Code § 91A.5 by unlawfully deducting amounts from Plaintiffs and Drivers' wages.

175.     The deductions from Plaintiffs' and Drivers' pay as set forth in the preceding paragraphs are unlawful and accrue to the benefit of Defendants and are not for the benefit of the Drivers. There is also no valid written authorization from Plaintiffs or Drivers that permit Defendants to deduct amounts from Drivers' pay.

176.     Pursuant to the Iowa Wage Collection Law, Iowa Code § 91A.1., *et seq*., and specifically Iowa Code § 91A.8, Defendants are liable to Plaintiffs and Drivers for wages not paid, withheld, and/or unlawfully deducted plus liquidated damages, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

177.     This claim is brought on behalf of Plaintiffs and all other similarly situated individuals pursuant to Federal Rule of Civil Procedure 23.

## FOURTH CAUSE OF ACTION

### (UNJUST ENRICHMENT)

178.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

179.     The ICOA and Lease Defendants required Plaintiffs and Drivers to sign are unconscionable.

180.     Defendants' unconscionable agreements are void, or alternatively, voidable under common law.

181.     Defendants have been unjustly enriched by their deductions from the wages of Plaintiffs and Drivers and by the unconscionable fees extracted by Defendants that shift virtually all costs of maintaining Defendants' fleet and general business operations to Drivers.

182.     Under the circumstances, it would be inequitable for Defendants to retain the amounts deducted from Drivers' wages and the fees paid by Drivers, who are in fact Defendants' employees.

183.     This claim is brought on behalf of Plaintiffs and all other similarly situated individuals pursuant to Federal Rule of Civil Procedure 23.

## FIFTH CAUSE OF ACTION

### (FRAUD)

184.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

27

185.     CRST made false representations to Plaintiffs and Drivers regarding the amount of money they would make as lease operators.

186.     CRST knew the representations to Plaintiffs and Drivers regarding the amount of money they would make as lease operators was false.

187.     CRST intended to deceive Plaintiffs and Drivers regarding the amount of money they would make as lease operators.

188.     Plaintiffs and Drivers relied on Defendants' false representations in deciding to work for Defendants as lease operators.

189.     Under the circumstances, Plaintiffs and Drivers were justified in relying on Defendants' false representations in deciding to work for Defendants as lease operators.

190.     Defendants' false representations were a proximate cause of damages incurred by Plaintiffs and Drivers.

191.     This claim is brought on behalf of Plaintiffs and all other similarly situated individuals pursuant to Federal Rule of Civil Procedure 23.

## SIXTH CAUSE OF ACTION

## (VIOLATIONS OF THE TRUTH IN LEASING ACT)

192.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

193.     Defendants violated the provisions of the Truth in Leasing Act and 49 C.F.R. § 376.12 by, *inter alia*:

   a.   failing to compensate Drivers in the manner and amounts specified in the ICOA, which Defendants required Drivers to sign, as required under 49 C.F.R. § 376.12(d);

28

b. failing to give Drivers a copy of the rated freight bill at or before the time of settlement as specified in the ICOA, which Defendants required Drivers to sign, and as required under 49 C.F.R. § 376.12(g); and

c. to provide Drivers with copies of the documents necessary to determine the validity of charge-back items and the computation of those charges as specified in the ICOA, which Defendants required Drivers to sign, as required by 49 C.F.R. § 376.12(h);

194. As a result of these violations, Plaintiffs and members of the TILA Class have lost wages and other compensation due them and are entitled to relief, including recovery of attorneys' fees, costs, and expenses of this action, as provided by 49 U.S.C. § 14704.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter the following relief:

1. With respect to FLSA violations:

    a. Certification of the FLSA Class pursuant to the FLSA, 29 U.S.C. § 201, *et seq*.;

    b. Permission for Plaintiffs to notify fellow current and former employees of their right to opt-in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. § 216(b);

    c. Entry of a declaratory judgment that the practices complained of herein are unlawful;

    d. An award of damages for all minimum wages that are due to the Plaintiffs and all similarly situated employees under the FLSA;

    e. Statutory liquidated damages under the FLSA;

    f. A finding that Defendants' violation of the FLSA was willful;

29

g. Attorneys' fees and costs, including expert fees; and interest;

2. With respect to the Iowa state law claims:

   a. Certifying this action as a class action under Fed. R. Civ. P. 23;

   b. Designating Plaintiffs as the Class Representatives;

   c. Designating the undersigned counsel as Class Counsel;

   d. Entering a declaratory judgment that the practices complained of herein are unlawful;

   e. Fashioning appropriate equitable and injunctive relief to remedy Defendants' violations of law and enjoining Defendants from continuing their unlawful practices described herein;

   f. Awarding statutory, compensatory, liquidated damages, appropriate statutory penalties, and other make whole relief to be paid by Defendants according to proof;

   g. Awarding pre-judgment and post-judgment interest as otherwise provided by law;

   h. Granting such other legal, injunctive, and equitable relief as the Court may deem just and proper;

   i. Awarding Plaintiffs reasonable attorneys' fees and costs, including expert fees; and

   j. Awarding Plaintiffs such other and further relief as this Court deems just and proper;

3. With respect to the TILA claims:

   a. Certifying this action as a class action under Fed. R. Civ. P. 23;

   b. Designating Plaintiffs as the Class Representatives;

30

c. Designating the undersigned counsel as Class Counsel;

d. Entering a declaratory judgment that the practices complained of herein are unlawful;

e. Fashioning appropriate equitable and injunctive relief to remedy Defendants' violations of law, including but not limited to an order determining that Defendants' practices in failing to adhere to the TILA-required ICOA provisions violate the TILA;

f. Awarding statutory, compensatory, liquidated damages, appropriate statutory penalties, restitution, and other make whole relief to be paid by Defendants according to proof;

g. Awarding Pre-judgment and Post-judgment interest as otherwise provided by law;

h. Granting such other legal, injunctive and equitable relief as the Court may deem just and proper;

i. Awarding Plaintiffs reasonable attorneys' fees and costs, including expert fees; and

j. Awarding Plaintiffs such other and further relief as this Court deems just and proper.

4. Any other relief to which the Plaintiffs and similarly situated employees may be entitled.

Respectfully submitted this 23rd day of October 2020.

By: */s/ Michael J.D. Sweeney*

GETMAN, SWEENEY & DUNN, PLLC
Michael J.D. Sweeney (*PHV*)
260 Fair Street
Kingston, NY 12401

(845) 255-9370
msweeney@getmansweeney.com

MARTIN & BONNETT, P.L.L.C.
Dan Bonnett
Susan Martin (*PHV*)
Jennifer Kroll (*PHV*)
Michael M. Licata (PHV)
4747 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
(602) 240-6900
dbonnett@martinbonnett.com
smartin@martinbonnett.com
mlicata@martinbonnett.com
jkroll@martinbonnett.com

Edward Tuddenham (*PHV*)
23 Rue Du Laos
Paris, France
33 684 79 89 30
etudden@prismnet.com

ATTORNEYS FOR PLAINTIFFS