# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ANTHONY CERVANTES and MIKE CROSS, *individually and on behalf of all other similarly situated persons*,<br><br>Plaintiffs,<br><br>vs.<br><br>CRST INTERNATIONAL, INC. and CRST EXPEDITED, INC.,<br><br>Defendants. | No. 20-CV-75-CJW-KEM<br><br>**ORDER** |

_____

This matter is before the Court on plaintiffs Anthony Cervantes and Mike Cross's Motion to Conditionally Certify Fair Labor Standards Act ("FLSA") Collective Action, for Issuance of Notice, and for Equitable Estoppel Regarding the Limitations Period. (Doc. 109). Defendants CRST International, Inc. and CRST Expedited, Inc. ("CRST") filed a timely resistance. (Doc. 127). Plaintiffs filed a timely reply. (Doc. 135). Defendants later provided a brief containing supplemental authority (Doc. 140) to which plaintiffs responded (Doc. 143).

For the following reasons, the Court **grants** plaintiffs' motion to conditionally certify the collective action, **grants in part** plaintiffs' motion for issuance of notice, and **denies without prejudice to reassertion** plaintiffs' motion for equitable estoppel.

## *I.*     *BACKGROUND*

The following background information is from plaintiffs' Third Amended Complaint. (Doc. 108). Plaintiffs are current or former truck drivers for CRST, a motor carrier. (*Id.*, at 4–5). CRST classified plaintiffs and other drivers as independent

contractors (the "Drivers"), not as employees. (*Id.*, at 2). At the start of their working relationship, CRST presented the Drivers with a single packet containing a Finance Lease (the "Lease") and an Independent Contractor Operating Agreements ("ICOA"). (*Id.*, at 11). The Lease gave the Drivers the option to lease a truck from CRST's subsidiary. (*Id.*, at 11–12). The mandatory ICOA required Drivers to lease their trucks to CRST for use in hauling CRST's loads. (*Id.*). This resulted in many, but not all, Drivers leasing a truck from CRST's subsidiary only to lease it back to CRST. (*Id.*).[1]

Plaintiffs allege the ICOAs misclassified Drivers as independent contractors instead of employees so that CRST could shift the costs of operating the trucks to the Drivers. (*Id.*, at 2). Because many of the Drivers could not afford these expenses, CRST allegedly advanced credit to Drivers for these expenses which was later deducted from the Driver's earnings. (*Id.*, at 17–18). Plaintiffs allege this framework shifted all operating expenses and risk onto the Drivers and resulted in Drivers often earning less than the minimum wage or receiving no payment at all. (*Id.*, at 1–2). Plaintiffs allege that Drivers had little to no control over how they performed the work. (*Id.*, at 12). Drivers were expected to follow CRST's policies and procedures which regulated tasks such as time management, driving, routing, receiving loads, delivering loads, and safety. (*Id.*, at 12–13). Drivers were also prohibited from hauling loads for any other company without permission and such permission was allegedly never granted. (*Id.*, at 15–16). Although plaintiffs acknowledge that Drivers elected which loads to haul, they assert that many Drivers were compelled to accept essentially all loads to keep pace with their Lease payments and/or truck-related expenses. (*Id.*, at 16–17).

In sum, plaintiffs allege that they and other Drivers are similarly situated and were employees, not independent contractors, thus affording them FLSA protections. (*Id.*, at

---

[1] Drivers can also lease more than one truck to CRST and even hire other drivers to drive loads on those trucks. (Doc. 127, at 10).

2

1–2, 24–25). Plaintiffs allege that defendants violated the FLSA by paying them and other Drivers less than minimum wage in certain workweeks. (*Id.*).

## II. APPLICABLE LAW

The FLSA enables employees to maintain a collective action against their employer on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). Class members must file a consent to sue to become a party plaintiff in a collective action under the FLSA. *Id.*; *see also Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975). This Court has employed a two-step approach to determine whether it is appropriate to certify a collective action under the FLSA. *See, e.g.*, *Salazar v. Agriprocessors, Inc.*, No. 07-CV-1006-LRR, 2008 WL 782803, at *4–5 (N.D. Iowa Mar. 17, 2008). "The two-step approach 'distinguishes between conditional class certification, generally made at the 'notice stage,' and a final class certification determination made after discovery is largely complete." *Id.* at *4 (quoting *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 577 (N.D. Iowa 2005)).

The first step is conditional certification, wherein a plaintiff moves to conditionally certify the action early in the case for purposes of providing notice to similarly situated persons. *Id.* at *4. This lenient standard requires that a plaintiff "merely provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 892 (N.D. Iowa 2008). To meet this standard, plaintiffs must make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law." *Salazar*, 2008 WL 782803, at *4 (quoting *Dietrich*, 230 F.R.D. at 577). A plaintiff need not show that the potential plaintiffs are actually similarly situated at this stage. *Bertroche v. Mercy Physician Assocs., Inc.*, No. 18-CV-59-CJW, 2018 WL 4107909, at *2 (N.D. Iowa Aug. 29, 2018). Under the FLSA, "[t]he sole consequence of conditional certification is the sending of court-approved written notice

3

to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (citations omitted). Thus, under the first step, district courts merely provide notice of the opportunity to join potential plaintiffs "in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

The second step—final certification—occurs at the close of discovery. *Frazier v. PJ Iowa, L.C.*, 337 F. Supp. 3d 848, 861–62 (S.D. Iowa 2018). The second stage is a fact-intensive inquiry which requires the Court to consider factors such as "(1) the extent and consequence of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *West v. Border Foods, Inc.*, Civil No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *3 (D. Minn. June 10, 2006). Importantly, a defendant may also later move to decertify an action. *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1229 (W.D. Mo. 2007).

### III. DISCUSSION

The Court will address the following issues: (1) the FLSA's applicability to this case; (2) whether conditional certification is appropriate; (3) who should receive notice of this action (including whether equitable estoppel of the statute-of-limitations is appropriate); and (4) the contents of the notice.

#### A. *Applicability of the FLSA*

Defendants' argue that conditional certification is inappropriate here because plaintiffs have not shown that the FLSA even applies to their claims. (Doc. 127, at 16). According to defendants, plaintiffs must first establish that CRST misclassified plaintiffs as independent contractors, which they failed to do. (*Id.*). Citing the factors under the FLSA's economic realities test that is used to classify individuals, defendants assert that

4

conditional certification should be denied "because determining employment status under the FLSA requires an examination of variable and individualized factors." (*Id.*, at 21). Defendants also note that plaintiffs fail "to cite a single Eighth Circuit decision adjudicating conditional certification for a collective of drivers alleging misclassification as independent contractors." (*Id.*, at 16).

Such authority does exist, though it concerns not truck drivers but exotic dancers. In *Embry v. 4745 Second Ave. Ltd.*, the Southern District of Iowa conditionally certified a class of dancers who alleged they had been misclassified as independent contractors to avoid payment obligations under the FLSA. No. 4:19-cv-00305-JAJ-SBJ, 2020 WL 5579178, at *1, *5 (S.D. Iowa Aug. 7, 2020). The court did not conduct a fact-intensive analysis to determine whether the dancers were employees or dive into the specifics of their individual compensation before granting conditional certification. *Id.* at *4. Rather, in reaching its conclusion, the court noted the supporting evidence, the fact that all the dancers were subject to the same allegedly defective payment structure, and the fact that the standard for conditional certification is low. *Id.*.

The Court finds *Embry* persuasive here. Conditional certification is not meant to be a fact-intensive inquiry. The issue of whether plaintiffs were misclassified as independent contractors bears directly on the question of whether they were properly compensated. Arguments about the economic realities of this payment arrangement are better suited for the second step, either against final certification or for decertification. *See, e.g.*, *Huddleston v. John Christner Trucking, LLC*, No. 17-CV-549-GKF-FHM, 2018 WL 7373644, at *3 (N.D. Okla. May 1, 2018); *Blair v. TransAm Trucking, Inc.*, 309 F. Supp. 3d 977, 1001–09 (D. Kan. 2018) (decertifying a similar collective action later after conducting a fact-intensive inquiry under the economic realities test, but originally granting conditional certification). Like *Embry*, plaintiffs have alleged that a defective compensation scheme existed to undermine payment obligations under the

5

FLSA that all the Drivers at issue worked under. The Court finds it inappropriate to jump to the ultimate issues of whether the Drivers were in fact misclassified at this early stage and whether the Drivers' compensation differed so much that they are not similarly situated. Although the Court acknowledges the nonbinding authority provided by defendants in their supplement (Doc. 140) (citing *Swales v. KLLM Transp. Servs., LLC*, No. 19-60847, 2021 WL 98229 (5th Cir. Jan. 12, 2021)), it declines to follow it here.

Thus, the Court finds that this issue is not preclusive and will proceed to whether conditional certification is appropriate.

### B. *Conditional Certification*

The Court must determine whether plaintiffs have provided some factual basis and enough supporting evidence to find that they and other potential plaintiffs were harmed under the same policy or plan in violation of the FLSA. *See Bouaphakeo*, 564 F. Supp. 2d at 892; *Salazar*, 2008 WL 782803, at *4–5.

Plaintiffs and one other Driver have filed declarations stating that they were misclassified as independent contractors and that this misclassification resulted in their liability for certain work-related expenses which ultimately caused their payment to fall below the minimum wage in certain workweeks. (Docs. 113-5, 113-8, & 113-9). These declarations also show that plaintiffs and other Drivers were all required to sign ICOAs that were materially the same and were all subject to the same work conditions. (*Id.*). These statements provide a sufficient factual basis to find, at this stage, that plaintiffs and the other Drivers were all allegedly harmed in a similar manner under the ICOAs in violation of the FLSA.

The Court acknowledges defendants' argument that the mere fact that plaintiffs were allegedly misclassified as independent contractors is not an inherent FLSA violation and does not necessarily mean they were paid less than the minimum wage in violation of the FLSA. (Doc. 127, at 7, 22–24). Plaintiffs, however, have sufficiently detailed

6

how their earnings were affected by this misclassification and how such misclassification similarly harmed other Drivers subject to the same agreements and conditions. That the Drivers worked different hours, hauled different loads, and were subject to different deductions and expenses is a fact-intensive inquiry that is not preclusive at this stage. The fact that all these Drivers were subject to the ICOAs and the ICOAs allegedly created a scheme that allegedly often caused their compensation to fall below the minimum wage is sufficient at this stage. Plaintiffs' claims, just like the Drivers' potential claims, rise and fall on the same broad issues of their misclassification and how that misclassification generally deteriorated their earnings, potentially to the point of FLSA violations.

Also, many other courts have granted conditional certification in similar cases when truck drivers alleged they were misclassified as independent contractors which resulted in violations of the FLSA. *See, e.g.*, *Canava v. Rail Delivery Serv. Inc.*, No. EDCV 19-401 (JGB) (KKx), 2020 WL 2510648, at *4–8, *12 (C.D. Cal. Feb. 27, 2020); *Carter v. XPO Last Mile, Inc.*, No. 16-cv-01231-WH0, 2016 WL 5680464, at *3–6 (N.D. Cal. Oct. 3, 2016); *Villalpando v. Exel Direct, Inc.*, No. 12-cv-04137-JCS, 13-3091-JCS, 2016 WL 1598663, at *5, *23 (N.D. Cal. Apr. 21, 2016) (denying decertification); *Collinge v. Intelliquick Delivery Inc.*, No. 2:12-cv-00824 JWS, 2015 WL 1292444, at *1–10 (D. Ariz. Mar. 23, 2015) (denying decertification); *Flores v. Velocity Express, Inc.*, 12-cv-05790-JST, 2013 WL 2468362, at *5–8 (N.D. Cal. June 7, 2013); *Scott v. Bimbo Bakeries, USA, Inc.*, No. 10-3154, 2012 WL 645905, at *1, *13 (E.D. Pa. Feb. 29, 2012) (denying in part motion to dismiss following conditional certification); *Spellman v. Am. Eagle Express, Inc.*, No. 10-1764, 2011 WL 4102301, at *1 (E.D. Pa. May 18, 2011).

In light of the above analysis, the portion of plaintiffs' motion seeking conditional certification is **granted**.

7

## C. *Defining the Class*

The Court must now address the notice procedures for potential plaintiffs. *See Frazier*, 337 F. Supp. 3d at 861–62 ("[T]he Court has discretion to facilitate the opt-in process and authorize court-supervised notice to potential opt-in plaintiffs.") (citation omitted).[2] First, such potential plaintiffs must be defined. Plaintiffs propose that the class here should be defined as follows:

> All drivers who entered into independent contractor operating agreements ("ICOAs") with CRST Expedited, Inc. at any time on [or] after the date the terms set forth in ¶¶ 7(e) and 9(f) of Plaintiff Cervantes' ICOA were added to CRST Expedited's ICOAs, which was at least October 10, 2014, if not earlier.

(Doc. 113, at 30).

Defendants disagree. Defendants first argue that persons who leased more than one truck to CRST should be excluded from the class. (Doc. 127, at 25). Plaintiffs appear to agree with this exclusion. (Doc. 113, at 30 n.18). Thus, such persons will be omitted here, and the definition should be amended to reflect as such.

Second, defendants argue that the October 10, 2014 date in the notice is based on an improper tolling of the applicable statute-of-limitations and should be adjusted to reflect the applicable two or three-year statute-of-limitations. (Doc. 127, at 26–28). Generally, FLSA actions are subject to a two-year statute-of-limitations, but the period is extended to three years if the plaintiff can show that the violation was willful. 29 U.S.C. § 255(a). The October 2014 date is based on when CRST inserted what plaintiffs allege are coercive terms into the ICOAs that improperly chilled Drivers from pursuing

---

[2] Defendants request leave from the Court to meet with plaintiffs and come to an agreement about the form and parameters of the notice. (Doc. 127, at 24). Given that the issues have already been briefed, the Court finds that judicial efficiency is best served by ruling on these issues now.

8

claims. (Doc. 113, at 23). Plaintiffs allege that these terms are illegal and violate the FLSA and, thus, defendants should be estopped from invoking the statute-of-limitations. (*Id.*, at 23–24, 28). Plaintiffs conclude that the period for the collective should run all the way back to when these allegedly coercive terms were inserted into the ICOA in October 2014. (*Id.*, at 23–24).

The Court finds that the date should be adjusted to reflect the three-year statute-of-limitations period, not an estoppel date. As discussed above, this stage is not fact-intensive. It is premature to find that the FLSA is in fact applicable and, similarly, too soon to find that defendants did in fact stifle Drivers from pursuing litigation to such an extent that the extreme remedy of equitable estoppel is proper. Because the basis of the lawsuit revolves around an allegedly willful violation, however, the three-year period should be used here as opposed to the two-year period. If the Court later finds equitable estoppel proper after further discovery, plaintiffs can argue for expansion of the class at that time. Thus, the portion of plaintiffs' motion seeking equitable estoppel is **denied without prejudice to reassertion**.

Last, plaintiffs also argue that the statute-of-limitations should be equitably tolled from the date of filing of their motion for conditional certification, October 23, 2020. (Docs. 113, at 29–30; 135, at 16). Defendants object that such tolling is not warranted unless "the Court takes an extraordinary amount of time to rule on the present motion." (Doc. 127, at 28). District courts in the Eighth Circuit "commonly grant equitable tolling for the time it takes the court to rule on a conditional certification motion." *Clendenen v. Steak N Shake Operations, Inc.*, No. 4:17-cv-01506-JAR, 2018 WL 4679728, at *4 (E.D. Mo. Sept. 28, 2018). The Court finds such tolling appropriate here so that potential plaintiffs are not deprived of their right to relief merely because of the inherent delay involved for a court to carefully consider and rule on a motion to certify a class.

In light of the above analysis, the class definition should be amended as follows or in a similar manner agreed to by the parties:

> All drivers who entered into independent contractor operating agreements ("ICOAs") with CRST Expedited, Inc. at any time on or after October 23, 2017, who have not leased more than one truck at a time to CRST.

Plaintiffs request that defendants, within ten days of this order, provide plaintiffs with the first name, last name, address, and unique identification number of all potential plaintiffs in an Excel spreadsheet with each category of information separated into its own column. (Doc. 113, at 30–31). Defendants do not object to this request and the Court finds it reasonable. Thus, defendants are **directed** to provide such information in the requested format.

### D. *Content of the Notice*

Plaintiffs propose an opt-in period of 120 days. (Doc. 113, at 19). Defendants do not object to this aspect of plaintiffs' proposed notice and the Court finds this opt-in period to be reasonable.

The parties disagree about the content of the notice in three respects, however, which the Court will address below.

#### 1. *Method of Delivery*

Plaintiffs propose that notice should be sent to Drivers by both first-class mail and by email and that a reminder postcard be sent out to Drivers who do not respond within 21 days. (*Id.*, at 20). If notice is returned as undeliverable, plaintiffs request that defendants provide the phone numbers and last four digits of Drivers' social security numbers to help in finding up-to-date addresses for such Drivers. (*Id.*, at 21). Plaintiffs also request that CRST issue notice once a week during work hours through its internal communication system, Qualcomm, to all its current Drivers throughout the notice period. (*Id.*, at 22). Defendants do not object to sending out notice through the mail,

10

take no explicit position on notice via email, and object to notice through Qualcomm apparently only on the ground that the proposed extent is excessive. (Doc. 127, at 25–26). Defendants also argue that providing phone numbers and partial social security numbers for Drivers whose notices are undeliverable is unnecessary and that the parties should instead use skip-tracing. (*Id.*, at 26).

The Court finds that notice by mail and email will be sufficient here along with a reminder postcard for those Drivers who do not respond within 21 days. These two forms of notice will provide Drivers ample opportunity to become aware of this litigation and decide whether to opt-in. The Court also finds that providing phone numbers and partial social security numbers for Drivers whose notice is returned as undeliverable is appropriate.[3] Other courts have used this method, and it will save the parties the time and expense of performing a skip-trace when adequate and minimally invasive contact information is already available. *See, e.g.*, *Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 2:10-CV-04175-NKL, 2011 WL 5563444, at *2 (W.D. Mo. Nov. 15, 2011). The Court finds plaintiffs' proposal to send additional notices through defendants' Qualcomm system to be excessive in its proposed extent. A notice once a week for 120 days is simply pestering. Plaintiffs state that they would agree to monthly notices over the work system. (Doc. 135, at 14). Even then, four Qualcomm messages on top of an email and potentially two letters is unnecessary. Like the mail messages, a Qualcomm message at the outset of the period and a reminder message after 21 days is appropriate and avoids overwhelming solicitation.

---

[3] Plaintiffs later ask that the same information be provided for Drivers with the same name. (Doc. 113, at 31). Given that plaintiffs will already have a unique identification number for each Driver, it does not appear that further information is necessary to distinguish Drivers with the same name. If such a situation arises, however, this additional information should be provided.

### *2. Caption*

Defendants ask that the Court omit the case caption at the top of plaintiffs' proposed notice because it may mislead Drivers into believing that their response is required. (Doc. 127, at 25). The Court finds that the presence of the caption is informational and appropriately conveys to Drivers both the legitimacy and seriousness of the notice. *See Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1024 (S.D. Iowa 2016) (finding a court name in the header of a notice to be appropriate). The Court, however, recognizes defendants' concerns. Even though the notice would likely be proper without adjustment, the Court acknowledges that some potential for confusion exists. Although plaintiffs claim that the notice "clearly states that class members do not need to do anything in response," (Doc. 135, at 13), the Court does not see such an explicit statement reflected in the notice as drafted.

Thus, the Court instructs that the following sentence, or a similar sentence as agreed to by the parties, should be added to the end of the notice section entitled "How Do I Make My Choice To Participate Or Not?" (Doc. 109-1, at 3–4): "If you do not want to take part in this lawsuit, you need not take any action. You are not required to respond in any way to this notice."[4]

### *3. Allegedly Retaliatory ICOA Provisions*

Plaintiffs assert that the notice must contain language stating that two allegedly retaliatory provisions of the ICOA—Paragraphs 7(E) and 9(F)—are unenforceable to avoid chilling participation in this action. (Doc. 113, at 23–30). Defendants assert that such language in the notice is inappropriate and should be removed. (Doc. 127, at 26).

ICOA Paragraph 7(E) states that the Driver agrees to pay CRST's "reasonable

---

[4] Plaintiffs also express that they are willing to remove the Court caption and replace it with their counsel's firm's letterhead. (Doc. 135, at 13). The Court has no objection to this substitute. If the parties would rather use the letterhead instead of making the above amendment, that it also acceptable to the Court.

attorney's fees and litigation expenses" incurred in defending against any action brought by the Driver alleging but ultimately failing to show that the Driver is an employee (as opposed to an independent contractor). (Doc. 37-4, at 15). Paragraph 9(F) states that even if the Driver is successful in proving that they are an employee in the action, that the ICOA is automatically rescinded "back to the date of its formation" and the Driver then "immediately owe[s]" CRST all gross compensation received under the ICOA less deductions and expenses. (*Id.*, at 18). Section 7 of the proposed notice, titled "Can Defendants Retaliate Against Me If I Participate in the Lawsuit?", addresses these ICOA provisions and states:

> No. The law prohibits Defendants from retaliating against you in any way. For example, Defendants cannot give you an unfair review, cut your pay, fire you, or give you less work because you have decided to participate in this lawsuit. Moreover, Paragraphs 7(E) and 9(F) of the [ICOA] will not interfere with your right to participate in this lawsuit and receive money if Plaintiffs win. Those paragraphs, which describe the consequences of a Court order finding Drivers to be employees and purporting to make Drivers liable for CRST's attorneys fees in certain circumstances, are illegal and will not apply to this lawsuit regardless of whether Plaintiffs win or lose. Paragraphs 7(E) and [9](F) do not waive or limit any rights or remedies you may have under any state or federal wage payment laws or statutes, including the Fair Labor Standards Act and will not require you to pay CRST's attorneys' fee[s] or expenses for any claims you bring or which are brought on your behalf, including in this case.

(Doc. 109-1, at 4).

Courts recognize that fear of retaliation from an employer may unfairly chill participation in an FLSA action. *See, e.g.*, *Cruz v. Lawson Software, Inc.*, Civil No. 08-5900 MJD/JSM, 2010 WL 890038, at *11 (D. Minn. Jan. 5, 2010) (noting that "employees are often reluctant to sue their employer based on fear of retaliation"). Courts have occasionally addressed such concerns by approving anti-retaliation provisions in an FLSA notice. *See, e.g.*, *Astarita v. Menard, Inc.*, No. 5:17-CV-6151-

RK, 2018 WL 7048693, at *4 (W.D. Mo. Dec. 7, 2018).

Paragraph 9(F) is facially invalid under the FLSA. If plaintiffs are successful in showing that they are in fact employees covered under the FLSA, Paragraph 9(F) effectively seeks to invalidate any damages the Drivers could receive by rescinding their contracts and indeed, imposing damages by requiring them to pay back their gross earnings under the ICOA. It is immaterial that the Drivers agreed to this under the ICOA. This paragraph has an obvious chilling effect on participation in this action and would violate the Drivers' rights under the FLSA if they are reclassified as employees. *See Doe 1 v. Swift Transp. Co.*, No. 2:10-cv-00899 JWS, 2017 WL 735376, at *4 (D. Ariz. Feb. 24, 2017) (holding that a similar paragraph was "misleading and confusing" because the FLSA "entitles prevailing workers to liquidated damages and a worker may not waive the right to liquidated damages through private agreement"); *see also Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707–08 (1945) (holding that employees cannot waive their right to liquidated damages under the FLSA via a contract). Thus, Paragraph 9(F) is properly addressed in the notice. The Court finds some of the existing language, however, is stronger than necessary, particularly the word "illegal." This word may improperly imply that the Court anticipates a certain outcome in this action when it does not and thus cause potential plaintiffs to overestimate their likelihood of success.

Paragraph 7(E), however, is not improper outright, if at all. If the FLSA definitively applied here, then it may be violative or misleading to state that the Drivers are required to pay defendants' attorneys' fees if they are unsuccessful in this action. *Swifts Transp. Co.*, 2017 WL 735376, at *4 (holding, after having found in a prior order that the plaintiffs were misclassified as independent contractors, that a similar provision was misleading because the FLSA's fee shifting provisions only refer to a prevailing plaintiff, not a prevailing defendant); *Phelps v. MC Commc'ns, Inc.*, No. 2:11-CV-00423-PMP-LRL, at 2011 WL 3298414, at *7 (D. Nev. Aug. 1, 2011) (holding that a

14

prevailing defendant is only entitled to attorneys' fees if the plaintiff litigated in bad faith) (citation omitted). The Court has not yet determined, however, that the FLSA does in fact apply here. Unlike Paragraph 9(F) which assumes the Drivers are successful in demonstrating that they are employees and thus are covered under the FLSA, Paragraph 7(E) assumes the Drivers failed to make such a showing and are not covered by the FLSA. Thus, this provision may not be improper because plaintiffs may be required to pay attorneys' fees.

Further, the possibility of paying defendants' attorneys' fees if plaintiffs are unsuccessful has far less of a chilling effect than the provision discussed above wherein the Drivers would be compelled to compensate defendants even if they are successful here. *See, e.g.*, *Daniels v. Encana Oil & Gas (USA) Inc.*, No. 16-cv-01851-CBS, 2017 WL 3263228, at *6 (D. Colo. Aug. 1, 2017) (holding that payment of reasonable attorneys' fees to a prevailing defendant does not violate the FLSA and that the possibility of paying such fees does not have a clear chilling effect); *Jones v. Henry Indus., Inc.*, No. 4:16CV1184 SNLJ, 2017 WL 513038, at *4 (E.D. Mo. Feb. 8, 2017) (finding that a similar provision was proper despite its potential chilling effect because independent contractors are not entitled to FLSA protections); *see also Ondes v. Monsanto Co.*, No. 4:11CV197 JAR, 2012 WL 13055951, at *2 (E.D. Mo. Jan. 11, 2012) (declining to include in a notice a sentence advising potential plaintiffs that they may be liable for the defendant's attorneys' fees if unsuccessful because it is uncertain under the FLSA whether such costs are proper). Thus, although this paragraph should be mentioned in the notice, it is not properly rejected outright.

In light of this analysis, the Court requires the notice paragraph on retaliation be amended as follows or in a similar fashion agreed to by the parties:

> No. The law prohibits Defendants from retaliating against you in any way. For example, Defendants cannot give you an unfair review, cut your pay, fire you, or give you less work because you have decided to participate in

15

this lawsuit. Moreover, Paragraph 9(F) of the ICOA will not interfere with your right to participate in this lawsuit and receive money if Plaintiffs win. That paragraph, which describes the consequences of a Court order finding Drivers to be employees, is invalid and will not apply to this lawsuit regardless of whether Plaintiffs win or lose. Paragraph 9(F) does not waive or limit any rights or remedies you may have under any state or federal wage payment laws or statutes, including the Fair Labor Standards Act. The Court has not yet determined whether Paragraph 7(E) of the ICOA, purporting to make Drivers liable for CRST's attorneys fees in certain circumstances, is valid or invalid.

## IV. CONCLUSION

For these reasons, the Court **grants** plaintiffs' motion to certify the collective, **grants in part** plaintiffs' motion for issuance of notice, and **denies without prejudice to reassertion** plaintiffs' motion for equitable estoppel. The Court specifies the following:

(1) The class is conditionally certified as amended above. The definition of the class must be amended to reflect the statute-of-limitations cut-off date adjusted for equitable tolling from the date of the filing of the instant motion and to exclude persons leasing more than one truck at a time to CRST.

(2) The Court denies plaintiffs' motion for equitable estoppel without prejudice to reassertion but grants plaintiffs' motion for equitable tolling as of the date of the filing of the instant motion.

(3) Defendants must provide plaintiffs with the first name, last name, address, and unique identification number of all potential plaintiffs in a columnized Excel spreadsheet within 10 days of this order. Defendants must also provide plaintiffs with the phone numbers and partial social security numbers of Drivers whose mail is returned as undeliverable and, if necessary, Drivers who have the same name.

(4) Potential plaintiffs will have 120 days from the date notice issues to opt-in to this action.

16

(5) Plaintiffs are authorized to send the notice (Doc. 109-1) as amended above by mail and email and to send a reminder postcard (Doc. 109-2) to Drivers who do not reply within 21 days. Defendants are ordered to send the proposed message (Doc. 109-3) through their Qualcomm system at the outset of the opt-in period and again after 21 days.

(6) The court caption at the top of the notice may remain with the additional language instructing potential plaintiffs that they do not need to respond, or the parties may use plaintiffs' counsel's firm's letterhead, whichever the parties prefer.

(7) The retaliation provision in the notice must be amended to soften the language for Paragraph 9(F) and reflect that the Court has not yet reached a determination concerning Paragraph 7(E).

**IT IS SO ORDERED** this 25th day of January, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa