**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| ANTHONY CERVANTES and MIKE CROSS, *individually and on behalf of all other similarly situated persons*, | No. 20-CV-75-CJW-KEM |
| Plaintiffs, | **ORDER** |
| vs. | |
| CRST INTERNATIONAL, INC. and CRST EXPEDITED, INC., | |
| Defendants. | |

_____

**TABLE OF CONTENTS**

I.    BACKGROUND ................................................................................ 2

II.   APPLICABLE LAW ......................................................................... 4

III.  DISCUSSION .................................................................................... 5

      A.   Fraud ....................................................................................... 5

           1.   Specificity and Fraudulent Intent ........................................ 7

           2.   Justifiable Reliance ........................................................... 8

           3.   Damages and Class Status ................................................ 10

      B.   TILA Violation ...................................................................... 11

           1.   Section 376.12(d) and Compensation .................................. 12

      2.      Section 376.12(g) and Freight Bill ....................................15

      3.      Section 376.12(h) and Charge-Back Items............................17

    C.    Unjust Enrichment ................................................................18

    D.    CRST International as a Defendant ..........................................21

IV.   CONCLUSION ................................................................................23

The matter before the Court is a Partial Motion to Dismiss for Failure to State a Claim, (Doc. 125), filed by defendants CRST International, Inc. ("CRST International") and CRST Expedited, Inc. ("CRST"). Plaintiffs Anthony Cervantes ("Cervantes") and Mike Cross ("Cross") timely filed a resistance. (Doc. 136). Defendants timely filed a reply. (Doc. 137). Defendants later filed a brief containing supplemental authority (Doc. 144) to which plaintiffs responded (Doc. 149). For the following reasons, the Court **grants in part** and **denies in part** defendants' motion.

This matter is also before the Court on plaintiffs' Motion to Strike or for Leave to File a Surreply. (Doc. 139). Plaintiffs argue defendants untimely raised a new argument in their reply brief to their motion to dismiss. (*Id.*). Defendants timely filed a resistance. (Doc. 141). For the following reasons, the Court **denies as moot** plaintiffs' motion.

## *I. BACKGROUND*

The following background information is from plaintiffs' Third Amended Complaint. (Doc. 108). Plaintiffs are current or former truck drivers for CRST, a motor carrier. (*Id.*, at 4–5). CRST International owns CRST. (*Id.*, at 5). CRST classified plaintiffs and other truck drivers as independent contractors ("the Drivers"), not as employees. (*Id.*, at 2). At the start of their working relationship, CRST presented the Drivers with a Finance Lease (the "Lease") and an Independent Contractor Operating

Agreement ("ICOA"). (*Id.*, at 11). The Lease gave the Drivers the option to lease a truck from CRST's subsidiary CRST Lincoln Sales, Inc. ("CRST Lincoln"). (*Id.*, at 11–12). The mandatory ICOA required Drivers to lease their trucks to CRST for use in hauling CRST's loads. (*Id.*, at 11–12). This resulted in many but not all Drivers leasing a truck from CRST Lincoln only to lease it back to CRST. (*Id.*, at 12).

Plaintiffs allege the ICOAs misclassified Drivers as independent contractors in part so that CRST could shift the costs of operating the trucks on to the Drivers. (*Id.*, at 2). Plaintiffs allege this framework resulted in Drivers often earning less than the minimum wage or receiving no payment at all. (*Id.*, at 1–2). Plaintiffs allege CRST International was complicit in this scheme because it provided management and operational services to CRST and was involved in setting the Drivers' wages, working conditions, and classification. (*Id.*, at 5–6). In sum, plaintiffs conclude they and other Drivers were not independent contractors but rather employees of both CRST and CRST International. (*Id.*, at 1–2, 6, 24–25).

The Third Amended Complaint asserts the following six claims on behalf of plaintiffs and similarly situated Drivers: (1) failure to pay minimum wage in violation of Title 29, United States Code, Section 206 of the Fair Labor Standards Act ("FLSA"); (2) failure to pay minimum wage under the Iowa Wage Payment Collection Law ("IWPCL"), Iowa Code Section 91D.1; (3) failure to pay all wages due and unlawful deductions in violation of the IWPCL, Iowa Code Section 91A.1; (4) unjust enrichment under Iowa law; (5) fraud under Iowa law;[1] and (6) violation of the Truth in Leasing Act ("TILA"), Title 49, United States Code, Section 14704. (*Id.*, at 28–29).

---

[1] The Third Amended Complaint does not specifically state that plaintiffs' unjust enrichment and fraud claims are made under Iowa law. (Doc. 108, at 27–28). The parties both apply Iowa law in their briefs. (Docs. 126, at 13–19, 23–25; 136, at 8–17, 21–24). No other jurisdiction's laws appear to apply. Thus, the Court will consider these common law claims under Iowa law.

3

In their motion here, defendants move to dismiss plaintiffs' claims for fraud, the TILA violations, and unjust enrichment under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 126, at 8, 12–13). Defendants also move to dismiss CRST International as a defendant because "[p]laintiffs admitted they contracted only with CRST, and they fail to allege facts to support any finding of joint employment." (*Id.*, at 9).

## II.    APPLICABLE LAW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for relief if a party fails "to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[W]hen ruling on a [party's] motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must also grant "all reasonable inferences" from the pleadings "in favor of the nonmoving party." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility is not equivalent to probability, but it is something "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The question . . . is not whether [a plaintiff] might at some later stage be able to prove [their claims]; the question is whether [a plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012).

"Though matters outside the pleading may not be considered in deciding a Rule

4

12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation omitted). A contract forming the basis for a claim for relief is "evidently embraced by the pleadings." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Thus, "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

## III. DISCUSSION

The Court will address the issues in the following order: (1) plaintiffs' fraud claim; (2) plaintiffs' TILA violation claims; (3) plaintiffs' unjust enrichment claim; and (4) whether CRST International should be dismissed as a defendant.

### A. Fraud

Under Iowa law, fraudulent misrepresentation has eight elements:

> (1) [the] defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in [justifiable] reliance on the truth of the representation . . ., (7) the representation was a proximate cause of [the] plaintiff's damages, and (8) the amount of damages.

*Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 735 (Iowa 2009) (quoting *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001)). "A statement of intent to perform a future act is actionable [as fraud] only when spoken with the existing intention not to perform. Mere failure of future performance cannot alone prove deceit; otherwise every breach of contract action would give rise to an action for fraud." *City of McGregor v. Janett*, 546 N.W.2d 616, 619 (Iowa 1996) (citation omitted); *see also Jones Distrib. Co. v. White Consol. Indus., Inc.*, 943 F. Supp. 1445, 1470 (N.D. Iowa 1996). Federal Rule of Civil Procedure 9(b) requires that claims alleging fraud "must state with

particularity the circumstances constituting" the fraud. *See also McGraw v. Wachovia Secs., LLC*, No. 08-CV-2064-LRR, 2009 WL 2949290, at *9 (N.D. Iowa Sept. 10, 2009) (holding that pleadings must afford defendants "a general understanding" of the specifics of the fraud such that they have "a meaningful opportunity to defend themselves").

In their Third Amended Complaint, plaintiffs allege that "CRST and its agents made false representations to [plaintiffs] regarding the amount of money they would make as lease operators." (Doc. 108, at 22). Plaintiffs specify that Driver Recruiter Matt Young and Driver Manager Phillip Klopp told Cervantes at various times, including in December 2017 and February 2018, that Cervantes "would make more than $3,000 in net income a week and . . . earn an average revenue of $1.65 for each mile of freight that he hauled." (*Id.*). Similarly, in or around October 2018, Cross alleges that CRST agents, including a recruiter named Bob, told him "that he would make at least $2,500 a week in net income as a lease operator." (*Id.*, at 23). Plaintiffs allege these statements misrepresented their potential earnings and that such misrepresentations were reinforced by "written materials such as emails, other drivers' paystubs, CRST's 'earning calculator,' and CRST web postings." (*Id.*). Plaintiffs argue that they justifiably relied on these representations when they signed their Leases and ICOAs. (*Id.*). Plaintiffs allege that these misrepresentations were knowingly false because CRST had information on actual compensation rates. (*Id.*). Plaintiffs conclude that CRST misrepresented the potential compensation to entice plaintiffs to sign their ICOAs and Leases. (*Id.*, at 23, 27–28).

Defendants argue that dismissal of plaintiffs' fraud claim is warranted on three grounds. First, defendants assert that plaintiffs' allegations are non-specific and only concern statements about possible future earnings, not any pre-existing fact. (Doc. 126, at 14–15). Second, defendants argue plaintiffs' allegation that they justifiably relied on the allegedly fraudulent statements is conclusory. (*Id.*, at 15). Further, defendants argue

6

any reliance was not justified because the ICOA lays out plaintiffs' compensation structure, has an integration clause, and contains a provision that CRST "does not . . . guarantee any amount of revenue to" the Driver. (*Id.*, at 15–16); *see also* (Doc. 126-1) (containing Cervantes' January 3, 2018 ICOA). Defendants also note that Cervantes executed multiple ICOAs and that both plaintiffs continued to work as Drivers for long periods of time, thus discounting their allegations here. (*Id.*, at 16). Last, defendants assert that plaintiffs failed to allege the amount of monetary damages sustained by the alleged fraud. (*Id.*, at 18–19). Defendants also argue that plaintiffs' fraud allegations are unique and concern only themselves, not the broader class of Drivers. (*Id.*). The Court will address each argument in turn.

### 1.  *Specificity and Fraudulent Intent*

As to defendants' first argument, the Court finds that plaintiffs' allegations are sufficiently specific and properly state a claim for fraud. As to both Cervantes and Cross, the complaint sets out the nature of the fraudulent representations at issue, who allegedly made the representations, approximately when the statements were made, the specific earnings that were represented, the purpose of the statements in the recruiting process, and how such representations were allegedly reinforced by CRST. These specific details make the allegations more than mere conclusory assertions and afford defendants enough information such that they can defend themselves, thus satisfying Rule 9(b). *See LeClere v. Mut. Tr. Life Ins. Co.*, C99-61 MJM, 1999 WL 33656854, at *2 (N.D. Iowa Oct. 26, 1999).

The fact that the fraud is based on future conduct is not dispositive here because plaintiffs sufficiently allege that the agents making the statements knew they were false at the time the statements were made. *See City of McGregor*, 546 N.W.2d at 619. Plaintiffs support their allegation of fraudulent intent by noting that CRST and its agents had information on actual compensation rates which, taking plaintiffs' complaint as a

whole, were allegedly drastically lower than those presented. Their possession of the actual compensation rates while allegedly representing a higher potential compensation rate is enough at this early stage to create a reasonable inference of fraudulent intent. *See, e.g.*, *Brown v. N. Cent. F.S., Inc.*, 987 F. Supp. 1150, 1157–58 (N.D. Iowa 1997) (noting that a plaintiff must plead facts "from which it could reasonably be inferred that the promisor" did not intend to perform the promise at the outset).

In sum, the allegation is clear and sufficiently specific—that CRST's agents knew the actual potential earnings for Drivers and knowingly misrepresented that such potential was higher during the recruitment process to make the job appear more lucrative than it was. Given this adequate specificity, defendants' first argument fails.

### 2. *Justifiable Reliance*

As to defendants' second argument, plaintiffs' allegations on justifiable reliance are also sufficient to survive the motion to dismiss. As to specificity, plaintiffs allege they signed the ICOAs to their detriment at least in part due to allegedly fraudulent representations about how much money they would earn. It is plausible that a job applicant might reasonably rely on the representations of a job recruiter when deciding whether to accept a job. These allegations are sufficiently specific at this stage to alert defendants to the nature and circumstances of the alleged reliance.

There are certainly facts in the record which would weigh against a finding of justifiable reliance at some later stage. Indeed, the Court acknowledges that the ICOA contains provisions which describe the compensation structure, state that the ICOA is completely integrated, and disclaim any guarantees of revenue. These facts, however, are not dispositive, particularly at this stage. *See, e.g.*, *N.W. Bank & Tr. Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 726 (8th Cir. 2003) (noting that contract disclaimers do not wholly bar a claim under Iowa law for fraudulent inducement). In assessing whether reliance upon an oral representation was justifiable, courts consider many factors, not

8

just the written terms of an agreement.  Such factors include:

> (1) the sophistication and expertise of the plaintiff in financial . . . matters; (2) the existence of long-standing business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the . . . transaction or sought to expedite the transaction; . . . (8) the generality or specificity of the misrepresentations[;] . . . [and (9)] whether the oral representation clearly contradicts a written agreement.

*Spreitzer*, 779 N.W.2d at 737 (citation omitted).  Here, plaintiffs have alleged a lopsided dynamic; they were unsophisticated parties with minimal information, no access to counsel, and little time to review the long, pre-printed, and non-negotiable ICOA while CRST's agents were professionals who offered misrepresentations about the benefits of working for CRST.  *See* (Doc. 108, at 11–12).  This dynamic distinguishes the parties here from the professional, equally footed parties in *Whalen v. Connelly*, 545 N.W.2d 284 (Iowa 1996) cited by defendants.  The presence of contradictory written terms in the ICOA is only one factor in the justifiable reliance analysis, although an important one.

Moreover, the ICOA's terms may not clearly contradict the representations made. The compensation scheme described in the ICOA does not preclude the CRST agents' alleged representations about the amount of compensation that scheme would yield.  Even if plaintiffs understood that there was no guarantee of any specific revenue, the alleged misrepresentations plausibly could have had an anchoring effect on what plaintiffs believed they would earn on average, thus inducing them to sign the ICOAs.  Even the integration clause, which states that the ICOA replaces and supersedes prior representations and understandings about its subject matter, (Doc. 126-1, at 23), is not an outright contradiction.  It is, however, strong evidence in determining whether it was reasonable for plaintiffs to rely on such alleged representations despite the clause.  It is plausible though, particularly when dealing with unsophisticated parties, that this

9

boilerplate language would reasonably not prevent a person from relying on representations by professional parties about what they could expect from the agreement.

The Court is also unpersuaded by the argument that Cervantes executed multiple ICOAs and both plaintiffs worked for CRST for a significant period and thus cannot assert they relied on the representations. For one, these arguments go too far into the facts and merits of this case. Even setting that side, plaintiffs' complaint alleges a scheme in which they were compelled to continue working under the ICOAs to keep up with their Lease payments and trucking expenses, thus explaining their tolerance of an allegedly unfruitful compensation structure.

### 3. *Damages and Class Status*

As to defendants' third argument, the Court finds that plaintiffs are not required to plead specific damages at this stage of litigation. *See, e.g.*, *Martino-Catt v. E.I. DuPont De Nemours & Co.*, 213 F.R.D. 308, 323 (S.D. Iowa 2003) ("At the pleading stage, a plaintiff need not specify an actual amount of damages or the precise basis on which damages should be determined. A general allegation of damages and causation . . . is enough.") (citation omitted). Even so, the amount of damages plaintiffs would likely be entitled to on this claim if successful is roughly calculable given the information already pled. If plaintiffs prevail on this claim, they would likely be entitled to the benefit of the bargain, i.e. the difference between the allegedly misrepresented weekly earnings and what they actually earned. *See Robinson v. Perpetual Servs. Corp.*, 412 N.W.2d 562, 567 (Iowa 1987). Plaintiffs have alleged the amounts that were represented to them (although it was a general average and not necessarily a fixed sum) and the amount they actually earned can likely be determined from defendants' records. A jury could determine damages from this information.

Similarly, defendants' argument that plaintiffs' allegations do not warrant a class action on this claim is also premature. Defendants may be correct, but such arguments

10

should be addressed during class certification as to whether the Drivers are similarly situated, not at the motion to dismiss stage. *See Brown v. La.-Pac. Corp.*, No. 4:12-cv-00102-SMR-TJS, 2013 WL 12044538, at *10 (S.D. Iowa Jan. 18, 2013). Broadly, plaintiffs allege that the Drivers were subject to the same policies and practices, including during the recruiting processing. (Doc. 108, at 10, 22). Discovery will reveal to what extent this allegation is supported and supported for more than two plaintiffs; if it is not, the class allegation can be disposed of when evaluating whether final certification is appropriate here.

For these reasons, the Court **denies** defendants' motion for partial dismissal as to plaintiffs' fraud claim.

### B. *TILA Violation*

The TILA promulgates leasing regulations which promote "full disclosure between the carrier and the owner-operator of the elements, obligations, and benefits of leasing contracts signed by both parties[.]" *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1211 (10th Cir. 2016) (citation omitted). The regulations aim to "eliminate or reduce opportunities for skimming and other illegal or inequitable practices by motor carriers . . . and . . . to promote the stability and economic welfare of the independent trucker segment of the motor carrier industry." *Id.* Under Title 49, United States Code, Section 14704(a)(1), "any person injured by a violation of [Title 49, United States Code, Section 14102] and its corresponding regulations can sue the violating party." *Stewart v. A2B Cargo Inc.*, No. 20 C 278, 2020 WL 5076716, at *3 (N.D. Ill. Aug. 26, 2020). "To bring suit for a violation of [Section] 14102, a plaintiff must allege the existence of a lease between an authorized motor carrier and a lessor, the failure of that lease to comply with [Title 49, Code of Federal Regulations, Part 376], and that the violation injured the plaintiff." *Id.*

Plaintiffs' Third Amended Complaint alleges that defendants violated TILA

11

provisions and Title 49, Code of Federal Regulations, Section 376.12 by (1) failing to compensate Drivers in accordance with the terms of the ICOA, (2) "failing to give Drivers a copy of the rated freight bill at or before the time of settlement as specified in the ICOA," and (3) failing to provide Drivers a copy "of the documents necessary to determine the validity of charge-back items and the computation of those charges as specified in the ICOA." (Doc. 108, at 28–29). Plaintiffs allege these failures respectively violated Sections 376.12(d), 376.12(g), and 376.12(h) of the Code of Federal Regulations. (*Id.*). Plaintiffs argue these failures caused the Drivers to lose wages and other due compensation. (*Id.*, at 29). Defendants counter that plaintiffs have not alleged that the ICOAs failed to make any required disclosure nor have they alleged how any such failure to follow the required terms caused actual damages. (Doc. 126, at 20–23). The Court will address each of plaintiffs' allegations in turn.

### 1. *Section 376.12(d) and Compensation*

Title 49, Code of Federal Regulations, Section 376.12(d) states:

> **Compensation to be specified.** The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease. Such lease or addendum shall be delivered to the lessor prior to the commencement of any trip in the service of the authorized carrier. An authorized representative of the lessor may accept these documents. The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease. The compensation stated on the lease or in the attached addendum may apply to equipment and driver's services either separately or as a combined amount.

Defendants argue that "Appendix B of the ICOAs clearly sets forth the amount of compensation, primarily that [Drivers] would be paid a percentage of the Adjusted Gross Revenue . . . CRST billed to its customers for shipments . . . in addition to certain

accessorial charges and fuel surcharges." (Doc. 126, at 20). Defendants submit that plaintiffs do not truly allege a failure to disclose compensation, but rather a failure to compensate Drivers in the manner that was in fact disclosed. (*Id.*, at 20–21).

Plaintiffs argue that Section 376.12 not only requires disclosure of certain provisions in a lease but also adherence to such provisions. (Doc. 136, at 18). Indeed, Section 376.12 states not only that a written lease must contain certain provisions, but that "[t]he required lease provisions shall be adhered to and performed by the authorized carrier." "That the regulation requires compliance with the lease's terms is clear from its text; there is no other conceivable way to read it." *Mervyn v. Nelson Westerberg, Inc.*, 76 F. Supp. 3d 715, 718 (N.D. Ill. 2014).

Courts have disagreed as to whether the introductory language in Section 376.12 ("[t]he required lease provisions shall be adhered to and performed by the authorized carrier") requires adherence only to the terms statutorily required to be in a lease or any terms of a lease made pursuant to the regulations whether specifically required or not. *Compare Mervyn*, 76 F. Supp. 3d at 718–19 (citing *Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, LLC*, 615 F.3d 790, 791 (7th Cir. 2010)) (introductory language requires compliance with the actual lease terms), *with Maradiaga v. Intermodal Bridge Transp., Inc.*, 899 F. Supp. 2d 551, 562 (N.D. Tex. 2012) (holding that failure of the defendant to compensate the plaintiff as agreed to in the lease was not a violation of Section 376.12).

The Court finds that the introductory language can only be reasonably interpreted to mean that carriers must follow the lease terms explicitly required under Section 376.12, not that carriers must adhere to voluntary, contractual lease provisions that happen to relate to the same subject matter. Section 376.12 lists a variety of specific provisions that must be in a lease. The introductory language is best understood as requiring that the provisions mandated under Section 376.12 are not merely pro forma language that is

present in the lease but not followed. *See Owner-Operator Indep. Drivers Ass'n v. Ledar Transp.*, No. 00-0258-CV-W-FJG, 2004 WL 5249148, at *7 (W.D. Mo. Dec. 30 2004) (finding that even though the lease stated that drivers were not required to purchase items from the defendant as required under Section 376.12(i), the defendant still violated the provision by forcing drivers to purchase such items regardless); *see also Fox*, 839 F.3d at 1213 (same). Following plaintiffs' interpretation would create a regulatory right for any plaintiff to recover damages for terms that were not explicitly required by Section 376.12. In effect, it would create such a claim for every breach of contract relating to the provisions of Section 376.12, whether the specific violation concerned some explicit requirement or not. *See Derolf v. Risinger Bros. Transfer, Inc.*, 259 F. Supp. 3d 876, 886–87 (N.D. Ill. 2017) (holding that a failure to compensate as provided in the lease was at best a contract-related claim and not a violation of TILA).

The Court notes that plaintiffs allege that defendants' failure or refusal to provide other required documentation prevented them from detecting their underpayment. (Doc. 108, at 23–24, 28–29). Some cases have held that damages under TILA may be appropriate under such circumstances. *See Davis v. Colonial Freight Sys., Inc.*, No. 3:16-CV-674, 2017 WL 11572196, at *7 (E.D. Tenn. Nov. 22, 2017) (holding that the defendants may be liable under TILA because they allegedly underpaid the plaintiff and allegedly failed to provide the plaintiff with required documentation that would have revealed the underpayments); *Carter v. Paschall Truck Lines, Inc.*, 324 F. Supp. 3d 900, 912 (W.D. Ky. 2018) (noting that the plaintiffs' claims rested on the alleged lack of transparency in their contractual relationship with the defendant which resulted in their underpayment). These cases, however, do not cite Section 376.12(d) specifically, nor should they. The failure to provide required documentation, as discussed further below, is a separate harm under its own subsections in Section 376.12. It does not change the fact that all that plaintiffs have alleged as to this violation is that defendants breached the

ICOA, not that they failed to include provisions required under Section 376.12(d) or adhere to any terms explicitly required by that subsection.

For these reasons, the Court **grants** defendants' motion for partial dismissal as to plaintiffs' claim under Section 376.12(d) because plaintiffs do not allege any failure of disclosure and instead allege only that defendants breached the terms of the ICOA, which is not within the scope of the regulation.

### 2. *Section 376.12(g) and Freight Bill*

Title 49, Code of Federal Regulations, Section 376.12(g) states:

**Copies of freight bill or other form of freight documentation.** When a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill, or, in the case of contract carriers, any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill. Regardless of the method of compensation, the lease must permit lessor to examine copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed, provided that where rates and charges are computed from a contract of a contract carrier, only those portions of the contract containing the same information that would appear on a rated freight bill need be disclosed. The authorized carrier may delete the names of shippers and consignees shown on the freight bill or other form of documentation.

Defendants argue the ICOA specifies that CRST provides freight documentation as required by the regulation. (Doc. 126, at 21–22). Defendants assert that even if they failed to abide by this provision that plaintiffs' claim still fails because the required information was available to plaintiffs through other documentation and because plaintiffs did not ask for such documentation. (*Id.*, at 22). Defendants also argue that plaintiffs have not alleged that they were individually harmed by defendants' alleged failure to

provide such documentation. (Doc. 137, at 5).[2]

Here is where Section 376.12's introductory language becomes pertinent. It is not enough for defendants to merely have the required provision about providing freight documentation in the ICOA and not follow it. Section 376.12 mandates that "required lease provisions shall be adhered to and performed by the authorized carrier." This provision, unlike the compensation issue discussed above, is not merely a term in the ICOA; it is required under the relevant regulations and must be performed. Although Section 376.12(g) mentions that "any other form of documentation" may satisfy this requirement, whether other adequate documentation was given to plaintiffs is at best a potential factual issue not properly considered at this stage. The Court is also not aware of any requirement that Drivers had to ask for such documentation, particularly when the ICOA and regulation stated it would be provided to them. The Court is also unpersuaded by defendants' argument about individualized harm. Plaintiffs have alleged they and other Drivers were all subject to the same scheme that resulted in their underpayment. Construing this allegation in plaintiffs' favor, they have alleged injury under the same scheme; discovery will reveal to what extent this documentation issue affected plaintiffs specifically. Plaintiffs have sufficiently alleged that defendants systematically did not provide the freight documentation or other related documentation required under the ICOA and Section 376.12(g). (Doc. 108, at 24, 29). That is all that is necessary at this stage.

For these reasons, the Court **denies** defendants' motion for partial dismissal as to plaintiffs' claim under Section 376.12(g).

---

[2] This last argument on individualized harm is the subject of plaintiffs' Motion to Strike or for Leave to File a Surreply. (Doc. 139); *see also* (Doc. 141) (defendants' resistance to the motion to strike). The Court finds such relief unnecessary in light of its analysis here.

16

### 3.    *Section 376.12(h) and Charge-Back Items*

Title 49, Code of Federal Regulations, Section 376.12(h) states:

**Charge-back items.**  The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed.  The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

Defendants again argue that the required provisions were present in the ICOA and that their mere failure to abide by those terms cannot support a claim for violation of Section 367.12(h).  (Doc. 126, at 23).  Defendants again emphasize that plaintiffs allegedly did not ask for the documentation.  (*Id.*).

For the same reasons as above, defendants' arguments are unavailing.  Their alleged failure to adhere to the provision in the ICOA required by Section 367.12(h) sufficiently states a claim here.  The Court is not aware of any authority which states that a violation is waived merely because the plaintiff did not specifically ask for the documentation.

For these reasons, the Court **denies** defendants' motion for partial dismissal as to plaintiffs' claim under Section 376.12(h).[3]

---

[3] In supplemental briefing, defendants cite new authority, *Brant v. Schneider National Inc., LLC*, No. 20-C-1049, 2021 WL 179597 (E.D. Wis. Jan. 19, 2021).  (Doc. 144).  In *Brant*, the court dismissed the plaintiff's TILA claims largely because they did not allege a specific harm.  2021 WL 179597, at *7 ("Brant does not allege a causal connection between Defendants' alleged failure to provide certain information and his claim that he and the other drivers were not paid enough.").  Further, the plaintiff's assertion that his contract with the defendant omitted the required information was incorrect.  *Id.*  Also, the court noted that the plaintiff did not allege that he asked to see the relevant documentation but was denied.  *Id.* at *8.  Here, first, plaintiffs have sufficiently alleged how the alleged failure to provide required documentation played a role in shorting the Drivers' pay.  (Doc. 108, at 23–24, 28–29).  Second, plaintiffs do not allege that the relevant terms are wholly absent from the ICOAs.  Last, the Court finds it irrelevant whether a plaintiff asked to see the documentation.  Regardless, plaintiffs allege Drivers did in fact ask and were denied.  (*Id.*, at 24).  Thus, the Court finds *Brant* distinguishable and declines to follow

## C. Unjust Enrichment

"Unjust enrichment is an equitable doctrine of restitution, wherein a plaintiff 'must prove the defendant received a benefit that in equity belongs to the plaintiff.'" *Iowa Network Servs., Inc. v. Quest Corp.*, 363 F.3d 683, 694 (8th Cir. 2004) (citing *Slade v. M.L.E. Inv. Co.*, 566 N.W.2d 503, 506 (Iowa 1997)). To prevail on a claim of unjust enrichment under Iowa law, a plaintiff must show "(1) [the] defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154–55 (Iowa 2001). Such benefits can be direct or indirect. *Id.* at 155. Unjust enrichment "is equitable in nature, not contractual." *Id.* at 154. "Generally[,] the existence of a contract precludes the application of the doctrine of unjust enrichment." *Johnson v. Dodgen*, 451 N.W.2d 168, 175 (Iowa 1990) (citing *Smith v. Harrison*, 325 N.W.2d 92, 94 (Iowa 1982)); *see also Rasch v. Tyson Fresh Meats, Inc.*, No. C16-3006-LTS, 2017 WL 2219985, at *13 (N.D. Iowa May 19, 2017) ("[T]he existence of an employment contract precludes recovery under . . . unjust enrichment.").

The Third Amended Complaint alleges that the Lease and ICOA at issue "are unconscionable" and thus void or voidable. (Doc. 108, at 27). It further alleges that "[d]efendants have been unjustly enriched by their deductions from the wages of" the

---

this persuasive authority here.

In responding to defendants' supplemental brief, plaintiffs argue that the Court should not permit defendants to assert new arguments by notifying the Court of additional authority. (Doc. 149). Although defendants did not assert some of the arguments that appear in their supplement in their initial motion or reply, *Brant* was decided after their reply was filed. It is not unreasonable for defendants to draw new arguments from new authority and alert the Court accordingly. Defendants should, however, capture all the arguments they intend to assert in their initial briefing.

Drivers and by fees that shifted the costs of the business onto the Drivers. (*Id.*). Thus, the complaint concludes that "it would be inequitable for Defendants to retain the amounts deducted from Drivers' wages and fees paid by Drivers," who are actually employees. (*Id.*).

Defendants argue plaintiffs' unjust enrichment claim fails because such equitable relief is improper in light of plaintiffs' ICOAs with CRST. (Doc. 126, at 23–24). Even if the ICOAs are found to be invalid, defendants argue that unjust enrichment is still inappropriate because CRST rendered counter-performance under the ICOA. (*Id.*, at 24) (citing RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 32(2)).

Plaintiffs argue that defendants rely entirely on Section 32 of the Restatement (Third) of Restitution and Unjust Enrichment in support of their assertion that unjust enrichment is inappropriate if counter-performance is rendered. (Doc. 136, at 21). Plaintiffs argue that no Iowa court has ever cited this language. (*Id.*, at 21–22).[4]

Section 2 of the Restatement (Third) of Restitution and Unjust Enrichment states that "[a] valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment." As to invalid contracts, Section 32(2) states that unjust enrichment is still unavailable "if the claimant receives the counterperformance specified by the parties' unenforceable agreement."

Although Iowa courts have not specifically cited Section 32(2) of the Restatement (Third) of Restitution and Unjust Enrichment, they have cited other sections. *See, e.g.*, *In re Estate of Waterman*, 847 N.W.2d 560, 572 (Iowa 2014) (citing Section 10); *Kragnes*

---

[4] Plaintiffs further argue that Comment C to Section 32 states that unjust enrichment is still available if the counter-performance is not valuable. (Doc. 136, 22). The Court disagrees with plaintiffs' interpretation. Comment C merely instructs that some statute or regulation may preclude application of Section 32; it does not modify the above rule by stating that the counter-performance must be valuable.

*v. City of Des Moines*, 810 N.W.2d 492, 513 (Iowa 2012) (citing Section 19). Acknowledging this, the Southern District of Iowa recognized in *Guy v. Ford Storage & Moving Co.*, No. 4:18-cv-216-JAJ-RAW, that "there is no reason to believe that the Iowa Supreme Court would not also rely on [Section] 32(2)." (Doc. 126-4, at 11) (unpublished opinion filed as an exhibit). Thus, because the plaintiff there did not allege the absence of counter-performance by the defendant, the court found that his unjust enrichment claim failed. (*Id.*, at 11–12).

The Court finds that there is reason to believe that Iowa has not or would not adopt Section 32(2) of the Restatement (Third) of Restitution and Unjust Enrichment. In *Smith v. Harrison*, the plaintiff conservator sought cancellation of a farm lease executed between the ward and the defendant. 325 N.W.2d 92, 92–93 (Iowa 1982). Plaintiff asserted, among other things, claims of unjust enrichment and unconscionability. *Id.* at 94. As to unjust enrichment, the Iowa Supreme Court held that it was not unjust for the defendant to receive the benefit of the land under the terms of the lease absent "a ground for invalidating the lease." *Id.* Although it appears the defendant rendered counter-performance by paying rent on the lease, the Court did not rely on this fact in its determination. Rather, the Court analyzed whether unconscionability warranted setting the lease aside. *Id.* It ultimately concluded that, at best, the ward "made a bad bargain," and that courts should not intercede merely to alleviate the effects of such a bargain in the absence of true unconscionability. *Id.*

If plaintiffs merely alleged unjust enrichment alone, the Court would find that the existence of the ICOAs precludes their claim. *See, e.g.*, *Rasch*, 2017 WL 2219985, at *13. Plaintiffs' Third Amended Complaint, however, also alleges that the ICOAs "are unconscionable." (Doc. 108, at 27). Although Section 32(2) of the Restatement (Third) of Restitution and Unjust Enrichment states that even an invalid contract precludes unjust enrichment if counter-performance is rendered, the Court is not aware of any Iowa court

holding as such. Further, the Court has reason to doubt that they would, given that the Iowa Supreme Court did not raise this issue in *Smith* where it appears it would have been dispositive. *See* 325 N.W.2d at 94. Rather, the court proceeded to the merits of unconscionability. *Id.*

The standard for unconscionability is high. "A contract is unconscionable where no person in his or her right sense would make it on the one hand, and no honest and fair person would accept it on the other hand." *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 80 (Iowa 2011). Indeed, as stated in *Smith*, courts only invoke unconscionability when enforcement of the contract would be profoundly unjust, not merely to rescue a party from its own bad bargain. 325 N.W.2d at 94. Defendants do not argue in their motion or reply that plaintiffs have insufficiently pled unconscionability. The Court finds plaintiffs' allegations on this topic sufficient in light of the intentional scheme they describe.[5] Thus, although unconscionability is a high bar, the Court cannot find that plaintiffs' claim fails as a matter of law at this stage.

For these reasons, the Court **denies** defendants' motion for partial dismissal as to unjust enrichment because at least some authority from Iowa suggests that such relief may be available if the contract at issue is invalidated via unconscionability and that the rendering of counter-performance does not wholly bar such a claim.

### D. CRST International as a Defendant

In their Third Amended Complaint, plaintiffs allege that CRST International and

---

[5] Defendants do appear to argue in their supplemental brief on the *Brant* case, however, that plaintiffs' allegation that they were misclassified alone is not sufficient to find that the ICOAs were unconscionable and thus void or voidable. (Doc. 144). In *Brant*, the court had already found that the plaintiff was not misclassified. 2021 WL 179597, at *6. Thus, because misclassification was the only allegation supporting the plaintiff's related unjust enrichment and unconscionability arguments, his claims failed. *Id.* The Court has not made such a finding here and thus rejects this persuasive authority as distinguishable.

CRST are owned and operated by the same entity, that CRST International owns CRST as well as CRST Lincoln and all the stock of CRST, and that CRST International "provides management and operational services to" CRST which includes "management oversight, legal, accounting, treasury, risk management, safety oversight, and human resources services." (Doc. 108, at 1, 5, 11). Plaintiffs further allege that CRST International "maintains employment records of Drivers and, alone or in conjunction with CRST . . ., determines the wages, working conditions and classification for Drivers," and notably drafts the ICOAs. (*Id.*, at 6, 11). Plaintiffs also note that the handbook given to Drivers "sets forth policies of 'the Company'" which is defined therein as "CRST International, Inc. and its subsidiary companies." (*Id.*, at 16). Thus, plaintiffs conclude that CRST International was their "employer" or, alternatively, that it was their joint employer along with CRST. (*Id.*).

Under the FLSA, an "employer" is defined as any person or entity "acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In determining whether an entity is a joint employer, courts focus on the economic realities test. *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005). Specifically, courts consider whether the entity "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983); *see also Roeder v. DirecTV, Inc.*, No. C14-4091-MWB, 2015 WL 5603050, at *5 (N.D. Iowa Sept. 22, 2015)). These factors are not exhaustive, and no single factor is dispositive. *Rikard v. U.S. Auto Prot., LLC*, No. 4:11CV1580 JCH, 2013 WL 5298460, at *3 (E.D. Mo. Sept. 20, 2013).

Defendants argue that CRST International should be dismissed as a defendant because plaintiffs' allegations that CRST International was their employer or joint

employer are "boilerplate" and unspecific. (Doc. 126, at 25–27). Defendants argue that plaintiffs have not sufficiently pled the economic reality of their alleged employment. (*Id.*). Defendants hold that CRST is the only entity that could be considered plaintiffs' employer, noting that it is the sole signatory of the ICOAs. (*Id.*, at 26–27).

The Court finds that plaintiffs' allegations are sufficiently specific at the motion to dismiss stage. The Third Amended Complaint states that CRST International, at least to some extent, has control over CRST, provides CRST with a variety of employee-related services, maintains the Drivers' employment records, determines the Drivers' wages, determines the Drivers' working conditions, classifies the Drivers, and drafts the terms in the ICOA. Plaintiffs also allege that CRST International is listed as their employer in the Drivers' handbook. Plaintiffs do not allege that CRST International had a direct or indirect role in hiring or firing Drivers or directly controlling or supervising their work. These factors, while important, are not dispositive. The complaint sufficiently alleges that CRST International determined the terms and conditions of their employment, maintained records relevant to their employment, and provided employer-like services such as management oversight, accounting, and human resources. These allegations are specific enough to satisfy the economic realities test at this stage. In sum, the Third Amended Complaint sufficiently alleges that CRST International played a direct or indirect role in managing the Drivers and setting the parameters of their employment such that it could be considered an employer or joint employer of the Drivers.

Thus, the Court **denies** defendants' motion to dismiss CRST International as a defendant in this case.

## IV.    CONCLUSION

For these reasons, the Court **grants in part** and **denies in part** defendants' Partial Motion to Dismiss for Failure to State a Claim. (Doc. 125). The Court **grants** defendants' motion as to plaintiffs' TILA claim under Section 376.12(d). The Court

**denies** defendants' motion as to plaintiffs' claims for fraud, TILA claims under Sections 376.12(g) and 376.12(h), and unjust enrichment, and CRST International's status as a defendant.

The Court also **denies as moot** plaintiffs' Motion to Strike or for Leave to File a Surreply (Doc. 139) because the Court did not rely on defendants' allegedly new and untimely argument in their reply brief.

**IT IS SO ORDERED** this 4th day of February, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa