# EXHIBIT 23

# Equipment Lease

**With Maintenance ( Expedited) – Freightliner**

**CRST Lincoln Sales, Inc.**
3930 16th Avenue, SW
Cedar Rapids, IA 52406-0068
Phone: 319-731-3890
Fax: 319-731-9245

Lessee Legal Name Anthony Cervantes

DBA

Street Address

City/State/Zip

Contact Phone Number Fax Number

| EQUIPMENT DESCRIPTION | | | | | Security Deposit |
|---|---|---|---|---|---|
| Year | Make | Model | VIN# | Unit# | $ 0 |
| 2015 | FRTL | | 3AKJGLD51FSGS2468 | 116039 | |

| | | | | |
|---|---|---|---|---|
| TERM | 131 Weeks | | START DATE | 1 /23/ 20 18 (Mo. Day Yr.) |
| RENT PAYMENT UPON SIGNING* | $ ____ (crossed out) | | | |
| BASE RENT* | Number: 131 | Frequency: Weekly, during both First Period and Second Period below | Each Payment Amount: $449.00 | |

| ADDITIONAL RENT* | FIRST PERIOD (Comprehensive Maintenance Furnished By Lessor - *see Sections 6(b)(1), (3), below*): | | SECOND PERIOD (Only Routine Maintenance Furnished By Lessor - *see Sections 6(b)(2), (3), below*): |
|---|---|---|---|
| | FROM 1 / 2 /20 18 TO 7 / 21 /20 18 (Mo. Day Yr.) | FROM 7 / 22 /20 18 TO 7 / 21 /20 19 (Mo. Day Yr.) | FROM 7 / 22 /20 19 TO 7 / 21 /20 20 (Mo. Day Yr.) |
| | Fifteen cents ($0.15) per mile for all hub/odometer (both authorized and unauthorized) miles, with a minimum of two thousand eight hundred eighty dollars ($2,880) per quarter, as detailed in Section 2(b)(1) and (2) below. | Fifteen cents ($0.15) per mile for all hub/odometer (both authorized and unauthorized) miles, with a minimum of two thousand eight hundred eighty dollars ($2,880) per quarter, as detailed in Section 2(b)(1) and (2) below. | Thirteen cents ($0.13) per mile for all hub/odometer (both authorized and unauthorized) miles, with a minimum of two thousand four hundred dollars ($2,400) per quarter, as detailed in Section 2(b)(1) and (2) below. |

***All rent payments include administrative-cost reimbursements and markups benefiting Lessor.**

This **Equipment Lease (With Maintenance)**, including all attached Schedules and addendums (collectively "Lease") is entered into by and between CRST Lincoln Sales, Inc., an Iowa corporation ("Lessor"), with its principal place of business at 3930 16th Avenue, SW, Cedar Rapids, IA 52406-0068, and the above-named Lessee.

1. **LEASE OF EQUIPMENT.** Lessor shall lease to Lessee the vehicle described above, together with all replacements, improvements, substitutions, additions, and accessories (collectively "Equipment"), on the terms and conditions in this Lease. Each reference herein to "Lessor's assigns" means any purchaser, transferee, assignee, or secured party hereof and any of their assignees, and, in the case of any partnership or trust, shall also include each partner or beneficiary thereof, including each stockholder of any corporate partner or beneficiary.

2. **LEASE TERMS AND LEASE PAYMENTS.**

## SCHEDULE A

### STIPULATED LOSS VALUE SCHEDULE

The parties to this Agreement agree that the Stipulated Loss Value of the Equipment is the amount shown below for each payment period with an implied interest rate of ten percent.

Truck # New Truck

| No. | Payment Date | Stipulated Loss Value | No. | Payment Date | Stipulated Loss Value | No. | Payment Date | Stipulated Loss Value | No. | Payment Date | Stipulated Loss Value | No. | Payment Date | Stipulated Loss Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1/23/18 | $ 55,561 | 53 | 1/22/19 | $ 36,868 | 105 | 1/21/20 | $ 16,212 | 157 | | | 209 | | |
| 2 | 1/30/18 | $ 55,219 | 54 | 1/29/19 | $ 36,490 | 106 | 1/28/20 | $ 15,794 | 158 | | | 210 | | |
| 3 | 2/6/18 | $ 54,876 | 55 | 2/5/19 | $ 36,112 | 107 | 2/4/20 | $ 15,375 | 159 | | | 211 | | |
| 4 | 2/13/18 | $ 54,533 | 56 | 2/12/19 | $ 35,732 | 108 | 2/11/20 | $ 14,956 | 160 | | | 212 | | |
| 5 | 2/20/18 | $ 54,189 | 57 | 2/19/19 | $ 35,352 | 109 | 2/18/20 | $ 14,535 | 161 | | | 213 | | |
| 6 | 2/27/18 | $ 53,844 | 58 | 2/26/19 | $ 34,971 | 110 | 2/25/20 | $ 14,114 | 162 | | | 214 | | |
| 7 | 3/6/18 | $ 53,499 | 59 | 3/5/19 | $ 34,589 | 111 | 3/3/20 | $ 13,693 | 163 | | | 215 | | |
| 8 | 3/13/18 | $ 53,153 | 60 | 3/12/19 | $ 34,206 | 112 | 3/10/20 | $ 13,270 | 164 | | | 216 | | |
| 9 | 3/20/18 | $ 52,806 | 61 | 3/19/19 | $ 33,823 | 113 | 3/17/20 | $ 12,846 | 165 | | | 217 | | |
| 10 | 3/27/18 | $ 52,458 | 62 | 3/26/19 | $ 33,439 | 114 | 3/24/20 | $ 12,422 | 166 | | | 218 | | |
| 11 | 4/3/18 | $ 52,110 | 63 | 4/2/19 | $ 33,055 | 115 | 3/31/20 | $ 11,997 | 167 | | | 219 | | |
| 12 | 4/10/18 | $ 51,761 | 64 | 4/9/19 | $ 32,669 | 116 | 4/7/20 | $ 11,571 | 168 | | | 220 | | |
| 13 | 4/17/18 | $ 51,412 | 65 | 4/16/19 | $ 32,283 | 117 | 4/14/20 | $ 11,144 | 169 | | | 221 | | |
| 14 | 4/24/18 | $ 51,062 | 66 | 4/23/19 | $ 31,896 | 118 | 4/21/20 | $ 10,717 | 170 | | | 222 | | |
| 15 | 5/1/18 | $ 50,711 | 67 | 4/30/19 | $ 31,508 | 119 | 4/28/20 | $ 10,288 | 171 | | | 223 | | |
| 16 | 5/8/18 | $ 50,360 | 68 | 5/7/19 | $ 31,120 | 120 | 5/5/20 | $ 9,859 | 172 | | | 224 | | |
| 17 | 5/15/18 | $ 50,007 | 69 | 5/14/19 | $ 30,731 | 121 | 5/12/20 | $ 9,429 | 173 | | | 225 | | |
| 18 | 5/22/18 | $ 49,655 | 70 | 5/21/19 | $ 30,341 | 122 | 5/19/20 | $ 8,998 | 174 | | | 226 | | |
| 19 | 5/29/18 | $ 49,301 | 71 | 5/28/19 | $ 29,950 | 123 | 5/26/20 | $ 8,566 | 175 | | | 227 | | |
| 20 | 6/5/18 | $ 48,947 | 72 | 6/4/19 | $ 29,559 | 124 | 6/2/20 | $ 8,134 | 176 | | | 228 | | |
| 21 | 6/12/18 | $ 48,592 | 73 | 6/11/19 | $ 29,167 | 125 | 6/9/20 | $ 7,701 | 177 | | | 229 | | |
| 22 | 6/19/18 | $ 48,236 | 74 | 6/18/19 | $ 28,774 | 126 | 6/16/20 | $ 7,266 | 178 | | | 230 | | |
| 23 | 6/26/18 | $ 47,880 | 75 | 6/25/19 | $ 28,380 | 127 | 6/23/20 | $ 6,831 | 179 | | | 231 | | |
| 24 | 7/3/18 | $ 47,523 | 76 | 7/2/19 | $ 27,986 | 128 | 6/30/20 | $ 6,396 | 180 | | | 232 | | |
| 25 | 7/10/18 | $ 47,166 | 77 | 7/9/19 | $ 27,591 | 129 | 7/7/20 | $ 5,959 | 181 | | | 233 | | |
| 26 | 7/17/18 | $ 46,807 | 78 | 7/16/19 | $ 27,195 | 130 | 7/14/20 | $ 5,521 | 182 | | | 234 | | |
| 27 | 7/24/18 | $ 46,448 | 79 | 7/23/19 | $ 26,798 | 131 | 7/21/20 | $ 5,000 | 183 | | | 235 | | |
| 28 | 7/31/18 | $ 46,089 | 80 | 7/30/19 | $ 26,400 | 132 | | | 184 | | | 236 | | |
| 29 | 8/7/18 | $ 45,728 | 81 | 8/6/19 | $ 26,002 | 133 | | | 185 | | | 237 | | |
| 30 | 8/14/18 | $ 45,367 | 82 | 8/13/19 | $ 25,603 | 134 | | | 186 | | | 238 | | |
| 31 | 8/21/18 | $ 45,005 | 83 | 8/20/19 | $ 25,203 | 135 | | | 187 | | | 239 | | |
| 32 | 8/28/18 | $ 44,643 | 84 | 8/27/19 | $ 24,803 | 136 | | | 188 | | | 240 | | |
| 33 | 9/4/18 | $ 44,280 | 85 | 9/3/19 | $ 24,402 | 137 | | | 189 | | | 241 | | |
| 34 | 9/11/18 | $ 43,916 | 86 | 9/10/19 | $ 24,000 | 138 | | | 190 | | | 242 | | |
| 35 | 9/18/18 | $ 43,551 | 87 | 9/17/19 | $ 23,597 | 139 | | | 191 | | | 243 | | |
| 36 | 9/25/18 | $ 43,186 | 88 | 9/24/19 | $ 23,193 | 140 | | | 192 | | | 244 | | |
| 37 | 10/2/18 | $ 42,820 | 89 | 10/1/19 | $ 22,789 | 141 | | | 193 | | | 245 | | |
| 38 | 10/9/18 | $ 42,454 | 90 | 10/8/19 | $ 22,384 | 142 | | | 194 | | | 246 | | |
| 39 | 10/16/18 | $ 42,086 | 91 | 10/15/19 | $ 21,978 | 143 | | | 195 | | | 247 | | |
| 40 | 10/23/18 | $ 41,718 | 92 | 10/22/19 | $ 21,571 | 144 | | | 196 | | | 248 | | |
| 41 | 10/30/18 | $ 41,349 | 93 | 10/29/19 | $ 21,163 | 145 | | | 197 | | | 249 | | |
| 42 | 11/6/18 | $ 40,980 | 94 | 11/5/19 | $ 20,755 | 146 | | | 198 | | | 250 | | |
| 43 | 11/13/18 | $ 40,610 | 95 | 11/12/19 | $ 20,346 | 147 | | | 199 | | | 251 | | |
| 44 | 11/20/18 | $ 40,239 | 96 | 11/19/19 | $ 19,936 | 148 | | | 200 | | | 252 | | |
| 45 | 11/27/18 | $ 39,867 | 97 | 11/26/19 | $ 19,525 | 149 | | | 201 | | | 253 | | |
| 46 | 12/4/18 | $ 39,495 | 98 | 12/3/19 | $ 19,114 | 150 | | | 202 | | | 254 | | |
| 47 | 12/11/18 | $ 39,122 | 99 | 12/10/19 | $ 18,702 | 151 | | | 203 | | | 255 | | |
| 48 | 12/18/18 | $ 38,748 | 100 | 12/17/19 | $ 18,289 | 152 | | | 204 | | | 256 | | |
| 49 | 12/25/18 | $ 38,374 | 101 | 12/24/19 | $ 17,875 | 153 | | | 205 | | | 257 | | |
| 50 | 1/1/19 | $ 37,998 | 102 | 12/31/19 | $ 17,460 | 154 | | | 206 | | | 258 | | |
| 51 | 1/8/19 | $ 37,622 | 103 | 1/7/20 | $ 17,045 | 155 | | | 207 | | | 259 | | |
| 52 | 1/15/19 | $ 37,246 | 104 | 1/14/20 | $ 16,629 | 156 | | | 208 | | | 260 | | |

**This SCHEDULE A, which completely replaces and supersedes any earlier schedule, addendum, or other provision of this lease relating to the same subjects, is agreed to by the undersigned parties as of the latest date set forth below:**

**LESSEE**

By: ______________________
Signature

Printed Name and Title

01-05-18
Date

**LESSOR: CRST Lincoln Sales, Inc.**

By: ______________________
Signature

Printed Name and Title

Date



CRST000126

# CRST Lincoln Sales, Inc.

# Lease Purchase Pricing

**Current Date**
**1/3/2018**

| | | |
|---|---|---|
| VIN | | new truck-40mos |
| Date of 1st Lease Payment | | 1/23/2018 |
| Lease Payments Received After | **9/23/2016** | 33 |
| Unit # | | New Truck |
| Computed Lease Cost | | 55,903 |
| Lease Term | | 131 |
| Implied Interest Rate | | 10% |
| Balloon | | 5,000.00 |
| Total Lease Payments | | 58,819.00 |
| Total # of Payments @ 449 | | 131 |
| | | |

Automatic Pricing-

a. **Term**. The lease term of the Equipment is specified in the table above.

b. **Rent**. The rent for the Equipment ("Rent"), shall consist of the Rent Payment Upon Signing (if any), the Base Rent Payments, and the Additional Rent, in the respective amounts set forth in the table above, which include administrative-cost reimbursements and markups benefiting Lessor. "Additional Rent" shall be calculated and deducted as follows:

1. **Additional Rent for First Period**.

A. **Initial Computation**. During the **First Period**, the Additional Rent, at the per-mile rates and for the portion(s) of the First Period and for the minimum mileage indicated, set forth in the table on page 1 above shall be deducted from Lessee's settlement compensation by the motor carrier ("Carrier") with which Lessee has entered into an Independent Contractor Operating Agreement ("ICOA") and shall be paid over to Lessor for all Carrier-authorized miles (with all distances to be determined by the then-current edition of the Rand-McNally mileage guide) during the preceding week, increased by eighteen percent (18%) to take into account the Equipment's unauthorized miles (together, "First Period Initial Computation Miles").

B. **Quarterly Reconciliation**. Once each quarter during the **First Period**, Carrier shall record the Equipment's actual hub/odometer miles operated during the preceding quarter, compare the number with the First Period Initial Computation Miles, make any necessary adjustments in settlement compensation at Lessee's next ICOA settlement, and arrive at a corresponding accounting reconciliation with Lessor. Specifically, if the actual hub/odometer miles are lower than the First Period Initial Computation Miles, Carrier shall credit Lessee's settlement compensation with the difference, multiplied by the cents-per-mile rate set forth for the relevant portion of the First Period in the table on page 1 above, provided that Carrier shall deduct, and remit to Lessor, an amount equal to no less than 24,000 miles, multiplied by such cents-per-mile rate, each quarter. If the total actual hub/odometer miles are greater than the First Period Initial Computation Miles, Carrier shall deduct from Lessee's settlement compensation the difference, if any, multiplied by such cents-per-mile rate.

2. **Additional Rent for Second Period**.

A. **Initial Computation**. During the **Second Period**, the Additional Rent, at the per-mile rate for the Second Period and for the minimum mileage indicated, set forth in the table on page 1 above shall be deducted from Lessee's settlement compensation by Carrier and shall be paid over to Lessor for all Carrier-authorized miles (with all distances to be determined by the then-current edition of the Rand-McNally mileage guide) during the preceding week, increased by eighteen percent (18%) to take into account the Equipment's unauthorized miles ("Second Period Initial Computation").

B. **Quarterly Reconciliation**. Once each quarter during the **Second Period**, Carrier shall record the Equipment's actual hub/odometer miles operated during the preceding quarter, compare the number with the Second Period Initial Computation Miles above, make any necessary adjustments in settlement compensation at Lessee's next ICOA settlement, and arrive at a corresponding accounting reconciliation with Lessor. Specifically, if the actual hub/odometer miles are lower than the Second Period Initial Computation Miles, Carrier shall credit Lessee's settlement compensation with the difference, multiplied by the cents-per-mile rate set forth for the Second Period in the table on page 1 above, provided that Carrier shall deduct, and remit to Lessor, an amount equal to no less than 24,000 miles, multiplied by such cents-per-mile rate, each quarter. If the total actual hub/odometer miles are greater than the Second Period Initial Computation Miles, Carrier shall deduct from Lessee's settlement compensation the difference, if any, multiplied by such cents-per-mile rate.

c. **Overall Lease Payments.** The Rent, any Security Deposit escrow fund contributions, and all other items owed to Lessor under the Lease as specified in the table on page 1, in Section 2(b), and in Schedules B, C, and D ("Overall Lease Payments") shall be due and payable, starting on the First Overall Lease Payment Date specified in the table above, and weekly thereafter. All Overall Lease Payments shall be payable, without notice or demand, at the above address of Lessor or at such other place as Lessor or Lessor's assigns shall notify Lessee of in writing. Lessee shall execute the attached Authorization and Assignment authorizing and directing Carrier to compute and deduct weekly the Overall Lease Payments from Lessee's earned and available settlement compensation and/or escrow fund balances under the ICOA. In addition to the Overall Lease Payments and except to the extent Carrier expressly assumes the following obligations through the ICOA, Lessee shall be responsible for acquiring and paying for any plates, licenses, or permits necessary to operate the Equipment and any federal, state, or local taxes and fees, including the Federal Heavy Vehicle Use Tax, registration fees, weight-distance taxes, state property or indefinite situs taxes, sales taxes (including in connection with this Lease transaction), highway use taxes, ferry, bridge, tunnel, and road tolls, or other charges assessed against the Equipment arising from Lessee's use, as well as all fuel costs, fuel taxes, empty mileage, loading and unloading expenses, detention and accessorial charges, and any other costs of operating the Equipment. Lessee's liability for these taxes, fees, and other expenses shall survive the expiration of this Lease.

3. **DELIVERY AND ACCEPTANCE.** Lessee shall select the type, quality, and supplier of the Equipment from among those made available by Lessor. Lessor shall not be liable to Lessee for any failure or delay in obtaining delivery of any Equipment. Upon delivery of the Equipment to Lessee, Lessee shall forthwith inspect it and, unless Lessee gives Lessor prompt written notice of any defect in or other proper objection to it, including that the Equipment is not in Good Operating Condition (defined as roadworthy and meeting all Federal and state regulatory requirements as to safety and equipment), Lessee shall execute and deliver to Lessor an Acceptance Certificate, in the form attached hereto, covering the Equipment. Lessee's execution of an Acceptance Certificate covering the Equipment shall conclusively establish that, as between Lessor and Lessee, Lessee has unconditionally accepted the Equipment for all purposes of this Lease and has agreed that the Equipment is in Good Operating Condition.

4. **NET LEASE. NO OFFSET.** THIS IS A NET LEASE, AND ALL OVERALL LEASE PAYMENTS PAYABLE BY LESSEE HEREUNDER SHALL BE PAID UNCONDITIONALLY WHEN DUE, WITHOUT ABATEMENT, DEDUCTION, COUNTERCLAIM, OR SETOFF OF ANY NATURE, INCLUDING ANY THEREOF ARISING OUT OF ANY PRESENT OR FUTURE CLAIM LESSEE MAY HAVE AGAINST LESSOR, OR ANY OF LESSOR'S ASSIGNS, OR THE MANUFACTURER, OR SUPPLIER OF THE EQUIPMENT. In no event, except as otherwise expressly provided herein, shall this Lease terminate or shall any of Lessee's obligations be affected by reason of any defect in, damage to, or loss or destruction of all or any part of the Equipment, from any cause whatsoever, or any interference with Lessee's use of the Equipment by any person or for any other cause whatsoever.

5. **DISCLAIMER OF WARRANTIES.** LESSOR, NOT BEING THE MANUFACTURER OR THE VENDOR OF THE EQUIPMENT, HEREBY MAKES NO EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY OF ANY KIND OR AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE DESIGN OR CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PURPOSE, OR ITS CAPACITY OR DURABILITY, OR THE QUALITY OF THE MATERIAL OR WORKMANSHIP OR CONFORMITY OF THE EQUIPMENT TO THE PROVISIONS AND SPECIFICATIONS OF ANY PURCHASE ORDER RELATING THERETO, OR ANY PATENT INFRINGEMENT OR PATENT OR LATENT DEFECTS, AND LESSEE HEREBY ACKNOWLEDGES THE FOREGOING DISCLAIMER BY LESSOR. Provided no Event of Default has occurred and is continuing hereunder, and so long as the Equipment is subject to this Lease and Lessor is legally permitted so to do, Lessor hereby authorizes Lessee at Lessee's expense to assert for Lessor's account, all rights of Lessor under any manufacturer's, vendor's, or dealer's warranty on the Equipment.

6. **USE, MAINTENANCE, AND INSPECTION OF EQUIPMENT.**

a. **Use of Equipment.** Lessee shall use the Equipment exclusively in the operation of Lessee's transportation business and in compliance with all federal, state, local, and foreign statutes, laws, ordinances, and regulations, and applicable insurance policy conditions. Lessee agrees that, except as otherwise provided below, he/she shall be the driver assigned to the Equipment. If Lessee is ill, disabled, or otherwise unable to drive the Equipment, he/she must submit a written request to substitute a competent, licensed driver who will be under his/her control and direction and will not abuse the Equipment and will operate it with reasonable care, diligence, and caution, and subject to all provisions of this Lease, which request Lessor shall review within five (5) business days. Any request not approved by Lessor in writing within that period shall be deemed disapproved. If Lessor approves Lessee's request (and Lessor's approval shall not be unreasonably withheld), Lessor may attach reasonable conditions to protect its interest in the Equipment. At a minimum, Lessee shall ensure that he/she and any substitute driver possess valid commercial driver's licenses and meet, throughout the Lease Term, all applicable federal and state driver qualifications and motor vehicle safety requirements. If, in Lessor's reasonable judgment, a driver is not in compliance with these qualifications and requirements, Lessee shall replace the driver at Lessor's request with one approved by Lessor. No passenger may be carried without a prior written passenger authorization from Carrier. No more than one passenger may be carried at one time.

b. **Maintenance and Repairs.**

1. **Comprehensive Maintenance Furnished During First Period.** During, and only during, the **First Period**, set forth in the table on the first page of this Lease, Lessor shall furnish for the Equipment, at the maintenance facilities of a provider specified by Lessor ("Maintenance Provider") or other provider approved by Maintenance Provider and at Lessor's expense (including but not limited to all labor, parts, supplies, employee compensation and benefits and employment taxes), the following maintenance services, except in the event of damage resulting from the events described in Section 6(b)(3)(C) below. Specifically, Lessor shall:

A. Maintain each unit of the Equipment at an operational level that is sufficient to adequately perform in a safe and timely manner, the intended and customary functions of the equipment;

B. Maintain each unit of Equipment in compliance with current CRST Lincoln Sales company policies, all applicable original-equipment-manufacturer maintenance procedures and warranty policies, and the safety standards for over-the-road vehicles and emissions controls, and the Federal Motor Carrier Safety Act. Lessor shall maintain the Equipment so as to meet or exceed the in-service criteria specified in the Federal Motor Carrier Safety Regulations in 49 C.F.R. Parts 390, 393, 396, and Appendix G to Part 396. Lessor shall follow the preventive maintenance schedule set forth in Schedule E to this Lease, and Lessee shall cooperate by making the Equipment available for such scheduled maintenance in a timely way.

C. Rebuild, replace, and/or overhaul the engine, engine parts, transmission, axles, and/or other major components of a unit of Equipment upon failure of such components except where the failure is caused by damage to the Equipment, as set forth in Section 6(b)(3)(C) of this Lease;

D. Inspect each unit of Equipment at a CRST Lincoln Sales-designated facility at least every 40,000 miles (in conjunction with the scheduled maintenance described in Schedule E to this Lease); and

E. Provide road service (including towing) for the Equipment necessitated by mechanical and tire failures caused by any failure on Lessor's part to perform, in a commercially reasonable manner, the maintenance and inspection services required by Sections 6(b)(1)(A), (B), (C), and (D) of this Lease.

2. **<u>Routine Maintenance Furnished During Second Period</u>.** During, and only during, the **Second Period,** set forth in the table on the first page of this Lease, Lessor shall furnish for the Equipment, at the maintenance facilities of a provider specified by Lessor ("Maintenance Provider") or other provider approved by Maintenance Provider and at Lessor's expense (including but not limited to all labor, parts, supplies, employee compensation and benefits and employment taxes), the following maintenance services except in the event of damage resulting from the events described in Section 6(b)(3)(C) below. Specifically, Lessor shall:

**A.** Repair or, at Lessor's discretion, replace (both furnish and install) all:

1. Tires when repair or replacement is due to normal wear and tear and not to curbing, low tire pressure, or road hazards, with the choice of replacement tire left to Lessor's discretion;
2. Brakes and brake components;
3. Oil, lubricants, antifreeze, washer, and other consumable fluids (only up to one gallon per week), batteries, oil filters, fuel filters, and air filters;
4. Belts and hoses;
5. Alternators;
6. Air conditioning systems;
7. Heater blowers; and
8. Clutch, clutch housing, and clutch assembly;

**B.** NOT repair or replace (instead leaving these services to Lessee to perform at Lessee's expense):

1. Engine or any internal engine parts, including but not limited to engine head, valves, valve springs and keepers, rocker arms and shafts, camshaft and bearings, or head gasket;
2. Fuel injectors;
3. Electronic Control Module ("ECM") or any associated electronic components;
4. Turbo or inner cooler;
5. Oil cooler, pan, or pump;
6. Transmission or any of its internal parts;
7. Axle assemblies or any of their internal parts;
8. Timing case cover or timing gears;
9. Exhaust manifold;
10. Intake manifold;
11. Oil leaks, accessory drive seals, cam follower boxes, or cylinder problems;
12. Front suspension, king pins, or spring hangers; or

13. Radiator;

C. Inspect each unit of Equipment at a CRST Lincoln Sales-designated facility at least every 40,000 miles (in conjunction with the scheduled maintenance described in Schedule E to this Lease); and

D. Provide road service (including towing) for the Equipment necessitated by mechanical and tire failures caused by any failure on Lessor's part to perform, in a commercially reasonable manner, the maintenance and inspection services required by Sections 6(b)(2)(A) and (C) of this Lease;

E. BUT Lessee shall follow the preventive maintenance schedule set forth in Schedule E to this Lease, and shall perform all necessary maintenance and repairs not set forth in Section 6(b)(2)(A) of this Lease.

3. **During BOTH First Period and Second Period.** During both the **First Period** and the **Second Period**, all of the following conditions and requirements apply:

A. Lessee shall return the Equipment to a maintenance facility of Maintenance Provider or other provider approved by Maintenance Provider for inspection, preventive maintenance and repair during normal business hours at scheduled times as agreed upon by the parties. In addition, Lessee shall report to Maintenance Provider, using the speediest means of communications available, any trouble concerning the Equipment as quickly as reasonably possible, and, to prevent damage, shall conduct pre-trip inspections of the Equipment, including checking oil and coolant levels, tire pressure, and any DOT-specified in-service item.

B. In the event the Equipment is disabled for any reason, Lessee shall immediately notify Maintenance Provider by the speediest means of communications available. Lessee shall not cause, or permit, any person other than Maintenance Provider or other persons authorized by Maintenance Provider, to perform any maintenance, repairs, or modifications, or adjustments to the Equipment without Maintenance Provider's prior consent, and shall abide by Maintenance Provider's reasonable instructions concerning emergency repairs. In the event the Equipment is disabled due to mechanical or tire failure, Lessor shall, within a commercially reasonable period of time after Maintenance Provider's receipt of notification, require Maintenance Provider to properly repair, or cause the repair, of the Equipment. Lessor shall have no responsibility for any repair or service to the Equipment away from the facilities of Maintenance Provider unless authorized by Maintenance Provider and documented by a properly-receipted and itemized bill for such repairs or services, listing the Lessor's Unit Number for the Equipment. Lessee, at his/her expense, shall transport the Equipment to the maintenance facilities of Maintenance Provider or other provider approved by Maintenance Provider for regular and emergency maintenance services. If road service (including towing) is needed, *see* Sections 6(b)(1) and (2) above.

C. SUBJECT TO SECTION 10 BELOW, LESSEE SHALL BE RESPONSIBLE FOR ALL REPAIRS AND/OR REPLACEMENTS MADE NECESSARY BY LOSS OF OR DAMAGE TO THE EQUIPMENT OR ITS SYSTEMS OR COMPONENTS (INCLUDING BUT NOT LIMITED TO ITS TIRES, BRAKES, GLASS, MATTRESSES, FIRE EXTINGUISHERS, TRIANGLE KITS, AND OTHER COMPONENTS), RESULTING FROM (1) A COLLISION OR OTHER SERIOUS ACCIDENT, REGARDLESS OF WHETHER ATTRIBUTABLE TO THE ACTS OR OMISSIONS OF LESSEE OR TO THOSE OF ANOTHER PERSON; (2) ABUSIVE OR NEGLIGENT HANDLING OF THE EQUIPMENT BY LESSEE (INCLUDING BUT NOT LIMITED TO USING EXCESSIVE SPEED DOWNHILL AND CAUSING REAR-END FAILURES THROUGH SPIN-OUTS); (3) THEFT OR VANDALISM, REGARDLESS OF WHETHER ATTRIBUTABLE TO THE ACTS OR OMISSIONS OF LESSEE OR TO THOSE OF

ANOTHER PERSON; (4) LESSEE'S FUEL STARVATION OF THE EQUIPMENT, (5) LESSEE'S ENGAGING OF THE POWER-DIVIDER INCORRECTLY, OR (6) LESSEE'S FAILURE TO DRAIN AIR TANKS DAILY FOLLOWING EACH USE. ANY SUCH REPAIRS SHALL BE PERFORMED ONLY WITH THE CONSENT OF MAINTENANCE PROVIDER, WHICH SHALL NOT BE UNREASONABLY WITHHELD. LESSEE SHALL KEEP THE EQUIPMENT'S INTERIOR CLEAN AND FREE OF DEBRIS IN ORDER TO ALLOW FOR PROPER ACCOMPLISHMENT OF SERVICES AND REPAIRS; AND LESSEE SHALL DEFER ALL NON-SAFETY-RELATED MAINTENANCE REQUESTS UNTIL THE EQUIPMENT'S NEXT SCHEDULED SERVICING. LESSEE SHALL ALSO BE RESPONSIBLE FOR:

1. Providing road service (including towing) for the Equipment necessitated by causes other than mechanical and tire failures;
2. Jump-starts of Equipment after Lessee has taken home-time;
3. All wipers, washer nozzles, and consumable fluids (oil, antifreeze, and washer fluid) in excess of one gallon per week; and
4. Inverter installations and removals (but only with Lessor's prior approval).

**D.** Lessor shall not be obligated to provide substitute vehicles or to pay for Lessee's hotel bills, meals, or other incidental or operating expenses while maintenance or repairs are being performed on the Equipment.

c. **Modifications to Equipment.** Lessee shall make no addition, improvement, or modification to the Equipment unless Lessor gives Lessee written permission in advance (and Lessee shall not authorize changes in horsepower of the Equipment or modifications to engine speed governors that would permit speeds exceeding 68 miles per hour). When Lessee returns the Equipment to Lessor, any item Lessee affixed with Lessor's approval may be removed only if Lessor reasonably determines that removal will not damage or lessen the value of the Equipment and Lessee pays for any such removal. Any alteration Lessor does not approve in writing shall be removed at Lessee's expense or retained by Lessor as its property, at Lessor's option. From time to time, Lessor may, at its option and expense, make such alterations, additions, or improvements as it shall deem appropriate.

d. **Inspection.** Upon Lessor's request, Lessee shall permit Lessor to have access to the Equipment at all reasonable times for the purpose of inspection and examination, including the periodic 40,000-mile inspections mandated by this Lease, including Schedule E.

7. **TITLE TO AND LOCATION OF EQUIPMENT.**

a. As between Lessor and Lessee, Lessee shall have exclusive possession, control, and use of the Equipment for the duration of this Lease, and shall assume complete responsibility for the operation of the Equipment. However, Lessee is not buying the Equipment during this Lease. This Lease constitutes a lease and Lessor is merely allowing Lessee to use the Equipment, with an option to purchase it at the successful completion of the Lease Term. The Equipment shall at all times be and remain personal property of Lessor, notwithstanding that any items may now or hereafter be affixed to the Equipment, and title thereto shall at all times during this Lease remain in Lessor.

b. Upon Lessor's request, Lessee agrees, at his/her expense, to affix a tag, plate or stencil to the Equipment showing Lessor's title thereto.

c. Provided that no Event of Default has occurred and is continuing hereunder, Lessor agrees that Lessor shall not interfere with Lessee's quiet enjoyment and use of the Equipment during the Lease.

8. **INDEMNIFICATION.** Lessee shall indemnify, defend, and hold Lessor and its assigns harmless from and against any claim (including any for which Lessor is not indemnified by its insurance) of direct, indirect, or

consequential loss, damage, delay, fine, civil penalty, or expense, including reasonable attorneys' fees and costs of litigation (together "Damages") that Lessor incurs arising out of Lessee's (including Lessee's agents' or employees') negligence, gross negligence, willful misconduct, or other culpable acts or omissions in inspecting, maintaining, or using the Equipment or otherwise performing, or failing to perform, Lessee's obligations under this Lease. Lessee hereby authorizes Lessor to charge Lessee back for all amounts due Lessor under this Section 8 (*see* Schedule D). Lessor shall furnish Lessee with a written explanation and itemization of any deduction for cargo or property damage before it is made. In the event that any report or return is required to be made with respect to any obligation of Lessee under this Lease, Lessee shall do so promptly and send a copy of such report or return to Lessor. If Lessor is required to make such a report or return, Lessee shall promptly furnish to Lessor such data and information in such form as will enable Lessor to make and file such report or return as expeditiously as possible, and Lessor shall send a copy of such report or return to Lessee. Lessor and Lessee agree to keep each other informed of any major problems, attachments, liens, or encumbrances that arise in the operation of the Equipment, reporting information relating to any accident or lawsuit that occurs and cooperating with each other and insurers in the investigation, prosecution, or defense of any accidents, claims, or suits arising from the operation of Carrier, the Equipment, or this Lease. The parties' obligations under this Section shall survive the expiration or earlier termination of this Lease.

9. **LIENS AND ENCUMBRANCES.** Lessee shall not directly or indirectly create or permit to exist, and shall promptly and at his/her own expense discharge, any lien, charge, or encumbrance on the Equipment, except for any lien, charge, or encumbrance resulting solely from the acts of Lessor.

10. **LOSS, DAMAGE OR DESTRUCTION.** Lessee shall bear all risks of loss, damage, theft, or destruction of or to the Equipment. If the Equipment becomes lost, stolen, destroyed, irreparably damaged, confiscated, requisitioned, or commandeered (herein called a "Loss"), Lessee shall promptly notify Lessor thereof in writing and shall, at Lessor's option, either (a) replace the Equipment with like equipment that has a market value at least equal to, the Stipulated Loss Value of the Equipment as of the date, next following such Loss, shown on the Stipulated Loss Value Schedule (Schedule A hereto), that is in Good Operating Condition, and to which clear title shall pass to Lessor, plus pay Lessor all accrued and unpaid Overall Lease Payments owing for the Equipment for all periods commencing prior to such date, or (b) on such date next following such Loss, pay Lessor an amount equal to the sum of (i) the Stipulated Loss Value of the Equipment as of the next date thereafter shown on the Stipulated Loss Value Schedule (Schedule A hereto), plus (ii) all accrued and unpaid Overall Lease Payments owing for the Equipment for all periods commencing prior to such date, and upon such payment the Lease of the Equipment shall terminate and Lessor shall transfer to Lessee, without recourse or warranty, all of Lessor's right, title, and any interest in and to the Equipment as of such date.

11. **INSURANCE.** Lessee's obligations as to insurance shall be as set forth in attached Schedule B ("Insurance").

12. **EVENTS OF DEFAULT.** Lessee shall be in default under this Lease upon the happening of any of the following events or conditions (herein called "Events of Default"):

    a. Lessee shall fail to make any Overall Lease Payment within ten (10) days after the same is due and payable; or

    b. Lessee or any guarantor of Lessee's obligations hereunder ("Guarantor") shall be in default in payment or performance of any other indebtedness or obligations now or hereafter owed by Lessee or by any Guarantor to Lessor, or to any parent, affiliate or subsidiary of Lessor, under any other agreement or instrument; or

    c. Lessee shall fail to perform or observe any other covenant or agreement to be performed or observed by it under this Lease, and such failure shall continue for ten (10) days after written notice thereof by Lessor to Lessee; or

d. Any representation, warranty, certification, or statement made or furnished to Lessor herein or in any other document by or on behalf of Lessee or by any Guarantor proves to have been false in any material respect when made or furnished; or

e. Lessee or any Guarantor shall make an assignment for the benefit of creditors, or bankruptcy, arrangement, reorganization, liquidation, insolvency, receivership, or dissolution proceedings shall be instituted by or against Lessee or any Guarantor, and if instituted-against Lessee or any Guarantor, shall be consented to or be pending and not dismissed for a period of 30 days; or

f. The condition of Lessee's or any Guarantor's affairs shall change so as, in the reasonable opinion of Lessor, to impair Lessor's title to the Equipment or increase Lessor's credit risk; or

g. **Lessee's ICOA with Carrier is terminated by Carrier or Lessee.**

13. **REMEDIES OF LESSOR.** Upon the occurrence of an Event of Default, Lessor, at its option, may exercise any one or more of the remedies set forth in Subsections (a) through (e), except as provided in Subsection (f), below:

a. Terminate this Lease upon written notice to Lessee, without prejudice to any other remedies hereunder,

b. Declare the entire amount of unpaid Rent then accrued and thereafter payable for all Equipment then leased hereunder to be immediately due and payable, or declare the aggregate Lease balance of all Equipment then leased hereunder as of the Overall Lease Payment Date coincident with or next preceding the date of the occurrence of such Event of Default to be immediately due and payable, whereupon Lessee shall become obligated to pay to Lessor forthwith, as liquidated damages for the loss of the bargain and not as a penalty, such unpaid Rent or such aggregate Lease balance, as the case may be,

c. Cause Lessee, at his/her expense, to promptly assemble the Equipment or any Item thereof and return the same to Lessor at such place as Lessor may designate in writing,

d. Enter upon the premises where the Equipment is located, and, without notice to Lessee, and with or without process, take immediate possession of the Equipment without liability to Lessor by reason of such entry or taking possession, and without such action constituting a termination of this Lease unless Lessor notifies Lessee in writing to such effect,

e. Sell, re-lease or otherwise dispose of the Equipment in a public or private sale or lease transaction, and apply the proceeds of such sale or re-leasing, after first deducting all costs and expenses of such sale or re-leasing, to Lessee's obligations hereunder, with Lessee remaining liable for any deficiency and with any excess being retained by Lessor, and proceed by court action to enforce performance by Lessee of the applicable covenants of this Lease or to recover damages for the breach thereof. In addition to the foregoing, Lessee shall be obligated hereunder for the payment of all other amounts then or thereafter payable by Lessee to Lessor hereunder, including without limitation, amounts owing for indemnification.

f. Lessor may draw on the Security Deposit, authorized under Section 22 of this Lease, or on moneys in any escrow fund under Lessee's ICOA with Carrier, only for all accrued and unpaid Overall Lease Payments owing for the Equipment for all periods commencing prior to the Event of Default and for those amounts Lessor actually spends, incurs (including, with respect to necessary repairs to the Equipment, an adjuster's itemized estimate, subject to partial refund or further assessment, respectively, if the total actual repair expenses amount to less than, or more than, the estimate), or owes to a third party before or within forty-five (45) days after termination of this Lease in (1) returning the Equipment to the Good Operating Condition it was in when leased, excepting only reasonable wear and tear from normal use but including replacement of mattresses, overall cleaning of interior and exterior of the Equipment, detailing work and repairs of dents, scratches, and other deficiencies in order to return the Equipment to a commercially reasonable condition for resale; (2) in recovering instead the Stipulated Loss Value of the Equipment as of the date, next following the

Event of Default, shown on the Stipulated Loss Value Schedule (Schedule A hereto) if, in Lessor's commercially reasonable judgment, the damage to the Equipment is so extensive that repairing it would not be economically justified; (3) in replacing any equipment or accessories that are missing from the Equipment; (4) in selling or leasing the Equipment to a third party; (5) in returning the Equipment to the location where delivery was made, or such other closer location as Lessor may specify at the time; and (6) in securing possession of the Equipment if Lessee does not voluntarily return the Equipment. Aside from drawing on the Security Deposit or escrow funds, Lessor has a right to recover, through all available legal means, any additional amounts Lessee owes, or comes to owe, Lessor under this lease.

14. **FURTHER ASSURANCES.** Lessee shall promptly execute and deliver to Lessor such further documents and assurances and take such further action as Lessor may from time to time reasonably request in order more effectively to carry out the purpose of this Lease and to protect the rights and remedies of Lessor hereunder, including without limitation, the execution and delivery of financing statements under the Uniform Commercial Code and appropriate consents and waivers from landlords and mortgagees. Lessee authorizes Lessor to sign and execute any and all necessary forms to protect Lessor's rights and remedies, including, but not limited to insurance claims, financing statements under the Uniform Commercial Code, and appropriate consents and waivers.

15. **SUBLEASE AND ASSIGNMENT.** The provisions of this Lease shall be binding upon, and shall inure to the benefit all of Lessor's assigns and successors, and any permitted successors and assigns of Lessee.

    a. Without Lessor's prior written consent, Lessee shall not assign any of Lessee's rights hereunder or sublet or transfer the Equipment.

    b. Lessor may, at any time, with or without notice to Lessee, sell, transfer, assign, mortgage, and grant a security interest in this Lease, any Schedule, and the Equipment, in whole or in part, and in such event any such purchaser, transferee, assignee, or secured party shall have and may exercise all of Lessor's rights hereunder, including the right to receive Overall Lease Payments solely with respect to the Equipment to which such sale, transfer, assignment, mortgage, and grant of security interest related. Any such sale, transfer, assignment, mortgage or security interest shall be subject to Lessee's rights and options, if any, hereunder so long as no Event of Default has occurred and is continuing hereunder. Any of Lessor's assigns may re-assign such rights and may mortgage and grant a security interest in the Equipment. All obligations of Lessor to Lessee hereunder shall be enforceable against Lessor and Lessor's assigns except for any of Lessor's assigns who is a lender and/or secured party. Lessee agrees that upon written notice to Lessee of any such sale, transfer, assignment, mortgage, or security interest, Lessee shall accept and comply with the directions and demands of Lessor's assigns. THE RIGHTS OF ANY OF LESSOR'S ASSIGNS SHALL NOT BE SUBJECT TO ANY DEFENSE, COUNTERCLAIM, OR SETOFF, NOT ARISING FROM OR RELATED TO THIS LEASE, THAT LESSEE MAY HAVE AGAINST LESSOR.

16. **THIS AGREEMENT IS A LEASE.** Lessor and Lessee hereby agree that this Lease is a lease, that Lessor is the owner of the Equipment, and that the relationship between Lessor and Lessee shall always be only that of lessor and lessee. Lessee agrees that Lessor is entitled to and shall have the right to claim the following tax benefits with respect to the Equipment: (a) depreciation deductions for Federal Income Tax purposes and depreciation or cost recovery deductions for Iowa and any other applicable state income tax purposes: and (b) all items of income and deduction relating to this Lease.

17. **NOTICES.** All notices required hereunder shall be in writing and shall be deemed to have been given when delivered personally; when mailed with proper postage, for first class mail prepaid, addressed to Lessor or Lessee, as the case may be, at their respective addresses as set forth herein or at such other address as either of them shall from time to time designate in writing to the other, or in the case of Lessor's assigns, at the addresses designated by them in writing; when deposited with an overnight delivery company with the express charges prepaid and properly addressed to the other party at the foregoing addresses; or when faxed to the other party at the fax number shown at the beginning of this Lease. Lessor (and its assigns) and Lessee shall be under a continuing duty to provide a correct address and telephone number to the other party, and Lessor (and its assigns) and Lessee (if the

latter has a fax machine) to provide a correct fax number to the other. Notice of an address, telephone-number, or fax-number change shall be given in writing.

18. **LATE CHARGES.** If Lessee fails to pay any Overall Lease Payment when the same becomes due, Lessee shall pay interest on such delinquent payment from the due date until paid (without regard to any grace period) at the lower of one and one-half percent (1-1/2%) per month or the maximum rate of interest permitted by law.

19. **PURCHASE OF THE EQUIPMENT.** IF LESSEE IS NOT IN DEFAULT, LESSEE MAY PURCHASE THE EQUIPMENT AT THE EXPIRATION OF THE LEASE TERM FOR THE STIPULATED LOSS VALUE AT THE TIME, AS SHOWN ON SCHEDULE A, WHICH VALUE INCLUDES ADMINISTRATIVE-COST REIMBURSEMENTS AND MARKUPS BENEFITING LESSOR. IN ADDITION, LESSEE MAY REQUEST TERMINATION OF THIS LEASE IN ORDER TO PURCHASE THE EQUIPMENT AT ANY TIME DURING THE LEASE. IF LESSOR, IN ITS SOLE DISCRETION, SHOULD GRANT SUCH REQUEST, SUCH TERMINATION SHALL BECOME EFFECTIVE, AND LESSEE SHALL RECEIVE TITLE TO THE EQUIPMENT, ONLY ON PAYMENT OF THE STIPULATED LOSS VALUE AT THE TIME AS SHOWN ON SCHEDULE A, WHICH VALUE INCLUDES ADMINISTRATIVE-COST REIMBURSEMENTS AND MARKUPS BENEFITING LESSOR, PLUS ALL ACCRUED AND UNPAID OVERALL LEASE PAYMENTS OWING FOR THE EQUIPMENT FOR ALL PERIODS COMMENCING PRIOR TO SUCH TERMINATION.

20. **RETURN OF EQUIPMENT.** Lessee shall return the Equipment to Lessor, at Lessee's expense, at the expiration or termination of this Lease, to 3930 16th Avenue, SW, Cedar Rapids, Iowa, in the same Good Operating Condition as when leased, excepting only reasonable wear and tear from normal use, together with any assigned Carrier trailer as directed by Carrier's dispatch and all license plates, registration certificates, or other documents, owned or in the name of Lessor or Carrier, relating to the Equipment. Upon request of Lessee, Lessor may in its sole discretion allow Lessee to retain some or all of such license plates or other documents. Unless otherwise agreed by Lessor, Lessee shall give Lessor at least sixty (60), and not more than ninety (90), days' notice of the return of the Equipment.

21. **MISCELLANEOUS.** This Lease (including all Schedules and addendums executed by Lessee and Lessor) constitutes the entire agreement between Lessor and Lessee with respect to the leasing of the Equipment, and fully replaces and supersedes all prior agreements and undertakings (including attachments), oral and written, express or implied, or practices between the parties, relating to the same subject matter. The headings used in this Lease have no substantive effect and are used for convenience. References in this Lease to "he/she," "him/her," and "his/hers" shall be read as "it" and "its," respectively, if Lessee is a corporation, limited liability company, partnership, or other entity, rather than a natural person. No provision of this Lease may be changed, waived, amended, discharged or terminated except by a written instrument signed by both parties, except as provided in Section 3 of Schedule D and except that Lessor may insert the serial number of the Equipment on any Schedule. No express or implied waiver by Lessor of an Event of Default hereunder, or of any other matter, shall in any way be construed to be, a waiver of any future or subsequent Event of Default or other matter whether similar in kind or otherwise. If any provision (including any sentence or part of a sentence) of this Lease is declared invalid for any reason, such provision shall be deemed ineffective without invalidating the other provisions hereof. If Lessee fails to perform any of his/her obligations under the Lease, Lessor may, but shall not be obligated to, perform the same without thereby waiving such default, and any amount paid or expense or liability incurred by Lessor in such performance shall be paid or reimbursed by Lessee upon Lessor's demand. Time is of the essence of this Lease and all of its provisions. Original, faxed, or otherwise imaged signatures shall be equally valid.

22. **SECURITY DEPOSIT ESCROW FUND.** For the duration of this Lease, Lessee authorizes Lessor, and Lessor agrees, to establish and administer a required Security Deposit escrow fund ("Security Deposit") in accordance with Schedule C.

23. **GOVERNING LAW.** This Lease shall in all respects be governed by and construed in accordance with the laws of the United States and, except as otherwise provided herein, the State of Iowa, without regard to the choice-of-law rules of Iowa or any other jurisdiction. THE PARTIES AGREE THAT ANY CLAIM OR DISPUTE

ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT, WHETHER UNDER FEDERAL, STATE, LOCAL, OR FOREIGN LAW (INCLUDING BUT NOT LIMITED TO 49 C.F.R. PART 376), SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS SERVING LINN COUNTY, IOWA. LESSOR AND LESSEE HEREBY CONSENT TO THE JURISDICTION OF SUCH COURTS.

**Lessee and Lessor hereby execute this Equipment Lease on , at 12: 01 a.m.**

**LESSEE'S OBLIGATIONS REGARDING MAINTENANCE OF THE EQUIPMENT INCREASE DURING THE SECOND OF THIS LEASE'S TWO PERIODS (SEE SECTION 6(b)).**

**BY SIGNING BELOW, LESSEE ACKNOWLEDGES THAT VEHICLES SUITABLE FOR HIS/HER PROVISION OF SERVICES UNDER INDEPENDENT CONTRACTOR OPERATING AGREEMENTS WITH CRST MALONE, INC., CRST EXPEDITED, INC., AND OTHER MOTOR CARRIERS ARE AVAILABLE FOR PURCHASE OR LEASE FROM NUMEROUS COMPANIES OTHER THAN LESSOR CRST LINCOLN SALES, INC.; THAT LESSEE IS FREE TO LEASE A VEHICLE OBTAINED FROM ANOTHER SOURCE TO SUCH CARRIERS; AND THAT LESSEE IS NOT REQUIRED TO SIGN THIS EQUIPMENT LEASE AS A CONDITION OF ENTERING INTO AN INDEPENDENT CONTRACTOR OPERATING AGREEMENT WITH ANY SUCH CARRIERS.**

**LESSEE**

By **X** Anthony [signature] Title Owner Date 01-03-18

Printed Name

**LESSOR**

By Jan M Wiltgen [signature] Title CRST Lincoln Sales Date 4/4/18

Printed Name Jan M. Wiltgen

**PERSONAL GUARANTY:** **In consideration of Lessor's entering into the above Lease with Lessee and other good and valuable consideration, which is acknowledged to have been received, the undersigned jointly and severally unconditionally guarantee the due, regular, and punctual payment of all Overall Lease Payments due and the prompt performance of all of Lessee's obligations and duties under the above Lease. Lessor shall not be required to exhaust its remedies against Lessee or the Equipment as a condition of recovery under this guaranty. The undersigned waive any right to notice or of consent or exoneration by virtue of or with respect to acceptance of this guaranty, or default, failure to perfect a security interest, amendment, release, settlement, extension, or compromise of the Lease, the Equipment, or Lessee. The obligations under this guaranty shall survive any initiation by or against Lessee of insolvency or bankruptcy proceedings. This guaranty is effective as of the earlier of the Start Date of the above Lease or the date of signature hereof by the undersigned.**

Guarantor's Signature ____________________ Guarantor's Signature ____________________

Printed Name ____________________ Printed Name ____________________

Street Address ____________________ Street Address ____________________

City, State, Zip Code ____________________ City, State, Zip Code ____________________

Date ____________________ Date ____________________

# CERTIFICATE OF ACCEPTANCE OF LEASED EQUIPMENT

Lessee certifies that the Equipment identified in the table on page 1 of this Lease has been received by Lessee; that all necessary installation has been completed; that Lessee has inspected the Equipment before signing the Lease and found the Equipment to be in Good Operating Condition; that, in all respects, the Equipment is satisfactory to Lessee; and that the Equipment is accepted "as is" by Lessee for all purposes under the Lease. The Equipment is correctly described in this Lease, and Lessor is authorized to insert serial numbers on the Lease.

**LESSEE**

By **X** ______________________ Title Owner Date Accepted 01-05-18

Printed Name ______________________

Location Where Delivery of Equipment Was Made: ______________________, __________.
City State

**CRST Lincoln Sales, Inc.**
3930 16th Avenue, SW
Cedar Rapids, IA 52406-0068
Phone: 800-726-2778
Fax: 319-390-2785

# AUTHORIZATION AND ASSIGNMENT

Lease #___________________________

To: CRST Expedited, Inc. ("Carrier")

1. The undersigned Lessee hereby authorizes and directs Carrier to pay CRST Lincoln Sales, Inc., 3930 16th Avenue, SW, Cedar Rapids, Iowa 52406-0068 ("Lincoln"), the Rent (including making the Initial Computation and Quarterly Reconciliation of Additional Rent under Section 2(b)(1) and (2)), any Security Deposit escrow fund contributions, and all other items owed to Lessor under the Equipment Lease entered into by Lessee and Lincoln on __ ("Lease") as specified in the table on page 1, in Section 2, and in Schedules B, C, and D of the Lease (together "Overall Lease Payment") in varying amounts communicated by Lessor to Carrier each week, and to deduct these amounts from Lessee's next weekly settlement and/or escrow fund under Lessee's Independent Contractor Operating Agreement ("ICOA") with Carrier. The weekly deductions shall begin on the First Overall Lease Payment Date shown on the page 1 of the Lease and weekly thereafter for ______ (__) consecutive weeks or until the balance due has been paid to Lincoln.

2. If Lessee's ICOA with Carrier expires or is terminated for any reason, Carrier is hereby authorized and directed to use all final settlement compensation, escrow fund moneys, or other amounts due Lessee under the ICOA, after deducting amounts due Carrier, to pay Lincoln any Overall Lease Payment amounts still owed by Lessee to Lincoln, except as provided in Section 13(f) of the Lease, and only thereafter to pay the balance to Lessee.

3. At such time as Lessee's ICOA with Carrier expires or is terminated, Carrier is authorized and directed to immediately notify Lincoln of the expiration or termination.

4. Carrier is authorized and directed to supply Lincoln, upon request, a copy of Lessee's ICOA.

**LESSEE**

By **X** Anthony Leavitt _______________ Title ___________________ Date 01-03-18

Printed Name ___________________________

## SCHEDULE B

## INSURANCE

1. **LESSEE'S INSURANCE OBLIGATIONS**. Lessee shall maintain, at Lessee's sole expense, the following minimum insurance coverages during this Lease:

   a. **Non-Trucking (Bobtail) Liability Insurance**. Lessee shall procure, carry, and maintain public liability and property damage insurance which shall provide coverage to Lessee whenever the Equipment is not being operated on behalf of Lessor in a combined single limit of not less than five hundred thousand dollars ($500,000), with a deductible no greater than one thousand dollars ($1,000), for injury or death to any person or for damages to property in any one occurrence. Such coverage shall be primary to any other insurance that may be available from Lessor. Lessee shall be responsible for all deductible amounts and for any loss or damage in excess of the policy limit.

   b. **Physical Damage Insurance**. Lessee shall procure, carry, and maintain physical damage insurance that will provide coverage to Lessee at all times in a combined single limit of one hundred thousand dollars ($100,000), or the Stipulated Loss Value of the Equipment as shown in Schedule A for the next date after the occurrence, whichever is less, for physical loss or damage to the Equipment (including theft and collision for Equipment consisting of motor vehicles) in any one occurrence. Such coverage shall be primary to any other insurance that may be available from Lessor. Lessee shall be responsible for all deductible amounts (which shall not exceed one thousand dollars ($1,000) per occurrence) and for any loss or damage in excess of the policy limit.

   c. **Other Insurance**. In addition to the insurance coverages required under Sections 2(a)-(c) above), it is solely Lessee's responsibility to procure, carry, and maintain any other insurance coverage that Lessee may desire for the Equipment or for Lessee's health care or other needs. As provided in Section 10 of this Lease, Lessee holds Lessor harmless with respect to loss of or damage to Lessee's Equipment, trailer, or other property, and Lessor has no responsibility to procure, carry, or maintain any insurance covering loss of or damage to Lessee's Equipment, trailer, or other property. Lessee acknowledges that Lessor may, and Lessee hereby authorizes Lessor to, waive, reject, or reduce no-fault, uninsured, and underinsured motorist coverage from Lessor's insurance policies to the extent allowed under the laws of Iowa (the state in which Lessor's insurance policies are delivered), and Lessee shall cooperate in the completion of all necessary documentation for such waiver, election, rejection, or reduction.

2. **REQUIREMENTS APPLICABLE TO ALL OF LESSEE'S INSURANCE COVERAGES**. Lessee shall procure insurance policies providing the above-described coverages solely from insurance carriers that are A.M. Best "A"-rated (or of equivalent financial strength in the commercially-reasonable judgment of Lessor), and Lessee shall not operate the Equipment under this Lease unless and until Lessor has determined that the policies are acceptable (Lessor's approval shall not be unreasonably withheld). Lessee shall furnish to Lessor written certificates (and policies if requested by Lessor) obtained from Lessee's insurance carrier or carriers showing that all coverages required by this Lease have been procured from insurance carriers that are A.M. Best "A"-rated (or of equivalent financial strength in the commercially-reasonable judgment of Lessor), that the coverages are being properly maintained, and that the premiums thereof are paid. Each insurance certificate shall specify the name of the insurance carrier, the policy number, the expiration date, list Lessor and Lessor's assigns as additional insured's with primary coverage, and show that written notice of cancellation or modification of the policy shall be given to Lessor and Lessor's assigns at least thirty (30) days prior to such cancellation or modification.

3. **LESSEE'S LIABILITY IF REQUIRED COVERAGES ARE NOT MAINTAINED**. In addition to Lessee's indemnity obligations to Lessor under Section 8 of this Lease, Lessee agrees to defend, indemnify, and hold Lessor harmless from any direct, indirect, or consequential loss, damage, fine, expense, including reasonable attorney fees, actions, claim for injury to persons, including death, and damage to property that Lessor may incur arising out of or in connection with Lessee's failure to maintain the insurance coverages required by this Lease. In addition, Lessee, on behalf of Lessee's insurer, expressly waives all subrogation rights against Lessor, and, in the

event of a subrogation action brought by Lessee's insurer, Lessee agrees to defend, indemnify, and hold Lessor harmless from such claim.

**This SCHEDULE B, which completely replaces and supersedes any earlier schedule, addendum, or other provisions of this Lease relating to the same subjects, is agreed to by the undersigned parties as of the latest date set forth below:**

**LESSEE**

By: **X** [signature]
Signature

Anthony Cervantes
Printed Name and Title

01-03-18
Date

**LESSOR: CRST Lincoln Sales, Inc.**

By: [signature]
Signature

Jan M. Wiltgen
Printed Name and Title

4/4/18
Date

## SCHEDULE C

### SECURITY DEPOSIT ESCROW FUND

As authorized by Section 22 of this Lease, Lessor shall establish and administer a Security Deposit escrow fund ("Security Deposit"), which Lessee and Lessor agree shall be governed by the following provisions:

1. **Principal**. As principal to be held in the Security Deposit, Lessee agrees to authorize and direct Carrier to deduct from Lessee's settlement compensation and remit to Lessor for deposit in Lessee's Security Deposit: __NONE_______________ dollars ($____0____) per week beginning _____________ ___, 201_, until the balance in the Security Deposit reaches ___________________________ dollars ($___0_____) and to resume such deductions whenever the Security Deposit balance drops below that amount.

2. **Specific Items to Which Security Deposit May Be Applied**. The Security Deposit shall be held by Lessor to guarantee the performance of Lessee's obligations under this Lease. The specific items to which the Security Deposit shall apply are all advances, expenses, taxes, fees, fines, penalties, damages, losses, or other amounts paid, owed, or incurred by Lessor that are Lessee's responsibility under this Lease -- specifically, the charge-back and deduction items set forth in Schedules B, C, and D and any other schedules or addendums to the Lease, and, upon termination, all of Lessee's obligations under Section 13(f) of this Lease (all hereafter referred to as "Security Deposit Deduction Items") -- to the extent that the amounts owed by Lessee for such Security Deposit Deduction Items exceed the portion of Lessee's earned and payable compensation (and/or ICOA escrow fund moneys) that Carrier remits to Lessor, or that Lessee otherwise pays Lessor, when Overall Lease Payments (as set forth in Section 2(c) of this Lease) come due or upon termination of this Lease.

3. **Accountings**. While the Security Deposit is under Lessor's control, Lessor shall provide an accounting to Lessee, no less frequently than monthly, of all transactions involving the Security Deposit, including the amount and description of any deduction from or addition to it. In addition, upon Lessee's request at any time, Lessor shall provide Lessee with an accounting of any Security Deposit transaction.

4. **Interest**. Lessor shall pay Lessee interest on the Security Deposit on at least a quarterly basis. The amount of interest shall be established on the date the interest period begins and shall be equal to at least the average yield of 91-day, 13-week U.S. Treasury bills, as established in the weekly auction by the Department of the Treasury. For purposes of calculating the balance on which interest is paid, Lessor may deduct a sum equal to the average advance (including charge-backs and other deductions) that Lessor made to Lessee during the period of time for which interest is paid.

5. **Final Settlement**. To have any remaining balance in the Security Deposit returned following termination of this Lease, Lessee must first comply with all of the specific obligations set forth in Section 13(f) of this Lease and make payments to Lessor for all Security Deposit Deduction Items. At the time of the return of any remaining balance in the Security Deposit, Lessee hereby authorizes Lessor to apply any and all moneys in the Security Deposit to all Security Deposit Deduction Items, to the extent provided in Section 13(f) of this Lease. Lessor shall provide a final accounting to Lessee of all such final deductions made from the Security Deposit within forty-five (45) days from the date of termination of this Lease.

6. **Return of Security Deposit Balances**. In no event shall the Security Deposit, less any final deductions pursuant to the above provision, be returned to Lessee later than forty-five (45) days from the date of termination of this Lease. Lessor's use or post-termination return to Lessee of any balance in the Security Deposit shall not constitute a waiver of Lessor's right to recover, through all available legal means, any additional amounts Lessee owes, or comes to owe, Lessor under this Lease.

**This SCHEDULE C, which completely replaces and supersedes any earlier schedule, addendum, or other provisions of this Lease relating to the same subjects, is agreed to by the undersigned parties as of the latest date set forth below:**

**LESSEE**

By: **X** [signature]
Signature

Anthony Cervantes
Printed Name and Title

01-03-18
Date

**LESSOR: CRST Lincoln Sales, Inc.**

By: [signature]
Signature

Jan M. Wiltgen
Printed Name and Title

4/4/18
Date

## SCHEDULE D

## CHARGE-BACKS AND OTHER DEDUCTIONS

1. **List of Charge-Backs and Other Deductions**. Lessee agrees to authorize and direct Carrier to charge back or deduct the following items from Lessee's settlement compensation or, if Lessee's compensation at the next settlement is insufficient to cover the items, to deduct them from Lessee's escrow fund under the ICOA, and in both situations to remit the amounts electronically to Lessor weekly. Where no dollar figure is listed in the table below, the deductions will vary in amount and will be computed as indicated in the column headed "Amount, or Method of Computation, of Deduction." Except as otherwise indicated in that column, (a) Lessor shall charge Lessee no administrative ("admin.") fee or markup and (b) Lessor shall credit Lessee with all rebates, discounts, credits, or refunds that correspond to particular charge-backs or deductions and that Lessor receives while this Lease is in effect or, in the case of taxes and fees, even after this Lease is terminated.

| CHARGE-BACK OR DEDUCTION ITEM | AMOUNT, OR METHOD OF COMPUTATION OF DEDUCTION |
|---|---|
| **Changes, alterations, improvements** in the Equipment required by law, approved by Lessor, or removed at Lessee's expense because not approved by Lessor | Amount Lessor paid or otherwise incurred |
| **Claims, losses, damages, or expenses** (including reasonable attorneys' fees) under Lease §§ 6(b)(3)(C), 8, and 10 | Amount Lessor paid or otherwise incurred, as further specified in Lease §§ 6(b)(3)(C), 8, and 10 |
| **Equipment Purchase** | *See* Lease § 19 and Schedule A |
| **Equipment Rent** | *See* table on page 1 of Lease. Rent payments include administrative-cost reimbursements and markups benefiting Lessor |
| **Federal Heavy Highway Vehicle Use Tax** | $10.58 per week (the $550 annual tax divided by 52 weeks) |
| **Late Charges** on amount of Equipment Rent and other charges due under Lease § 18 | 1.5% per month (18% annually) or maximum lawful rate if less |
| **Licenses, permits, taxes, other operating expenses**, related levies, fines, penalties, liens, and encumbrances pursuant to Lease § 2(c) | Amount Lessor paid or otherwise incurred |
| **Maintenance, repairs, parts, and towing charges** not covered by Lessor under Lease § 6(b) | Amount Lessor paid outside vendor or, if Lessee elected to obtain products or services from Lessor-designated third-party maintenance provider, the amount Lessor paid such provider, plus markups resulting in prices or rates (which shall be provided to Lessee upon request at the time Lessee purchases or places an order for items) competitive with other vendors in the relevant market(s). The third-party provider's labor rates include an admin. fee to Lessor's affiliated motor carrier of approximately $5 per hour. |
| **Modifications to Equipment** – Expenses relating to such modifications to the extent Lease § 6(c) makes Lessee responsible for the expenses | Amount Lessor paid or otherwise incurred |
| **Security Deposit** escrow fund contributions | *See* Schedule C |
| **Termination-related expenses and losses** under Lease § 13, including Equipment Rent and other amounts due under this Lease; expenses and losses in returning the Equipment to its condition when leased, in replacing any missing equipment or accessories, in selling or leasing the Equipment to a third party, in returning the Equipment to Lessor's facility, and in securing possession of the Equipment | Amount Lessor paid or otherwise incurred. With respect to any necessary refurbishment of the Equipment: if done at a facility owned or operated by Lessor or one of its affiliates, the amount Lessor or the affiliate incurred, plus markups resulting in prices or rates (which will be posted or otherwise provided to Lessee upon request at the time Lessee places an order) competitive with third-party vendors in the relevant market(s) |

2. **Information Regarding Deductions**. Lessor shall provide Lessee with a written explanation and itemization of any deductions for cargo or property damage before making them. With respect to all charge-backs and deductions, Lessor shall make available to Lessee, upon request, copies of those documents that are necessary to determine the validity of the charge-back or deduction.

3. **Changes in Existing Deduction Items.** If an item in any of the above columns will be changing, Lessee will be so notified by personal delivery, satellite communication, fax, or other written notice. In any event, Lessee shall not be subject to any such change until thirty (30) days after such notice or such later time as is set forth in the notice. **Lessee's failure, by the end of 30 days after such notice, to notify Lessor of any objection to the change shall constitute Lessee's express consent and authorization to the carrier with whom Lessee has entered into an ICOA to implement the change and modify accordingly the deductions from Lessee's settlement compensation, beginning immediately after the 30-day period.** If Lessee fails to notify Lessor of Lessee's objection within the 30-day period -- or if Lessee notifies Lessor of Lessee's objection within the 30-day period and Lessee and Lessor are then unable to resolve the matter to Lessee's and Lessor's mutual satisfaction -- Lessee and Lessor shall each have the right to terminate this Lease immediately thereafter. Section 13 of this Lease ("Remedies of Lessor") shall then apply in all respects except that Lessee shall owe no Overall Lease Payments for periods beginning after the date of termination.

**THIS SCHEDULE D, which completely replaces and supersedes any earlier schedule, addendum, or other provisions of this Lease relating to the same subjects, is agreed to by the undersigned parties as of the latest date set forth below.**

| **LESSEE** | **LESSOR: CRST Lincoln Sales, Inc.** |
|---|---|
| By: **X** [signature] Signature | By: [signature] Signature |
| Printed Name and Title | Jan M. Wiltgen Printed Name and Title |
| 01-03-18 Date | 4/4/18 Date |




CRST000146

## SCHEDULE E

## PREVENTIVE MAINTENANCE SCHEDULE

| PERFORM EVERY 40,000 MILES: | | |
|---|---|---|
| ☐ Lubricate & inspect chassis | ☐ Change oil & filters | ☐ Inspect fan hub |
| ☐ Check all lube levels | ☐ Change fuel filters | ☐ Check king pins & tie rods |
| ☐ Inspect & inflate tires | ☐ Check air filter indicator | ☐ Check front wheel bearings |
| ☐ Check batteries | ☐ Inspect belts tension & condition | ☐ Check drivers equipment |
| ☐ Check safety equipment | ☐ Inspect air lines for rubbing & trailer lines | ☐ Check gear oil |
| ☐ Drain air tanks | ☐ Inspect tires & check for loose wheels | |
| ☐ Check lights | ☐ Inspect for air leaks (pressure loss) | |
| ☐ Test anti-freeze to -40° | ☐ Check clutch free travel | |
| ☐ Check oil in front wheels | ☐ Check suspension | |
| ☐ Adjust steering axle & drive axle, brakes & check lining thickness | ☐ Check & record Nalcol level ppm | |
| ☐ Check annual inspection | ☐ Change water filter | |
| **IN ADDITION -** | **Perform once each year:** ☐ Change power steering filter & fluid | |
| | **Perform every 360,000 Miles:** ☐ Change air dryer cartridge | |

**This SCHEDULE E, which completely replaces and supersedes any earlier schedule, addendum, or other provisions of the Lease relating to the same subjects, is agreed to by the undersigned parties as of the latest date set forth below.**

**LESSEE**

By: **X** Anthony Dewitt
Signature

______________________
Printed Name and Title

01-03-18
Date

**LESSOR: CRST Lincoln Sales, Inc.**

By: Jan M Wiltgen
Signature

Jan M. Wiltgen
Printed Name and Title

4/4/18
Date