**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| ANTHONY CERVANTES and MIKE CROSS, *individually and on behalf of all other similarly situated persons*, | No. 20-CV-75-CJW-KEM |
| Plaintiffs, | **ORDER** |
| vs. | |
| CRST INTERNATIONAL, INC. and CRST EXPEDITED, INC., | |
| Defendants. | |

_____

**TABLE OF CONTENTS**

I.     BACKGROUND ............................................................................ 4

II.    CLASS ACTION CERTIFICATION STANDARD ................................ 7

     A.    Rule 23(a) Prerequisites .......................................................... 8

          1.    Numerosity ................................................................. 8

          2.    Commonality .............................................................. 9

          3.    Typicality ................................................................. 11

          4.    Adequacy .................................................................. 12

     B.    Rule 23(b) Requirements ....................................................... 13

III.   COUNT 2 – MINIMUM WAGE ..................................................... 15

     A.    Statute ................................................................................. 15

Case 1:20-cv-00075-CJW-KEM   Document 276   Filed 06/14/22   Page 1 of 72

B. Arguments ........................................................................17

C. Analysis ............................................................................19

    1. Rule 23(a)(2) Commonality .............................................21

    2. Rule 23(b)(3) Requirements...........................................23

IV. COUNT 3 –UNLAWFUL DEDUCTIONS...........................................26

A. Statute ...............................................................................27

B. Analysis..............................................................................27

    1. "Employee"...................................................................28

    2. "Accruing to the Benefit" .............................................35

    3. Rule 23(a)(2) Commonality .............................................37

    4. Rule 23(b)(3) Requirements...........................................38

V. COUNT 4 – UNJUST ENRICHMENT ...............................................39

A. Common Law.......................................................................39

B. Arguments ..........................................................................41

C. Analysis..............................................................................42

    1. Choice of Law..............................................................42

    2. Re-Contracting ............................................................47

    3. Rule 23(a)(2) Commonality .............................................48

    4. Rule 23(b)(3) Requirements...........................................50

VI.    COUNT 5 - FRAUD ......................................................................53

      A.    Common Law............................................................................53

      B.    Arguments...............................................................................54

      C.    Analysis...................................................................................54

            1.    False Representation .....................................................55

            2.    Reliance ..........................................................................57

            3.    Justifiable........................................................................61

            4.    Rule 23(a)(2) Commonality ...........................................63

            5.    Rule 23(b)(3) Requirements...........................................65

VII.   COUNT 6 – TRUTH IN LEASING ACT .............................................65

      A.    Statute.....................................................................................66

      B.    Arguments...............................................................................67

      C.    Analysis...................................................................................68

            1.    Rule 23(a)(2) Commonality ...........................................68

            2.    Rule 23(b)(3) Requirements...........................................69

VIII.  LOCAL RULE COMPLIANCE........................................................71

IX.    CONCLUSION ...........................................................................72

Case 1:20-cv-00075-CJW-KEM   Document 276   Filed 06/14/22   Page 3 of 72

This matter is before the Court on plaintiffs' Motion to Certify Counts 2–6 as Rule 23(b)(3) Class Actions. (Doc. 244). Defendant timely resisted. (Doc. 257). Plaintiffs timely replied. (Doc. 263).

For the following reasons, the Court **holds in abeyance in part and denies in part** plaintiffs' motion. Specifically, the Court finds Count 2 appropriate for certification, but holds in abeyance the certification. The Court finds Count 3 inappropriate for class certification for failure to satisfy Rule 23(a)(2) and Rule 23(b)(3). The Court finds Counts 4–6 inappropriate for class certification for failure to satisfy Rule 23(b)(3).

## I.     BACKGROUND

The Court need not accept the allegations in a plaintiff's complaint as true when ruling on a motion for class certification. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 520 (N.D. Iowa 2003) ("Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23."); *Gries v. Standard Ready Mix Concrete, L.L.C.*, 252 F.R.D. 479, 482–84 (N.D. Iowa 2008). Thus, the Court does not simply accept the allegations in plaintiffs' complaint as true here.

Plaintiffs are former truck drivers for CRST Expedited, a motor carrier. (Docs. 108, at 4–5; 155, at 8–9). Defendants are CRST Expedited and CRST International (collectively, "CRST" or defendants). Plaintiffs allege that CRST Expedited classified plaintiffs and other truck drivers as independent contractors ("the Drivers"[1]), not as employees. (Doc. 108, at 2). Plaintiffs allege that at the start of their working

---

[1] Plaintiffs refer to Drivers as "Lease Operators." (*See* Docs. 244; 245-2). Because Drivers are putative class members, the Court will often use this term to refer to the putative class.

relationship, CRST Expedited required the Drivers to sign an Equipment Lease (the "Lease") and an Independent Contractor Operating Agreement ("ICOA"). (*Id.*, at 11). The Lease gave the Drivers the option to lease a truck from CRST Lincoln Sales, Inc. ("CRST Lincoln"), (Doc. 257-4, at 2), which plaintiffs allege is a subsidiary of CRST International. (Doc. 108, at 11). Plaintiffs allege that the ICOA required Drivers to lease their trucks to CRST Expedited for use in hauling its loads. (Doc. 108, at 11–12). Thus, plaintiffs claim, this resulted in many but not all Drivers leasing a truck from CRST Lincoln only to lease it back to CRST Expedited. (*Id.*, at 12).

Plaintiffs allege the ICOA misclassified Drivers as independent contractors in part so that CRST could shift the costs of operating the trucks on to the Drivers. (Doc. 108, at 2). Plaintiffs allege this framework resulted in Drivers often earning less than the minimum wage or receiving no payment at all. (*Id.*, at 1–2). Plaintiffs allege CRST International was complicit in this scheme because it provided management and operational services to CRST and was involved in setting the Drivers' wages, working conditions, and classification.[2] (*Id.*, at 5–6). In sum, plaintiffs conclude they and other Drivers were not independent contractors but rather employees of CRST. (*Id.*, at 1–2, 6, 24–25).

The Third Amended Complaint asserts the following six claims on behalf of plaintiffs and similarly situated Drivers: (1) failure to pay minimum wage in violation of Title 29, United States Code, Section 206 of the Fair Labor Standards Act ("FLSA"); (2) failure to pay minimum wage in violation of Iowa Code Section 91D.1; (3) failure to

---

[2] Defendants largely dispute plaintiffs' allegations as to CRST International, including the role plaintiffs allege that CRST International played in managing and advising CRST Expedited. (*See, e.g.*, Docs. 108, at 5–6, 11; 155, at 8–11, 19). The Court does not reach this dispute, however, because any question as to which defendant could be liable for the claims alleged would be common among plaintiffs and the putative class members. Defendants also do not argue plaintiffs' motion should be denied on this ground.

pay all wages due and unlawful deductions in violation of Iowa Code Section 91A.5; (4) unjust enrichment under Iowa law; (5) fraud under Iowa law;[3] and (6) violation of the Truth in Leasing Act ("TILA"), Title 49, United States Code, Section 14704. (*Id.*, at 28–29).

On October 23, 2020, plaintiffs moved to conditionally certify a collective action on Count 1, their FLSA claim. (Doc. 109). The Court granted plaintiffs' motion to certify the collective.[4] (Doc. 147).

On December 4, 2020, defendants moved to dismiss plaintiffs' claims for fraud, the TILA violations, and unjust enrichment for failure to state a claim, and to dismiss CRST International as a defendant. (Doc. 125). The Court granted defendants' motion as to plaintiffs' TILA claim under Section 376.12(d). (Doc. 150). The Court denied defendants' motion as to plaintiffs' claims for fraud, TILA claims under Sections 376.12(g) and 376.12(h), and unjust enrichment, and CRST International's status as a defendant. (*Id.*).

On December 15, 2021, plaintiffs filed their Motion to Certify Counts 2–6 as Rule 23(b)(3) Class Actions. (Doc. 244). Plaintiffs seek to certify the following class:

> All Lease Operators who drove for CRST Expedited Inc. as a Team Driver, Lead Driver, or Solo Driver pursuant to an Equipment Lease to lease a truck from CRST Lincoln Sales, Inc. and an Independent Contractor Operating Agreement ("ICOAs") with CRST Expedited, Inc. and who have not leased more than one truck at a time to CRST during the applicable limitations period, subject to any equitable tolling and equitable estoppel.

---

[3] Although the Third Amended Complaint does not specifically state that plaintiffs' unjust enrichment and fraud claims are made under Iowa law, (Doc. 108, at 27–28), the parties apply Iowa law, and the Court has considered these common law claims under Iowa law. (*See* Doc. 150, at 3 n.1).

[4] In ruling on plaintiffs' motion (Doc. 109), the Court also granted in part plaintiffs' motion for issuance of notice, and denied without prejudice to reassertion plaintiffs' motion for equitable estoppel. (Doc. 147).

(*Id.*, at 1).

The Court now considers this motion, addressing each count in turn.

## II.     CLASS ACTION CERTIFICATION STANDARD

Class certification is an exception to the norms of litigation. *Wal-Mart v. Dukes*, 564 U.S. 338, 348 (2011). To justify a departure from these norms, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (internal quotation omitted). Only then does "a proposed class ha[ve] sufficient unity so that absent members can fairly be bound by decisions of class representatives" and a court can appropriately certify the class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997).

Federal Rule of Civil Procedure 23 governs class certification.

To show that class certification is appropriate, the named plaintiff must satisfy all Rule 23(a) prerequisites for a class action, and demonstrate that one of Rule 23(b)'s class-action types applies. *Dukes*, 564 U.S. at 349; FED. R. CIV. P. 23; *see also Postawko v. Mo. Dep't of Corrections*, 910 F.3d 1030, 1036 (8th Cir. 2018) ("Plaintiffs carry the burden of showing that they have met [the Rule 23] requirements."). Plaintiffs "must affirmatively demonstrate . . . compliance with . . . Rule [23]—that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350–51. Determining whether a named plaintiff and class members share the same interest and same injury under Rule 23 such that class certification is appropriate "grants courts no license to engage in free-ranging merits inquiries." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). A court should not focus on "the final disposition of a plaintiff's claims." *Postawko*, 910 F.3d at1037.

7

## A. Rule 23(a) Prerequisites

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) The class is so numerous that joinder of all members is impracticable;

(2) There are questions of law or fact common to the class;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) The representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). These are commonly referred to as the numerosity, commonality, typicality, and adequacy requirements. *Falcon*, 457 U.S. at 148.

A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.*, at 161. "[A]ctual, not presumed, conformance with Rule 23(a)" is "indispensable." *Dukes*, 564 U.S. at 350–51.

The Court now addresses each Rule 23(a) prerequisite in turn.

### 1. Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The Eighth Circuit Court of Appeals has not established a minimum number of plaintiffs that makes joinder impracticable and a class action desirable. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 599 (8th Cir. 1982). This Court has recognized that "a good rule of thumb" for determining whether the class was sufficiently numerous is if the proposed class is more than forty people. *Richter v. Bowen*, 669 F. Supp. 275, 281 n.4 (N.D. Iowa 1987); *see also Alberts v. Nash Finch Co.,* 240 F.R.D. 299, 409 (D. Minn. 2007). More recently, however, this Court has cited a wide variety of class certification cases, both in and outside the Eighth Circuit, stating that a finding of numerosity turns in part on the facts

of the case. *See Sanft*, 214 F.R.D. at 520–21. *Compare, e.g.*, *Bublitz v. E.I. du Pont de Nemours and Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001) (holding a seventeen-member class sufficient, based on the "fear that comes with suing one's employer") *with, e.g.*, *Gries*, 252 F.R.D. at 488 (holding that plaintiffs' proposed class of ninety members whose identities were known and who were geographically concentrated was not "sufficiently large to meet the numerosity requirement").

The Court does not discuss numerosity in its analysis because it finds this requirement easily met as to each claim, and defendants do not resist plaintiffs' motion on numerosity grounds.

Here, the proposed class has approximately 2,000 members (Doc. 247, at 17) well beyond the typical forty-person threshold for numerosity. *See Richter*, 669 F. Supp. at 281 n.4; *Alberts,* 240 F.R.D. at 409. As such, this class size is sufficiently large that joinder is impracticable, and a class action is desirable. The proposed class is also comprised of employees allegedly misclassified as independent contractors. As such, the facts of the case also weigh in favor of certification in light of the fear that comes with suing one's employer. *See Bublitz*, 202 F.R.D. at 256. For these reasons, the Court finds that plaintiffs satisfy the numerosity requirement as to each of their claims.

### 2. *Commonality*

Rule 23(a)(2) first requires the existence of "questions of law or fact common to the class," though not all "question[s] of law or fact [must] be common to every member of the class." *Paxton*, 688 F.2d at 561. The existence of common questions alone, however, is insufficient; the common questions must also "generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)). "Dissimilarities within the proposed class . . . impede the generation of common answers." *Id.*

9

Second, a plaintiff must show that such questions of law are "applicable in the same manner to each member of the class." *Falcon*, 457 U.S. at 155 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). The *Dukes* Court calls this "a common contention." *Dukes*, 564 U.S. at 350. By demonstrating that a common contention exists, a plaintiff must show that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*, at 350.

Third, "a plaintiff must demonstrate that the class members have suffered the same injury" based on this common contention. *Dukes*, 564 U.S. at 349–50 (quotation omitted). Although a named plaintiff is not required to show that the class members suffered *identical* injuries, the plaintiff must show that the class members suffered the *same kind* of injuries rooted in a common cause. *See id.* at 350; *Falcon*, 457 U.S. at 148. Showing that all class members were subject to the same harm is sufficient to satisfy commonality's injury requirement. *See* Fed. R. Civ. P. 23; *Dukes*, 564 U.S. at 349–51 (requiring plaintiff to show that there are in fact common questions, including as to injury); *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 337–38 (S.D. Iowa 2013). Whether class members in fact suffered an injury is a question for the merits. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457 (2016).

In cases when a plaintiff seeks class certification under Rule 23(b)(3), the commonality requirement overlaps with Rule 23(b)(3)'s predominance of common questions requirement, which is more demanding. *See, e.g.*, *Cruz v. TMI Hosp., Inc.*, Case No. 14–cv–1128 (SRN/FLN), 2015 WL 6671334, at *7 (D. Minn. Oct. 30, 2015) (citing *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 376–77 (8th Cir. 2013)). Here, plaintiffs seek certification under Rule 23(b)(3) as to each of their claims. (Doc. 244). Defendants argue plaintiffs cannot show commonality or predominance as to several claims. (Doc. 257).

### 3. *Typicality*

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Typicality is "a demonstration that there are other members of the class who have the same or similar grievances as the [class representative]." *Paxton*, 688 F.2d at 562 (finding typicality requirement satisfied because plaintiffs and other employees were similarly denied timely promotions based on their race). Typicality "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (citing *Paxton*, 688 F.2d at 562).

Typicality may appropriately be found when the plaintiff's claim is "based on patterns and practices not special or unique to [them] and [they] ha[ve] *made a showing that a significant number of other members of the class have been similarly victimized* by the same patterns and practices." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir. 1977) (emphasis added). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

"The commonality and typicality requirements of Rule 23(a) tend to merge" because both require that plaintiffs show that they and the proposed class members suffered the same injury. *Falcon*, 457 U.S. at 157, 157 n.13. "Both [requirements] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 157 n.13.

The Court does not separately discuss typicality in its analysis because it finds this requirement satisfied as to each claim, and defendants do not resist plaintiffs' motion on

11

typicality grounds. Still, plaintiffs must satisfy typicality. Thus, throughout the Court's analysis, its discussions of commonality also serve as a discussion of typicality. *See id.* at 157, 157 n.13.

### 4. *Adequacy*

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." To make this determination, a court must ascertain "whether: (1) the class representatives have common interests with the members of the class, and (2) the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562–63; *Rattray v. Woodbury Cty., Iowa*, 253 F.R.D. 444, 455 (N.D. Iowa 2008), *aff'd sub. nom. Rattray v. Woodbury Cty., IA*, 614 F.3d 831 (8th Cir. 2010).

The Court does not discuss adequacy in its analysis because it finds this requirement easily met as to each claim, and defendants do not resist plaintiffs' motion on adequacy grounds.

Here, the Court finds that plaintiffs will adequately protect the class interests as class representatives. The named plaintiffs' interests are substantively the same as those of the putative class members. (*See* Doc. 247, at 20). Plaintiffs cite no conflicts with the class members, (*Id.*), and defendants point to none. As such, the class representatives have shown they have common interests with the members of the class. *See Paxton*, 688 F.2d at 562–63; *Rattray*, 253 F.R.D. at 455. Plaintiffs have also vigorously prosecuted their claims thus far, dedicated significant time and energy to their case, and remain committed to representing other Drivers with the continued support of their qualified counsel. (Docs. 245-28; 247, at 20). As such, the class representatives have shown they will vigorously prosecute the interests of the class through qualified counsel. *See Paxton*, 688 F.2d at 562–63; *Rattray*, 253 F.R.D. at 455. For these reasons, the Court finds that plaintiffs satisfy the adequacy requirement as to each of their claims.

12

Having described the Rule 23(a) prerequisites, the Court now turns to the Rule 23(b) requirements.

## B.   *Rule 23(b) Requirements*

In addition to the Rule 23(a) prerequisites for class certification, the proposed class must also satisfy the requirements of one subsection of Rule 23(b), thereby demonstrating that the suit is the type of case the Federal Rules of Civil Procedure deem appropriate for class action resolution.  *See* FED. R. CIV. P. 23(b).  Here, plaintiffs seek certification under Rule 23(b)(3).  (Doc. 244).

Rule 23(b)(3) authorizes a class action when "the court finds that [1] the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [2] that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3) (emphasis added).  In determining whether common questions predominate and whether class-action resolution is superior, matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id*.  Use of the class method is warranted when class members are not likely to file individual actions because the cost of litigation would dwarf any potential recovery.  *See Amchem,* 521 U.S. at 617.

"An individual question is one where members of a proposed class will need to present evidence that varies from member to member."  *Tyson*, 577 U.S. at 453 (quotation omitted).  "If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question."  *Avritt v. Reliastar Life Ins.Co.*,

615 F.3d 1023, 1029 (8th Cir. 2010). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson*, 577 U.S. at 453 (quotation omitted).

Again, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered on the merits in favor of the class." *Amgen*, 568 U.S. at 459. "To determine whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings." *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005). But, in doing so, "the court must look only so far as to determine whether, given the factual setting of the case, *if the plaintiffs' general allegations are true*, common evidence could suffice to make out a prima facie case for the class." *Id.*, at 567 (emphasis added).

Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Id.* at 469 (internal quotation and alterations omitted). Additionally, failure of proof is "properly addressed at trial or in a ruling on a summary-judgment motion" and "should not be resolved in deciding whether to certify a proposed class." *Id.* at 470.

"In adding 'predominance' and 'superiority' to the qualification-for-certification list, the [Federal Rules of Civil Procedure] Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615 (quoting FED. R. CIV. P. 23, Advisory Committee notes to 1966 Amendment, section (b)(3)). Thus, Rule 23(b)(3)'s "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy," "test[ing] whether proposed classes

14

are sufficiently cohesive to warrant adjudication by representation." *Id.*, at 623. In a proper Rule 23(b)(3) action, "[p]redominance and superiority are self-evident." *Dukes*, 564 at 363.

Defendants argue plaintiffs cannot show predominance or superiority as to several claims. (Doc. 257). In assessing defendants' arguments as to superiority, the Court focuses on the likely difficulties in managing a class action on the relevant claim. *See* FED. R. CIV. P. 23(b)(3)(D). Defendants base their superiority arguments on this factor and the Court does not find that any of the other enumerated factors show a lack of superiority based on the record here.

Having described Rule 23(b)(3)'s requirements, the Court now turns to examine the parties' arguments as to each Count plaintiffs seek to certify as a class action.

The Court finds Count 2 appropriate for certification, but holds in abeyance the certification. The Court finds Count 3 inappropriate for class certification for failure to satisfy Rule 23(a)(2) and Rule 23(b)(3). The Court finds Counts 4–6 inappropriate for class certification for failure to satisfy Rule 23(b)(3).

### III.    COUNT 2 – MINIMUM WAGE

Plaintiffs seek class certification of their claim that CRST failed to pay minimum wage under Section 91D.1 of the Iowa Code. (Doc. 244). For the following reasons, the Court finds class certification of this claim is appropriate.

#### A.    Statute

Section 91D.1 provides:

Every employer, as defined in the federal Fair Labor Standards Act of 1938, . . . shall pay to each of the employer's employees, as defined in the federal Fair Labor Standards Act of 1938, as amended to January 1, 2007, the state hourly wage stated in paragraph "a", or the current federal minimum wage, . . . , whichever is greater.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," "includ[ing] a public agency" but not a labor organization. 29 U.S.C. § 203(d). The parties do not dispute that CRST is an employer under the FLSA.

The FLSA defines "employee" as "any individual employed by an employer." *Id.* at § 203(e)(1). Section 203(g) states that "employ" "includes to suffer or permit to work." *Id.* at § 203(g). The Section lists some exceptions to the definition of "employee," but none apply here. *See id.*, at § 203 (e)(2) (exception for persons employed by a public agency); § 203(e)(3) (exception for immediate family members working in agriculture); § 203(e)(4) (exception for volunteers under particular public agencies or political subdivisions).

Iowa Code Section 91D.1 also states another exception: "For purposes of this chapter, 'employee' does not include an independent contractor as described in section 85.61, subsection 11, paragraph 'c', subparagraph (3)." § 91D.1(4). Section 85.61(11)(c)(3) provides that an owner–operator is an independent contractor if the owner-operator owns a licensed and registered truck and certain "conditions are substantially present." Section 91D.1(4), however, did not become effective until July 1, 2020. *See* 2020 Iowa Acts Ch. 1069, S.F. 2296, § 2, eff. July 1, 2020; 2020 Iowa Legis. Serv. Ch. 1069 (S.F. 2296) (West). Because plaintiffs filed their Third Amended Complaint on October 23, 2020, (Doc. 108), their proposed class as defined could include Drivers who signed with CRST between July 1, 2020, and October 23, 2020. The parties do not address this new provision and its analysis, although CRST mentions its existence in a footnote. (Doc. 257, at 18 n.4). The Court notes that plaintiffs' class definition

16

includes all those people who "drove"—that is, in the past tense—for CRST under certain conditions enumerated in the definition.[5]

To entertain two analyses determining whether certain Drivers are independent contractors and thus not employees would be untenable in a class action. Although the Court could certify a subclass, plaintiffs do not request one for this purpose. Thus, the Court considers plaintiffs' claim only as to the old analysis distinguishing employees from independent contractors, which existed before the new analysis took effect on July 1, 2020, as invoked by Sections 91D.1(4) and 85.61(11)(c)(3). If the Court certifies plaintiffs' class as to this claim, it will amend the definition to limit class membership to Drivers who signed their ICOAs before July 1, 2020. *See Lumen v. Anderson*, 280 F.R.D. 451, 455 (W.D. Mo. 2012) (citing *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 & n.7 (5th Cir. 2012) ("Plaintiffs' proposed definition is not binding, and [the Court is] free to modify it if [the Court] deem[s] it necessary to do so."); *Montoya v. CRST Expedited, Inc.*, 311 F. Supp. 3d 411, 423–24 (D. Mass. 2018) (certifying a "narrowed class" absent a motion to do so); *see also Amchem,* 521 U.S. at 617.

## B. Arguments

In their brief, plaintiffs rely on the Court's order granting in part conditional certification of plaintiffs' FLSA claim, which also rests on the independent

---

[5] Plaintiffs and defendants agree that plaintiff Anthony Cervantes worked for CRST and no longer works for CRST. (*See* Docs. 108, at 4 (claiming Cervantes worked "from approximately January 2018 to August 2019"); 155, at 8 (claiming Cervantes worked from "January to February 2018 and again from March 2018 until August 2019")). Plaintiffs and defendants, however, dispute whether plaintiff Mike Cross still works for CRST. (*See* Docs. 108, at 5 (claiming Cross "works for CRST as a truck driver and has been misclassified by CRST as an independent contractor since approximately October 2018."); 155, at 7–8 (claiming Cross worked from "January to February 2018 and again from March 2018 until August 2019," thus denying his continued employment)). Regardless of whether plaintiff Cross continues to work for CRST, both plaintiffs' alleged misclassification is based on the relationship described in their ICOAs, which were signed prior to July 1, 2020.

contractor/employee classification, to support their wage-payment claims.[6]  (*See* Doc. 247, at 22–23).  In resistance, defendants assert that because plaintiffs rely on the Court's conditional certification of their FLSA claim to support their motion for class certification of their wage-payment claims, the Court should deny plaintiffs' motion as to the wage-payment claims because conditional certification under the FLSA does not require the rigorous analysis of a class-action certification.   (Doc. 257, at 19). Defendants then argue that no common proof exists that the Drivers should be classified as employees, not independent contractors, under Iowa's common-law test.  (*Id.*, at 18–21).  In reply, plaintiffs argue defendants' factual distinctions are "inconsequential or irrelevant" because plaintiffs have "already established that their claims for misclassification, unlawful deductions, and failure to pay minimum wages arise from the materially uniform contract and policies of CRST and present questions common to the class of Drivers."  (Doc. 263, at 6).  Plaintiffs argue the relevant "issue is not [CRST's] exercise of control over Drivers, but rather its *right* to control Drivers, so any variations in how it exercises that control—*i.e.*, variation in the experiences of individual Drivers— is irrelevant."  (*Id.*, at 7–8).

Defendants then argue that plaintiffs do not show that the Drivers are employees because they are "interstate workers" who work throughout the country and are thus not employed *in* the state of Iowa, as required by the statute's definition of "employee." (Doc. 257, at 21–23 (citing *Runyon v. Kubota Tractor Corp.*, 653 N.W.2d 582, 585–86 (Iowa 2002); *Montoya*, 311 F. Supp. 3d at 423).  In reply, plaintiffs argue certification is proper because *Runyon* does not require that the worker be physically present in the state to be considered employed in the state for purposes of minimum wage.  (Doc. 263, at 9–11).  Instead, plaintiffs argue, it is sufficient that "all class members were hired in

---

[6] For ease of reference, the Court refers to Count 2 and Count 3, collectively, as plaintiffs' wage-payment claims.

Case 1:20-cv-00075-CJW-KEM   Document 276   Filed 06/14/22   Page 18 of 72

Iowa where they were required to complete a multi-day orientation and sign their initial ICOA and Lease" and that "their employment requires the continual provision of services to Defendants in Iowa," because "the work was totally integrated and inseparable from Defendants' Iowa business." (*Id.*).

Both parties' arguments as to whether plaintiffs and the putative class members are "in the state of Iowa" are inapposite because this language is from the Section 91A.2 definition of employee, not the FLSA definition of employee as incorporated by Section 91D.1.[7] Thus, the Court will not address them further here.

C.   *Analysis*

Because Section 91D.1's minimum-wage requirement only applies to employees as defined in the FLSA, the first question in plaintiffs' claim is whether the threshold issue of the named plaintiffs and putative class members' status as independent contractors or employees is a common question that satisfies Rule 23(a) and Rule 23(b)(3). Again, the minimum-wage statute relies on Section 203(e)(1) of the FLSA's definition of "employee," which turns on the word "employ." Section 203(g) of the FLSA defines "employ" as "includ[ing] to suffer or permit to work." The Court first looks to federal common law for guidance on whether, if plaintiffs' allegations are true, common evidence could suffice to make out a prima facie case that CRST employed plaintiffs and the putative class members. *See Blades*, 400 F.3d at 566.

Noting the facial breadth of the "suffer or permit to work" language, the Supreme Court has held it includes an express or implied compensation arrangement. *See Walling*

---

[7] This is true even though, as plaintiffs note in their Third Amended Complaint (Doc. 108, at 25), Section 91D.1 is enforced under Chapter 91A. Interpreting that enforcement as according to Chapter 91A's definition of "employee" instead of the definition expressly incorporated in Section 91D.1 would render much of Section 91D.1(1)(b) surplusage. *Thomas v. Gavin*, 838 N.W.2d 518, 524 (Iowa 2013); *see also* IOWA CODE § 4.4(2) ("In enacting a statute, it is presumed that . . . [t]he entire statute is intended to be effective.").

19

*v. Portland Terminal Co.*, 330 U.S. 148, 152–53 (1947). The Court declined to interpret the language as "mak[ing] a person whose work serves only his own interest an employee of another person who gives him aid and instruction." *Id.* Here, the parties do not dispute that a compensation arrangement existed between the Drivers and CRST. Thus, if plaintiffs' allegations are true, common evidence would suffice to make out a prima facie case that plaintiffs and the putative class members were employees under the FLSA, as required for a minimum-wage claim under Section 91D.1. *See Blades*, 400 F.3d at 566.

Because Section 91D.1 did not point to a specific definition of "independent contractor," Iowa common law guides that interpretation. "Under Iowa [common] law, in determining whether an individual is an employee or an independent contractor, 'the primary focus is on the extent of control by the employer over the details of the alleged employee's work.'" *Perez v. CRST Int'l, Inc.*, 355 F. Supp. 3d 765, 771 (N.D. Iowa 2018) (choice-of-law analysis) (citing *Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 542 (Iowa 1997)); *Miller v. Component Homes*, 356 N.W.2d 213, 216–17 (Iowa 1984). "If the right to control, the right to determine, the mode and manner of accomplishing a particular result is vested in the person giving service he is an independent contractor, if it is vested in the employer, such person is an employee." *Schlotter v. Leudt*, 123 N.W.2d 434, 436–37 (Iowa 1963).

Determining the right of control, however, involves analysis of at least twelve factors. *See Fesler v. Whelen Eng'g Co.*, 794 F. Supp. 2d 994, 1008–09 (S.D. Iowa 2011), *aff'd*, 688 F.3d 439 (8th Cir. 2012) (both applying Iowa law and compiling factors from several Iowa Supreme Court cases); *Perez*, 355 F. Supp. 3d at 771. Factors used to determine who has the right to control—and thus whether a person should be categorized as an employee or independent contractor—include:

(1) who had the right to control the physical conduct of the work; (2) whether the purported employee was on the employer's payroll; (3) the method of payment, whether by time or by job; (4) who provided the equipment to accomplish the work; (5) the individual's obligation to furnish necessary tools, supplies, and materials; (6) the existence of a contract for the performance of a certain kind of work at a fixed price; (7) the independent nature of the individual's business; (8) the individual's employment of assistants, with the right to supervise their activities; (9) the time for which the individual is employed; (10) whether the work is part of the regular business of the employer; (11) the intent of the parties; and (12) the right to control the progress of the work, except as to final results.

*Fesler*, 794 F. Supp. 2d at 1008–09 (both applying Iowa law and compiling factors from several Iowa Supreme Court cases); *Perez*, 355 F. Supp. 3d at 771.

Here, plaintiffs must show there is evidence showing that they are not independent contractors and can thus be considered employees for purposes of Section 91D.1, and that the same evidence will also suffice for each class member to make a prima facie showing that he or she is also an employee. *See Avritt*, 615 F.3d at 1029; *Blades*, 400 F.3d at 566.

### 1. *Rule 23(a)(2) Commonality*

With regard to the remaining elements of plaintiffs' minimum-wage claim, the Court finds plaintiffs satisfy all three prongs of the commonality requirement. Again, Rule 23(a)(2) first requires the existence of "questions of law or fact common to the class," though not all "question[s] of law or fact [must] be common to every member of the class." *Paxton*, 688 F.2d at 561. Second, a plaintiff must show that such questions of law are "applicable in the same manner to each member of the class." *Falcon*, 457 U.S. at 155 (quoting *Califano*, 442 U.S. at 700–701). Third, "a plaintiff must demonstrate that the class members have suffered the same injury" based on this common contention. *Dukes*, 564 U.S. at 349–350 (quotation omitted).

21

First, plaintiffs show that common questions of law and fact exist between plaintiffs' claim and the proposed class members' claims. Because the Court has already found in its analysis that common questions predominate, commonality is also satisfied because it only requires that common questions exist. *See Luiken*, 705 F. 3d at 376–77. As discussed, plaintiffs' and class members' minimum-wage claims depend on factual and legal questions about whether they were actually CRST employees under Section 91D.1. Thus, common questions of law and fact exist.

Second, plaintiffs show that a common contention exists between the class members' claims. Plaintiffs show the class presents both common questions and common answers, as *Dukes* requires. Here, for instance, the determination of whether CRST misclassified Drivers under the ICOA will "resolve an issue that is central to the validity of [plaintiffs' minimum-wage claim] in one stroke," (*Id.*); *See Dukes*, 564 U.S. at 350, because it is based on the materially similar agreement and is thus applicable to each class member in the same manner. *See Falcon*, 457 U.S. at 155.

Third, plaintiffs show that CRST's minimum-wage violations caused them to suffer the same injury as their proposed class members. *See Jones*, 257 F.R.D. at 186; *Rozo v. Principal Life Ins. Co.*, No. 4:14-CV-000463-JAJ-CFB, 2017 WL 2292834, at *3 (S.D. Iowa May 12, 2017). Specifically, plaintiffs allege that due to CRST's misclassification in materially similar contracts, plaintiffs and class members were not paid minimum wage as required by Section 91D.1. That their actual damages may vary does not defeat class certification because the damages would be based on the same formulaic calculation of the difference between what class members were paid and the minimum wage they were owed, even if that formula would yield different results for different class members. *See Blades,* 400 F.3d at 570 (affirming denial of class certification when calculations of price-fixing premium and damages "would involve a fact-intensive inquiry unique to each potential class member," though damages "may be

properly ascertained at a later time"); *Bell Atlantic Corp. v. AT&T Corp.,* 339 F.3d 294, 306 (5th Cir. 2003) (citing *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 342–343 (4th Cir. 1998)) (finding class certification "may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate damages is clearly inadequate"); *see also In re Genetically Modified Rice Litig.*, 251 F.R.D. 392, 398–99 (E.D. Mo. 2008) (collecting cases granting and denying class certification based on ease of calculating damages as a class).

In sum, the Court finds plaintiffs satisfy the commonality requirement.

Thus, the Court finds plaintiffs meet all four Rule 23(a) prerequisites for class certification.

### 2. *Rule 23(b)(3) Requirements*

The Court turns to the Rule 23(b)(3) analysis. Again, Rule 23(b)(3) authorizes a class action when "the court finds that [1] the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [2] that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3) (emphasis added).

Here, as described above, plaintiffs' and class members' claims derive from a specific, common question: whether CRST misclassified them as independent contractors instead of employees. If plaintiffs and class members were employees under Section 91D.1, then they would be entitled to minimum wage under Iowa law. In proving their claims, class members will rely on the ICOA's terms and CRST's policies and work conditions, which the record supports were materially the same across class members. *See Avritt*, 615 F.3d at 1029. This misclassification issue is the central issue in plaintiffs' minimum-wage claim; thus, because common questions predominate as to it, it is proper for this claim to be resolved via class action, even if other important matters, such as

damages or affirmative defenses as to specific individual class members, are tried separately. *See Tyson*, 577 U.S. at 453.

Here, plaintiffs show common evidence to make a prima facie showing of their allegations that they and class members are employees for purposes of Section 91D.1. Namely, as in their motion for conditional certification under the FLSA, plaintiffs highlight the ways CRST controlled the use of their trucks and their location and travel speed, and ensured plaintiffs' economic dependence on CRST, and prevented Drivers from working for other motor carriers, despite provisions to the contrary. (*See* Doc. 247, at 13–16). These facts will weigh in the determination of whether plaintiffs had the right to control the physical conduct of their work, independent nature of plaintiffs' work, and the intent of the parties as memorialized in the ICOA and Leases, which were materially the same among plaintiffs and the putative class members. *See Fesler*, 794 F. Supp. 2d at 1008–09; (*See also* Doc. 247, at 13–16). Further, the same evidence would suffice for each class member to make a prima facie showing that he or she, too, is not an independent contractor under Iowa law and is properly considered an employee under the FLSA.

Indeed, whether this evidence makes the Drivers independent contractors or employees depends on predominately common questions. It is established in the record that they signed materially uniform contracts and adhered to materially uniform policies set by CRST. (*See* Docs. 147, at 6 (citing Docs. 113-5, 113-8, & 113-9)), 247, at 22). Further, defendants do not dispute this. The questions of whether these contracts and policies controlled the Drivers' physical conduct, whether the Drivers were on the payroll, whether Drivers were paid by time or job, whether they were required to provide equipment, tools, supplies, and materials, whether the contract provided for work at a fixed price, whether the Drivers' business was independent in nature, whether the Drivers' work is part of CRST's regular business, the Drivers' and CRST's intent as

24

evidenced by the contract, and who retained the right to control the progress of the work are all questions based on the contract, and thus, are common among plaintiffs and putative class members. *See Fesler*, 794 F. Supp. 2d at 1008–09; *Perez*, 355 F. Supp. 3d at 771. That other questions—namely, whether the Drivers employed assistants and how long the Drivers were employed—present individual questions and does not mean that common questions do not predominate. *See Fesler*, 794 F. Supp. 2d at 1008-09; *Perez*, 355 F. Supp. 3d at 771. Again, the Court does not reach the merits of the claim at this stage. The claim may well fail on the merits. But if it does, it will do so based on the answers to predominately common questions. For these reasons, the Court finds predominance of common questions is self-evident here. *Dukes*, 564 at 363.

Superiority of resolution by class action is also self-evident.[8] *See id*. In resolving the minimum-wage claim by class action, the claims of approximately 2,000 Drivers can be resolved at once based on the application of Iowa law to the terms of materially similar ICOAs, and CRST's policies and work conditions. Resolution of the minimum-wage claim by class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Also, none of the factors listed in Rule 23(b)(3) weigh against the superiority of resolution by class action.

Thus, the Court finds plaintiffs satisfy Rule 23(b)(3) and that class certification under Rule 23(b)(3) as to Count 2 is appropriate.[9] As described below, however, the

---

[8] Defendants do not dispute the superiority of resolution of Count 2 by class action.

[9] The Court does not reach plaintiffs' alternative request that the Court certify a subclass based on when Drivers were physically present in Iowa, as determined by an undefined formula based on information in CRST's possession, if the Court finds that *Runyon* requires an employee's physical presence in the Iowa. (Doc. 263, at 14 n.2). As discussed, this geographic limitation

Court nevertheless holds in abeyance its certification of plaintiffs' minimum-wage claim pending plaintiffs' agreement to modify the purported class as follows:

> All Lease Operators who drove for CRST Expedited Inc. as a Team Driver, Lead Driver, or Solo Driver pursuant to an Equipment Lease to lease a truck from CRST Lincoln Sales, Inc., and an Independent Contractor Operating Agreement ("ICOA") with CRST Expedited, Inc. signed before July 1, 2020, and who have not leased more than one truck at a time to CRST Expedited, Inc. during the applicable limitations period, subject to any equitable tolling and equitable estoppel.

This class, which slightly modifies plaintiffs' requested language, (Doc. 244, at 1), prevents the Court from managing plaintiffs' claim under two analyses determining whether the employee or independent-contractor classification applies.[10]

## IV.    COUNT 3 –UNLAWFUL DEDUCTIONS

Plaintiffs next seek class certification of their claim that, in violation of Section 91A.5 of the Iowa Code, CRST failed to pay all wages due and made unlawful deductions from their pay.[11]    (Doc. 244).    The issues and arguments as to plaintiffs' unlawful-deductions claim are much the same as those in plaintiffs' minimum-wage claim.  (*See* Docs. 247, at 22–24; 257, at 18–23).  Defendants' argument against certification of the putative classes' unlawful-deductions claim hinges on their assertions that (1) plaintiffs lack common proof as to CRST's misclassification of Drivers as

---

arises in the Section 91A.2 definition of "employee," not the FLSA definition as incorporated by Section 91D.1.

[10] The Court notes that it has already conditionally granted collective action as to plaintiffs' FLSA claim.  (Doc. 147).  Joining an FLSA collective action and a Rule 23 class action under state law in one case creates the potential for "serious case management issues and the possibility of confusion relating to notice."  7B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1807 (3d ed. 2018).  To prevent such issues, the Court may consider bifurcating the claims or some other procedural step.

[11] For ease of reference, the Court refers to this claim as the unlawful-deductions claim.

independent contractors instead of employees, and (2) Section 91A.5 applies only to work performed inside Iowa. (Doc. 257, at 18–23). For the reasons described below, the Court finds that class certification of this claim is inappropriate because plaintiffs fail to satisfy the Rule 23(a)(2) and Rule 23(b)(3) requirements.

### A.  Statute

Section 91A.5(1) of the Iowa Code provides:

> An employer shall not withhold or divert any portion of an employee's wages unless:
> a. The employer is required or permitted to do so by state or federal law or by order of a court of competent jurisdiction; or
> b. The employer has written authorization from the employee to so deduct for any lawful purpose *accruing to the benefit of the employee*.

(emphasis added). Thus, the elements required to prove an unlawful-deductions claim differ from the minimum-wage claim in two substantial ways: (1) employee is not defined according to the FLSA, and (2) recovery is limited based on whether a benefit from the deduction accrued to the employee.

### B.  Analysis

For the following reasons, the Court finds certification of plaintiffs' unlawful-deductions claim is not appropriate.

The Court begins by determining whether, assuming plaintiffs' allegations are true, plaintiffs can show there is common evidence to make a prima facie case of the alleged employment. *See Avritt*, 615 F.3d at 1029; *Blades*, 400 F.3d at 566. The Court then turns to the question of whether plaintiffs allege that the deductions accrued to CRST's benefit under Section 91A.5, and then whether, assuming plaintiffs' allegations are true, there is common evidence to make a prima facie showing of accrual to CRST's benefit for each class member, meaning whether class members were employees is a common question. *See Avritt*, 615 F.3d at 1029; *Blades*, 400 F.3d at 566.

27

### 1. *"Employee"*

The Court first decides whether plaintiffs' employment status under Iowa Code Section 91A.2 is a common question. First, unlike Iowa Code Section 91D.1, Section 91A.5 does not define "employee." With no definition in the relevant statute, the Court turns to Chapter 91A's definition statute at Section 91A.2. That Section defines "employee" as "a natural person who is employed *in this state* for wages by an employer." IOWA CODE § 91A.2 (emphasis added). "Employer" is defined, in relevant part, as "a person, as defined in chapter 4, who in this state employs for wages a natural person. An employer does not include a . . . person who obtains professional services from a licensed person who provides the services . . . as an independent contractor." *Id.* at § 91A.2(4).[12]

Here, CRST argues it is not liable under Section 91A.5 because plaintiffs are independent contractors—not employees. (Doc. 256, at 18–21). Section 91A.2 incorporates Section 85.61(11)(c)(3)'s description of an independent contractor but provides no definition. Thus, the Court turns to Iowa common law for guidance on this term and to determine whether plaintiffs show common evidence to make a prima facie showing of their allegations that they and class members are not independent contractors.

---

[12] This section also provides that "an independent contractor as described in section 85.61, subsection 11, paragraph 'c', subparagraph (3)" is not an employee. *Id.* at § 91A.2(3)(c). Again, Section 85.61(11)(c)(3) provides that an owner–operator is an independent contractor if the owner-operator owns a licensed and registered truck and certain "conditions are substantially present." But, as with Section 91D.1(4), Section 91A.2(c) was not made effective until July 1, 2020. *See* 2020 Iowa Acts Ch. 1069, S.F. 2296, § 2, eff. July 1, 2020; 2020 Iowa Legis. Serv. Ch. 1069 (S.F. 2296) (West). As discussed, neither party advocated for a subclass based on this distinction and analyzing the Drivers' status under two tests depending on when they signed their ICOAs would complicate management of a class action. Thus, as above, the Court limits its discussion to the employee/independent–contractor analysis predating Section 91A.2(c).

Again, "[i]f the right to control, the right to determine, the mode and manner of accomplishing a particular result is vested in the person giving service he is an independent contractor[.]" *Schlotter*, 123 N.W.2d at 436–37.

As above, factors used to determine who has the right to control—and thus whether a person providing services can be categorized as an independent contractor—include:

> (1) who had the right to control the physical conduct of the work; (2) whether the purported employee was on the employer's payroll; (3) the method of payment, whether by time or by job; (4) who provided the equipment to accomplish the work; (5) the individual's obligation to furnish necessary tools, supplies, and materials; (6) the existence of a contract for the performance of a certain kind of work at a fixed price; (7) the independent nature of the individual's business; (8) the individual's employment of assistants, with the right to supervise their activities; (9) the time for which the individual is employed; (10) whether the work is part of the regular business of the employer; (11) the intent of the parties; and (12) the right to control the progress of the work, except as to final results.

*Fesler*, 794 F. Supp. 2d at 1008–09.

Here, common questions as to the right of control predominate over individual questions as to the nature of the Drivers' classification under Iowa common law. Again, it is established in the record that plaintiffs and class members signed materially uniform contracts and adhered to materially uniform policies set by CRST. (*See* Docs. 147, at 6 (citing Docs. 113-5, 113-8, & 113-9)), 247, at 22). Several questions as to the right of control are based on the contract. These questions include: (1) whether these contracts and policies controlled the Drivers' physical conduct; (2) whether the Drivers were on the payroll; (3) whether Drivers were paid by time or job; (4) whether they were required to provide equipment, tools, supplies, and materials; (5) whether the contract provided for work at a fixed price; (6) whether the Drivers' business was independent in nature; (7) whether the Drivers' work is part of CRST's regular business; (8) the Drivers' and CRST's intent as evidenced by the contract; and (9) who retained the right to control the

progress of the work.  Therefore, many questions as to the right of control are common among plaintiffs and putative class members.  *See Fesler*, 794 F. Supp. 2d at 1008–09. That other questions—namely, whether the Drivers employed assistants and how long the Drivers were employed—present individual questions and does not mean that common questions do not predominate.  *See id*.  Again, the Court does not reach the merits of the claim at this stage.  The claim may well fail on the merits.  But if it does, it will do so based on the answers to predominately common questions as to whether plaintiffs and the class members are employees or independent contractors.

Being an employee under Section 91A.2, however, has another limitation; one must also be employed *in the state of Iowa*.  This part of plaintiffs' employment status depends on individual questions.

Defendants rely on two cases for support in their argument that individual issues about where the Drivers were employed predominate: *Runyon v. Kubota Tractor Corporation*, 653 N.W.2d 582 (Iowa 2002) and *Montoya v. CRST Expedited, Inc.*, 311 F. Supp. 3d 411 (D. Mass. 2018).  (Doc. 257, at 21–23).

Although the Iowa Supreme Court had previously interpreted "employee" for purposes of Chapter 91A based on the common-law test, *see, e.g.*, *Miller*, 356 N.W.2d at 216–17, the *Runyon* court relied only on the statutory definition and principles of statutory interpretation.  653 N.W.2d at 585–86.  The *Runyon* court interpreted Section 91A.2(3) which, as discussed, defines "employee" as "a natural person who is employed in this state for wages by an employer."  *Id*.  The court found that the plaintiff was an employee for purposes of Chapter 91A because "he transacted substantial business and routinely performed services on behalf of Kubota within Iowa's borders."  *Id*. at 586. Still, as plaintiffs argue, (Doc. 263, at 11), the court did not state that transacting substantial business and routinely performed services on behalf of an employer within

Iowa's borders was the only way to render someone an employee, as defendants suggest. (Doc. 257, at 22).

As defendants note, the *Montoya* court declined to certify a class action based on interstate truckdrivers under Chapter 91A because "individual issues would overtake common ones" when determining whether the drivers were employees under the Chapter. (Doc. 257, at 21–23 (citing 311 F. Supp. 3d at 423 (applying *Runyon* and Iowa law))). This was so even though the Court found the "Drivers pass[ed] through Iowa," "c[a]me to Cedar Rapids for a variety of other work-related reasons," and "interface[d] with CRST's Iowa-based dispatchers, human resources staff, and payroll departments in the normal course of business."[13] *Montoya*, 311 F. Supp. 3d at 423.

For support that certification is proper under *Runyon*, plaintiffs point to *Perez v. CRST International, Inc.* (Doc. 263, at 11–13 (citing 355 F. Supp. 3d at 775)). There, after conducting a conflict-of-laws analysis, the Court determined that Iowa law applied because Iowa had the most significant relationship to the alleged misclassification of an

---

[13] Independently, the Court notes that the *Montoya* court certified two subclasses comprised of "Drivers [who] apparently performed relatively standardized tasks in Iowa for readily ascertainable periods of time"—one of Drivers who attended specific training sessions lasting one to three weeks in Iowa, and another of Drivers who attended specific training sessions lasting three days in Iowa. 311 F. Supp. 3d at 423–24. These subclasses included a subclass of Drivers who participated in Phase 1, a driver training program, and a subclass of Drivers who participated in Phase 2, an orientation in Cedar Rapids, Iowa which culminated in the Drivers signing employment contracts. *Id.* at 415. Phase 2 aligns with plaintiffs' and the putative class members' orientation experience here. The *Montoya* court certified these subclasses because the Drivers in the subclasses "were not paid at all" and, thus, "[i]f the law required [the Drivers] to be paid, no math is necessary to determine that a minimum-wage violation occurred." *Id.* at 423–24. Thus, the court reasoned "[t]he common question of whether these Drivers fall within the *Runyon* standard raises few, if any, individual issues," making class certification appropriate. Here, however, the question before the court is not a minimum-wage claim but rather an unlawful-deductions claim, in which plaintiffs allege CRST shifted operating expenses to the Drivers. (*See* Doc. 108, at 26–27). Thus, the Court does not find the *Montoya* court's certification persuasive here.

employee. *Perez*, 355 F. Supp. 3d at 775. Plaintiffs note similarities between the facts here and in *Perez*, including that plaintiffs "were required to go to Iowa to attend an in-person orientation session at the outset of their employment, were required to sign their Leases and ICOAs in the state of Iowa, received all of their working assignments through communications with driver managers/dispatchers located in Cedar Rapids, Iowa and were continually monitored by CRST from Iowa." (Doc. 263, at 12); *see also Perez*, 355 F. Supp. 3d at 775–76. Plaintiffs argue the Court's analysis in *Perez*, which relied in part on CRST's argument that Iowa law applied, is analogous here. (Doc. 263, at 9–13).

Plaintiffs' analogy to *Perez* is unavailing. Class certification is not proper under Iowa law just because Iowa law applies. *See Montoya*, 311 F. Supp. 3d at 423. After all, a conflict-of-laws analysis, as discussed in *Perez*, relies on different factors than a class certification analysis. *Compare Perez*, 355 F. Supp. 3d at 773[14] *with* FED. R. CIV. P. 23(a), (b)(3). The conflict-of-laws analysis looks to see where the parties' relationship is centered generally. Chapter 91A, and thus Section 91A.5, applies only when the employed party is employed in the state of Iowa. Where the parties' relationship is centered could differ from where people are employed.

Here, however, the Court does not determine whether the parties' relationship was centered in Iowa, but rather whether the plaintiffs and putative class members actually

---

[14] There, this Court enumerated the factors considered in its conflict-of-law analysis: "1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, place of incorporation, and place of business of the parties; 4) the place where the parties' relationship is centered; 5) the needs of the interstate and international systems; 6) the relevant policies of the forum; 7) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; 8) the protection of justified expectations; 9) the basic policies underlying the field of law; 10) certainty, predictability, and uniformity of result; and 11) ease in the determination and application of the law to be applied." *Perez*, 355 F. Supp. 3d at 773 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145).

engaged in services in the transaction of business in Iowa. Again, plaintiffs need not show they "transacted substantial business and routinely performed services on behalf of [CRST] within Iowa's borders" to show employment under Section 91A, as the plaintiff in *Runyon* did. Instead, the *Runyon* court summarized the plain meaning of employment in Iowa as "the actual engagement of services in the transaction of business" in Iowa. 653 N.W.2d at 586. Thus, the Court must determine if common questions predominate as to whether plaintiffs and putative class members actually engaged in services in the transaction of business in Iowa, such that class action certification is appropriate.

Plaintiffs assert that courts in other states have interpreted state wage acts as applying whenever the work benefits an employer, because employment is based on where the benefit of the work occurs, not where the work itself occurs. (Doc. 263, at 13–14 (citing *Dow v. Casale*, 989 N.E.2d 909, 911 (Mass. Ct. App. 2013) (analogizing choice-of-law analysis to wage-act analysis and finding that Massachusetts wage act applies to work benefitting the employer, no matter where it occurred); *Woods v. Mitchell Bros. Tuck Line*, No. 33094–6–II, 2008 WL 496803, at 2 (Wash. App. Feb. 26, 2008) (finding Washington wage act applied to trucker plaintiff who "traveled into Washington to [defendant's] terminal where [plaintiff] was dispatched on his trucking routes" and "[w]hen he finished a route, he would return to the Washington-based terminal, where he would file his bills of lading, await further dispatches, and receive his paychecks"); *Harlow v. Sprint Nextel Corporation*, 574 F. Supp. 2d 1224, 1226–27 (D. Kan. 2008) (finding Kansas wage act does not contain a geographic limitation and choice-of-law provision in parties' contract allowed for recovery under the wage act))).

Unlike the Iowa wage act, however, none of the state wage acts in plaintiffs' cited cases limit the definition of "employee" to a specific geographic location. *See Dow*, 989 N.E.2d at 910 (citing MASS. GEN. LAWS ch. 149 § 148); *see also* MASS. GEN. LAWS ch. 149 § 1 (defining "employee"); *Woods*, 2008 WL 496803, at *1 (citing WASH. REV.

CODE §§ 49.46.130(1); 49.48.010; 49.52.050(2)); *see also* WASH. REV. CODE § 49.46.010(3) (defining "employee"); *Harlow*, 574 F. Supp. 2d at 1226 (citing KAN. STAT. ANN. § 43-313 (defining "employee")). *Harlow*, however, does note that precedent in the Seventh and Ninth Circuit Courts of Appeal requires that a court must respect such geographic limitations. 574 F. Supp. 2d at 1226. Thus, the Court declines plaintiffs' invitation to look for common questions based on work benefitting CRST in Iowa, and instead looks to whether plaintiffs show common questions predominate as to whether they and the putative class members were employed in Iowa.

Here, the Court finds that individual questions would overtake common ones when determining whether the drivers were employees *in the state of Iowa* and thus entitled to the protections of Section 91A.5. *See Montoya*, 311 F. Supp. 3d at 423. In *Runyon*, the court found that the plaintiff was an employee under Chapter 91A because he transacted substantial business and routinely performed services on behalf of the defendant within Iowa's borders. 653 N.W.2d at 585–86. Thus, that court found that both "the actual engagement of services" and "the transaction of business" took place in the state of Iowa, based off the plaintiffs' own actions. Here, although plaintiffs and the putative class members all signed the ICOAs and Leases in Iowa and interfaced with CRST's Iowa-based team in many ways, the Court would need to engage in individualized inquiry as to whether each plaintiff and class member actually engaged in services in the transaction of business in Iowa. *See id.* Thus, the Court cannot find that common questions predominate as to the issue of whether Drivers were independent contractors or employees for purposes of an unlawful-deductions claim.

This issue with predominance also calls into question the superiority of resolution by class action. In resolving the unlawful-deductions claim by class action, the claims of approximately 2,000 Drivers can be resolved at once based on the application of Iowa law to the terms of materially similar contracts, and CRST's policies and work conditions.

34

But, considering the individual inquiries necessary, resolution of the unlawful-deductions claim by class action would likely not "achieve economies of time, effort, and expense" in the aggregate. *See Amchem*, 521 U.S. at 615. Indeed, class-action resolution of plaintiffs' unlawful-deductions claim would be difficult to manage. *See* FED. R. CIV. P. 23(b)(3)(D). Thus, the Court cannot find it self-evident that resolution by class-action resolution is superior. *Dukes*, 564 at 363.

The Court's concerns with individual questions overtaking common ones and the lack of superiority of resolution by class action as to the issue of employment under Chapter 91A are sufficient grounds to deny certification. Nevertheless, the Court continues its analysis.

### 2. *"Accruing to the Benefit"*

To recover for unlawful deductions, plaintiffs must also show that the deductions at issue—that is, operating expenses for the trucks used by the Drivers—were CRST's business expenses and not expenses accruing to the benefit of plaintiffs and class members. (*See* Doc. 247, at 23 (citing IOWA CODE § 91A.5)). Thus, the Court must also determine whether common questions predominate as to this issue.

Plaintiffs argue that because Drivers could not successfully haul loads for CRST unless the Drivers were in compliance with CRST's policies, the question of whether the putative class members' deductions were for their own benefit or for CRST's benefit is a common one. (*See* Doc. 247, at 23). Plaintiffs argue that "[w]hether [the] expenses are for the benefit of CRST or Drivers, for the purposes of §91.5 presents a legal question that is not dependent on individual facts." (*Id.*). The Court interprets plaintiffs' argument to mean that although the ICOA could be construed as written authorization for certain deductions, it cannot constitute a written authorization for the unlawful deductions of operating expenses alleged here (*See* Docs. 108, at 26; 247, at 23), because those operating expenses accrued to the benefit of the employer, CRST.

35

Plaintiffs point to several cases for support. (*See* Doc. 247, at 23–24). Some cases analyze conditional certification under the FLSA, which is subject to a lower evidentiary standard than class-action certification here. (*See id.* (citing *Montoya*, 404 F. Supp. 3d at 391–92, *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1020 (S.D. Iowa 2016)). Thus, although the Court notes these cases, it cannot and will not defer to them. Plaintiffs' other cases are less factually similar to this dispute. (*See id.* (citing *Rivera v. Brickman Grp., Ltd.*, Civ. No. 05-1518, 2008 WL 81570 (E.D. Pa. Jan. 7, 2008) (finding pre-employment costs of work visas and international, work-related travel benefitted employer for FLSA purposes); *Marshall v. SF of Ohio, Inc.*, No. C-2-77-931, 1981 WL 2309 (S.D. Ohio Jan. 1, 1981) (finding uniform-related costs for retail employees benefitted employer for FLSA purposes, based substantially on guidance issued by Department of Labor Administrator))).

The Court finds common questions do not predominate as to whether the expenses deducted from the class members' wages accrued to the benefit of the class members or CRST. As with the alleged misclassification, the putative class members' claims are based on the ICOA's terms and CRST's policies which, again, were materially similar among Drivers. But Drivers also signed materially similar Leases, which gave Drivers the option of purchasing the leased truck at the end of the lease term. (Doc. 257-4, at 10). Determining whether the operating expenses were CRST's business expenses or expenses accruing to a class members' benefit would hinge in substantial part on whether the class member purchased that truck. For instance, expenses for repairs, maintenance, and spare parts could accrue to the benefit of Drivers who purchased their leased trucks. (*See* Doc. 108, at 16–17). Thus, determining to whom the benefit of the operating expenses accrued would require investigating the individual circumstances of the relationship between each Driver and CRST. As such, individual questions predominate as to this issue.

36

### 3.       *Rule 23(a)(2) Commonality*

Here, the Court finds plaintiffs fail to satisfy all three prongs of the commonality requirement.

Plaintiffs satisfy the common questions and common injury prongs.  First, plaintiffs show that common questions of law and fact exist between plaintiffs' claim and the proposed class members' claims.  *See Paxton*, 688 F.2d at 561.  For instance, as discussed, plaintiffs' unlawful-deductions claim is based on two common questions: whether CRST misclassified them and whether deductions for operating expenses accrued to CRST's benefit.  If plaintiffs and class members are employees under Chapter 91A, then they are entitled to its protections.  If they are entitled to Chapter 91A's protections and the deductions accrued to CRST's benefit, then the deductions are unlawful, and plaintiffs and class members are entitled to reimbursement.

Plaintiffs also show defendants' unlawful deductions caused them to suffer the same injury as their proposed class members.  *See Jones*, 257 F.R.D. at 186; *Rozo*, 2017 WL 2292834, at *3.  Plaintiffs allege that CRST made deductions from their wages and the wages of the class members based on materially similar contracts and that these deductions were unlawful because the operating expenses deducted benefitted CRST, not the class members.  *See Dukes*, 564 U.S. at 350.  Again, that the class members' actual damages may vary does not defeat class certification because damages can be calculated with a formula to determine from CRST's records what operating expenses class members should not have been charged.  *See Blades,* 400 F.3d at 570 (8th Cir. 2005); *Bell Atlantic,* 339 F.3d at 306; *In re Genetically Modified Rice Litig.*, 251 F.R.D. at 398–99.

Plaintiffs, however, fail to show that a common contention exists between the class members' claims.  Though the determination of whether CRST misclassified Drivers will "resolve an issue that is central to the validity of [plaintiffs' unlawful-deductions claim]

in one stroke," *See Dukes*, 564 U.S. at 350, this question is not applicable to each class member in the same manner. *See Falcon*, 457 U.S. at 155. "Dissimilarities within the proposed class," both as to the misclassification issue and the benefit issue, "impede the generation of common answers." *See Id.*

Thus, the Court finds class certification under Rule 23(b)(2) as to Count 3 is not appropriate. This is sufficient ground on which to deny class certification. Nevertheless, the Court continues its analysis.

### 4.    *Rule 23(b)(3) Requirements*

Plaintiffs, however, must also show certification is appropriate under Rule 23(b)(3) and the Court finds they fail to do so here. The Court has found that individual questions predominate as to whether plaintiffs and class members are employees under Section 91A.2, such that they can avail themselves of Section 91.5's protections, and whether the benefit accrued to CRST's benefit, such that the unlawful-deductions claim is appropriate for class-action resolution. Thus, predominance is not self-evident here. *See Dukes*, 564 at 363.

The Court also does not find superiority to be self-evident. *Id.* In resolving the unlawful-deductions claim by class action, the claims of approximately 2,000 Drivers can be resolved at once based on the application of Iowa law to the terms of materially similar contracts. But, considering the individual inquiries necessary, resolution of the unlawful-deductions claim by class action would likely not "achieve economies of time, effort, and expense" in the aggregate. *See Amchem*, 521 U.S. at 615. Indeed, class-action resolution of plaintiffs' unlawful-deductions claim would be difficult to manage. *See* FED. R. CIV. P. 23(b)(3)(D). Thus, the Court cannot find it self-evident that resolution by class-action resolution is superior. *Dukes*, 564 at 363.

In sum, the Court finds class certification under Rule 23(b)(2) and Rule 23(b)(3) as to Count 3 is not appropriate.

## V.    COUNT 4 – UNJUST ENRICHMENT

Plaintiffs seek class certification of their claim that CRST was unjustly enriched by their unlawful deductions from plaintiffs' and Drivers' wages and unconscionable fees paid by Drivers.  (Doc. 244).  The Court finds this Count inappropriate for class certification; plaintiffs have satisfied the Rule 23(a) requirements but not the Rule 23(b)(3) requirements.

### A.    Common Law

"Unjust enrichment is an equitable doctrine of restitution, wherein a plaintiff 'must prove the defendant received a benefit that in equity belongs to the plaintiff.'"  *Iowa Network Servs., Inc. v. Quest Corp.*, 363 F.3d 683, 694 (8th Cir. 2004) (quoting *Slade v. M.L.E. Inv. Co.*, 566 N.W.2d 503, 506 (Iowa 1997)); *see also Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 577 (Iowa 2019).   To prove unjust enrichment under Iowa law, a plaintiff must show: "(1) enrichment of the defendant, (2) at the expense of the plaintiff, (3) under circumstances that make it unjust for the defendant to retain the benefit."  *Behm*, 922 N.W.2d at 578.  The benefit can be direct or indirect.  *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 155 (Iowa 2001).   Unjust enrichment "is equitable in nature, not contractual."  *Id.*   "Generally[,] the existence of a contract precludes the application of the doctrine of unjust enrichment."  *Johnson v. Dodgen*, 451 N.W.2d 168, 175 (Iowa 1990) (citing *Smith v. Harrison*, 325 N.W.2d 92, 94 (Iowa 1982)); *see also Rasch v. Tyson Fresh Meats, Inc.*, No. C16-3006-LTS, 2017 WL 2219985, at *13 (N.D. Iowa May 19, 2017) ("[T]he existence of an employment contract precludes recovery under . . . unjust enrichment.").

39

The Third Amended Complaint alleges that the ICOA and Lease at issue "are unconscionable" and thus void or voidable; because the contracts are void or voidable, their existence does not preclude an unjust-enrichment claim.[15]  (*See* Doc. 108, at 27).

The standard for unconscionability is high.  "A contract is unconscionable where no person in his or her right sense would make it on the one hand," that is, the contract is substantively unconscionable, "and no honest and fair person would accept it on the other hand," that is, the contract is also procedurally unconscionable.  *See C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 80 (Iowa 2011).  "In considering claims of contractual unconscionability, [a court] examine[s] the factors of 'assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness.'"  *In re Marriage of Shanks*, 758 N.W.2d 506, 515 (Iowa 2008) (quoting *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 181 (Iowa 1975)).  Courts only invoke unconscionability when enforcement of the contract would be profoundly unjust, not merely to rescue a party from its own bad bargain.  *Smith*, 325 N.W.2d at 94.

The parties disagree whether plaintiffs must show both procedural unconscionability and substantive unconscionability to show that a contract is unconscionable under Iowa law.  Defendants assert that plaintiffs agree that both types of unconscionability must be shown, (Doc. 257, at 33), but plaintiffs actually assert that "a contract may be found to be unconscionable as a result of procedural or substantive unfairness, or some combination of the two."  (Doc. 247, at 24–25 (citing *Shanks*, 758

---

[15] The Court notes that when analyzing unconscionability, Iowa courts determine whether contracts are enforceable.  *See Lakeside Boating & Bathing, Inc. v. Iowa*, 402 N.W.2d 419, 422 (Iowa 1987); *In re Marriage of Shanks*, 758 N.W.2d 506, 513 (Iowa 2008).  This Court has found that "'unenforceable' is not synonymous with 'void.'"  *CRST Expedited, Inc. v. Swift Transp. Co. of Arizona, LLC*, 17-cv-25-CJW-KEM, 2019 WL 2358407, at *13 (N.D. Iowa June 4, 2019).  At the class-certification stage, however, the Court's role is to evaluate whether resolution by class is appropriate, not whether its claim will succeed on the merits.  Thus, the Court does not discuss the effect, if any, of the void or voidable versus unenforceable distinction in its analysis here.

40

N.W.2d at 516–18)). Although the *Shanks* opinion does not clearly state that both procedural unconscionability and substantive unconscionability are required, other Iowa cases evidence this view. *See C & J Vantage Leasing Co.*, 795 N.W.2d at 80; *Faber v. Menard, Inc.*, 367 F.3d 1048, 1053 (8th Cir. 2004) (citing *Home Federal Sav. & Loan As'n v. Campney*, 357 N.W.2d 613, 618 (Iowa 1984)). Thus, plaintiffs must show both that the contract was procedurally unconscionable, which focuses on the "advantaged party's exploitation of the disadvantaged party's lack of understanding or unequal bargaining power," and substantively unconscionable, which focuses on the terms of the contract. *See Shanks*, 758 N.W.2d at 515–18.

### B. Arguments

Plaintiffs argue their claims are appropriate for class action resolution because CRST was enriched by their misclassification of plaintiffs and putative class members as independent contractors in their ICOAs and Leases, which were unconscionable, and that benefit was at the Drivers' expense because this misclassification resulted in deductions from their pay. (*See* Docs. 247, at 24–28; 263, at 17–18). Plaintiffs argue that whether other compensation offsets these deductions and whether the circumstances would be unjust to let CRST retain this benefit depend on common questions. (*See* Docs. 247, at 24–28; 263, at 17–18).

Defendants argue that class-action resolution is not appropriate because plaintiffs cannot satisfy commonality, predominance, or superiority. (Doc. 257, at 33). First, defendants assert that choice of law issues preclude certification because if the contract is unconscionable, then plaintiffs cannot rely on its choice-of-law provision. (*Id.*, at 35). Second, defendants assert that some of the putative class members chose to contract with CRST again after signing the ICOAs, including class members who stated that the terms of the second contract they signed were fair and reasonable. (*Id.*, at 34–35). Further, citing to *Dukes*, defendants argue plaintiffs provide no basis on which the Court could

perform a choice-of-law analysis in keeping with predominance and superiority requirements of Rule 23(b)(3), and the Court cannot perform a choice-of-law analysis in keeping with Rule 23(b)(3) under these circumstances. (*Id.*). Third and finally, defendants argue certification is not appropriate because determining whether each class member conferred a benefit on CRST for which he or she was not reimbursed will necessarily require analyzing individual facts about the relationship between each class member and CRST, and the nature of these relationships vary. (*Id.*, at 36–37).

### *C.* *Analysis*

For the following reasons, the Court finds class certification of this claim is not appropriate.

#### *1.* *Choice of Law*

To analyze this Count under Rule 23(a) and Rule 23(b)(3), the Court must first determine what law applies, and whether the same law applies across the class. Both the ICOAs and Leases contain a choice-of-law clause requiring that they be interpreted in accordance with Iowa law. (*See* Docs. 257-3, at 23 (ICOA); 257-4, at 46 (Lease)). But a choice-of-law provision in a contract "can have no effect until the court determines the validity of the contract itself." *John T. Jones Constr. Co. v. Hoot Gen. Constr. Co.*, 613 F.3d 778, 782–83 (8th Cir. 2010). Here, plaintiffs' unjust-enrichment claim requires that the contract be unenforceable as written and plaintiffs assert, for purposes of this claim, the contract is unenforceable because it is invalid for unconscionability. Thus, following plaintiffs' argument that the contract is invalid, the choice-of-law provision must also be invalid and cannot apply for purposes of plaintiffs' unjust-enrichment claim.[16]

---

[16] Plaintiffs argue the choice-of-law provision can nevertheless apply. (Doc. 263, at 17). Plaintiffs, however, cite to Eighth Circuit cases in which the parties did not dispute what state's law applied. (*See id.* (citing *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 872 (8th Cir. 2004); *Plummer v. McSweeney*, 941 F.3d 341, 344 (8th Cir. 2019)). Here, it is disputed what

Absent a valid choice-of-law provision, a district court sitting in diversity must apply the choice-of-law rules for the state in which it sits. *See DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 895 (8th Cir. 2006); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Thus, as defendants assert, (Doc. 257, at 35), a court must conduct a choice-of-law analysis before applying the law of the forum state. *See DCS Sanitation Mgmt.*, 435 F.3d at 895.

But a court need not engage in a thorough choice-of-law analysis unless the laws of the states in question conflict with one another. *See Phillips v. Marist Soc. of Wash. Province*, 80 F.3d 274, 276 (8th Cir. 1996) ("[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there is a difference between the relevant laws of the different states.") (quotation omitted). If no conflict exists between the potentially applicable laws, the law of one state may be applied to the entire class's claims so long as that state has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1120 ("*St. Jude I*") (8th Cir. 2005) (quotation omitted).

Here, defendants suggest no state whose laws should apply to the unjust-enrichment claim instead of Iowa law. Given the variety of states where the contract was performed and where class members are domiciled, among other factors, no other state's law appears particularly applicable. Without comparing the laws of multiple states, the Court cannot find the conflict necessary to require a choice-of-law analysis. Here, Iowa

---

law applies. Moreover, plaintiffs' Fifth Circuit cases are not binding, but the Court does not find them contrary to its holding here. (*See id.* (citing *Overstreet v. Contigroup Cos.*, 462 F.3d 409, 411 (5th Cir. 2006) (not addressing the validity of the contract as a whole)); *Dalton v. Paccar Fin.*, No. 95-50438, 1996 WL 457309, at *2–*4 (5th Cir. July 9, 1996) (applying choice-of-law clause compels application of Georgia law when claims "sound in contract," and finding application of Georgia law appropriate under most-significant-relationship test elsewhere))).

has had significant contact with the class's claims in light of the contracts at issue being signed in Iowa at CRST's principal place of business; thus, the Court cannot say that applying Iowa law would be arbitrary or fundamentally unfair. *St. Jude I*, 425 F.3d at 1120.

Still, unjust-enrichment laws vary among states. *See, e.g.*, *Weitz Co., LLC v. Lexington Ins. Co.*, 982 F.Supp.2d 975, 986–87 (S.D. Iowa 2013) (noting difference between Illinois unjust-enrichment law and law of Iowa and Florida). But even if the Court needed to engage in a thorough choice-of-law analysis, there is no indication that Iowa law would not apply here. "Under Iowa choice-of-law rules, a court must apply the law of the forum with the 'most significant relationship' to the contract."[17] *John T. Jones Constr.*, 613 F.3d at 782–83 (citing *Gabe's Constr. Co., Inc. v. United Capitol Ins. Co.*, 539 N.W.2d 144, 146 (Iowa 1995)). To determine which forum has the most significant relationship, a court must consider:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 188 (AM. L. INST. 1971); *see also Gabe's Constr.*, 539 N.W.2d at 146.

Contrary to defendants' argument, (Doc. 257, at 35), the Court can perform the choice-of-law analysis based on plaintiffs' allegations and arguments. Indeed, the unjust-enrichment claim is founded on the same factual foundation as the

---

[17] Of course, Iowa's most-significant-relationship test is substantially different from other choice-of-law rules, including the interest analysis and significant relationship hybrid test used by Minnesota, as cited in CRST's briefing. (*See* Doc. 257, at 35 (citing *Cruz v. Lawson Software, Inc.*, Civil No. 08–5900 (MJD/JSM), 2010 WL 890038, at *6 (D. Minn. Jan. 5, 2010); *Mooney v. Allianz Life Ins. Co. of N. Am.*, 244 F.R.D. 531, 535 (D. Minn. 2007)).

unlawful-deductions claim. Although plaintiffs' complaint does not expressly identify them as such, (*See* Doc. 108, at 25–27), these claims function in the alternative. In each claim, plaintiffs allege Drivers worked for CRST, CRST failed to pay Drivers all of their wages, and instead of paying Drivers all the money they were owed, CRST deducted money for itself. (*See id.*). A plaintiff cannot recover for unjust enrichment when the same promise was embodied in a valid and enforceable contract. Here, Drivers can only recover under the unlawful-deductions claim if the ICOA contracts are found valid. *See* IOWA CODE § 91A.5(1) (requiring an employer to have written authorization from the employee to deduct for any lawful purpose accruing to the benefit of the employee). In contrast, Drivers can only recover under the unjust-enrichment claim if the ICOA contracts are found invalid. *See State ex rel.*, 637 N.W.2d at 155 (recognizing that unjust enrichment sounds in equity, not contract). Further, a plaintiff can only recover for unjust enrichment when circumstances make it unjust for the defendant to retain the benefit. *See Behm*, 922 N.W.2d at 578. Such circumstances would not exist if the Drivers can recover under their unlawful-deductions claim.

Here, for the reasons below, the Court finds that Iowa has the most significant relationship to the ICOAs and Leases, and thus Iowa law applies to plaintiffs' unjust-enrichment claim. Defendants suggest no state with a more significant relationship than Iowa, and the record does not support such a finding. Regardless, even if defendants had shown an actual conflict between Iowa law and another state's law, the Court would nevertheless conclude in its choice-of-law analysis that Iowa law applies.

Several Section 188 factors have limited application here. *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 188 (AM. L. INST. 1971). The performance of the contract took place across the country and the Drivers very likely performed in multiple states each haul, given that the ICOAs were for long-haul trucking services. (*See* Doc. 247, at 8 (citing Doc. 155, at 3)). Also, the subject matter of the ICOA—that is,

long-haul trucking services (*See* Doc. 257-3)—likewise also took place across the country, with no stronger apparent ties to one particular state more than another. (*See* Doc. 155, at 14). The subject matter of the Lease is somewhat less clear, given that the leased trucks were used across the country though the contract itself is between CRST[18] in Cedar Rapids, Iowa (Docs. 155, at 11; 257-3, at 3; 257-4, at 2), and a Driver who could, at least theoretically, be domiciled or reside in any state. (*See* Docs. 257-4; 155, at 3). Thus, factors (c) and (d) do not weigh heavily on the Court's decision as to what state bears the most significant relationship. Under factor (e), the parties agree that the putative class members are from across the country, and plaintiffs represent that the named plaintiffs are domiciled and reside in different states. (*See* Doc. 108, at 4). Thus, these facts do not weigh in favor of the application of any one state law more than another. Finally, both the ICOAs and the Leases were not negotiated, which means factor (b) does not apply.

Other factors, however, point specifically to Iowa. The places of contracting for both the ICOAs and Leases and CRST's principal place of business are all in Iowa. (*See* Docs. 155, at 7, 9–10; 247, at 9–10, 12–13); *see also* § 188 (a), (e). That Drivers had a variety of states of domicile and residence does not prevent a finding that Iowa law applies because these factors, like the contract performance and subject matter, do not show a predominate relationship to any one state. Further, because the matter before the Court concerns contractual relationships and business arrangements, both rhetorically and logically, it makes sense to elevate the place of contracting over other factors discussed above. Thus, the Court finds that Iowa has the most significant relationship to the

---

[18] The Court notes that the Lease is between a Driver and CRST Lincoln Sales, Inc. (Doc. 257-4, at 2). Plaintiffs allege (Doc. 108, at 5, 11) and the record supports (*See, e.g.*, Docs. 257-3, at 25; 257-4, at 2 (listing same business address for CRST and CRST Lincoln Sales)) that CRST Lincoln Sales, Inc. is a subsidiary of CRST.

contract and thus Iowa law applies to plaintiffs' unjust-enrichment claim. As such, the Court finds that choice of law issues would not prevent class certification.

### 2. Re-Contracting

Defendants argue the question of unconscionability is not appropriate for class action resolution because some putative class members "chose to contract with [CRST] on multiple occasions," and this fact "undercuts any argument related to procedural or substantive unconscionability" such that "there is no factual basis on which to conclude that 'no person in his or her right sense would' enter into these contracts." (Doc. 257, at 34–35). In reply, plaintiffs assert that unconscionability depends on the terms of the contract, not the individual class members' thoughts about it. (Doc. 263, at 15). Plaintiffs argue that the "indentured servitude like control" exerted by CRST via the contracts naturally results in CRST's favored Drivers being "happy with the contract" and disfavored Drivers being "left outside with no work and no ability to obtain work"— but does not prevent the contracts themselves from being unconscionable. (*Id.*, at 15–16).

Defendants' cited cases do not foreclose class certification of plaintiffs' unjust-enrichment claim. (*See id.* (citing *Quillion v. Tenet Health Sys. Philadelphia, Inc.*, 673 F.3d 221, 237 (3d Cir. 2012); *Scherrey v. A.G. Edwards & Sons, Inc.*, No. 02-2286, 2003 U.S. Dist. Lexis 11010, at *7–8 (W.D. Ark. Apr. 15, 2003); *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 122 (6th Cir. 2009)). Indeed, the value of these opinions are limited at best because each was a ruling on the merits on an individual claim. *See generally Quillion*, 673 F.3d 221; *Scherrey*, 2003 U.S. Dist. Lexis 11010; *Vistein*, 342 F. App'x 113. At best, they support that whether a contract is unconscionable is a fact-intensive inquiry and certain class members may not be able to recover based on signing a second ICOA or Lease. The question of whether signing the same contract a second time precludes it from being unconscionable goes to the merits of certain class members' unconscionability claims. Although the answer will

47

not be common amongst all class members as to each ICOA and Lease signed, this individual question does not in itself mean common questions do not predominate.

Again, in determining whether class action certification is appropriate, "the court must look only so far as to determine whether, given the factual setting of the case, *if the plaintiffs general allegations are true*, common evidence could suffice to make out a prima facie case for the class." *Blades*, 400 F.3d at 566. Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Id.* at 469 (internal quotation and alterations omitted). Although a fatal dissimilarity is appropriately addressed in class action certification, *see Tyson*, 577 U.S. 457, the Court does not find the subsequent contracts pose a fatal dissimilarity to class resolution. Here, plaintiffs allege the ICOAs and Leases were procedurally and substantively unconscionable. Unconscionability is determined at the time the contract was entered. *C & J Vantage Leasing Co.*, 795 N.W.2d at 80. Regardless of whether certain class members signed the contracts plaintiffs allege were unconscionable more than once, the questions of whether the contracts were substantively and procedurally unconscionable are common questions based on the materially same content of the ICOAs and Leases and the Drivers' shared circumstances under which they signed the contracts. Further, even if signing the same contract twice necessarily precluded an unconscionability argument about the subsequent contract, it does not mean the initial contract was not procedurally and substantively unconscionable. Thus, common evidence could make a prima facie showing of unjust enrichment for both plaintiffs and class members. *Id.*

### 3. *Rule 23(a)(2) Commonality*

Here, the Court finds plaintiffs satisfy all three prongs of the commonality requirement.

48

First, plaintiffs show that common questions of law and fact exist between plaintiffs' claim and the proposed class members' claims. *See Paxton*, 688 F.2d at 561. For instance, as discussed, the contracts here were the ICOAs and the Leases, which were materially similar among plaintiffs and the putative class members. Thus, the legal determination of the contracts' unconscionability would be the same for each ICOA and Lease, and this question is key to an unjust-enrichment claim because the contract must be void or voidable for unjust enrichment to apply. Common questions of fact also exist, such as whether deductions for fuel, insurance, and tolls benefitted Drivers or CRST. (*See* Doc. 263, at 17–18).

Second, plaintiffs show that a common contention exists between the class members' claims. Plaintiffs show the class presents both common questions and common answers, as *Dukes* requires. Again, were the Court to find the contracts were not unconscionable, plaintiffs' and class members' unjust-enrichment claims would all fail as a matter of law. *See Johnson*, 451 N.W.2d at 175. Such determinations will resolve issues that are "central to the validity of each one of the claims in one stroke," *See Dukes*, 564 U.S. at 350, because they are applicable to each class member in the same manner. *See Falcon*, 457 U.S. at 155.

Third, plaintiffs show defendants' unjust enrichment caused them to suffer the same injury as their proposed class members. *See Jones*, 257 F.R.D. at 186; *Rozo*, 2017 WL 2292834, at *3. Specifically, plaintiffs allege that CRST was unjustly enriched by their unlawful deductions from Drivers' wages and unconscionable fees paid by Drivers. Plaintiffs show that they and the class members suffered the same kind of injuries because they each had a materially similar service relationship with CRST. Again, that the class members' actual damages may vary does not defeat class certification because damages can be calculated with a formula to determine from CRST's records what operating expenses class members should not have been charged. *See Blades,* 400 F.3d at 570;

*Bell Atlantic,* 339 F.3d at 306; *In re Genetically Modified Rice Litig.*, 251 F.R.D. at 398–99.

In sum, the Court finds plaintiffs satisfy the commonality requirement. Thus, the Court finds plaintiffs meet all four Rule 23(a) prerequisites for class certification.

### 4.      *Rule 23(b)(3) Requirements*

Here, the Court finds plaintiffs fail to satisfy the Rule 23(b)(3) requirements. Although this determination is close, concerns about individual questions caution the Court not to certify a class on this claim.

As described above, plaintiffs' and class members' claims derive from two sets of common questions: (1) whether the contracts were unconscionable and thus void or voidable, *See C & J Vantage Leasing Co.*, 795 N.W.2d at 80, and (2) whether CRST were enriched, whether that enrichment was at the expense of plaintiffs and class members, and whether the circumstances make it unjust for the defendant to retain the benefit, *See Behm*, 922 N.W.2d at 578. In proving their claims, class members will rely on the terms of the ICOAs and Leases, and CRST's policies and work conditions, which the record shows were materially the same across class members. *See Avritt*, 615 F.3d at 1029. These questions are central to plaintiffs' unjust-enrichment claim; unless each question is answered in the affirmative, plaintiffs' and the class members' claims fail.

Defendants assert that unjust enrichment, by its very nature, is not appropriate for class resolution because they depend on individualized questions of benefit conferred and compensation exchanged. (*See* Doc. 257, at 36–37). The facts of defendants' cited cases, however, vary from those here. *See Daigle v. Ford Motor Co.*, Civil No. 09–3214 (MJD/LIB), 2012 WL 3113854, at *5 (D. Minn. July 31, 2012) (declining to certify class when no benefit could have been conferred to defendant via certain class members); *Maxwell v. Tyson Foods, Inc.*, No. 1:08CV00017-JAJ-TJS, 2012 WL 12541110, at *12 (S.D. Iowa July 19, 2012) (declining to certify class based on predominance of

"individual inquiries as to whether each class member did, in fact, work 'off-the-clock,' the activities involved, whether such activity conferred a known benefit on the defendant, and whether each class member had an expectation of compensation for the activities alleged to be work"). Some courts have held, however, that unjust enrichment claims are often unsuited for class certification because common questions seldom predominate.

For instance, the Eleventh Circuit Court of Appeals has held that common questions did not predominate in an unjust-enrichment claim because the court would need to "examine the particular circumstances of an individual case and assure itself that, without a remedy, inequity would result or persist." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009); *see also Russell v. Citigroup, Inc.*, CIVIL ACTION NO. 12-16-DLB-JGW, 2015 WL 9424144, at *5–6 (E.D. Ky. Dec. 22, 2015) (first citing *Vega* and opinions from the Third and Ninth Circuit Courts of Appeal holding similarly, then concluding that even if plaintiffs could show a classwide policy, individualized questions of class members' performance, understanding of time policy, and manager's time calculation would still predominate). Thus, the court found that "common questions rarely, if ever, predominate an unjust-enrichment claim." *Vega*, 564 F.3d at 1274.

The Eighth Circuit Court of Appeals, whose precedent binds this Court, has not held that unjust-enrichment claims are generally inappropriate for class resolution. Further, Eighth Circuit precedent suggests that district courts do not abuse their discretion in certifying a class's unjust-enrichment claim simply by virtue of the claim's nature. *See Barfield v. Sho-Me Power Elec. Cooperat.*, 852 F.3d 795, 805–806 (8th Cir. 2017) (eminent domain context)*; Avritt*, 615 F.3d at 1032 n.5 (finding no abuse of discretion for failing to certify unjust-enrichment claim because that "claim rest[ed] on the same basis as [the plaintiff's] other common law claims"; accordingly, the district court's denial was not an abuse of its discretion simply because it was an unjust-enrichment claim).

Some district courts have certified an unjust-enrichment claim along with FLSA and/or other wage claims based on a defendant's payment practices and procedures. *See generally Rikard v. U.S. Auto Protection, LLC*, 287 F.R.D. 486 (E.D. Mo. 2012); *Fritz v. Corizon Health, Inc.*, Case No. 19-CV-03365-SRB, 2021 WL 3883643 (W.D. Mo. Aug. 30, 2021). Others have not. *See Reynolds v. BLM Co.*, CASE NO. 1:12-CV-1105, 2014 WL 12888364, at *3 (W.D. Ark. Mar. 17, 2014) (agreeing with Eastern District of Arkansas cases holding that such unjust-enrichment claims are inappropriate for class resolution).

Here, common questions do not predominate; instead, individual questions predominate in the unjust-enrichment analysis. The third element of unjust enrichment—that is, circumstances under which it would be unjust for a defendant to retain its benefit—inherently depends on individual questions. To determine whether the circumstances were unjust, the fact-finder would need to investigate the individual circumstances of the relationship between each Driver and CRST. Because of this subjective analysis, the Court agrees that unjust-enrichment claims are rarely, if ever, appropriate for class action resolution. *See Vega*, 564 F.3d at 1274; *Russell,* 2015 WL 9424144, at *5–6; *Reynolds*, 2014 WL 12888364, at *3. Also, as defendants point out, (*See* Doc. 257, at 36–37), because some Drivers purchased their leased trucks, the question of whether the benefit of Drivers' lease payments and deductions accrued to Drivers or to CRST becomes an individual question. (*See* Doc. 257, at 36–37). Thus, individual questions extend beyond just the individual question of whether the circumstances were unjust. *Contra Barfield*, 852 F.3d 795 (affirming grant of class certification of unjust-enrichment claim in eminent domain context); *Rikard*, 287 F.R.D. 486 (certifying class for unjust-enrichment claim for unpaid overtime); *Fritz*, 2021 WL 3883643 (same). Under these circumstances, the Court cannot find that sufficient cohesion exists to warrant adjudication by representation, such that predominance is self-evident here. *See Dukes*, 564 at 363.

The Court also does not find superiority to be self-evident. *See id.* In resolving the unjust-enrichment claim by class action, the claims of approximately 2,000 Drivers can be resolved at once based on the application of Iowa law to the terms of materially similar ICOAs and Leases. But, considering the individual inquiries necessary, resolution of the unlawful-deductions claim by class action would likely not "achieve economies of time, effort, and expense" in the aggregate. *See Amchem*, 521 U.S. at 615. Indeed, class-action resolution of plaintiffs' unjust-enrichment claim would be difficult to manage. *See* FED. R. CIV. P. 23(b)(3)(D). Thus, the Court cannot find it self-evident that resolution by class-action resolution is superior. *See Dukes*, 564 at 363.

Thus, the Court finds class certification under Rule 23(b)(3) as to Count 4 is not appropriate.

## VI. COUNT 5 - FRAUD

Plaintiffs seek class certification of their claim that CRST defrauded plaintiffs by making false representations to Drivers about the amount of money they would make as Drivers. (Doc. 244). Plaintiffs claim that CRST made false representations to Drivers in the form of: a standardized sales pitch; recruiting materials which repeated the contents of the standardized sales pitch; representations at the mandatory orientation, including via an income chart; and the ICOAs themselves. (Doc. 247, at 28–29). For the following reasons, the Court finds class certification inappropriate; plaintiffs satisfy the Rule 23(a) requirements but do not satisfy the Rule 23(b)(3) requirements.

### A. Common Law

To prove fraud under Iowa law, a plaintiff must show: "(1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent to deceive; (6) reliance; and (7) resulting injury and damages." *Hirschbach Motor Lines, Inc. v. SmartTruck Undertray Sys., Inc.*, C17-1019-LTS, 2018 WL 283261, at \*18 (N.D. Iowa Jan. 3, 2018)

53

(citing *Van Sickle Constr. Co. v. Wachovia Com. Mortg., Inc.*, 783 N.W.2d 684, 687 (Iowa 2010)).

Reliance on the representation must also be justified. *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 737 (Iowa 2009). "[T]he justified standard followed in Iowa means the reliance does not necessarily need to conform to the standard of a reasonably prudent person[.]" *Id.* Rather, it "depends on the qualities and characteristics of the particular plaintiff and the specific surrounding circumstances." *Id.* (citing *Lockard v. Carson*, 287 N.W.2d 871, 878 (Iowa 1980); RESTATEMENT (SECOND) OF TORTS § 545A cmt. b).

### B.  Arguments

Defendants argue class certification of plaintiffs' fraud claim is not appropriate because plaintiffs cannot meet the commonality, predominance, or superiority requirements. (Doc. 257, at 26). Specifically, defendants argue plaintiffs' evidence supporting the representation and justifiable reliance elements of fraud show class resolution is not appropriate. (*Id.*, at 26–33).

Defendants also urge the Court that class certification is inappropriate because certain Drivers quit their jobs with CRST and later returned to work for CRST again. (Doc. 257, at 32). But, as plaintiffs assert, each class member had an initial work period subject to plaintiffs' fraud claim. (Doc. 263, at 23). So, the effect of this factual difference is a limitation of the class members' damages, should they recover. *See Blades,* 400 F.3d at 570 (8th Cir. 2005); *Bell Atlantic,* 339 F.3d at 306; *In re Genetically Modified Rice Litig.*, 251 F.R.D. at 398–99. Thus, the Court will not decline class certification on this ground.

### C.  Analysis

For the following reasons, the Court finds class certification of plaintiffs' fraud claim is not appropriate.

### 1. *False Representation*

Defendants first argue plaintiffs cannot show that CRST made a false representation to each putative class member. (Doc. 257, at 26–29 (citing *Hudock v. LG Elecs. U.S.A., Inc.*, 12 F.4th 773, 775–76 (8th Cir. 2021); *Thome v. Sayer Law Grp.*, No. 20-CV-3058-CJW-KEM, 2021 WL 6144666, at *11 (N.D. Iowa Nov. 16, 2021)). In reply, plaintiffs argue that because it is undisputed that CRST distributed the income chart to every Driver at the mandatory orientation and required that every Driver sign an ICOA, they have shown evidence supporting CRST's representation, which plaintiffs allege was false, to each class member. (Doc. 263, at 19–20 (discussing representations discussed at Doc. 247, at 29)).

Upon review of the cited record, the Court rejects defendants' argument that two of the Drivers did not see the packet containing the income chart. (Doc. 257, at 28–29). The Court agrees with plaintiffs that the testimony cited by defendants does not foreclose plaintiffs' allegation that all Drivers saw the income chart. (*See* Docs. 245-14, at 133–34; 245-32, at 3; 257-7, at 92–93; 257-14, at 133–34; 263, at 20–21). Even if two of the Drivers did not see the packet containing the income chart, it remains undisputed that defendants made representations to each class member via a materially similar ICOA, through which plaintiffs allege defendants falsely represented Drivers' income. Thus, the Court focuses its analysis on this allegedly false representation.

In defendants' cited precedent, the plaintiffs neither alleged nor showed evidence supporting that each putative class member saw, and thus was capable of relying on, a materially similar misrepresentation by the defendants. *See Hudock*, 12 F.4th at 775–76; *Thome*, 2021 WL 6144666, at *11. But here, plaintiffs assert that all Drivers saw at least one of CRST's false representations because these false representations were all part of the same standardized sales pitch, wherein CRST made materially uniform representations to the Drivers. (Doc. 247, at 28–30). As such, plaintiffs argue some

55

variation among the false representations does not defeat class certification. (*Id.*, at 30 (citing *In re First All. Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006); *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 691 (6th Cir. 2020)).

Here, the Court finds plaintiffs have presented sufficient evidence that CRST made at least one allegedly false representation to each Driver about the amount of money they would make as Drivers. At minimum, plaintiffs show evidence supporting such representations in the income chart that they allege Drivers received at the mandatory orientation and in the ICOAs they signed. (Doc. 245-13). As defined, the class is limited to individuals who signed an ICOA, among other restrictions. (Doc. 247, at 7). Thus, there is no question that, at the very least, CRST represented to each putative class member about their earning capacity as compared to CRST's employees. (*See* Doc. 247, at 29 n.10 (citing Doc. 113-6, at 25; 113-7, at 25) (two ICOAs)). Further, defendants' argument and evidence supporting that various class members did not see certain false representations does not address the representations within the ICOAs themselves; instead it is limited to other representations. (*See* Doc. 257, at 27–29). As such, the Court is not concerned at this time with whether CRST also made false representations to the putative class members stemming via their standardized sales pitch.

Whether CRST's representations were false depends on common evidence, which plaintiffs assert is CRST's compensation records. Plaintiffs assert these records "will show if the mileage and earnings statements were truthful" as to the compensation referenced in CRST's alleged misrepresentations. (*See* Doc. 247, at 30). At the class certification stage, plaintiffs need only show that plaintiffs' and class members' claims can be resolved based on common questions—not that the class will prevail. *Amgen*, 568 U.S. at 459. Thus, the Court finds that plaintiffs sufficiently show falsity is a common question. Beyond falsity, whether CRST's representations in the ICOAs were indeed fraudulent is a common question because the ICOA representations would

56

constitute a common course of fraudulent conduct, either together or separately. *See, e.g.*, *In re First All. Mortg. Co.*, 471 F.3d at 991–92; *Martin v. Dahlberg, Inc.*, 156 F.R.D. 207, 214 (N.D. Cal. 1994).

Thus, the Court finds that plaintiffs show whether CRST made a false representation is a common question appropriate for class resolution.

### 2. Reliance

Defendants then argue plaintiffs cannot show that each putative class member relied on any alleged misrepresentation without calling each of them at trial. (Doc. 257, at 29–33). Further, defendants argue that plaintiffs' cited cases do not support a classwide inference of reliance here because the putative class behavior can be explained in other ways than reliance upon CRST's conduct. (*Id.*, at 33). Plaintiffs argue reliance can be inferred from circumstantial evidence because "promised earnings are the primary, if not the only reason, that Drivers enter into operating agreements with carriers." (Docs. 247, at 31–34; 263, at 21–22).

The Court begins with plaintiffs' arguments and cited precedent. First, much of this precedent analyzes RICO claims, not common-law fraud claims. *See generally CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076 (10th Cir. 2014); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013); *Klay v. Humana*, 382 F.3d 1241 (11th Cir. 2004); *Smith v. MCI Telecomm. Corp.*, 124 F.R.D. 665 (D. Kan. 1989); *see also In re St. Jude Medical, Inc.*, 522 F.3d 836, 838–40 *8th Cir. 2008) ("*St. Jude II*") (reliance not an element, but part of causation analysis in Minnesota consumer fraud claims); *Huddleston v. John Christner Trucking, LLC.*, 2020 WL 489181, at *17 (N.D. Okla. Jan 30, 2020) (reliance not an element, but part of causation analysis in Oklahoma Consumer Protection Act claim). This is important because reliance is not actually an element of a RICO claim; rather, causation is an element which can be shown by circumstantial evidence of reliance through generalized classwide proof. *See CGC*

*Holding*, 773 F.3d at 1089.[19]  The claim in question here is not a RICO claim—or a securities-fraud claim, which also allows reliance to stand in for causation at the class certification stage.  *Id.*, at 1094–95 (citing *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) and *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972)).

Second, as plaintiffs' cited cases support, courts find reliance based on circumstantial evidence when plaintiffs show a financial quid pro quo transaction.  *CGC Holding Co.*, 773 F.3d 1076 (class members gave money to defendant in exchange for a loan, but defendant could not fund it); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (class members pay money to defendant in exchange for goods, but defendant overbills them); *Klay*, 382 F.3d 1241 (class members gave services to defendants' clients and charge defendants for reimbursement, but defendants underpay); *Smith v. MCI Telecomm. Corp.*, 124 F.R.D. 665 (class members sold defendant's products on various commission-based compensation plans, but failed to pay proper commission to any salesperson); *Murphy v. Gospel for Asia, Inc.*, 327 F.R.D. 227 (W.D. Ark. 2018) (class members donated money for identifiable donations to defendant, but defendant failed to allot 100% of donations as dictated by class members).  In these quid pro quo situations, a class member's actions "cannot be explained in any other way than reliance on [a] defendant's conduct."  *CGC Holding*, 773 F.3d at 1081.

---

[19] Defendants argue the Court should not infer reliance here because inference is only appropriate when "(1) a defendant's uniform conduct is met by a uniform response from the class, and (2) "the class behavior cannot be explained in any way other than reliance upon the defendant's conduct."  (Doc. 257, at 33 (quoting *CGC Holding*, 773 F.3d at 1089–90)).  The second prong of this test essentially requires that a defendant's representation be the only reason for a class member's actions.  This makes sense in a case involving a RICO claim or some other claim in which a court can infer causation based on generalized classwide proof of reliance.  It does not follow that in a common-law fraud claim that the defendant's representation must be the only reason that the plaintiff acts.  Instead, it must be material.  *See Van Sickle*, 783 N.W.2d at 687.  Thus, the Court does not rely on the reasoning in *CGC Holding* when determining whether a classwide inference of reliance is appropriate here.

Again, the Court analyzes plaintiffs' fraud claim based on the ICOAs represented to each Driver by defendant and signed by each Driver.[20]  One could infer that because no one would work for free, the question of how much a worker will earn is central to a class member's decision to sign a work-for-hire contract, in turn making reliance on the contents of that contract commonsense circumstantial evidence.  But plaintiffs' cases show, or at least suggest, this inference is improper when a defendant shows evidence that some class members did not rely on the representation.  *Slater v. Terril Tel. Co.*, No. 02–0813, 2003 WL 183809, at *2 (Iowa App. 2003) ("While class certification may not be appropriate where there are material variations in reliance, *see* FED. R. CIV. P. 23 cmt., here there is no solid indication of a material variation.  There is only [defendant's] speculation that this may be the case, support for which is limited to one shareholder's claim that [defendant's alleged misrepresentation] was irrelevant to her decision to sell.")

Here, defendants show evidence that some class members did not rely on various representations.  (Doc. 257, at 26–29).  None of this evidence, however, focuses on the representations made in the ICOAs.

Third, plaintiffs argue that because "promised earnings are the primary, if not the only reason, that Drivers enter into operating agreements with carriers," the Court can confidently infer that Drivers relied on CRST's representations about their income potential.  (*See* Docs. 263, at 22; 247, at 31–34).  But, as plaintiffs' precedent suggests, when class members could act in reliance on several representations courts have been reluctant to find that a fraud claim is appropriate for class certification.  *See Hudock*, 12 F.4th at 777 (finding class certification inappropriate when evidence supports that class members acted in reliance on various representations, the refresh rate cited by plaintiff

---

[20] Thus, the Court does not consider defendants' argument that it cannot infer reliance because some Drivers did not see the misrepresentation.  (Doc. 257, at 29 (citing *Hudock*, 12 F.4th at 776–77, *St. Jude II*, 522 F.3d at 838)).

being only one of them); *see also Peterson v. H&R Block Tax Servs., Inc.*, 174 F.R.D. 78, 85 (N.D. Ill. 1997) (citing other cases in which potential reliance on other factors precluded class certification).

As a general rule, claims rooted in misrepresentation are disfavored for resolution by class action "[b]ecause proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations[.]" *St. Jude II*, 522 F.3d at 838. Here, the Court has satisfied itself that proof as to what representations were received is not problematic for class certification purposes, because all putative class members signed the ICOA. But a "material variation" likely will nevertheless manifest "in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." FED. R. CIV. P. 23, advisory committee's note to 1966 amendment (discussing subdivision (b)(3)). Still, the Court interprets this caution to apply to nature of the reliance—for instance, whether it was reasonable or justifiable—which the Court will address shortly.

Plaintiffs point to several cases supporting that the Court may properly infer reliance, including cases founded on operating agreements like those at question here. *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 514 (D. Utah 2017) (finding circumstantial evidence of reliance when drivers signed operating agreements after defendant's representations of economic opportunity); *Elmy v. W. Express, Inc.*, No. 3:17-cv-01199, 2021 WL 3172311, at *6 (M.D. Tenn. July 27, 2021) (same); *Huddleston*, 2020 WL 489181, at *17 (same); *see also Boswell v. Panera Bread Co.*, 311 F.R.D. 515, 531 (E.D. Mo. 2015) (finding circumstantial evidence of reliance when employees signed operating agreements based on defendant's representations of economic opportunity); *Klay*, 382 F.3d at 1259 (same); *Smith*, 124 F.R.D. at 679 (same).

Here, it is undisputed that Drivers signed the ICOAs in which plaintiffs allege CRST falsely represented Drivers' income potential. Again, all class members are

60

Drivers.  Thus, the question of whether class members relied on these misrepresentations when signing is a question common to the class.  Still, this does not mean plaintiffs' fraud claim is appropriate for class certification, because Iowa law also requires that the class members' reliance be *justifiable*.

### 3.    *Justifiable*

Finally, defendants argue plaintiffs cannot show that each putative class members' reliance was justified because reliance is a subjective, not objective, standard.  (Doc. 257, at 29–33 (citing *Spreitzer*, 779 N.W.2d at 737)).  Plaintiffs argue the fact-finder can find justifiable reliance classwide based on the content of CRST's uniform false representations and the circumstances surrounding them.  (Docs. 247, at 25–34; 263, at 22–23).  Thus, plaintiffs argue, the class members' characterization of those false representations as "promises," "estimates," or "guidelines" is of no consequence because "all of the Drivers deposed understood that [CRST] would offer Drivers sufficient work to make the represented earnings, and that earning the promised amount would be within the Driver's control."  (Doc. 263, at 23 (discussing Doc. 257, at 28 n.6, 30)).

Defendants are correct that whether reliance is justifiable depends on the subjective circumstances of a particular plaintiff, including the context the representations were made and other information known.  (*See* Doc. 257, at 29–30).  "[T]he [Iowa] standard requires plaintiffs to utilize their abilities to observe the obvious, and the entire context of the transaction is considered to determine if the justifiable-reliance element has been met."  *Spreitzer*, 779 N.W.2d at 737.

Thus, plaintiffs' cited precedent has limited persuasiveness.  Key cases which plaintiffs cite for support draw from common-law fraud claims in different states—states that do not use a justifiable reliance standard, as Iowa does.  *See Elmy*, 2021 WL 3172311, at *5 (finding predominance requirement as to reliance met in fraud claim based on Tennessee law, which requires only reasonable reliance); *Roberts*, 318 F.R.D. at 508,

61

514 (same, based on Utah law, which requires only reasonable reliance). These cases, therefore, are unpersuasive because an objective standard like reasonable reliance lends itself much more easily to common questions—and thus, class-action resolution—than a subjective standard like justifiable reliance. Again, other cited cases examine other types of claims which also do not have a reliance element, much less a justifiable reliance element. *See generally St. Jude II*, 522 F.3d 836; *Huddleston*, 2020 WL 489181; *CGC Holding*, 773 F.3d 1076; *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108; *Klay*, 382 F.3d 1241; *Smith*, 124 F.R.D. 665.

Plaintiffs are also correct that how class members characterized CRST's representations may ultimately be of little significance. (Doc. 264, at 23). But this argument does not refute defendants' evidence showing a variety of reasons why putative class members chose to sign contracts with CRST and a variance in the circumstances of contracting. (*See* Doc. 257, at 30–32). Defendants predominantly point to evidence that one particular class member, Roderick Fisher, based his decision to sign the ICOA on his own personal investigation consulting his friends who were lease purchase operators for CRST, reviewing independent testimonials about CRST, and discussing information from the orientation with his friend. (*Id.*, at 30–32). Defendants also point to evidence that class member Linda Gravelle based her decision to sign with CRST on the experience and counsel of her friend, who was a lease purchase operator. (*Id.*, at 30). Finally, defendants also show evidence that class member Tabitha Meeks, Fisher, and named plaintiff Anthony Cervantes interpreted CRST's representations differently, based on their personal perspectives. (*Id.*, at 30).

Although defendants' evidence focuses on only a few Drivers, it highlights the highly individualized inquiry of whether reliance is justifiable. There are many other potential differences among class members that could affect the determination of whether reliance was justifiable. For instance, pertinent facts would include Drivers' previous

experiences working in the trucking industry, whether they had worked as a CRST employee and thus possessed insight about employees' income, and whether they had an independent reason to suspect the income comparison was false.

Determining whether each class members' reliance was justifiable is thus an individual question—and one that is critical to plaintiffs' fraud claim. To the extent that plaintiffs' cited precedent finds otherwise based on other law, *See, e.g.*, *Boswell*, 311 F.R.D. at 531, the Court disagrees here. Indeed, in light of Iowa precedent, it strains the imagination to think of when the question of whether reliance is justifiable would *not* be individual, given that the analysis of whether a decision is justifiable depends on the qualities and characteristics of the particular class members and the specific circumstances surrounding their individual actions. *See Spreitzer*, 779 N.W.2d at 737; *Lockard*, 287 N.W.2d at 878. Here, even assuming plaintiffs' allegations are true, plaintiffs do not show that common evidence makes a prima facie showing of those allegations because justifiable reliance cannot be based on common evidence. *See Blades*, 400 F.3d at 567.

Thus, plaintiffs have not shown that common questions predominate as to whether the class members' reliance was justifiable.

For these and the following reasons, the Court finds class certification as to this claim is not appropriate.[21]

### 4. *Rule 23(a)(2) Commonality*

Here, the Court finds plaintiffs satisfy all three prongs of the commonality requirement.

---

[21] Because the Court denies plaintiffs' motion as to the fraud claim, it does not reach defendants' argument that Drivers who left and later returned, signing another ICOA, could not justifiably rely on CRST's alleged misrepresentations and evidence supporting this argument. (Doc. 257, at 31–32).

First, plaintiffs show that common questions of law and fact exist between plaintiffs' claim and the proposed class members' claims. The class claim depends on common factual and legal questions such as how the income of CRST's employees compares to that of its independent contractors, the representations CRST made to the class members as to this income, and the legal effect of those representations. Further, questions of CRST's scienter, CRST's intent, and the falsity of CRST's representations, for instance, are common to each class member. Thus, common questions of law and fact exist.

Second, plaintiffs show that a common contention exists between the class members' claims. Plaintiffs show the class presents both common questions and common answers, as *Dukes* requires. Here, for instance, the determinations of whether CRST made a representation that income for independent contractors under the ICOA was higher than the income of CRST employee drivers and whether that representation was false based on CRST records each "resolve an issue that is central to the validity of each one of the claims in one stroke," *See Dukes*, 564 U.S. at 350, because these questions are applicable to each class member in the same manner. *See Falcon*, 457 U.S. at 155.

Third, plaintiffs show that CRST's fraud caused them to suffer the same injury as their proposed class members. *See Jones*, 257 F.R.D. at 186; *Rozo*, 2017 WL 2292834, at *3. Specifically, plaintiffs allege that CRST's fraud caused class members to sign on to working for CRST, and they did not earn the income CRST represented in this working relationship. Thus, plaintiffs show that they and the class members suffered the same kind of injuries rooted in the common cause of CRST's fraud. *See Dukes*, 564 U.S. at 350; *Falcon*, 457 U.S. at 148.

In sum, the Court finds plaintiffs satisfy the commonality requirement. Thus, the Court finds plaintiffs meet all four Rule 23(a) prerequisites for class certification.

### 5. Rule 23(b)(3) Requirements

Here, as described above, plaintiffs' claims derive from common questions.

These common questions, however, do not predominate because they do not provide sufficient cohesion to warrant adjudication by representation. As discussed, fraud under Iowa law requires justifiable reliance, which is a question based on individual circumstances. Plaintiffs do not show common evidence to make a prima facie showing of defendants' alleged fraud because justifiable reliance cannot be based on common evidence. *See Blades*, 400 F.3d at 567. Thus, predominance is not self-evident here. *See Dukes*, 564 at 363.

The Court also does not find superiority to be self-evident. *Id.* In resolving the fraud claim by class action, the claims of approximately 2,000 Drivers could be resolved at once. But resolving this many fraud claims together would be seriously problematic because the success of each claim would depend on whether each of the class members justifiably relied on the representation, requiring investigation into the particular circumstances of the class member. Thus, the likely difficulties in managing a class action would be great. *See* Fed. R. Civ. P. 23.

For these reasons, the Court finds class certification under Rule 23(b)(3) motion as to Count 5 is not appropriate.

## VII. COUNT 6 – TRUTH IN LEASING ACT

Plaintiffs seek class certification of claims that CRST violated Sections 376.12(g) and 376.12(h) of the TILA. (Doc. 244). Plaintiffs assert that "[t]he issue of whether the ICOA and Lease violate the [TILA] is subject to generalized proof and applicable to the class as a whole because [CRST] entered into substantively identical Agreements with all Plaintiffs" and subjected class members to uniform policies and practices. (Doc. 247, at 34–35 (citing *Owner Operator Indep. Drivers Assoc. Inc. v. Artic Express Inc.*, No. 2:97–CV–750, 2001 WL 34366624, at *8 (S.D. Ohio Sept. 4, 2001); *Elmy*, 2021 WL

3172311, at *7; and *Davis v. Colonial Freight Sys., Inc.*, 2018 WL 11225871, at *10 (E.D. Tenn. Mar. 2, 2018)). For the reasons described below, the Court finds that this count is not appropriate for class certification; plaintiffs satisfy the Rule 23(a) requirements but not the Rule 23(b) requirements.

### A.    *Statute*

To show that Section 376.12(g) of the TILA applies, plaintiffs first must show that the lessor's revenue is based on a percentage of the gross revenue for the shipment. If the authorized carrier *is not* a contract carrier, then the lease must specify that the carrier will give the lessor a copy of the rated freight bill before or at the time of settlement to comply with Section 372.12(g). If the authorized carrier *is* a contract carrier, then the lease must specify that the carrier will give the lessor a copy of the rated freight bill or some other form of documentation with the same information. 49 C.F.R. § 376.12(g). Finally, "[r]egardless of the method of compensation, the lease must permit the lessor to examine copies of the carrier's tariff," if the authorized carrier is not a contract carrier, or "other documents from which the rates and charges are computed," if the authorized carrier is a contract carrier." *Id.* Here, plaintiffs allege that CRST failed to give Drivers a copy of the rated freight bill at or before the time of sentiment as specified in the ICOA, which CRST required each Driver sign. (Doc. 108, at 29).

To comply with the TILA's chargeback provision, Section 376.12(h), "the lease must clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed." Additionally, "the lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge." 49 C.F.R. § 376.12(h). Here, plaintiffs assert that CRST failed to provide Drivers with copies of the documents necessary to determine

the validity of charge-back items and the computation of those charges as specified in the ICOA, which CRST required each Driver sign. (Doc. 108, at 29).

As the parties agree, (Docs. 257, at 23; 263, at 24), a plaintiff may not recover for a TILA violation without showing actual damages. *See* 49 C.F.R. §§ 376.1 et seq. (promulgated under the Motor Carrier Act, 49 U.S.C.A. §§ 14101 *et seq.*), 49 U.S.C. § 14704(a)(2) ("A carrier or broker providing transportation or service . . . is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.").

### B.    Arguments

Defendants argue that class members must show actual damages to succeed in a TILA claim and plaintiffs fail to show that any plaintiff sustained such damages. (Doc. 257, at 23, 26; *see also* 49 U.S.C. § 14704(a)(2)). Defendants also argue that individual damage determinations would overwhelm any common questions of law or fact because they fail to show any method of demonstrating that each putative class member sustained actual damage from CRST's purported violations. (*Id.*, at 23–26 (citing *Owner-Operator Indep. Drivers Assoc., Inc. v. New Prime, Inc.*, 339 F.3d 1001, 1007 (8th Cir. 2003); *Owner-Operator Indep. Drivers Assoc., Inc. v. Landstar Sys. Inc.*, 622 F.3d 1307, 1312 (11th Cir. 2010); *Owner-Operator Indep. Drivers Assoc., Inc. v. Swift Transp. Co.*, CV-02-1059-PHX-PGR, 2016 WL 2521183, at *4 (D. Ariz. Mar. 30, 2006); *Coburn v. D&R Trucking, LLC*, 3:09-CV-464, 2011 WL 73287, at *2 (M.D. Fla. Jan. 10, 2011))).

Plaintiffs agree they must show actual damages under the TILA, but assert they need not show at the class certification stage that all class members have suffered such damages, as long as uninjured class members can be filtered out later. (Doc. 263, at 24 (citing, among others, *Tyson*, 577 U.S. at 461)). Here, plaintiffs assert their claim is appropriate for class certification because common questions predominate over the issue

of whether CRST violated the TILA and damages can be shown from CRST's records. (Docs. 247, at 34–35; 263, at 25 (citing *Galvan v. NCO Fin. Sys., Inc*, Nos. 11 C 3918, 11 C 4651, 2012 WL 3987643, at *8 (N.D. Ill. Sept. 11, 2012) (debt collection); *Bartholoma v. Marriott Bus. Servs.*, Civ. No. 18-00044 JMS-RLP, 2018 WL 3364661, at *4 (D. Haw. July 10, 2018) (tip income)).

### C.   Analysis

For the following reasons, the Court finds class certification of plaintiffs' TILA claim is not appropriate.

#### 1.   Rule 23(a)(2) Commonality

Here, the Court finds plaintiffs satisfy all three prongs of the commonality requirement.

First, plaintiffs show that common questions of law and fact exist between plaintiffs' claim and the proposed class members' claims. Plaintiffs' case depends on factual and legal questions about whether CRST's course of conduct, via materially similar contracts and policies common to all class members, failed to comply with various requirements of the TILA regulations. *See Paxton*, 688 F.2d at 561. Common questions include (1) whether CRST's failure to provide plaintiffs and Drivers a copy of the rated freight bill at or before the time of settlement as specified in the ICOA violated the TILA, and (2) whether CRST's failure to provide plaintiffs and Drivers with copies of the documents necessary to determine the validity of chargeback items and the computation of those charges as specified in the ICOA violated the TILA. In support of these theories, plaintiffs rely on the TILA's requirements and CRST's statements made in the ICOA and Lease, as well as their policies and practices, which the record shows were materially similar across class members.

Second, plaintiffs show that a common contention exists between the class members' claims. Plaintiffs show the class presents both common questions and common

answers, as *Dukes* requires. Here, for instance, the determination of CRST's obligations under the TILA will "resolve an issue that is central to the validity of each one of the claims in one stroke," *See Dukes*, 564 U.S. at 350, because it is applicable to each class member in the same manner. *See Falcon*, 457 U.S. at 155

Third, plaintiffs show that they and class members have suffered the same injury. Plaintiffs allege that as a result of CRST's TILA violations, "Plaintiffs and members of the TILA Class have lost wages and other compensation due them." (Doc. 108, at 29). Plaintiffs show they and class members all signed materially the same lease, which they allege violated TILA, and they show that all class members were subject to the same harm. This is sufficient to satisfy commonality's injury requirement. *See* FED. R. CIV. P. 23; *Dukes*, 564 U.S. at 349–51.[22]

In sum, the Court finds plaintiffs satisfy the commonality requirement. Thus, the Court finds plaintiffs meet all four Rule 23(a) prerequisites for class certification.

### 2. *Rule 23(b)(3) Requirements*

Here, the Court finds plaintiffs fail to satisfy the Rule 23(b)(3) requirements.

Even assuming plaintiffs' allegations are true, plaintiffs do not show common evidence would support a prima facie showing of defendants' alleged TILA violations. *See Blades*, 400 F.3d at 566. Specifically, the determination of actual damages here depends on individual questions and calculations, not a common formula or calculation. *See id.*, at 570; *Bell Atlantic,* 339 F.3d at 306; *In re Genetically Modified Rice Litig.*,

---

[22] Defendants assert that plaintiffs have not supplied proof of the freight bills they failed to show the class members, or the documents related to the chargeback items, and thus urge the Court to deny certification because plaintiffs do not show evidence supporting their own claim. (Doc. 257, at 26). Defendants provide no citations supporting this argument. Plaintiffs do not appear to argue to the contrary. (*See* Doc. 263, at 19-20 (arguing plaintiffs are not required to show all class members suffered actual damages at the class-certification stage, but not commenting on the requirement to show that they suffered actual damages)). The Court, however, declines certification on this ground.

69

251 F.R.D. at 398–99. Here, to show actual damages, plaintiffs and class members must show that had CRST not violated the TILA, they would have questioned their rated freight bills under Section 372.12(g) and received more money, and they would have questioned the chargebacks under Section 376.12(h) and received more money.

As defendants argue and their cited cases support, these individual determinations of actual damages would overwhelm any common questions of law or fact. (*See* Doc. 257, at 23–26 (citing *New Prime, Inc.*, 339 F.3d at 1012; *Landstar Sys.*, 622 F.3d at 1312–13; *Swift Transp. Co.*, 2016 WL 2521183, at *4–5) (each discussing TILA claims))).[23] Actual damages depend on individual inquiries of what CRST charged Drivers, what information plaintiffs were provided, if they requested anything, if the charges were invalid or otherwise incorrect, and, if such charges existed, the difference to which each Driver would have been entitled. Thus, even though common questions exist, these individual questions fail to make resolution by class action sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. This is particularly so when common questions are relatively straightforward, and the individual question of actual damages is not. Thus, predominance is not self-evident here. *See Dukes*, 564 U.S. at 363.

Further, that class-action resolution is superior is likewise not self-evident. *See id.* Indeed, in light of individual inquiries in determining actual damages and thus, determining plaintiffs' and class members' ability to recover for TILA violations at all, class-action resolution of plaintiffs' TILA claim would be difficult to manage. *See* FED. R. CIV. P. 23(b)(3)(D). This is so even though resolution by class action may achieve economies of time, effort, and expense as to proving other elements, or promote

---

[23] Plaintiffs argue that defendants' reliance on *New Prime* is misplaced because defendants rely on dicta, given that the issue of class certification was moot. (Doc. 263, at 24–25). Although the Court agrees that the *New Prime* court's discussion of actual damages in class certification was dicta, it nevertheless finds the court's reasoning persuasive.

uniformity of decision as to the approximately 2,000 persons plaintiffs claim are similarly situated. *See Amchem*, 521 U.S. at 615.

For these reasons, the Court finds class certification under Rule 23(b)(3) as to Count 6 based on Section 376.12(g) and Section 376.12(h) of the TILA is not appropriate.

In total, the Court finds class certification under Rule 23(b)(3) is appropriate only to Count 2. Before granting any part of plaintiffs' motion, however, the Court must determine whether plaintiffs' motion complies with Local Rules.

## VIII. *LOCAL RULE COMPLIANCE*

Local Rule 23(a) states that to obtain class certification:

[T]he party seeking to maintain the action as a class or representative action must, within 180 days after commencement of the action, file a separate motion for certification. *The motion must include a proposal for the appointment of class counsel, unless such a proposal has been included in an earlier-filed motion.* If the action is brought under Federal Rule of Civil Procedure 23, the motion and documents supporting the motion must do the following:

1. Set forth with particularity the facts relied upon to satisfy the prerequisites of Federal Rule of Civil Procedure 23(a);

2. Fully articulate one or more of the additional requirements for maintenance of a class action that are set forth in Federal Rule of Civil Procedure 23(b); and

3. If the motion includes a proposal for the appointment of class counsel, set forth with particularity the information the court must consider in assessing proposed class counsel's ability to represent the interests of the class fairly and adequately, as set forth in Federal Rules of Civil Procedure 23(g)(1)(A) and (B).

(emphasis added).

Here, regarding the claims certified by the Court, plaintiffs' motion sets forth the factual basis for a class action under Rule 23(a) and complies with 23(b)(3). Plaintiffs' motion, however, does not include a proposal for the appointment of class counsel. Additionally, their brief does not discuss appointment, though it mentions class counsel

in its discussion of adequacy. (Doc. 247, at 13–14). The Court finds no earlier-filed motion including a proposal for the appointment of class counsel. For instance, neither plaintiffs' motion for conditional certification under the FLSA or their brief in support of the motion included a proposal regarding the appointment of class counsel. (*See* Docs. 109; 110-1). Thus, plaintiffs fail to comply with Local Rule 23(a)(3).

In sum, plaintiffs' motion fails to fulfill all requirements of Local Rule 23(a). Therefore, the Court will **hold in abeyance** its certification of the class for Count 2 until plaintiffs comply with Local Rules.

## IX. CONCLUSION

For the reasons stated above, plaintiffs' Motion to Certify Counts 2-6 as Rule 23(b)(3) Class Actions (Doc. 244) is **held in abeyance in part and denied in part**. Plaintiffs are given 14 days to submit a modified proposed class definition consistent with this ruling.

No claim, however, will be certified until plaintiffs comply with Local Rule 23(a). Plaintiffs are given 14 days to file a supplemental pleading complying with Local Rule 23(a) requiring a proposal for appointment of class counsel. Thus, the Court **holds in abeyance** its certification of the minimum-wage claim (Count 2). Certification of the unlawful-deductions claim (Count 3), unjust-enrichment claim (Count 4), fraud claim (Count 5), and Truth in Leasing Act claim (Count 6) is **denied**.

**IT IS SO ORDERED** this 14th day of June, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

72