# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ANTHONY CERVANTES and MIKE CROSS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CRST INTERNATIONAL, INC. and CRST EXPEDITED, INC.,<br><br>Defendants. | Case No. 1:20-cv-00075-CJW-KEM<br><br>Honorable Judge C.J. Williams<br><br>PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

## TABLE OF CONTENTS

FACTS RELEVANT TO THE MOTION ................................................................................... 2

    A.    Plaintiffs' First Set of Requests for Production to CRST Expedited, Inc., Request No. 21 ................................................................................................... 2

    B.    Plaintiffs' Second Set of Requests for Production to CRST Expedited, Inc., Request Nos. 5, 6, and 7 ................................................................................... 4

LEGAL STANDARD ..................................................................................................................... 7

    A.    The Standard for a Motion to Compel ............................................................. 7

    B.    Plaintiffs' Requested Discovery Is Highly Relevant to the Issues of Good Faith and Willfulness ........................................................................................ 8

    C.    CRST Must Produce a Privilege Log in Accordance with the Federal Rules of Civil Procedure .............................................................................................. 10

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brinkman v. Department of Corrections*,
    21 F.3d 370 (10th Cir.), cert. denied, 513 U.S. 927 (1994) ....................................................... 9

*Browne v. P.A.M. Transp., Inc.*,
    434 F. Supp. 3d 712 (W.D. Ark. 2020) ................................................................................ 10

*Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Montana*,
    408 F.3d 1142 (9th Cir. 2005) .............................................................................................. 13

*Catipovic v. Turley*,
    No. C11-3074, 2013 WL 1718061 (N.D. Iowa Apr. 19, 2013) ............................................... 8

*Chao v. Barbeque Ventures, LLC*,
    547 F.3d 938 (8th Cir. 2008) .............................................................................................. 8, 9

*Hansen v. Savage Arms Co.*,
    No. 17-CV-3002-LTS, 2017 WL 6376342 (N.D. Iowa Dec. 13, 2017) ................................ 7, 8

*Helmert v. Butterball, LLC*,
    No. 4:08CV00342 JLH, 2010 WL 2179180 (E.D. Ark. May 27, 2010) ................................ 10

*Hofer v. Mack Trucks, Inc.*,
    981 F.2d 377 (8th Cir. 1992) ................................................................................................. 7

*Jarrett v. ERC Props., Inc.*,
    211 F.3d 1078 (8th Cir. 2000) ............................................................................................... 9

*Marlin v. Cooper Elec. Supply Co.*,
    940 F.2d 896 (3d Cir.1991) ................................................................................................... 9

*Marook v. State Farm Mut. Auto. Ins. Co.*,
    259 F.R.D. 388 (N.D. Iowa 2009) ......................................................................................... 7

*McLaughlin v. Richland Shoe Co.*,
    486 U.S. 128 (1988) ............................................................................................................ 8, 9

*Menge v. Simon's Trucking, Inc.*,
    No. C20-1016-LTS, 2021 WL 3921346 (N.D. Iowa Sept. 1, 2021) ....................................... 9

*Myers v. Iowa Bd. of Regents*,
    No. 319CV00081SMRSBJ, 2022 WL 909846 (S.D. Iowa Mar. 29, 2022) ............................. 8

*Progressive Cas. Ins. Co. v. F.D.I.C.*,
  298 F.R.D. 417 (N.D. Iowa 2014) .................................................................................7, 12

*RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*,
  489 F. Supp. 3d 907 (W.D. Mo. 2020) ................................................................................13

*Shepard v. City of Waterloo*,
  No. 14-CV-2057-LRR, 2015 WL 9165915 (N.D. Iowa Dec. 16, 2015) ..............................8, 9

*Stagger v. Experian Info. Sols., Inc.*,
  2021 WL 5299791 (N.D. Ill. Nov. 15, 2021), *recons. denied* ..................................................13

*Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*,
  317 F.R.D. 620 (N.D. Ill. 2016)..............................................................................................13

*UnitedHealth Grp. Inc. v. Columbia Cas. Co.*,
  No. CV 05-1289, 2010 WL 11537514 (D. Minn. Aug. 10, 2010) ....................................11, 12

*In re VeroBlue Farms USA, Inc.*,
  21-CV-3017-CJW-KEM, 2021 WL 3260087 (N.D. Iowa June 30, 2021)..............................12

*In re VeroBlue Farms USA, Inc.*,
  No. 18-01297, 2021 WL 1583150, at *3 (Bankr. N.D. Iowa Apr. 22, 2021),
  *leave to appeal denied*, No. 21-CV-3017-CJW-KEM, 2021 WL 3260087
  (N.D. Iowa June 30, 2021), *appeal dismissed*, No. 21-2673, 2021 WL
  6689161 (8th Cir. Aug. 24, 2021), *and on reconsideration in part*, No. AP 19-
  09015, 2022 WL 1195643 (Bankr. N.D. Iowa Apr. 21, 2022)...............................................12

**Statutes**

29 U.S.C. § 216(b) ..........................................................................................................................8

29 U.S.C. § 255(a) ......................................................................................................................1, 8

29 U.S.C. § 260..........................................................................................................................1, 8

Iowa Code § 91A.3 .........................................................................................................................8

Iowa Code § 91A.8 .........................................................................................................................8

**Rules**

Fed. R. Civ. P. 26(b)(5)................................................................................................................13

Fed. R. Civ. P. 26(b)(5) and 34.......................................................................................................1

Fed. R. Civ. P. 26(b)(5)(A) ...........................................................................................................12

Fed. R. Evid. 401 ............................................................................................................7

Federal Rule 26(b) ........................................................................................................7

Federal Rules of Evidence, Rule 401............................................................................7

Rule 23 ..........................................................................................................................1

Rule 37(b)(2).................................................................................................................13

This motion seeks to compel Defendants (hereinafter "CRST" or "Defendants") to produce documents and a privilege log in response to Plaintiffs' discovery requests. Named Plaintiffs Anthony Cervantes and Mike Cross brought this hybrid class and collective action against CRST on behalf of themselves and a class of Drivers who CRST misclassified as independent contractors. Plaintiffs allege minimum wage violations under the Fair Labor Standards Act ("FLSA") and Iowa wage laws as well as unjust enrichment and fraud claims and violations of the federal Truth in Leasing Act. *See* Third Amended Complaint ("TAC"), Doc. 108. To date, more than 600 individuals have joined the FLSA collective action, and the Court has indicated that it will certify a Rule 23 class action for Iowa minimum wage claims. Doc. 276.

In answering Plaintiffs' TAC, CRST asserted the affirmative defenses of good faith, 29 U.S.C. § 260, willfulness, 29 U.S.C. § 255(a), and the availability of liquidated damages to members of the state class. *See* Defendants' Answer, Doc. 155. Accordingly, Plaintiffs have sought discovery about what steps CRST took to ascertain its FLSA and Iowa wage law obligations, what it knew about its legal obligations, and what steps it took to comply with those obligations.

Despite Plaintiffs' numerous attempts to address CRST's objections to their discovery requests, CRST refuses to search for documents responsive to Plaintiffs' Requests and provide a log for documents withheld based on privilege. Consequently, CRST has asserted privilege as to hundreds of documents that it has not even searched for, much less reviewed. CRST's failure to produce the documents or a privilege log identifying what documents exist and the basis for asserting a privilege over them prejudices Plaintiffs and is contrary to Fed. R. Civ. P. 26(b)(5) and 34.

1

## FACTS RELEVANT TO THE MOTION

**A. Plaintiffs' First Set of Requests for Production to CRST Expedited, Inc., Request No. 21**

In their First Set of Requests for Production, Ex. 1, December 22, 2020, Plaintiffs propounded Request for Production No. 21 seeking documents relevant to CRST's good faith defense and Plaintiffs' claim that CRST acted willfully. The Request sought documents that pertain to CRST's scienter in its consideration, creation, and implementation of the Lease Purchase Program.[1]

On February 16, 2021, CRST objected to the breadth and burden of Request No. 21 to the extent it seeks documents protected by the attorney-client privilege or work-product doctrine and responded that it would produce a privilege log for any documents it withheld based on privilege. *See* Ex. 2, Defendants' Response to Plaintiffs' First Set of Requests for Production to CRST Expedited, Inc.[2] Plaintiffs addressed the objections explaining that the requested documents are highly relevant to CRST's scienter and because CRST established the Lease Operator program prior to the applicable statute of limitations in this case, CRST's time limitation was improper.[3]

---

[1] Plaintiffs' initial Request No. 21 sought, "All documents containing or concerning any claim, complaint, worker compensation claim, governmental communication, audit, award, formal or informal opinion, legal opinion or investigation pertaining to the legality or propriety of: a.) CRSTX's treatment of Drivers as independent contractors, b.) CRSTX's non-payment of minimum wages, individually or collectively to any individual or class of worker." *See* Ex. 1, at p. 15.

[2] Based on these objections, CRST improperly limited its search to: "(1) documents constituting claims for workers' compensation or unemployment insurance benefits brought by independent contractors of Defendant between January 17, 2017 and present; (2) documents related to governmental audits examining Defendant's treatment of drivers as independent contractors between January 17, 2017 and present; and (3) legal opinions or memoranda provided to Defendant by outside counsel between January 17, 2017 and present concerning the legality of using independent contractors." *See* Ex. 2, at 20-21.

[3] On August 4, 2021, CRST produced its supplemental response and informed Plaintiffs that it did not find any responsive documents in its limited search. *See* Ex. 3, Defendants' Supplemental Response to Plaintiffs' First Set of Requests for Production to CRST Expedited, Inc., August 4, 2021.

*See* Ex. 4, Sweeney Letter Sent June 4, 2021. Nonetheless, Plaintiffs narrowed Request No. 21 in the interest of moving the discovery process forward. *See Id.*, at 10-11.

On August 4, 2021, CRST continued to object to Plaintiffs' Revised Request No. 21 as overly broad and burdensome and, contrary to its prior position, stated that it would not provide a log for documents it believed were privileged.[4] Plaintiffs further narrowed and clarified their request on three more occasions to move the discovery process forward and alleviate CRST's burden.[5] The parties presented the issue informally to Magistrate Judge Mahoney at a scheduling conference on January 5, 2022.[6] Judge Mahoney advised CRST "if claiming privilege, then produce a privilege log."

---

[4] In its Supplemental Responses to Plaintiffs' First Set of Requests for Production, CRST refused to search for documents and create a privilege log related to other legal matters in accordance with Plaintiffs' Revised Request No. 21. *See* Ex. 3, at p. 25-26. CRST argued that the request was still overbroad and subpart (b) was not limited to any class of worker, asserting that the revised request would require CRST to search "the email, text, and Qualcomm communication history of nearly every driver, driver manager, and numerous other individuals employed by Defendant." *Id.*

[5] On September 1, 2021, Plaintiffs informed CRST that it can exclude searches of Qualcomm messages, texts, and emails to and from Drivers, and clarified that the Revised Request No. 21 seeks formal, not informal, claims, complaints, and legal opinions regarding CRST's treatment of Drivers as independent contractors and non-payment of minimum wages to any individual or class of worker. *See* Ex. 5, M. Sweeney Letter, September 1, 2021. CRST continued to object, inter alia, on the basis that Plaintiffs' Revised request was overbroad in that it was not limited to a time period. *See* Ex. 6, J. Hanson Letter, October 7, 2022, at 2-3. On March 2, 2022, in response to CRST's additional objections, Plaintiffs agreed to limit the applicable time period for Plaintiffs' Revised Request No. 21 and requested CRST search for all responsive documents for the period preceding the filing of Plaintiffs' Second Amended Complaint on September 18, 2020. *See* Ex. 7, M. Sweeney Letter, March 2, 2022. Finally, during the parties' March 15, 2022 meet and confer, Plaintiffs agreed to further limit the applicable time period to September 18, 2015 to the filing of the Plaintiffs' Second Amended Complaint on September 18, 2020 to reflect the statute of limitations for the Iowa state law claims. *See* Ex. 8, M. Sweeney Letter, March 22, 2022, at p. 1.

[6] During the status conference, the parties discussed, *inter alia*, the parties' dispute regarding CRST's refusal to search for and produce a privilege log in response to Plaintiffs' Requests. Magistrate Judge Mahoney provided guidance on the issue even though a formal motion was not before the Court. *See* Hearing Minutes, Doc. 249.

Despite Plaintiffs' efforts to address CRST's concerns and Judge Mahoney's guidance, CRST continues to object to providing documents or a privilege log and continues to refuse to search for and produce the requested legal opinions from September 18, 2015 to the filing of the Plaintiffs' Second Amended Complaint on September 18, 2020.[7] *See* Ex. 9, J. Hanson's Letter, March 23, 2022, at p. 1.

### B. Plaintiffs' Second Set of Requests for Production to CRST Expedited, Inc., Request Nos. 5, 6, and 7

In their Second Set of Requests for Production to CRST Expedited, Inc., Ex. 10, July 8, 2021, Plaintiffs propounded Requests Nos. 5, 6, and 7 seeking documents concerning CRST's good faith and willfulness in classifying Drivers as independent contractors and failing to pay the minimum wage. The requests are as follows:

> **Request No. 5**: (as amended by letter May 24, 2022): From September 18, 2015 to September 18, 2020, all documents containing or concerning any legal analysis or opinion of FLSA lawsuits brought against other carriers based on their classification of drivers as independent contractors, including but not limited to lawsuits against Western Express, Swift Transportation Co., and Central Trucking, Inc. *See* Ex. 11, M. Sweeney Letter, May 24, 2022.
>
> **Request No. 6**: (as amended by letter May 24, 2022): From September 18, 2015 to September 18, 2020, all documents concerning any legal or financial analysis or opinion pertaining to: (a) the value, efficiency, viability, and benefit to CRSTX of the Lease Purchase Program; (b) the value, efficiency, viability, and benefit to CRSTX of the Lead Driver Program; (c) CRSTX's determination of Drivers' base compensation rates. *See* Ex. 11.
>
> **Request No. 7**: (as amended by letter May 24, 2022): From September 18, 2015 to September 18, 2020, all documents containing or concerning any claim, complaint,

---

[7] As amended via Plaintiffs' June 4, 2021 letter and during the parties' March 15, 2022 meet and confer, Plaintiffs' Request No. 21 seeks: From September 18, 2015 to September 18, 2020, all documents containing or concerning: a. Any claim, complaint, governmental communication, governmental, internal, or third party audit, award, or legal opinion or memorandum pertaining to the legality or propriety of CRSTX's treatment of Drivers as independent contractors, b. Any claims filed in a court, arbitral forum, or other decision-making body; government audits; and legal opinions regarding CRSTX's non-payment of minimum wages, individually or collectively to any individual or class of worker. *See* Ex. 8, at 1.

governmental communication, audit, award, legal analysis or opinion pertaining to the legality or propriety of CRSTX's Lead Driver Program as it pertains to the Drivers. *See* Ex. 11.

CRST responded to Plaintiffs' Second Set of Requests for Production on August 23, 2021 and refused to search for documents in response to Request Nos. 5, 6, and 7, based on, *inter alia*, its objection that the requests seek documents protected by the attorney-client privilege. Ex. 12. Without having searched for documents, in response to Request Nos. 5 and 6, CRST asserted that the "burden of searching for responsive documents far exceeds the benefit given that" any documents found will be protected by the attorney-client privilege. *See* Ex. 12, at 3-4. In response to Request No. 7, CRST argued that the legality of CRST's Lead Driver Program is irrelevant, and that Request No. 6 is unduly burdensome and vague. *Id.*[8]

On September 28, 2021, Plaintiffs responded to CRST's objections explaining the relevance of the requests and the necessity of CRST providing documents or a privilege log. *See* Ex. 13, at 4-6. To address CRST's objections, Plaintiffs agreed to narrow Request No. 6 and clarified No. 7, but continued to insist on a privilege log for any documents CRST withheld based on privilege. *Id.* [9] The parties met and conferred on December 2, 2021. *See* Ex. 15. Following the December 2nd meet and confer, the parties exchanged additional letters asserting their positions.[10]

---

[8] After asserting numerous objections to Request No. 6, CRST confusingly concluded its response stating, "CRST has no documents responsive to this request." Ex. 12, at 3-4. In Plaintiffs' September 28th letter, Plaintiffs pointed CRST to documents it produced suggesting that documents response to Request No. 6 exist. *See* Ex. 13, at 4-5. CRST subsequently clarified that it has no responsive financial opinions, review or investigations. *See* Ex. 14, J. Hanson's Letter, November 7, 2021, at p. 2.

[9] CRST offered to "stipulate that it does not base its good faith defense on advice of counsel." *See* Ex. 14, J. Hanson's Letter, November 7, 2021, at p. 2, but Plaintiffs explained that regardless of such a stipulation, the discovery is relevant to the FLSA willfulness standard. *See* Ex. 15, Parties' Email, December 3, 2021, at 1.

[10] Plaintiffs provided legal authority addressing CRST's obligation to produce a privilege log in their September 28th letter and additional legal authority putting CRST on notice that continued refusal to produce a privilege log may constitute waiver of the privilege. *See* Ex. 16, M. Rafferty Letter, December 30, 2021. CRST responded to Plaintiffs' December 30th letter and proposed

5

Subsequently, the parties met and conferred again on March 15, 2022, during which CRST could not state its position regarding Requests Nos. 5, 6, and 7. *See* Ex. 8, at 2. On April 5, 2022, CRST confirmed that it will not produce a privilege log in response to Request Nos. 5, 6, and 7 based on its objection that doing so would be unduly burdensome. *See* Ex. 19, J. Hanson Letter April 5, 2022, at 2.

On May 24, 2022, in a final effort to resolve the parties' dispute regarding Request Nos. 5-7 and address CRST's objections regarding the burden of these requests, Plaintiffs agreed to limit the time period and scope of the requests. *See* Ex. 11. Plaintiffs limited Request Nos. 5-7 to the time period of September 18, 2015 to September 18, 2020 to reflect the five-year statute of limitations triggered by the filing of Plaintiffs' Second Amended Complaint for Plaintiffs' unjust enrichment and fraud claims under Iowa state law claims. *Id.* Additionally, Plaintiffs limited Request Nos. 5 and 7 to the responsive "legal analysis or opinion," and Request No. 6 to responsive "legal or financial analysis or opinion." *Id.*

The parties met and conferred on June 13, 2022. Despite Plaintiffs' attempt to address CRST's objections to Request Nos. 5-7, CRST maintained its objections and refused to produce documents or a privilege log in response to these requests. See, Ex. 20, M. Sweeney letter, June 15, 2022.

As of today's date, CRST has produced neither documents nor a privilege log in response to Plaintiffs' First Set of Request for Production, Request No. 21 and Plaintiffs' Second Set of Requests for Production, Request Nos. 5, 6 and 7, despite Plaintiffs' repeated attempts to narrow

---

that Plaintiffs provide CRST with a list of key terms for CRST to use in searching emails. *See* Ex. 17, J. Hanson Letter, February 1, 2022, at 2. Plaintiffs replied to CRST's February 1st letter, informing CRST that its request for key terms for email searches is inappropriate, given that Plaintiffs' Requests cover more than emails and Plaintiffs do not have the necessary knowledge to provide key terms. *See* Ex. 18, M. Rafferty letter, February 8, 2022.

the request to address CRST's concerns. Notably, CRST has maintained its objections, even though it directly contradicts the guidance Magistrate Judge Mahoney provided on the "basic tenets of discovery" during the parties' January 5, 2022 status conference. *See* Doc. 248, 249 ("[I]f claiming privilege, then produce a privilege log.").

## LEGAL STANDARD

**A. The Standard for a Motion to Compel**

Courts apply Federal Rule 26(b) as "liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." *Hansen v. Savage Arms Co.*, No. 17-CV-3002-LTS, 2017 WL 6376342, at *4 (N.D. Iowa Dec. 13, 2017) (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). A liberal and broad application of the discovery rules fulfills "discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Progressive Cas. Ins. Co. v. F.D.I.C.*, 298 F.R.D. 417, 422 (N.D. Iowa 2014) (quoting *Marook v. State Farm Mut. Auto. Ins. Co.*, 259 F.R.D. 388, 394 (N.D. Iowa 2009) (internal quotation marks and citation omitted)).

The party requesting discovery has the burden to make a "threshold showing that the requested discovery would be relevant." *Hansen*, 2017 WL 6376342, at *5. Once the requesting party establishes this threshold, the burden shifts to the party resisting the motion to compel to prove that the discovery sought is irrelevant. *Id.* The Federal Rules of Evidence, Rule 401, provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. This Court has noted that a discovery request "should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party."

7

*Hansen*, 2017 WL 6376342, at *5 (quoting *Catipovic v. Turley*, No. C11-3074, 2013 WL 1718061, at *2 (N.D. Iowa Apr. 19, 2013) (internal quotation marks and citation omitted)).

**B. Plaintiffs' Requested Discovery Is Highly Relevant to the Issues of Good Faith and Willfulness**

The discovery requests at issue are clearly within the scope of discovery and relevant to the claims and defenses in this case. An employer found liable for an FLSA violation is liable for unpaid minimum wages and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).[11] A court may use its discretion to award no liquidated damages if the employer shows that it acted "in good faith and that he had reasonable grounds for believing that his act or omission" did not violate the FLSA. 29 U.S.C. § 260. The employer has the burden of proving good faith and reasonableness. *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941 (8th Cir. 2008). Courts apply a subjective standard to good faith, requiring the employer establish "an honest intention to ascertain and follow the dictates of the FLSA." *Id.* at 942 (internal citation and quotation marks omitted). To satisfy its burden, the employer must establish that it "took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Id.* at 942 (internal citation and quotation marks omitted).

Moreover, employers who willfully violate the FLSA are subject to an additional year of liability. 29 U.S.C. § 255(a). Under the standard for willfulness, Plaintiffs bear the burden to prove that CRST "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Shepard v. City of Waterloo*, No. 14-CV-2057-LRR, 2015 WL 9165915, at *23 (N.D. Iowa Dec. 16, 2015) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133

---

[11] Similarly, under Iowa Code § 91A.8, an employer shall be liable for liquidated damages in the amount prescribed by statute if the employer intentionally violates Iowa Code § 91A.3. *See Myers v. Iowa Bd. of Regents*, No. 319CV00081SMRSBJ, 2022 WL 909846, at *10 (S.D. Iowa Mar. 29, 2022). A court's "finding of [the employer's] awareness [of its obligations under Iowa Law] and non-performance is sufficient to impose liquidated damages." *Id.*

8

(1988)); *see also Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1082 (8th Cir. 2000). The Eighth Circuit has noted that "'it is hard to mount a serious argument' that an employer who has acted in reckless disregard of its FLSA obligations has nonetheless acted in good faith." *Jarrett*, 211 F.3d at 1084 (citing *Brinkman v. Department of Corrections*, 21 F.3d 370, 372–73 (10th Cir.), cert. denied, 513 U.S. 927 (1994)). "[I]ssues of good faith and willfulness in the context of FLSA violations, though distinct, are intertwined." *Menge v. Simon's Trucking, Inc.*, No. C20-1016-LTS, 2021 WL 3921346, at *8 (N.D. Iowa Sept. 1, 2021).

Central to the question of willfulness is what CRST actually knew about the legal requirement to pay the minimum wage and whether CRST deliberately disregarded the risk of violating the law by classifying Drivers as independent contractors. *Chao*, 547 F.3d at 942 ("Lack of knowledge is not sufficient to establish good faith."). Determining whether CRST acted in good faith and/or willfully necessarily requires evaluating precisely what Plaintiffs' requests seek to discover—the totality of the circumstances surrounding CRST's efforts to learn and comply with the law. *Id.* (quoting *Marlin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir.1991) ("To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions."))

Here, documents responsive to Plaintiffs' First Set of Requests, No. 21 and Second Set of Requests, Nos. 5, 6, and 7 are relevant to whether CRST "knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Shepard,* 2015 WL 9165915, at *23 (citing *McLaughlin,* 486 U.S. 128, 133). Request No. 21 is relevant to good faith and willfulness as it pertains to CRST's scienter in its consideration, creation, and implementation of the Lease Purchase Program and CRST's treatment of Drivers as independent contractors. Further, Request No. 21 concerns CRST's knowledge of the law regarding its failure to pay minimum wages to

9

Drivers. *See Browne v. P.A.M. Transp., Inc.*, 434 F. Supp. 3d 712, 725 (W.D. Ark. 2020) (noting that "continuing to pay over-the-road drivers per mile without regard for minimum wage requirements after being sued for exactly that policy" was evidence indicating that defendant employer acted willfully in violating the minimum wage law). Similarly, the documents requested in Request No. 5 are relevant to the issues of good faith and willfulness under the FLSA as they seek information regarding CRST's attempts to ascertain its wage and hour obligations based on FLSA lawsuits brought against other carriers due to their classification of drivers as independent contractors. *See Helmert v. Butterball, LLC*, No. 4:08CV00342 JLH, 2010 WL 2179180, at *4 (E.D. Ark. May 27, 2010) (noting that whether defendant employer's "decisionmakers were aware of and engaged in correspondence" regarding other similar wage and hour cases, including those involving other companies, is relevant to defendant's good faith defense). Further, Request No. 6 is relevant to the extent the documents show CRST had a financial incentive to classify Drivers as independent contractors and have Drivers train CRST's employee Student Drivers. Finally, Request No. 7 seeks documents pertaining to what steps CRST took to ascertain and comply with its legal obligations under the FLSA regarding its Lead Driver Program in which CRST placed job responsibilities on Drivers by assigning them CRST's student employee drivers to train. *See* ECF No. 245-2 at 4. Accordingly, the crux of Plaintiffs' requests, the steps CRST took to ascertain its wage and hour obligations and the advice CRST's counsel provided, are highly relevant to whether CRST acted in good faith or willfully in misclassifying Drivers as independent contractors and failing to pay them the minimum wage under the FLSA and Iowa law.

**C. CRST Must Produce a Privilege Log in Accordance with the Federal Rules of Civil Procedure**

In accordance with the law and Magistrate Judge Mahoney's guidance on the issue, where CRST believes it is entitled to exert a privilege of responsive documents, it must produce a

privilege log detailing any documents withheld on the basis of privilege. Throughout the parties' correspondence regarding the requests at issue here, CRST has repeatedly moved the goalposts, changing the basis for its objections, including but not limited to 1) Its claim that the requests were unduly burdensome given that any responsive documents are "certain to be protected by the attorney-client privilege," without the benefit of having searched for responsive documents; (*see* Ex. 3, at 27; Ex. 12, at 3-4; ); 2) Offering to stipulate that CRST's good faith defense is not based on the advice of counsel; (*see* Ex. 14, at 2); 3) Proposing Plaintiffs provide key words to search emails, even though Plaintiffs lack the requisite knowledge to do so; (*see* Ex. 17, at 2); 4) Failing to be able to state its position regarding Request Nos. 5, 6, and 7 during the parties' March 15th meet and confer; (*see* Ex. 8, at 2); and 5) resorting back to its original assertion that producing a privilege log is unduly burdensome. *See* Ex. 9, at 1; Ex. 19, at 2. Plaintiffs have attempted to reasonably address CRST's objections even as they continually shifted.

Despite Plaintiffs' efforts, CRST continues to claim privilege as to responsive documents and refuses to provide a privilege log. At this point, it is unclear whether CRST has reviewed the responsive documents or even searched for them. CRST asserts that "[t]he burden of searching for responsive documents far exceeds the benefit, given that any such documents located are certain to be protected by the attorney-client privilege since the request specifically seeks documents containing legal analysis or opinions of other lawsuits." *See* Ex. 12, at 3-4, *citing UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, No. CV 05-1289 (PJS/SRN), 2010 WL 11537514, at *11 (D. Minn. Aug. 10, 2010).

CRST's argument in support of its refusal to search for and produce documents in response to these requests is flawed in numerous respects. First, Plaintiffs cannot determine if the documents CRST claims are privileged are discoverable until Plaintiffs know what documents are at issue.

11

Courts in this District, including this Court, have held that privilege logs are required for precisely this reason. *See In re VeroBlue Farms USA, Inc.*, 21-CV-3017-CJW-KEM, 2021 WL 3260087, at *4 (N.D. Iowa June 30, 2021) ("Appellant has not produced a privilege log stating what materials and documents it possesses, so it is impossible to evaluate whether the materials are covered as privileged communications."); *see also Progressive Cas. Ins. Co. v. F.D.I.C.*, 298 F.R.D. 417, 421 (N.D. Iowa 2014) *citing* Fed. R. Civ. P. 26(b)(5)(A) ("A party withholding otherwise-discoverable information on the basis of a claimed privilege . . . must 'describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'").

Second, CRST's analysis of the court's holding in *UnitedHealth Grp. Inc.*, 2010 WL 11537514 is misleading. The District of Minnesota did not "declin[e] to require [the] party to search for documents," as CRST asserted. Rather, the court ordered:

> Plaintiff prepare a categorical privilege log for the documents withheld on grounds of privilege and work product. The log should be as detailed as possible and include categories such as the following: internal evaluation by outside counsel; evaluation by in house counsel; billing records; claims files and others. The log should also indicate whether any of the documents were shared with third parties, and, if so, with whom.

*UnitedHealth Grp. Inc.*, 2010 WL 11537514, at *26. Accordingly, CRST cannot rely on this holding to support its argument that it is not required to search for documents in response to these requests and produce a privilege log where it asserts the documents are privileged.

CRST's continued refusal to create and produce a privilege log for these relevant documents directly contradicts the extensive authority Plaintiffs provided CRST, indicating that doing subjects CRST to sanctions and a waiver of the privilege. *See* Ex. 16, , at 3; *See In re VeroBlue Farms USA, Inc.*, No. 18-01297, 2021 WL 1583150, at *3 (Bankr. N.D. Iowa Apr. 22, 2021), *leave to appeal denied*, No. 21-CV-3017-CJW-KEM, 2021 WL 3260087 (N.D. Iowa June

12

30, 2021), *appeal dismissed*, No. 21-2673, 2021 WL 6689161 (8th Cir. Aug. 24, 2021), *and on reconsideration in part*, No. AP 19-09015, 2022 WL 1195643 (Bankr. N.D. Iowa Apr. 21, 2022) (finding that the defendant's failure to provide a privilege log after being ordered by the court to produce responsive documents warranted "wholesale waiver of its asserted privilege"); *RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, 489 F. Supp. 3d 907, 915 (W.D. Mo. 2020) (holding that defendants waived the attorney-client privilege of the documents in the privilege log, because defendants failed to provide a privilege log until after the close of fact discovery); *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Montana*, 408 F.3d 1142, 1147–49 (9th Cir. 2005), quoting Fed. R. Civ. P. 26(b)(5) committee's note to 1993 amendment ("To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection."); *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 632 (N.D. Ill. 2016) (collecting cases); *Stagger v. Experian Info. Sols., Inc.*, 2021 WL 5299791, at *5 (N.D. Ill. Nov. 15, 2021), *recons. denied*, WL 5564867 (N.D. Ill. Nov. 29, 2021) ("In order to maintain a claim of privilege, parties must, of course, produce a privilege log. Tardiness and failure to comply with Fed. R. Civ. P. 26(b)(5) can, in many circumstances, be found to constitute a waiver of the privilege as to the unlogged documents. . . ."). Indeed, CRST's actions closely resemble that of the defendant's in *Stagger*, where the Northern District of Illinois held that "asserting that documents are privileged without having reviewed them . . . . can only be said to have been made willfully or in bad faith."). *Id.* (citations omitted; collecting cases).

CRST has waived any privilege it may have had over the discovery sought because it has failed to meet its obligation to search for and produce the relevant discovery or a privilege log for more than a year and one half, despite being on notice of its discovery obligation. Accordingly,

13

the Court should order CRST to search for and produce documents responsive to the subject requests.

## CONCLUSION

For a year and one half, CRST has continued to refuse to provide discovery relevant to its good faith and willfulness affirmative defenses and the FLSA statute of limitations. Plaintiffs' repeated efforts to address CRST's concerns and clarify and narrow the requests have been to no avail, nor has CRST followed the Magistrate Judge Mahoney's explicit guidance. Accordingly, Plaintiffs respectfully request the Court find that CRST has waived any privilege it may have had over responsive documents and order CRST to

1. Search for and produce the responsive formal and informal legal opinions from September 18, 2015 to September 18, 2020 in response to Plaintiffs' First Set of Requests, No. 21.

2. Search for and produce responsive documents to Plaintiffs' Second Set of Requests, No. 5 as limited in Ex. 11, Plaintiffs' May 24, 2022 letter.

3. Search for and produce responsive documents to Plaintiffs' Second Set of Requests, No. 6 as limited in Ex. 11, Plaintiffs' May 24, 2022 letter.

4. Search for and produce responsive documents to Plaintiffs' Second Set of Requests, No. 7 as limited in Ex. 11, Plaintiffs' May 24, 2022 letter.

Respectfully submitted this 17th day of June 2022.

/s/ *Michael J.D. Sweeney*

Michael J.D. Sweeney (*pro hac vice*)
GETMAN, SWEENEY & DUNN PLLC
260 Fair Street
Kingston, NY 12401
Phone (845) 255-9370
msweeney@getmansweeney.com

*Attorneys for Plaintiffs*

15