# EXHIBIT 10

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| Anthony Cervantes and Mike Cross, individually and on behalf of all other similarly situated persons,<br><br>              Plaintiffs,<br>v.<br><br>CRST, International, Inc., and CRST Expedited, Inc.,<br><br>              Defendants. | CASE NO. 1:20-cv-75-CJW-KEM |

**PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION TO
CRST EXPEDITED, INC.**

## I.    INSTRUCTIONS

A.    In accordance with the provisions of Fed. R. Civ. P. Rule 34(b), Defendants are to organize and label these documents, records and data to correspond with the numbered paragraphs, subparagraphs, and categories in this request.

B.    In all instances, the terms of these requests are to be interpreted broadly and expansively. These requests are to be read to apply to the broadest quantity of materials to which they could pertain.

C.    If a document could be produced with respect to a narrow request or a more general request, it shall be organized and submitted with respect to the more narrow request.

D.    Plaintiffs request a written response to the requests for production setting forth with respect to each request whether such documents exist, whether inspection will be permitted as requested, and if not, stating specifically Defendants' objections to inspection.

1

E. Defendants are under a duty to produce any documents in their possession, custody or control, or in the possession, custody or control of any agent, attorney, accountant, partner, officer or employee of Defendants and all other from whom Defendants may reasonably secure these documents and things.

F. Any objections on the basis of a privilege must be accompanied by a privilege log in accordance with Fed. R. Civ. P. Rule 26(b)(5)(A).

G. If Defendants decline to produce any documents requested hereinafter on the basis of any asserted privilege, they shall, in their final response hereto, provide Plaintiffs with the following written information pertaining to such document, in order that the Court and Plaintiffs may determine the validity of the claim of privilege:

1. Its date or, if not dated, the date it was prepared or received,
2. The type of document or ESI (e.g., letter, e-mail, memorandum, telegram, photograph, reproduction, Word document, Excel spreadsheet),
3. Its author and addressee,
4. The present location,
5. The identity of the individual or person presently custodian or custodians thereof,
6. A general description of its contents,
7. The number of pages thereof,
8. The identity of each person who received a copy of the document and the relationship of such person to Defendants,
9. Whether such document or ESI contains or relates to facts or opinions, or both,
10. The nature of the privilege (e.g. work product, attorney-client) that Defendants claim with respect to such document.

H.  If Defendants object to and refuse to answer any part of any request for production, they shall state their objection, identify the part to which they are objecting, and answer the remaining portion thereof. If they object to the scope or time period of any request, they shall state their objection, identify the scope or time period to which they are objecting, and answer the request for the scope or time period they believe is appropriate. If Defendants make an objection and provide an answer or response, the answer or response will be understood to waive the objection and it will be understood to be a full answer with no withholding based on the objection (unless the scope of withholding is fully specified).

I.  If any of the following requests for production cannot be answered in full after exercising due diligence to secure the information, Defendants shall so state and answer to the extent possible, specifying Defendants' inability to answer the remainder, and state whatever information they have concerning the unanswered portions. If Defendants' answer is qualified in any particular manner, they shall set forth the details of such qualifications.

J.  These requests shall be deemed to be continuing in the manner provided by law.

K.  The use of the singular form of any word includes the plural and vice versa.

L.  When responsive documents pertain to different individuals, the response shall segregate such documents by the individuals to which they pertain.

M.  All documents produced shall be stamped with a Bates number.

N.  Supplementation: This document and ESI request shall be deemed continuing in nature so as to require supplementary responses between the time the initial responses are served and the time of the trial, in accordance with Rule 26(e) of the Federal Rules of Civil Procedure. Such supplementary responses are to be served upon Plaintiffs by any deadline set by the

Court, or within fourteen (14) days after receipt of such information, whichever is sooner and, in no case, later than thirty (30) days before the trial.

O. Unless otherwise indicated in a request, the applicable time period for these requests is from October 23, 2017 through the present. This time period may be subject to expansion should the period of equitable estoppel be expanded.

## II. ADDITIONAL INSTRUCTIONS FOR THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI)

A. **Bates Numbering:** All ESI produced shall be stamped with a Bates number in the filename.

B. **Format of Production:** Aside from email, ESI shall be produced in its native format, or if such information is kept in a proprietary format, it shall be produced where possible in a form readable, searchable and manipulable by off-the-shelf software. Email shall preferably be produced in PDF format as described below in II.D. If compliance with these terms is not possible, Defendants shall confer with Plaintiffs' counsel prior to production to discuss the format of production.

C. **Production of Non-Structured Documents in TIFF/Text format:** If non-structured ESI, (e.g., Word or PDF documents, emails) is to be produced in TIFF/Text format, then a load file in Excel format shall be produced containing all columns of information set forth in Appendix A.

D. **Production of Non-Structured Documents in PDF format:** If non-structured ESI is to be produced in PDF format, the PDFs shall be searchable, and a load file, in Excel format, shall be produced containing all columns of information set forth in Appendix A.

E. **Production of Structured Data (e.g. Excel, Database output):**

1. Production from databases up to one million rows can be produced in an Excel-compatible format.

2. The native software application and vendor shall accompany each produced dataset.

3. Production from databases greater than one million rows shall be produced in pipe delimited format with quoted cells and shall not include embedded new lines or embedded delimiters within cells.

4. Exported datasets should not unnecessarily be broken in subfiles; If this is necessary, a meet and confer should take place before production of the data.

5. Production of structed data which is split into multiple files shall contain a header rows in each file and shall be ordered consistently through the file set.

6. Each database row shall be unique.

7. Tables with relevant data shall be produced in entirety with all columns included.

8. Each table shall be identified and described.

9. Headers and header descriptions shall be provided for each table.

10. A description of the data and format of each column shall be provided.

11. All codes or shorthand designations within any table shall be described in an accompanying document.

12. The format, time zone, and daylight savings time information shall be provided for all date and time fields.

13. Unique employee identifiers shall be included in all rows of applicable tables.

F. **Metadata:** ESI document production shall include all metadata associated with the produced documents.

G.  **Search Term Protocol**: Parties shall meet and confer to devise a search term protocol, should that be necessary in the course of email, messaging, and document production.

### III.  DEFINITIONS

As used in these discovery requests, the following terms have the following meanings:

1. **Communication --** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2. **Document --** is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term. The term "document" also includes electronically stored information (ESI).

3. **Identify (with respect to persons).** When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4. **Identify (with respect to documents).** When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s),

addressee(s) and recipients(s).

5. **Parties.** The term "Plaintiff(s)" and "Defendant(s)" as well as a party's full or abbreviated name or a pronoun referring to a party, mean the party, and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates, and agents. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

6. **Person/Individual.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

7. **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

9. **All/Each.** The terms "all" and "each" shall be construed as all and each.

10. **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

11. **Number.** The use of the singular form of any word includes the plural and vice versa.

12. **CRSTX --**means CRST Expedited, Inc.

13. **ICOA --** means any "Independent Contractor Operating Agreement" or other contract designed to comply with 49 C.F.R. §376.11(a) whereby an individual or business entity leases a truck ("equipment") to CRSTX and agrees to use it to haul freight for CRSTX.

14. **Driver(s) --** means any individual who signed an ICOA with CRSTX, whether the individual signed the agreement in his individual capacity or in the name of a business

entity. Excluded from "Driver(s)" are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the relevant class period has had, a controlling interest in any Defendant. Also excluded are Fleet Drivers—i.e., an individual who signed an ICOA(s) to lease two or more operational trucks to CRSTX at the same time. A Driver who leased one truck after another to CRSTX, but only one at a time, or who leased a second truck to CRSTX, while his or her original truck was being repaired or inoperative, but who only operated one truck at a time for CRSTX would be included in the definition of "Driver".

15. **Student Driver -** is defined the same way that as the term "Student Driver is defined in Doc 39-2 ¶1(B)(1) and Doc 39-4 ¶1(B)(1)

16. **Employee Driver -** means drivers who hauled freight for CRSTX that CRSTX classified as employees.

17. **Team Driver** is defined the same way that as the term "Team Driver" is defined in Doc 39-2 ¶1(B)(5) and Doc 39-4 ¶1(B)(5).

18. **Relevant Time Period--** means October 23, 2017 through the present.

19. Except as otherwise defined, words used herein shall have their common dictionary meaning.

## IV. THE DOCUMENTS AND THINGS TO BE PRODUCED ARE AS FOLLOWS:

**Request for Production 1**

Please produce an exemplar of each non-identical version of the Leases signed by Drivers at any time during the Relevant Time Period.

**Request for Production 2**

For the Relevant Time Period, all documents concerning CRSTX's limitation on mileage or loads offered to Drivers, including but not limited to:

a. The criteria used to determine which loads are assigned to Employee Drivers and which loads are offered to Drivers,

b. The criteria used to determine which loads are assigned to which Drivers,

c. The "tier" system CRST utilized in offering loads to Drivers. *See* Anthony Cervantes' Deposition Transcript at 180:25-182:24.

**Request for Production 3**

Produce an exemplar of each non-identical version of the Annual Review Forms, including any related documents, that CRST requested Drivers complete as described in the CRST Driver Employee Handbook. *See* CRST0019770-CRST002028.

**Request for Production 4**

For the PowerPoint presentations CRST produced on February 17, 2021, produce either the metadata for the PowerPoint presentations, or the PowerPoint presentations in their original

9

format. *See* CRST004577-CRST004603; CRST004605-CRST004619; CRST004621-CRST004634; CRST004646-CRST004686; CRST4688-CRST004930.

**Request for Production 5**

All documents containing or concerning any legal analysis, or formal or informal opinion of FLSA lawsuits brought against other carriers based on their classification of drivers as independent contractors, including but not limited to lawsuits against Western Express, Swift Transportation Co., and Central Trucking Inc.

**Request for Production 6**

All documents concerning any legal or financial formal or informal opinion, review, or investigation pertaining to:

    a. CRSTX's decision to implement the Lease Purchase Program;

    b. CRSTX's decision to implement the Lead Driver Program;

    b. CRSTX's determination of Drivers' base compensation rates

**Request for Production 7**

All documents containing or concerning any claim, complaint, governmental communication, audit, award, formal or informal opinion, legal opinion or investigation pertaining to the legality or propriety of CRSTX's Lead Driver Program.

**Request for Production 8**

All documents containing or concerning the similarities and/or differences between the Owner

Operator Program and the Lease Purchase Program.

**Request for Production 9**

Any documents containing or concerning:

    a. any requests made by Drivers to examine "tariffs, or in the case of contract carriage, other documents from which rates and charges are computed, and documents underlying any computer generated document," in accordance with ICOA § 3(B), such as those filed at Doc 39-2 and Doc 39-4; and

    b. CRSTX's response to any Drivers' request to examine "tariffs, or in the case of contract carriage, other documents from which rates and charges are computed, and documents underlying any computer generated document," in accordance with ICOA § 3(B), such as those filed at Doc 39-2 and Doc 39-4.

**Request for Production 10**

All documents containing or concerning company accounting records regarding payments to each Driver, including net settlement payments, whether via direct deposit to Drivers' bank accounts, funds transfer to Drivers' Advance Card, or Advance Check made to Drivers. Any charges related to such payments, whether by Defendants or any third party, should be included.

**Request for Production 11**

For each Driver, all general ledger accounts containing or concerning each Driver's Maintenance and Other Reserve Fund.

**Request for Production 12**

All accountings provided to each Driver of the General Escrow Fund and Maintenance and Other Reserve Fund, as described in Section 8(c) of ICOAs, such as those filed at Doc. 39-2 and 39-4.

**Request for Production 13**

For each Driver, all accountings or itemizations of the base plate and/or permit fees CRSTX advanced to Drivers pursuant to Appendices A, Section 2(c) of ICOAs, such as those filed at Doc. 39-2 and 39-4.

**Request for Production 14**

All documents containing or concerning accounting records for each Driver for transactions not related to the above

**Request for Production 15**

For the Relevant Time Period, the following documents pertaining to CRSTX's officials, employees, or agents (CRSTX Recruiters) involved in the recruitment of Drivers:

    a. CRSTX Recruiters' job descriptions,

    b. CRSTX Recruiters' compensations plans,

    c. Training materials for CRSTX Recruiters,

    d. CRSTX Recruiters' communications with Drivers,

    e. CRSTX Recruiters' role and duties at Drivers' Orientation.

**Request for Production 16**

For the Relevant Time Period, the following documents pertaining to CRSTX's third-party recruiters:

   a. Scope of third-party recruiters' work,

   b. Engagement letters and compensation plans between CRSTX and third-party recruiters,

   c. Third-party recruiters' communications with Drivers,

   d. Third-party recruiters' role and duties at Drivers' Orientation.

**Request for Production 17**

For the Relevant Time Period, the following documents concerning CRSTX's Driver Managers, pertaining to:

   a. Driver Managers' job responsibilities and duties,

   b. Driver Managers' compensation plan, including any incentive compensation.

**Request for Production 18**

All documents containing or concerning CRSTX's analysis of a Drivers' potential income values listed in the Lease Purchase Program promotional materials, such as those Bates Stamped CRST004240-CRST004320.

**Request for Production 19**

All documents containing or concerning CRSTX's analysis of Drivers' actual compensation compared to the income figures listed in the Lease Purchase Program promotional materials,

such as those Bates Stamped CRST004240-CRST004320.

**Request for Production 20**

All documents containing or concerning CRSTX's analysis of Drivers' compensation, Employee Drivers' compensation, or any comparison between the compensation of Drivers and that of Employee Drivers.

**Request for Production 21**

All documents concerning CRSTX's Lease Purchase Program promotional materials, such as those Bates Stamped CRST004240-CRST004320, pertaining to:

    a. Purpose of such materials,

    b. Evaluations of the materials' effectiveness,

    c. Breadth of distribution.

**Request for Production 22**

All documents pertaining to CRSTX's Lease Purchase Program advertising materials, such as those Bates Stamped CRST004354-CRST004368, including:

    a. CRSTX's communications with advertising or marketing agencies regarding the scope of advertising,

    b. Evaluations or analysis of the advertising materials' effectiveness,

    c. CRSTX's communications with the advertising agencies or marketers regarding updates or changes to the advertisements.

**Request for Production 23**

All documents containing or concerning communications between Drivers and CRSTX's officials, employees, or agents, after Drivers terminate their ICOA, including but not limited to guidelines, scripts, or outlines provided to Driver Managers for discussions with Drivers who terminate their ICOA.

**Request for Production 24**

All documents containing or concerning any formal or informal complaints or demands by any Driver concerning or containing questions or assertions regarding a Driver's compensation being too low.

**Request for Production 25**

For the Relevant Time Period, all documents, including but not limited to any agreements between CRSTX and the Advance Card issuer, reflecting the amount the Advance Card issuer charges CRSTX per Advance Card as referenced in all Appendices A to ICOAs, such as those filed at Doc 39-2 and Doc 39-4.

**Request for Production 26**

All documents containing or concerning how the compensation rate for Drivers was determined or set including, but not limited to documents generated, reviewed, or considered as part of that process.

**Request for Production 27**

For the relevant time period, all documents containing or concerning the amount of the

administrative fees to Carrier listed in all Appendices A to ICOA, such as those filed at Doc 39-2 and Doc 39-4, and how those fees were calculated, including but not limited to CRSTX's administrative fee of $5 per hour if the Driver elects to obtain products or services from Carrier's third-party maintenance providers; the administrative fee that is included in the $150.00 cost per month per covered individual for the Occupational Accident Insurance; and the administrative fee included in the "4.5% of Contractor-specified value of Tractor Equipment" charged to Drivers for Physical Damage Insurance.

**Request for Production 28**

For the Relevant Time Period, all documents and policies containing or concerning expenses Drivers incurred on behalf of Student Drivers, including but not limited to expenses related to food and lodging for Student Drivers.

**Request for Production 29**

For the Relevant Time Period, all of CRSTX's and related entities' profits and loss statements.

**Request for Production 30**

For the relevant Time Period, communications between CRSTX and the DOT, including the descriptions of any unique identifiers or codes appearing in communication between CRSTX and DOT.

**Request for Production 31**

The schema, or model, defining the headings and describing the field layout of the Excel

Spreadsheets containing Qualcomm messages. *See* CRST002242, CRST002243, CRST002590 CRST002592, CRST003804-CRST003807, CRST005070-CRST005076.


Dated: July 8, 2021

*Michael J.D. Sweeney*

Michael J.D. Sweeney
Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kingston, NY 12401
Phone: (845) 255-9370
Fax: (845) 255-8649
msweeney@getmansweeney.com

*Attorneys for Plaintiffs*