# EXHIBIT 13

# GETMAN, SWEENEY & DUNN, PLLC

Getman, Sweeney, & Dunn PLLC
260 Fair Street
Kingston, NY 12401
845-255-9370
Fax 845-255-8649
www.getmansweeney.com

VIA EMAIL                                                                                            September 28, 2021

James H. Hanson
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
jhanson@scopelitis.com

Re: *Cervantes, et al. v. CRST International, Inc. et al*, 1:20-cv-00075-CJW-KEM

Dear Jim,

I am writing to address discovery deficiencies in CRST Expedited, Inc.'s August 23rd Responses to Plaintiffs' Second Set of Requests for Production. As outlined in this letter, CRST Expedited, Inc.'s ("CRSTX") responses are deficient in numerous ways.

Plaintiffs cannot accommodate these deficiencies and request CRSTX supplement its responses in the manner outlined below and in accordance with Fed. R. Civ. P. Rule 26.

**I. GENERAL MATTERS**

CRSTX objected to many of the discovery requests on the basis that the requests seek information relating to all Drivers, not merely putative class or collective members. While Plaintiffs believe that the requests are proper as propounded, Plaintiffs are willing to limit our requests to Drivers who meet the FLSA collective action class definition (ECF No. 157) and who filed a Consent to Sue with the Court. No such limitation applies to requests for information about Defendants.

CRSTX also objected to many of the discovery requests on the basis that the requests seek documents protected by the attorney-client privilege. In response to these requests, CRSTX refused to search for responsive documents, asserting that "[t]he burden of searching for responsive documents far exceeds the benefit, given that any such documents located are certain to be protected by the attorney-client privilege since the request specifically seeks documents containing legal analysis or opinions of other lawsuits." *citing UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, No. CV 05-1289 (PJS/SRN), 2010 WL 11537514, at *11 (D. Minn. Aug. 10, 2010).

1

CRSTX's argument in support of its refusal to search for and produce documents in response to these requests is flawed in numerous respects. First, Plaintiffs cannot determine if the documents CRSTX claims are privileged are discoverable until Plaintiffs know what documents are at issue. Courts in this District, including this Court, have held that privilege logs are required for precisely this reason. *See In re VeroBlue Farms USA, Inc.*, 21-CV-3017-CJW-KEM, 2021 WL 3260087, at *4 (N.D. Iowa June 30, 2021) ("Appellant has not produced a privilege log stating what materials and documents it possesses, so it is impossible to evaluate whether the materials are covered as privileged communications."); *see also Progressive Cas. Ins. Co. v. F.D.I.C.*, 298 F.R.D. 417, 421 (N.D. Iowa 2014) *citing* Fed. R. Civ. P. 26(b)(5)(A) ("A party withholding otherwise-discoverable information on the basis of a claimed privilege . . . must 'describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'").

Second, CRSTX's analysis of the court's holding in *UnitedHealth Grp. Inc*, 2010 WL 11537514 is misleading. The District of Minnesota did not "declin[e] to require [the] party to search for documents," as CRSTX asserts. Rather, the court ordered:

> Plaintiff prepare a categorical privilege log for the documents withheld on grounds of privilege and work product. The log should be as detailed as possible and include categories such as the following: internal evaluation by outside counsel; evaluation by in-house counsel; billing records; claims files and others. The log should also indicate whether any of the documents were shared with third parties, and, if so, with whom.

*UnitedHealth Grp. Inc*, 2010 WL 11537514, at *26. Accordingly, CRSTX cannot rely on this holding to support its argument that it is not required to search for documents in response to these requests and produce a privilege log where it asserts the documents are privileged.

Thus, Plaintiffs request CRSTX amend its responses where it refused to search for and produce responsive documents based on the above objection. Where CRSTX believes it is entitled to exert a privilege of responsive documents, it must produce a privilege log in accordance with the Federal Rules of Civil Procedure detailing any documents withheld on the basis of privilege.

## II. CRST EXPEDITED, INC.'S RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION TO CRST EXPEDITED, INC.

**Request for Production 2**

> For the Relevant Time Period, all documents concerning CRSTX's limitation on mileage or loads offered to Drivers, including but not limited to:
>
> a. The criteria used to determine which loads are assigned to Employee Drivers and which loads are offered to Drivers,
>
> b. The criteria used to determine which loads are assigned to which Drivers,
>
> c. The "tier" system CRST utilized in offering loads to Drivers. *See* Anthony Cervantes' Deposition Transcript at 180:25-182:24.

In response, CRSTX objected to RFP 2 as vague and ambiguous as to the meaning of "documents concerning CRSTX's limitation on mileage or loads offered to Drivers." CRSTX also objected to subpart (c) on the basis that the tier system does not exist. CRSTX concluded that it has no responsive documents.

The information sought in RFP 2 is highly relevant to Plaintiffs' FLSA claims to the extent it shows CRSTX's ability to control the Drivers' capacity to realize a profit or loss. Plaintiffs are seeking documents that discuss the restrictions or limitations CRSTX places on the loads and mileage it offers Drivers. With regards to CRSTX's objection to Plaintiffs' characterization of the tier system in RFP 2(c), CRSTX's own documents, including its recruiting manual and orientation PowerPoint slides, suggest that such system exists. *See* CRST004856 ("If there is a driver in the area with 70% on time service and another with 95% on time service, who do you think will get more miles?"); *See also* CRST010840 ("5 day cushion—while you get to know student's skill level, we give you slower runs so that you can stay up with them to work on their driving skills."). Further, Plaintiff Anthony Cervantes testified in his deposition that such system existed. *See* Anthony Cervantes' Deposition Transcript at 180:25-191:4 ("[T]hey had a tier process that they worked on, if you refused loads, if you were late on loads, you would drop down the tiers and become the last person to call before anybody else."). Accordingly, Plaintiffs request CRSTX amend its response and produce responsive document to RFP 2(c).

Moreover, it is unclear from CRSTX's response whether CRSTX searched for documents in response to subparts (a) and (b). Plaintiffs request CRSTX amend its response and clarify whether it searched for the requested documents in its initial search, and if not, Plaintiffs request CRSTX conduct the search and produce responsive documents.

**Request for Production 3**

> Produce an exemplar of each non-identical version of the Annual Review Forms, including any related documents, that CRST requested Drivers complete as described in the CRST Driver Employee Handbook. *See* CRST001977-CRST002028.

In response to RFP 3, CRSTX produced the "Annual Review Forms which are communicated through the Qualcomm unit." *See* CRST010759-10760. Given that CRSTX limited its response to Annual Review Forms "communicated through the Qualcomm unit," it is unclear whether CRSTX possesses additional Annual Review Forms that are not sent through the Qualcomm unit. Accordingly, to the extent CRSTX requires Drivers complete additional Annual Review Forms that are not communicated through the Qualcomm unit, Plaintiffs request CRSTX supplement its response and produce those forms as well.

**Request for Production 5**

> All documents containing or concerning any legal analysis, or formal or informal opinion of FLSA lawsuits brought against other carriers based on their classification of

3

drivers as independent contractors, including but not limited to lawsuits against Western Express, Swift Transportation Co., and Central Trucking Inc.

CRSTX refused to search for documents in response to RFP 5 on the basis that the request seeks documents protected by the attorney-client privilege. CRSTX further asserted that "[t]he burden of searching for responsive documents far exceeds the benefit given that any such documents located are certain to be protected by the attorney-client privilege since the request specifically seeks documents containing legal analysis or opinions of other lawsuits." *citing UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, No. CV 05-1289 (PJS/SRN), 2010 WL 11537514, at *11 (D. Minn. Aug. 10, 2010).

CRSTX's argument is misguided in numerous respects. The requested documents are highly relevant to the issues of good faith and willfulness under the FLSA regarding Defendants' classification of Drivers as independent contractors and Defendants' failure to pay Drivers the minimum wage. As stated in Section I, Plaintiffs cannot determine if the documents CRSTX claims are privileged are discoverable until Plaintiffs know what documents are at issue. *See In re VeroBlue Farms USA, Inc.*, 21-CV-3017-CJW-KEM, 2021 WL 3260087, at *4 (N.D. Iowa June 30, 2021); *see also Progressive Cas. Ins. Co. v. F.D.I.C.*, 298 F.R.D. 417, 421 (N.D. Iowa 2014) *citing* Fed. R. Civ. P. 26(b)(5)(A). Further, as detailed in Section I of this letter, CRSTX's analysis of the court's holding in *UnitedHealth Grp. Inc*, 2010 WL 11537514 is misleading. See discussion in General Matters section supra.

Accordingly, Plaintiffs request CRSTX amend its response and produce the requested documents. Where CRSTX believes it is entitled to exert a privilege of responsive documents, it must produce a privilege log in accordance with the Federal Rules of Civil Procedure detailing any documents withheld on the basis of privilege.

**Request for Production 6**

> All documents concerning any legal or financial formal or informal opinion, review, or investigation pertaining to:
> a. CRSTX's decision to implement the Lease Purchase Program;
> b. CRSTX's decision to implement the Lead Driver Program;
> c. CRSTX's determination of Drivers' base compensation rates

CRSTX refused to search for documents in response to RFP 6 based on its objection that the request seeks documents protected by the attorney-client privilege. CRSTX further asserted that "[t]he burden of searching for responsive documents far exceeds the benefit given that any such documents located are certain to be protected by the attorney-client privilege . . . ." *citing UnitedHealth Grp. Inc.*, 2010 WL 11537514, at *11. CRSTX also objected to the request as "vague and ambiguous as to what constitutes an informal or formal, opinion, review or investigation," and unduly burdensome, because there is no time-period limitation. CRSTX concluded that is has no documents responsive to this request.

Contrary to CRSTX's assertion, the requested documents are relevant to the issues of good faith and willfulness under the FLSA to the extent the documents show Defendants had a financial incentive to classify Drivers as independent contractors and have Drivers train their employee Student Drivers. Defendants' training materials for recruiters suggest that such documents exist. *See* CRST010796 ("CRST relies on hiring students to continue to grow the company. But students are in need of lead drivers to train them. Lead drivers are able to make more money than a normal driver because they are actually training new drivers on the road.").

As stated in Section I of this letter, Plaintiffs cannot determine if the documents CRSTX claims are privileged are discoverable until Plaintiffs know what documents are at issue. *See In re VeroBlue Farms USA, Inc.*, 21-CV-3017-CJW-KEM, 2021 WL 3260087, at *4 (N.D. Iowa June 30, 2021); *see also Progressive Cas. Ins. Co. v. F.D.I.C.*, 298 F.R.D. 417, 421 (N.D. Iowa 2014) *citing* Fed. R. Civ. P. 26(b)(5)(A). Further, as detailed in Section I, CRSTX's analysis of the court's holding in *UnitedHealth Grp. Inc.*, 2010 WL 11537514 is misleading. Additionally, RFP 6 is distinguishable from the request at issue in *UnitedHealth Grp. Inc.*, in that Plaintiffs are not seeking all communications between CRSTX and defense counsel, rather Plaintiffs are seeking documents related to three of CRSTX's business decisions.

However, in the interest of moving the discovery process forward, Plaintiffs narrow their request in the following manner:

> From October 10, 2014 to the present, all documents concerning any legal or financial formal or informal opinion, review, or investigation pertaining to:
> a. The value, efficiency, viability, and benefit to CRSTX of the Lease Purchase Program;
> b. The value, efficiency, viability, and benefit to CRSTX of the Lead Driver Program;
> c. CRSTX's determination of Drivers' base compensation rates

Accordingly, Plaintiffs request CRSTX amend its response and produce documents responsive to Plaintiffs' revised RFP 6. Where CRSTX believes that it is entitled to exert a privilege of responsive documents, it must produce a privilege log in accordance with the Federal Rules of Civil Procedure detailing any documents withheld on the basis of privilege.

**Request for Production 7**

> All documents containing or concerning any claim, complaint, governmental communication, audit, award, formal or informal opinion, legal opinion or investigation pertaining to the legality or propriety of CRSTX's Lead Driver Program.

CRSTX refused to search for responsive documents based on its objection that RFP 7 seeks documents protected by the attorney-client privilege, and the "legality of the Lead Driver Program is not an issue in this case . . . ." *citing UnitedHealth*, 2010 WL 11537514, at *11 (D. Minn. Aug. 10, 2010).

Contrary to CRSTX's assertion, responsive documents concerning the Lead Driver Program are highly relevant to Plaintiffs' FLSA claims to the extent they show the amount of control Defendants exerted over Drivers participating in the Lead Driver Program, especially given that Defendants placed job responsibilities on Drivers in the Lead Driver Program. CRSTX's own training material for recruiters indicate that CRSTX strongly encourages Drivers to enroll in the Lead Driver Program. *See e.g.* CRST010839-40 (providing recruiters with sample responses to potential Drivers who resist participating in the Lead Driver Program).

Further, as stated above in Section I of this letter, Plaintiffs cannot determine whether the documents CRSTX claims are privileged are discoverable until Plaintiffs know what documents are at issue. *See In re VeroBlue Farms USA, Inc.*, 21-CV-3017-CJW-KEM, 2021 WL 3260087, at \*4 (N.D. Iowa June 30, 2021); *see also Progressive Cas. Ins. Co. v. F.D.I.C.*, 298 F.R.D. 417, 421 (N.D. Iowa 2014) *citing* Fed. R. Civ. P. 26(b)(5)(A). Further, CRSTX's analysis of the court's holding in *UnitedHealth Grp. Inc.*, 2010 WL 11537514 is misleading. Additionally, RFP 7 is distinguishable from the RFP at issue in *UnitedHealth Grp. Inc.*, in that Plaintiffs are not seeking all communications between CRSTX and defense counsel, rather Plaintiffs are seeking documents related solely to the Lead Driver Program.

In the interest of moving the discovery process forward, Plaintiffs clarify that RFP 7 seeks the requested documents pertaining to the legality or propriety of CRSTX's Lead Driver Program as it relates to Drivers. Plaintiffs request CRSTX amend its response, search for responsive documents, and produce any responsive documents located. Where CRSTX believes that it is entitled to exert a privilege of responsive documents, it must produce a privilege log in accordance with the Federal Rules of Civil Procedure detailing any documents withheld on the basis of privilege.

**Request for Production 9**

> Any documents containing or concerning:
> a. any requests made by Drivers to examine "tariffs, or in the case of contract carriage, other documents from which rates and charges are computed, and documents underlying any computer generated document," in accordance with ICOA § 3(B), such as those filed at Doc 39-2 and Doc 39-4; and
>
> b. CRSTX's response to any Drivers' request to examine "tariffs, or in the case of contract carriage, other documents from which rates and charges are computed, and documents underlying any computer generated document," in accordance with ICOA § 3(B), such as those filed at Doc 39-2 and Doc 39-4.

CRSTX objected to this request as "overly broad, unduly burdensome, and not proportional to the needs of the case." CRSTX claims RFP 9 would require it to search "every email, text, Qualcomm message, or other communications between any Driver- not just putative class member- and CRST, including dozens, if not hundreds of custodians."

6

The information sought in RFP 9 is highly relevant to Plaintiffs' Truth in Leasing Act ("TILA") claims to the extent the requested documents show that CRSTX failed to provide Drivers a copy of the rated freight bill or copies of the documents necessary to determine the validity of charge-back items and the computation of those charges as specified in the ICOA. Further, contrary to CRSTX's objections, as indicated in Section I, Plaintiffs' Second Set of Requests for Production is limited to Drivers who meet the FLSA collective action class definition (ECF No. 157) and who filed a Consent to Sue with the Court.

In the interest of moving the discovery process forward, Plaintiffs are willing to withdraw RFP 9 on the condition that CRSTX produce Qualcomm communications in accordance with Plaintiffs' Third Set of Requests for Production to CRST Expedited, Inc., Request for Production 1. Accordingly, Plaintiffs request CRSTX amend its response indicating whether CRSTX agrees with Plaintiffs' proposal.

**Request for Production 11**

> For each Driver, all general ledger accounts containing or concerning each Driver's Maintenance and Other Reserve Fund.

In response to RFP 11, CRSTX objected to the request as vague, ambiguous, unduly burdensome, and disproportionate to the needs of the case. CRSTX agreed to produce settlement and trip data tables for the Relevant Time Period "for all individuals who meet the FLSA conditionally certified collective definition (see ECF No. 157) and who have filed consent-to-sue forms as of August 18, 2021." CRSTX also produced an "escrow table" extracted from its LME system for the three Discovery Representatives. *See* CRST010761.

Unfortunately, CRSTX's production is insufficient, because this "escrow table" merely contains data for the activity in the Discovery Plaintiffs' escrow accounts. Importantly, the escrow table does not show the detailed changes in time to drivers' account balances. Additionally, the settlement and trip data tables are not responsive to this request.

The information sought in RFP 11 is extremely relevant to Plaintiffs' unjust enrichment claim to the extent it shows Defendants had a policy and practice of shifting virtually all costs of maintaining Defendants' fleet and general business operations to Drivers. For Plaintiffs to analyze Drivers' maintenance and other reserve funds held in escrow by CRST, it is necessary that a detailed accounting of the changes to these escrow account balances are included in the dataset. Further, as discussed in Section I of this letter, Plaintiffs' requests are limited to Drivers who meet the FLSA collective action class definition (ECF No. 157) and who filed a Consent to Sue with the Court. Accordingly, Plaintiffs request CRSTX supplement its production and produce the requested documents.

**Request for Production 13**

> For each Driver, all accountings or itemizations of the base plate and/or permit fees

CRSTX advanced to Drivers pursuant to Appendices A, Section 2(c) of ICOAs, such as those filed at Doc. 39-2 and 39-4.

In response to RFP 13, CRSTX objected to the request as vague, unduly burdensome, and disproportionate to the needs of the case. CRSTX also objected to the request to the extent it seeks information for all Drivers, rather than putative class members. Based on these objections, CRSTX agreed to produce settlement and trip data tables for the Relevant Time Period "for all individuals who meet the FLSA conditionally certified collective definition (see ECF No. 157) and who have filed consent-to-sue forms as of August 18, 2021."

Unfortunately, CRSTX's settlement and trip data tables are not responsive to RFP 13. To clarify, Appendix A, Section 2(c) of the ICOA states that CRSTX will deduct $75 each week from Drivers' settlements until the total amount Drivers owe for the base plate, permit, and fuel tax is paid. The settlement and trip data tables CRSTX agreed to produce will evidence how much CRSTX deducted from Drivers' settlements; however, it does not include the data showing CRSTX's actual cost, consisting of the "amount Carrier paid to the Issuing State for the plate (estimated initially and then adjusted up or down to match the actual amount billed to Carrier by the State) plus a ten present (10%) administrative fee to Carrier." *See* ICOA, Appendix A, Section 2(A).

RFP 13 seeks all accountings reflecting how much CRSTX advanced for these expenses that it then required Drivers pay back through deductions. This information is relevant to Plaintiffs' TILA claims to the extent it shows the validity of Defendants' charge-back items and the computation of those charges. This request is also relevant to Plaintiffs' unjust enrichment claims to the extent that it shows Defendants shifted costs of maintaining Defendants' fleet and general business operations to Drivers.

Further, as discussed in Section I of this letter, Plaintiffs' requests are limited to Drivers who meet the FLSA collective action class definition (ECF No. 157) and who filed a Consent to Sue with the Court. Accordingly, Plaintiffs request CRSTX supplement its response to RFP 13 and produce the requested documents, reflecting CRSTX's accounting or itemizations of the amount CRSTX advanced for these expenses.

**Request for Production 15**

For the Relevant Time Period, the following documents pertaining to CRSTX's officials, employees, or agents (CRSTX Recruiters) involved in the recruitment of Drivers:

   a. CRSTX Recruiters' job descriptions,
   b. CRSTX Recruiters' compensations plans,
   c. Training materials for CRSTX Recruiters,
   d. CRSTX Recruiters' communications with Drivers,
   e. CRSTX Recruiters' role and duties at Drivers' Orientation.

CRSTX searched for and produced recruiter job descriptions, compensation plans, and training materials in response to RFP 15(a)-(c). CRSTX indicated it has no documents in response to subpart (e). However, CRSTX refused to produce documents in response to subpart (d) based on its objection that subpart (d) is unduly burdensome and disproportionate to the needs of the case. CRSTX claimed that subpart (d) would require CRSTX to search and produce "every email, text, or other communication between any Driver—not merely putative class or collective members—and CRST, including dozens, if not hundreds of custodians, and tens, if not hundreds of thousands of emails . . . ."

The information sought in RFP 15(d) is highly relevant to Plaintiffs' fraud claim to the extent that CRSTX Recruiters' communications with Drivers show that Defendants fraudulently induced Drivers to work for them pursuant to an ICOA in violation of Iowa law. Plaintiffs are aware that recruiters communicated with Drivers via text message and U.S. mail. *See* PLT-AC-000281-PLT-AC-000281 (Text message to Anthony Cervantes); PLT-LG-002596-PLT-LG-002596 (Recruitment letter sent to Linda Gravelle).

In the interest of moving the discovery process forward, Plaintiffs narrow RFP 15(d) to:

> Each non-identical version of form letters, emails, and text messages CRSTX Recruiters sent to Drivers, as well as any scripts or talking points CRSTX provided CRSTX Recruiters for their communications with Drivers.

Accordingly, Plaintiffs request that CRSTX amend its response and produce the requested documents in response to Plaintiffs' amended RFP 15(d).

**Request for Production 16**

> For the Relevant Time Period, the following documents pertaining to CRSTX's third-party recruiters:
> a. Scope of third-party recruiters' work,
> b. Engagement letters and compensation plans between CRSTX and third-party recruiters,
> c. Third-party recruiters' communications with Drivers,
> d. Third-party recruiters' role and duties at Drivers' Orientation.

CRSTX objected to RFP 16 as "vague, irrelevant, unduly burdensome, and not proportional to the needs of the case." In response to subparts (a) and (b), CRSTX limited its search to its contracts with third-party recruiters during the Relevant Time Period. With regards to subpart (d), CRSTX responded that it has no responsive documents. CRSTX refused to search for documents in response to subpart (c) based on its assertion that the request would require "searches of every email, text, or other communication between any potential independent contractor driver and third-party recruiter."

9

Similar to RFP 15(d), RFP 16(c) is highly relevant to Plaintiffs' fraud claim to the extent that Third-party recruiters' communications with Drivers show that Defendants fraudulently induced Drivers to work for them pursuant to an ICOA in violation of Iowa law. Plaintiffs are aware that recruiters communicated with Drivers via text message and U.S. mail. *See* PLT-AC-000281-PLT-AC-000281 (Text message to Anthony Cervantes); PLT-LG-002596-PLT-LG-002596 (Recruitment letter sent to Linda Gravelle).

In the interest of moving the discovery process forward, Plaintiffs narrow RFP16(c) to:

> Each non-identical version of form letters, emails, and text messages third-party recruiters sent to Drivers, as well as any scripts or talking points CRSTX provided third-party recruiters for their communications with Drivers.

Accordingly, Plaintiffs request that CRSTX amend its response and produce documents in response to Plaintiffs' amended RFP 16(c).

**Request for Production 18**

> All documents containing or concerning CRSTX's analysis of a Drivers' potential income values listed in the Lease Purchase Program promotional materials, such as those Bates Stamped CRST004240-CRST004320.

In response to RFP 18, CRST objected to the request as overly broad, unduly burdensome, and disproportionate to the needs of the case. CRSTX limited its search to "documents reflecting the models used to determine the potential income levels included in the promotional materials, which are based on the average fleet rate per loaded mile and assume the miles that a team could run in a week." CRSTX indicated it was still conducting its search and will supplement its response once its search is complete.

The documents requested in RFP 18 are highly relevant to Plaintiffs' fraud claims to the extent these documents show that Defendants knowingly made false representations to Drivers regarding the amount of money they would make as lease operators. Plaintiffs cannot agree to Defendants' limitation of Drivers' potential income value analysis to "models used to determine the potential income levels included in the promotional materials," limitations based on undefined terms such as "average fleet rate per loaded mile," or assumptions such as the miles that a team could a run in a week. Defendants must produce all analysis of Drivers' potential income, including any analysis based on Drivers' historical earnings. To date, Plaintiffs have not received any documents in response to RFP 18, even with Defendants' unilateral limitations. Accordingly, Plaintiffs request CRSTX produce the documents that it has collected based on its limitations immediately, amend its response to make clear that it will produce all analysis of Drivers' potential income values, and produce the responsive documents promptly.

**Request for Production 20**

> All documents containing or concerning CRSTX's analysis of Drivers' compensation, Employee Drivers' compensation, or any comparison between the compensation of Drivers and that of Employee Drivers.

In response to RFP 20, CRSTX objected to the request as vague, overly broad, and ambiguous. CRSTX limited its search to "documents that include analysis or comparison of employee and independent contractor compensation." CRSTX concluded that it did not locate any responsive documents.

Plaintiffs find it surprising and suspect that CRSTX did not locate any responsive documents, particularly in light of its public representations. *See e.g.* CRST002240-005136 (Lease Purchase Information Packet including chart of "CRST Contractor Weekly Net Income Sample"); *See e.g.* CRST004351("Lead Drivers earn between $45,000 and $55,000 in their first year. We have many experienced professional Teams earning over $100,000 annually. Inexperienced co-drivers in their first year can expect to average $35,000.").

Further, the requested documents are highly relevant to Plaintiffs' FLSA claims to the extent they show Defendants have a financial incentive to misclassify Drivers. Accordingly, Plaintiffs request CRSTX amend its response and produce documents containing CRSTX's analysis or comparison of employee and independent contractor compensation.


**Request for Production 21**

> All documents concerning CRSTX's Lease Purchase Program promotional materials, such as those Bates Stamped CRST004240-CRST004320, pertaining to:
>
> a. Purpose of such materials,
> b. Evaluations of the materials' effectiveness,
> c. Breadth of distribution.

In response to RFP 21, CRSTX refused to search for documents based on its assertion that the request is vague and overly burdensome, because it would require CRSTX to search "hundreds of thousands of emails, spreadsheets, and other documents."

The information sought in RFP 21 is extremely relevant to Plaintiffs' fraud claims to the extent it shows Drivers were justified in relying on CRSTX's false representations in deciding to work for CRSTX as lease operators. To be clear, Plaintiffs are not requesting CRSTX search its emails for every mention of the Lease Purchase Program promotional materials. Rather, RFP 21 seeks the reports or analyses that CRSTX or its agents create or review to evaluate the effectiveness of the promotional materials, the breadth of distribution, and its purpose. Accordingly, Plaintiffs request CRSTX amend its response and produce the requested documents.

**Request for Production 22**

> All documents pertaining to CRSTX's Lease Purchase Program advertising materials, such as those Bates Stamped CRST004354-CRST004368, including:
> a. CRSTX's communications with advertising or marketing agencies regarding the scope of advertising,
> b. Evaluations or analysis of the advertising materials' effectiveness,
> c. CRSTX's communications with the advertising agencies or marketers regarding updates or changes to the advertisements.

In response to RFP 22, CRSTX refused to search for documents based on its objection that the request is overly broad, unduly burdensome, and disproportionate. CRSTX claims this request "would require querying the emails of all recruiting managers, directors, vice presidents, and above, a search that would include several hundreds of thousands of emails that would then need to be reviewed individually."

The information sought in RFP 22 is relevant to the Plaintiffs' fraud claim to the extent it shows that Drivers justifiably relied on Defendants' representations. In the interest of moving the discovery process forward, Plaintiffs amend RFP 22 in the following manner:

> All reports or updates concerning CRSTX's Lease Purchase Program advertising or marketing materials, such as those Bates Stamped CRST004354-CRST004368.

Accordingly, Plaintiffs request that CRSTX amend its response and produce documents in response to Plaintiffs' amended RFP 22.

**Request for Production 23**

> All documents containing or concerning communications between Drivers and CRSTX's officials, employees, or agents, after Drivers terminate their ICOA, including but not limited to guidelines, scripts, or outlines provided to Driver Managers for discussions with Drivers who terminate their ICOA.

CRSTX objected to RFP 23 as overly broad, vague, unduly burdensome, and disproportionate to the needs of the case, claiming that CRSTX would have to "search of every email, text, Qualcomm message, or other communication between any Driver—not limited to putative class or collective members—and CRST. This search would likely require going through hundreds of thousands of documents and hundreds of custodians."

The documents sought in RFP 23 are relevant to Plaintiffs' fraud claim to the extent it shows that Drivers were justified in relying on CRSTX's false representations in deciding to work for CRSTX as lease operators. Further, Plaintiffs are not requesting that CRSTX search every communication between Drivers and CRSTX. Rather, RFP 23 seeks form documents that CRSTX provided its officials, employees, or agents, including Driver Managers, for discussions with Drivers who terminate their ICOA.

In the interest of moving the discovery process forward, Plaintiffs narrow RFP23 to:

> All documents or communications between CRSTX's officials, employees, or agents concerning communications to Drivers who have terminated their ICOA, including but not limited to guidelines, scripts, or outlines provided to Driver Managers for discussions with Drivers who terminate their ICOA.

Accordingly, Plaintiffs request that CRSTX amend its response and produce documents in response to Plaintiffs' amended RFP 16(c).

**Request for Production 24**

> All documents containing or concerning any formal or informal complaints or demands by any Driver concerning or containing questions or assertions regarding a Driver's compensation being too low.

CRSTX refused to search for documents in response to RFP 24, based on its objection that the request is overly broad, vague, and disproportionate to the needs of the case. CRSTX claims RFP 24 would require it to search every Qualcomm communication and email between every Driver and anyone at CRSTX.

Contrary to CRSTX's assertions, the information requested in RFP 24 is highly relevant to Plaintiffs' fraud claim to the extent it shows that Drivers justifiably relied on Defendants' false representations in deciding to work pursuant to an ICOA. In the interest of moving the discovery process forward, Plaintiffs are willing to withdraw RFP 24 on the condition that CRSTX produce Qualcomm communications in accordance with Plaintiffs' Third Set of Requests for Production to CRST Expedited, Inc., Request for Production 1. Accordingly, Plaintiffs request CRSTX amend its response indicating whether CRSTX agrees with Plaintiffs' proposal.

**Request for Production 25**

> For the Relevant Time Period, all documents, including but not limited to any agreements between CRSTX and the Advance Card issuer, reflecting the amount the Advance Card issuer charges CRSTX per Advance Card as referenced in all Appendices A to ICOAs, such as those filed at Doc 39-2 and Doc 39-4.

In response to RFP 25, CRSTX produced a copy of the Cardholder Fees related to the Comdata Advanced Card, reflecting the amounts charged for transactions; however, CRSTX refused to search for additional documents based on its objection that the information sought is irrelevant to Plaintiffs' TILA claims "to the extent it seeks additional information on rates CRST pays the Card Issuer." In support, CRSTX cited caselaw from the Eleventh and Ninth Circuits, holding that disclosure of carriers' profits and costs is only required for variable fees where drivers

13

cannot determine the final cost in advance. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1319–20, 1323 (11th Cir. 2010); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. (AZ)*, 632 F.3d 1111, 1118 (9th Cir. 2011).

Among other things, RFP 25 is relevant to Plaintiffs' unjust enrichment claims to the extent it reveals that CRSTX's profits on the chargebacks were unconscionable and resulted in CRSTX being unjustly enriched by shifting CRSTX's costs of maintaining its business to Drivers. The information is also relevant to Plaintiffs' wage claims as both the FLSA and Iowa law prohibit kickbacks that drive wages below the minimum wage. 29 CFR 531.35; Iowa Regs: 875—217.35. In light of Plaintiffs' clarification as to the relevance of RFP 25 and given that CRSTX did not object to RFP 25 as unduly burdensome or overly broad, Plaintiffs request CRSTX amend its response and produce the requested documents.

**Request for Production 26**

>All documents containing or concerning how the compensation rate for Drivers was determined or set including, but not limited to documents generated, reviewed, or considered as part of that process.

In response to RFP 26, CRSTX objected to the request as irrelevant, vague, overly broad, and disproportionate to the needs of the case. CRSTX further objected to the request as it is not limited to a time period. Confusingly, CRSTX stated that it will produce a privilege log for any documents withheld on the basis of privilege; however, shortly thereafter, CRSTX concluded that it has no responsive documents. Plaintiffs limit the request to any documents that concerned the compensation rate in effect at any times since January 17, 2010.

Plaintiffs request CRSTX amend its response to include the time period listed above, indicating whether it is withholding any documents on the basis of privilege, and if so, produce a privilege log in accordance with the Federal Rules of Civil Procedure.

**Request for Production 27**

>For the relevant time period, all documents containing or concerning the amount of the administrative fees to Carrier listed in all Appendices A to ICOA, such as those filed at Doc 39-2 and Doc 39-4, and how those fees were calculated, including but not limited to CRSTX's administrative fee of $5 per hour if the Driver elects to obtain products or services from Carrier's third-party maintenance providers; the administrative fee that is included in the $150.00 cost per month per covered individual for the Occupational Accident Insurance; and the administrative fee included in the "4.5% of Contractor-specified value of Tractor Equipment" charged to Drivers for Physical Damage Insurance.

CRSTX refused to search for documents in response to RFP 27 based on its objection that the information sought is irrelevant and overly broad. CRSTX asserted that the TILA does not require that CRSTX reveal "its profits, if any, on charge-backs like those administrative fees

14

referenced in Plaintiffs' ICOAs." In support, CRSTX cited caselaw from the Eleventh and Ninth Circuits, holding that disclosure of carriers' profits and costs is required for variable fees where drivers cannot determine the final cost in advance. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1319–20, 1323 (11th Cir. 2010); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. (AZ)*, 632 F.3d 1111, 1118 (9th Cir. 2011).

Among other things, RFP 27 is relevant to Plaintiffs' unjust enrichment claims to the extent it reveals that CRSTX's profits on the chargebacks were unconscionable and resulted in CRSTX being unjustly enriched by shifting CRSTX's costs of maintaining its business to Drivers. The information is also relevant to Plaintiffs' wage claims as both the FLSA and Iowa law prohibit kickbacks that drive wages below the minimum wage. 29 CFR 531.35; Iowa Regs: 875—217.35. In light of Plaintiffs' clarification as to the relevance of RFP 25 and given that CRSTX did not object to RFP 25 as unduly burdensome or overly broad, Plaintiffs request CRSTX amend its response and produce the requested documents.

Further, although RFP 27 is clear as written, Plaintiffs clarify that RFP 27 does not seek trip and settlement data. Rather, RFP 27 seeks CRSTX's internal documents containing the amount CRSTX charges for the administrative fees listed in all Appendices A to ICOA, including how CRSTX determines or calculates the amounts it charges for each of the enumerated administrative fees.

In light of Plaintiffs' clarifications regarding RFP 27, Plaintiffs request CRSTX amend its response and produce the requested documents.

**Request for Production 28**

> For the Relevant Time Period, all documents and policies containing or concerning expenses Drivers incurred on behalf of Student Drivers, including but not limited to expenses related to food and lodging for Student Drivers.

CRSTX objected to RFP 28 as vague, overly broad, and disproportionate to the needs of the case based on CRSTX claims Qualcomm communications, emails and other communications between any Driver and Student Driver could be responsive to this request. Based on these objections, CRSTX agreed to produce the Opt-In Plaintiffs' settlement adjustment tables and directed Plaintiffs to the ICOAs and Lead Driver Addenda CRSTX previously produced.

Contrary to CRSTX's contention, the information sought in RFP 28 is highly relevant to Plaintiffs' unjust enrichment claims to the extent it shows that Defendants shifted the costs of maintaining its fleet and general business operations to Drivers. CRSTX's production of ICOAs and Lead Driver Addenda is insufficient. These documents provide very little, if any, detail about the expenses Drivers incur on behalf of Student Drivers. For instance, paragraph 1(D) of the Lead Driver Addenda simply states, "Contractor shall furnish, at his/her expense, all labor, materials, Equipment, non-vehicular equipment, services, permits, licenses, fees, supervision, transportation, repairs, supplies, taxes, and everything else of any nature, whatsoever necessary to perform the Lead Driver Services." *See* CRST000061.

15

To clarify, CRSTX does not need to search Qualcomm messages, emails, and communications between any Driver and Student Driver at this juncture, because Plaintiffs are not seeking individual occurrences of Drivers incurring expenses on behalf of Student Drivers now. Rather, Plaintiffs are seeking CRSTX's policy documents regarding Drivers' expenses on behalf of Student Drivers, including a list of the specific expenses covered by paragraph 1(D) of the Lead Driver Addenda. Accordingly, Plaintiffs request CRSTX amend its response and produce the requested documents.

**Request for Production 29**

> For the Relevant Time Period, all of CRSTX's and related entities' profits and loss statements.

In response to RFP 29, CRSTX objected to the request as ambiguous, vague, overly broad, and disproportionate to the needs of the case. CRSTX objected to "providing profit and loss statements for all related entities or operating divisions who are not defendants in this case as not proportional to the needs of the case." Based on these objections, CRSTX limited its production to 2017-2020 annualized contributions to profit reports, and monthly reports for January and February of 2021.

The information sought in RFP 29 is relevant to the damages for Plaintiffs' unjust enrichment claims. Although RFP 29 is proper as written, in the interest of moving the discovery process forward, Plaintiffs narrow RFP 29 to: annualized profits and loss statements for all of CRSTX's subsidiaries. Accordingly, Plaintiffs request CRSTX amend its response and produce the documents requested in Plaintiffs' narrowed request.

**Request for Production 30**

> For the relevant Time Period, communications between CRSTX and the DOT, including the descriptions of any unique identifiers or codes appearing in communication between CRSTX and DOT.

In response to RFP 30, CRSTX claims not to understand the meaning of "communication between Defendants and DOT."

Plaintiffs clarify that RFP 30 seeks CRSTX's communications with the DOT for matter such as hours of service or other regulations, and applications to the DOT for permission to self-insure. In light of this clarification, Plaintiffs request CRSTX amend its response and produce the requested documents, including the descriptions of any unique identifiers or codes appearing in these communications.

**Request for Production 31**

> The schema, or model, defining the headings and describing the field layout of the Excel Spreadsheets containing Qualcomm messages. *See* CRST002242, CRST002243, CRST002590 CRST002592, CRST003804-CRST003807, CRST005070-CRST005076.

In response to RFP 19, CRSTX objected to the request as vague and ambiguous with regards to the meaning of "schema or model defining the headings and describing the field layout" of the Excel Spreadsheets containing Qualcomm messages. CRSTX concluded that it does not possess a data export or table providing the definitions for the headings and layout.

Although RFP 19 is clear as written, Plaintiffs will provide clarification. A database schema includes descriptions of all data contained in the database tables. The Sedona Conference Journal defines "schema" as, "A set of rules or a conceptual model for data structure and content, such as a description of the data content and relationships in a database." *The Sedona Conference Glossary: eDiscovery & Digital Information Management, Fifth Edition*, 21 SEDONA CONF. J. 263 (2020).

Each database contains a schema; accordingly, Plaintiffs request CRSTX supplement its response and produce the schema of the Excel Spreadsheets containing Qualcomm messages.

### III. CONCLUSION

Plaintiffs ask Defendants to supplement their responses to the above requests within two weeks.

Sincerely,

*s/ Mike Sweeney*

Mike Sweeney

17

Case 1:20-cv-00075-CJW-KEM   Document 277-13   Filed 06/17/22   Page 18 of 18