# EXHIBIT 16

Case 1:20-cv-00075-CJW-KEM   Document 277-16   Filed 06/17/22   Page 1 of 7

# GETMAN, SWEENEY & DUNN, PLLC

Getman, Sweeney, & Dunn PLLC
260 Fair Street
Kingston, NY 12401
845-255-9370
Fax 845-255-8649
www.getmansweeney.com

VIA EMAIL                                                                                                December 30, 2021

James H. Hanson
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
jhanson@scopelitis.com

Re: *Cervantes, et al. v. CRST International, Inc. et al*, 1:20-cv-00075-CJW-KEM

Dear Jim,

I write to follow up on the parties' December 2, 2021 meet and confer regarding deficiencies in CRST's discovery responses and production.

## I.        Privilege Logs (Plaintiffs' Second Set of RFPs, Nos. 5, 6, 7)

As made clear during the December 2, 2021 meet and confer and subsequent correspondence, CRST refuses to produce documents, or even search for documents in response to RFP 5, 6, and 7. CRST purports to claim privilege as to these documents, but acknowledges it has not reviewed the documents, as it has not even searched for them. As a result, CRST has not produced a privilege log, and refuses to do so.

For reference, the requests are as follows:

> **RFP 5**: All documents containing or concerning any legal analysis, or formal or informal opinion of FLSA lawsuits brought against other carriers based on their classification of drivers as independent contractors, including but not limited to lawsuits against Western Express, Swift Transportation Co., and Central Trucking, Inc.
>
> **RFP 6**: (as amended by letter 9/28/21): From October 10, 2014 to the present, all documents concerning any legal or financial formal or informal opinion, review, or investigation pertaining to: (a) the value, efficiency, viability, and benefit to CRSTX of the Lease Purchase Program; (b) the value, efficiency, viability, and benefit to CRSTX of the Lead Driver Program; (c) CRSTX's determination of Drivers' base compensation rates.
>
> **RFP 7**: (as clarified by letter 9/28/21): All documents containing or concerning any claim, complaint, governmental communication, audit, award, formal or informal opinion, legal

opinion or investigation pertaining to the legality or propriety of CRSTX's Lead Driver Program as it pertains to the Drivers.

At our December 2, 2021 meet and confer, Plaintiffs asked CRST to provide authority to support CRST's refusal to produce a privilege log. CRST, in turn, asked Plaintiffs to provide authority to support their position that CRST must produce a privilege log.

Plaintiffs first direct CRST to the authority cited in the letter from Mike Sweeney dated September 28, 2021, included here for reference:

> CRSTX's argument in support of its refusal to search for and produce documents in response to these requests is flawed in numerous respects. First, Plaintiffs cannot determine if the documents CRSTX claims are privileged are discoverable until Plaintiffs know what documents are at issue. Courts in this District, including this Court, have held that privilege logs are required for precisely this reason. *See In re VeroBlue Farms USA, Inc.*, 21-CV-3017-CJW-KEM, 2021 WL 3260087, at *4 (N.D. Iowa June 30, 2021) ("Appellant has not produced a privilege log stating what materials and documents it possesses, so it is impossible to evaluate whether the materials are covered as privileged communications."); *see also Progressive Cas. Ins. Co. v. F.D.I.C.*, 298 F.R.D. 417, 421 (N.D. Iowa 2014) *citing* Fed. R. Civ. P. 26(b)(5)(A) ("A party withholding otherwise-discoverable information on the basis of a claimed privilege . . . must 'describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'").
>
> Second, CRSTX's analysis of the court's holding in *UnitedHealth Grp. Inc*, 2010 WL 11537514 is misleading. The District of Minnesota did not "declin[e] to require [the] party to search for documents," as CRSTX asserts. Rather, the court ordered:
>
>> Plaintiff prepare a categorical privilege log for the documents withheld on grounds of privilege and work product. The log should be as detailed as possible and include categories such as the following: internal evaluation by outside counsel; evaluation by in-house counsel; billing records; claims files and others. The log should also indicate whether any of the documents were shared with third parties, and, if so, with whom.
>
> *UnitedHealth Grp. Inc*, 2010 WL 11537514, at *26. Accordingly, CRSTX cannot rely on this holding to support its argument that it is not required to search for documents in response to these requests and produce a privilege log where it asserts the documents are privileged.

In addition to the above authority, which we previously provided, Plaintiffs point CRST to additional authority, and note that CRST's continued refusal to produce a privilege log may constitute waiver of the privilege:

2

- *Stagger v. Experian Info. Sols., Inc.*, 2021 WL 5299791, at *5 (N.D. Ill. Nov. 15, 2021), *recons. denied*, WL 5564867 (N.D. Ill. Nov. 29, 2021) ("In order to maintain a claim of privilege, parties must, of course, produce a privilege log. Tardiness and failure to comply with Fed. R. Civ. P. 26(b)(5) can, in many circumstances, be found to constitute a waiver of the privilege as to the unlogged documents. . . . [A]sserting that documents are privileged without having reviewed them . . . . can only be said to have been made willfully or in bad faith. As such, the circumstances here—no privilege log, and a blanket claim of privilege as to a group of documents counsel admits it has not yet reviewed— warrant a finding that [defendant] has waived its privilege as to the [documents] at issue.") (citations omitted; collecting cases);

- *C.f. Melgar v. OK Foods*, No. 2:13-CV-02169, 2016 WL 11469354, at *2 (W.D. Ark. Oct. 5, 2016) (noting that defendant-employer turned over a privilege log, providing "Plaintiffs with ample notice of the subject matter on which Defendants received advice," which Plaintiffs then could have used to further pursue discovery to show defendant-employer acted contrary to such advice, which would be evidence of willfulness);

- *C.f. Frank v. Gold'n Plump Poultry, Inc.*, No. CV 04-1018 (PJS/RLE), 2006 WL 8444696, at *6 (D. Minn. Aug. 16, 2006) (denying motion to compel defendant-employer's counsel to log or produce minutes of meetings because they were not shared with defendant-employer) (citing *D.O.T. Connectors, Inc. v. J.B. Nottingham & Co., Inc.*, 2001 U.S. Dist. Lexis 739 at *10 (D.C. Fla., January 22, 2001). Here, Plaintiffs specifically request only those documents and information shared with and/or created by CRST;

- *Isham v. Booneville Cmty. Hosp.*, No. 2:14-CV-02018, 2015 WL 11117162, at *2 (W.D. Ark. Mar. 10, 2015) (considering whether failure to timely provide privilege log constituted waiver of privilege);

- *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 632 (N.D. Ill. 2016) (collecting cases);

- *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Montana*, 408 F.3d 1142, 1147–49 (9th Cir. 2005) ("To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.");

- *Enea v. Bloomberg L.P.*, 2015 WL 4979662, at *2 (S.D.N.Y. Aug. 20, 2015) (noting the court had previously "directed [defendant-employer] to furnish the Plaintiffs with a privilege log identifying all of the documents it had withheld on the basis of attorney-client privilege and the work-product rule," and ordering defendant-employer to turn over such documents for in camera review to determine "the Plaintiffs' entitlement to the production" of such documents).

CRST has not yet provided Plaintiffs with any authority supporting its position on this issue. Please provide any such authority, as agreed upon during the December 2, 2021 meet and confer. Alternatively, please produce a privilege log for those documents CRST is withholding on the basis of privilege, or produce responsive documents.

3

## II. Plaintiffs' Second Set of RFPs, Nos. 25 and 27

During the meet and confer on December 2, 2021, Plaintiffs maintained that this information is relevant to their unjust enrichment and unlawful deductions claims. CRST maintained its objections to the relevance of RFP 25, and that RFP 27 is irrelevant and overly broad. CRST refuses to search for or produce any documents responsive to these requests, with the exception of CRST011218-11219, which it produced in response to RFP No. 25. Accordingly, the parties appear to be at an impasse. Unless CRST has changed its position, Plaintiffs will move to compel these documents.

For reference, the requests are as follows:

> **RFP 25**: For the Relevant Time Period, all documents, including but not limited to any agreements between CRSTX and the Advance Card issuer, reflecting the amount the Advance Card issuer charges CRSTX per Advance Card as referenced in all Appendices A to ICOAs, such as those filed at Doc 39-2 and Doc 39-4.
>
> **RFP 27**: For the relevant time period, all documents containing or concerning the amount of the administrative fees to Carrier listed in all Appendices A to ICOA, such as those filed at Doc 39-2 and Doc 39-4, and how those fees were calculated, including but not limited to CRSTX's administrative fee of $5 per hour if the Driver elects to obtain products or services from Carrier's third-party maintenance providers; the administrative fee that is included in the $150.00 cost per month per covered individual for the Occupational Accident Insurance; and the administrative fee included in the "4.5% of Contractor-specified value of Tractor Equipment" charged to Drivers for Physical Damage Insurance.
>
> (Plaintiffs clarified by letter 9/28/21, "although RFP 27 is clear as written, Plaintiffs clarify that RFP 27 does not seek trip and settlement data. Rather, RFP 27 seeks CRSTX's internal documents containing the amount CRSTX charges for the administrative fees listed in all Appendices A to ICOA, including how CRSTX determines or calculates the amounts it charges for each of the enumerated administrative fees.")

## III. Plaintiffs' Second Set of RFPs, No. 21

During the December 2, 2021 meet and confer, CRST reported that it did not have any documents that contain a responsive report or analysis, outside of emails, which it had not searched yet. Defendants could not suggest any custodians or search terms, so Plaintiffs agreed to provide CRST with search terms and custodians for CRST to search emails for responsive documents. Plaintiffs propose the following:

- **Custodians:**
    - Chad Brueck
    - Michael Gannon
    - Jenny Abernathy
    - Ben Lizer
    - Phil Reges
    - All recruiters

- **Search Terms**:
    - ("information packet" OR "info packet") AND ("LP" OR "Lease Purchase" OR "OO" OR "Owner Operator")
    - (Call! OR Respon! OR inquir! OR applica! OR recruit! OR hir! OR orient!) AND ("lease purchase" OR "LP" OR "OO" OR "Owner Operator")
    - (Distribut! OR post! OR send OR sent OR ad OR advertis! OR circulat!) AND (info! /2 packet)
    - (info! /2 packet) AND (review! OR version OR revis! OR update! OR amend OR strateg! OR design)
    - (Analyze OR analytics OR view! OR strateg! OR (site /3 traffic) OR trend! OR number! OR up! OR down!) AND ("LP" OR "Lease Purchase" OR "OO" OR "Owner Operator")

Once CRST uses these parameters to search and reports results to Plaintiffs, we may need to adjust the terms and/or custodians.

### IV.     Remaining Outstanding Requests:

Plaintiffs request Defendants update Plaintiffs on their progress regarding each of the following outstanding issues that Defense Counsel previously indicated it would address in the parties' December 2, 2021 meet and confer, and follow up email correspondence. Below, please find the parties' prior email correspondence, including details of Defendants' subsequent production, if any, regarding each outstanding RFP. Please provide Plaintiffs with an update and/or anticipated date of production for each RFP below.

**Plaintiffs' Second Set of RFPs:**

- **RFPs 11 and 13-** As Defendants indicated during meet and confer, Defendants produced the LME system escrow data on December 7th. As Defense Counsel's December 3rd email indicated, Defendants will update Plaintiffs when Defendants know more on the Legacy system escrow data.

- **RFP 22-** Defense Counsel is working with the client to search for any updates or reports from marketing agencies regarding their advertisements and will produce responsive documents. On December 21, 2021, CRST supplemented its response and produced updated advertising and marketing materials. As Plaintiffs indicated during the parties' December 2nd meet and confer and subsequent email correspondence, RFP 22 is not requesting Defendants supplement their response, which they are obligated to do under FRCP 26(e), but rather is seeking updates and reports regarding the effectiveness of the advertising and marketing materials that Defendants have not yet produced. Please provide Plaintiffs with an update on Defendants' search for such material.

- **RFP 29-** Plaintiffs limit their request to profits and loss statements for CRST Expedited, International, and Lincoln Sales. Defendants already produced responsive documents for CRST Expedited. Defense Counsel will confer with Defendants to see if they are willing to produce profits and loss statements for CRST International and Lincoln Sales.

5

- **RFP 30-** Defense Counsel indicated in the parties' December 2nd meet and confer that Defense Counsel recently received some emails from CRST that may contain responsive communications, but Defense Counsel has not reviewed them yet.

**Plaintiffs' Third set of RFPs**

- **Qualcomm Messages**: Defendants are actively searching and compiling the Qualcomm message data, but there is only one individual working on the project. Defense Counsel will try to move Plaintiffs' request for Qualcomm message data to the top of the que. Defense Counsel will provide Plaintiffs with an anticipated date of production.

**Plaintiffs' Fourth Set of RFPs**

- **Definition of Driver vs Owner Operator**- Defendants represented that that there was nothing excluded from their responses and/or searches when they responded to requests using the term "owner- operators" as opposed to Plaintiffs' definition of Driver. Defense Counsel will make sure that the list of opt-ins Defendants provided Plaintiffs and any discovery responses, including data, do not include Drivers who leased more than one truck at once. Defendants will follow up with Plaintiffs.
- **RFPs 69,70,72,73, and 74** will be resolved once the parties reconcile the definitions of owner-operator and Driver.
- **RFP 67-** Defendants will amend their response to RFP 67 to ensure that Defendants' search and their response includes all the bases for disqualification listed in paragraph 4(D)(3) of ICOA forms.
- **RFP 71-** Defendants will check to see if they have any documents reflecting whether there is a limit on the amount of funds that Drivers can take out of their Settlement Cards in a single transaction.
- **RFP 75-** Plaintiffs limit the relevant time-period for the request to September 2015. Defendants represent that the "Intrastate CA Fuel Tax," does not appear on Drivers' settlements as a separate line item. Rather, it is added to the fuel surcharge total. Plaintiffs request Defendants produce the documents that they reviewed to determine that the Intrastate CA Fuel Tax is included in the fuel surcharge payment to Drivers. Defense Counsel will ask Defendants for the documents they reviewed.
- **RFP 76 and 77-** Defense Counsel will ask Defendants for the documents reviewed in responding to these requests.
- **RFP 78-** Defense Counsel will ask Defendants for the documents showing that Mike Cross' payroll issues in August 2019 were resolved and that Mike was paid properly.

Sincerely,

*s/ Meagan M. Rafferty*

Meagan M. Rafferty