# EXHIBIT 17

Case 1:20-cv-00075-CJW-KEM   Document 277-17   Filed 06/17/22   Page 1 of 5



10 West Market Street
Suite 1400
Indianapolis, IN 46204

*The full service transportation law firm*

www.scopelitis.com

Main (317) 637-1777
Fax (317) 687-2414

**JAMES H. HANSON**
jhanson@scopelitis.com

February 1, 2022

**Via E-mail msweeney@getmansweeney.com**

Mr. Michael J.D. Sweeney
GETMAN SWEENEY & DUNN
260 Fair Street
Kingston, NY 12401

  Re: *Cervantes, et al. v. CRST Expedited, Inc.*; United States District Court for the Northern District of Iowa; Case No. 1:20-cv-00075-CJW-KEM

Mike:

I write in response to your December 30, 2022 letter regarding various discovery issues.

**<u>Defendant's Response to Plaintiffs' Second Requests for Production</u>**

<u>RFP Nos. 5, 6, and 7</u>. Plaintiffs seek legal analysis and opinions protected by the attorney-client privilege. The court in *Brackett v. St. Louis Bd. of Police Com'rs*, 2014 WL 3451197 (E.D. Mo. July 15, 2014) denied Plaintiff's motion to compel and claim that Defendant waived its attorney-client privilege by asserting a good faith defense in the FLSA action. Moreover, the court found no waiver of privilege, as Defendants did not base their defense on advice of counsel. *See also Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F.Supp.2d 1040, 1045-46 (S.D. Iowa 2010) (finding discovery regarding attorney's investigation into FLSA compliance not permitted when Defendant did not intend to rely on legal advice for its good faith defense).

The cases that Plaintiffs cite do not require the production of legal analysis and opinions. *In re VeroBlue Farms USA, Inc.*, 21-CV-3017-CJW-KEM, 2021 WL 3260087, at *4 (N.D. Iowa June 30, 2021) involved an appeal of a bankruptcy contempt order

Indianapolis ▪ Chicago ▪ Washington, D.C. ▪ Los Angeles ▪ Chattanooga ▪ Detroit
Dallas/Fort Worth ▪ Milwaukee ▪ Salt Lake City ▪ Seattle ▪ St. Louis ▪ Cincinnati

SERVICES OUTSIDE CALIFORNIA AND MICHIGAN PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PROFESSIONAL CORPORATION
SERVICES IN MICHIGAN PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PROFESSIONAL LIMITED LIABILITY COMPANY
SERVICES IN CALIFORNIA PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LIMITED LIABILITY PARTNERSHIP

arising from an egregious failure of a party to respond to more than 40 interrogatories, requests for production, and requests for admission, as well as a failure to comply with a court order. The court in *Progressive Cas. Ins. Co. v. F.D.I.C.,* 298 F.R.D. 417, 421 (N.D. Iowa 2014) refused to find waiver of privilege and allowed a party to supplement its privilege log. Neither of the cases involved FLSA claims or a request that asked for production of documents relating to legal analysis or opinions.

The additional authority Plaintiffs cite is inapposite. For example, *Stagger v. Experian Info. Sols., Inc.* involved a request for "policy changes and implementation, including software and algorithms" and not legal analysis or opinions. The *Isham v. Booneville Cmty. Hosp.* opinion found that the defendant had not waived its privileges and denied plaintiff's motion to compel. And the defendants in *Frank v. Gold'n Plump Poultry, Inc.* and *Melgar v. OK Foods* explicitly invoked reliance on advice of counsel as a defense. Here, CRST has indicated it will stipulate that it does not base its good faith defense on advice of counsel.

Notwithstanding the foregoing, CRST will agree to search for emails sent to or from its in-house counsel since January 17, 2017 relating to legal analysis or opinions on the topics of the CRST's Lead Driver Program and/or Lease Purchase Program. Please propose a list of keywords that you would propose for this search. After the parties agree to the search terms, CRST will perform the search and prepare a privilege log.

<u>RFP Nos. 11, 13</u>. CRST continues to work on the Legacy system escrow data and will update when we know more.

<u>RFP No. 21</u>. On September 28, 2021, Plaintiffs indicated they are not requesting CRST search its emails and clarified that this request seeks the reports or analyses that CRSTX or its agents create or review to evaluate the effectiveness of the promotional materials, the breadth of distribution, and its purpose. Thereafter, CRST located and produced a responsive report or analysis regarding the promotional materials (CRST011386).

<u>RFP No. 22</u>. Responsive materials were produced at CRST011298-11386.

RFP Nos. 25, 27. CRST continues to stand on its objections. 49 C.F.R. § 376.12(h) requires leases between carriers and independent contractors to specify all items that may be initially paid by the carrier and deducted from the contractor, together with a recitation of how the amounts of the charge-backs are computed. Nothing in 49 C.F.R. § 376.12(h) requires CRST to provide documentation revealing its profits, if any, on charge-backs. *OOIDA v. Swift Transportation Co., Inc.*, 632 F.3d 1111, 1117 (9th Cir. 2011) and *OOIDA v. C.R. England, Inc.*, 508 F.Supp.2d 972, 981 (D. Utah 2007) confirmed that profiting from charge-backs is not per se unlawful.

RFP No. 29. CRST has produced responsive documents indicating profits or losses of Lincoln Sales and CRST International that were allocated to CRST Expedited. CRST010110_Confidential and CRST017303_Confidential. Lincoln Sales, a non-party and shared services company, owns tractors operated by several CRST operating divisions, including both employee-operated and lease purchase tractors. As a result, Lincoln Sales has profits and losses that are unrelated to CRST Expedited and its Lease Purchase Program. Nevertheless, profits allocated to CRST Expedited from Lincoln Sales are indicated on confidential financial spreadsheets (e.g. on CRST010110 notes "LS Profit" as Lincoln Sales profits). Prior to the 2020 merger, CRST International provided administrative support to subsidiary entities. Losses allocated to CRST Expedited from CRST International are reported on the same confidential financial spreadsheets, in columns "Overhead (Allocation)."

RFP No. 30. Responsive materials were produced at CRST012687-013285.

**Defendant's Response to Plaintiffs' Third Requests for Production**

Responsive documents were produced on January 25, 2022 at CRST016965-016967.

**Defendant's Response to Plaintiffs' Fourth Requests for Production**

Definition of Driver Versus Owner-Operator. I confirm that CRST did not exclude any information or documents from its responses to Plaintiffs' discovery requests based on its definition of owner-operator. In each instance where CRST used the term owner-operator, it includes the definition of the term Drivers, as set out in Plaintiffs' Fourth Set of Requests for Production to CRST Expedited, Inc.

The Class Notice and Multi-Truck Operators. CRST diligently reviewed its records in order to identify and exclude from the list of potential collective and class members those individuals who leased more than one truck to it at the same time. Limitations on the data available make it impossible to state with absolute certainty that there is not a single individual on the class list who leased more than one truck to CRST at the same time, but eliminating those individuals was CRST's intent.

RFP Nos. 69, 70, and 72 – 74. These responses are resolved by the above discussion related to the terms owner-operators and Drivers.

RFP Nos. 67, 71, and 75 – 78. We are following up with CRST with respect to the documents reflecting individuals hired by Drivers that were disqualified by CRST under paragraph 4(D)(3) of the Independent Contractor Operating Agreement, documents that may exist identifying limits on the amount of funds a Driver can withdraw on his or her Settlement Card in a single transaction, documents CRST may have reviewed in responding to RFP Nos. 75 – 77, and documents reflecting the resolution of Mr. Cross' settlement payment issues in August 2019, if any.

    Very truly yours,

    */s/ James Hanson*

4866-6639-9752, v. 8