**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| ANTHONY CERVANTES and MIKE CROSS, individually and on behalf of all other similarly situated persons, | No. 20-CV-75 CJW-KEM |
| Plaintiffs, | |
| vs. | **ORDER** |
| CRST INTERNATIONAL, INC. and CRST EXPEDITED, INC., | |
| Defendants. | |

_____

**TABLE OF CONTENTS**

I. BACKGROUND ............................................................................ 3

II. MOTION TO RECONSIDER & RELATED MOTIONS ........................... 4

    A. Standard of Review ................................................................ 4

    B. Count 2 – Iowa Minimum Wage Claim ....................................... 6

        1. How to Evaluate Whether Plaintiffs Are Employees Under the FLSA ........................................................................ 6

        2. Difference in Analysis Before and After July 1, 2020, and Its Effect on Class Certification .............................................. 9

    C. Count 6 – Section 376.12(g) ...................................................13

        1. The Actual Damages Requirement .....................................13

  2. Whether Class Certification Is Appropriate ...........................15

    a. Arguments .........................................................15

    b. Analysis ...........................................................17

III. MOTION TO APPOINT CLASS COUNSEL........................................22

IV. CONCLUSION ....................................................................22

This matter is before the Court on plaintiffs' motion to reconsider the Court's ruling on plaintiffs' motion to certify Counts 2–6 of the third amended complaint for class certification. (Doc. 282[1]). Defendants filed a timely resistance (Doc. 293), and plaintiffs filed a timely reply (Doc. 294). Two additional motions relate to plaintiffs' motion to reconsider: plaintiffs' motion to modify the proposed class definition (Doc. 281) and plaintiffs' motion to amend/correct the third amended complaint (Doc. 295). Plaintiffs also filed a motion to appoint class counsel (Doc. 281).

For the following reasons, the Court **grants** plaintiffs' motion to reconsider (Doc. 282) and **denies as moot** plaintiffs' motion to modify the proposed class definition (Doc. 281). The Court **holds in abeyance** plaintiffs' motion to amend/correct the third amended complaint. (Doc. 295). Finally, the Court **grants** plaintiffs' motion to appoint class counsel. (Doc. 281).

## I.    BACKGROUND

On June 14, 2022, the Court issued its order on plaintiffs' motion to certify counts 2–6 of the third amended complaint as Rule 23(b)(3) class actions. (Doc. 276). Therein, the Court held in abeyance its ruling as to Count 2, pending plaintiffs' submission of a modified proposed class definition and compliance with Local Rule 23(a) and a motion to appoint class counsel. (*Id.*). Assuming plaintiffs' submission would comply with the Court's order, the Court indicated that it would certify Count 2 as a class action but only as to plaintiffs who signed an Independent Contractor Operating Agreement ("ICOA") with CRST before July 1, 2020, in light of a change in the relevant law at that time. (*See id.*, at 15–26). The Court denied certification of Counts 3–6 in their entirety. (*See id.*, at 26–71).

---

[1] Plaintiffs requested oral argument on their motion to reconsider. The Court deems oral argument unnecessary.

On June 28, 2022, plaintiffs filed their motion to modify the proposed class definition and appoint class counsel. (Doc. 281). In their motion, plaintiffs indicated that the class definition portion would effectively function in the alternative with their forthcoming motion to reconsider. (*See id.*, at 1).

Later that day, plaintiffs filed their motion to reconsider (Doc. 282), in which plaintiffs argued the Court should reconsider (1) its ruling limiting class certification on plaintiffs' Iowa minimum wage claim in Count 2 to putative class members who signed ICOAs before July 1, 2020, and (2) its ruling denying class certification on Count 6 as to Truth in Leasing Act ("TILA") claim arising from alleged rated freight bill violations under Title 49, Code of Federal Regulations, Section 376.12(g), in Count 6.

On July 26, 2022, plaintiffs filed their motion for leave to amend/correct the complaint to add a class representative (Doc. 295), which is contingent on the Court granting plaintiffs' motion to reconsider as to Count 2 and requiring a subclass.

## II.     MOTION TO RECONSIDER & RELATED MOTIONS

For the following reasons, the Court grants plaintiffs' motion to reconsider (Doc. 282) and denies as moot plaintiffs' motion to modify the proposed class definition (Doc. 281). The Court holds in abeyance plaintiffs' motion to amend the complaint. (Doc. 295).

### A.     Standard of Review

The Federal Rules of Civil Procedure make no specific provision for a motion to reconsider. Federal Rule of Civil Procedure 23(c)(1)(C), however, provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." FED. R. CIV. P. 23(c)(1)(C). A "final judgment" is [a] court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs . . . and enforcement of the judgment." *Judgment - Final judgment*, BLACK'S LAW DICTIONARY (11th ed. 2019). Here, the Court indicated it would grant

class certification as to Count 2, pending modification of the class definition and appointment of class counsel, and denied class certification as to Counts 3–6. (Doc. 276). Because the Court has not yet settled the rights of the parties or disposed of all issues in controversy, the Court has not yet issued a final judgment in this case. Thus, Rule 23(c)(1)(C) permits the Court to alter or amend its class certification order.[2]

The Court does not find that Rule 16(b)(4) applies here because plaintiffs' motion is not a successive motion for class certification, but rather one for reconsideration of the Court's class certification order based on perceived errors of law. *See Taylor v. Midland Nat'l Life Ins. Co.*, Case No. 4:16-cv-00140-SMR-HCA, 2019 WL 13169890 (S.D. Iowa Sept. 27, 2019) (collecting cases). But even if Rule 16(b)(4) did apply, the Court finds plaintiffs' motion to reconsider satisfies the requirements in that Rule.

When a motion affects a scheduling order, as here, the moving party must show "good cause" and obtain "the judge's consent." FED. R. CIV. P. 16(b)(4). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716–17 (8th Cir. 2008). If the moving party was diligent, the court will also consider prejudice to the nonmoving party. *See id.*, at 717.

Here, the Court granted the parties' joint motion to file a second supplemental scheduling order and discovery plan within two weeks of the effective date of the Court's

---

[2] Accordingly, the Court is not limited to the narrower standard of review under Rule 59(e). Even if the Court interpreted its order as a "judgment" and applied Rule 59(e)'s comparatively narrow standard here, the Court would still find consideration of the motion to reconsider proper because plaintiffs argue the Court made clear errors of law in its order on class certification and because plaintiffs filed their motion both within 28 days of the Court's order. *See* FED. R. CIV. P. 59(e); (Doc. 282). *See also* FED R. CIV. P. 60(b) (permitting a court to relieve a party from a final judgment within a reasonable time based on several possible factors, including mistake). The Court, however, proceeds with its analysis under Rule 23(c)(1)(C).

5

order on class certification, given that the Court's order was held in abeyance pending additional filings. (*See* Docs. 276, 279, 280). The parties filed this motion on June 23, 2022, nine days after the Court's order. (*See* Docs. 276 & 279). Plaintiffs filed their motion to reconsider on June 28, 2022, five days later, at the same time as they filed the filings required by the Court's order. (*See* Docs. 276, 281, 282). Defendants do not argue that plaintiffs have not been diligent or that defendants are prejudiced by the filing of plaintiffs' motion to reconsider. The Court finds no reason to conclude that plaintiffs were not diligent or that consideration of the motion to reconsider would prejudice defendants. Thus, even if plaintiffs needed to comply with Rule 16(b)(4), the Court finds they do so here.

Finding consideration of plaintiffs' motion to reconsider proper, the Court now proceeds to its analysis of plaintiffs' arguments.

### B.    *Count 2 – Iowa Minimum Wage Claim*

For the following reasons, the Court grants plaintiffs' motion as to Count 2.

#### 1.    *How to Evaluate Whether Plaintiffs Are Employees Under the FLSA*

Plaintiffs first argue that the standard for determining whether a worker is an employee under the Fair Labor Standards Act ("FLSA") is the same for all putative plaintiffs, whether they signed an ICOA with CRST before or after July 1, 2020.[3]

---

[3] The new statutory language excepting independent contractors, as defined by Iowa Code Section 85.61(11)(c)(3), from the FLSA definition of "employee" for purposes of Iowa Code Section 91D.1, has an effective date of July 1, 2020. *See* 2020 Iowa Acts Ch. 1069, S.F. 2296, § 2, eff. July 1, 2020; 2020 Iowa Legis. Serv. Ch. 1069 (S.F. 2296) (West). So, any worker who signed an ICOA on or after that date would be subject to that new statutory language and thus precluded from Section 91D.1's protections if they qualified as an independent contractor under Section 85.61(11)(c)(3). For ease of reference, however, the Court simply refers to these workers as workers who signed ICOAs "after July 1, 2020."

6

(Doc. 282-1, at 8–10). Plaintiffs argue the Court made a clear error of law[4] when it found that the relevant legal test for determining whether a worker fit the FLSA definition was the common-law test set forth in *Fesler v. Whelen Engineering Company*, 794 F. Supp. 2d 994, 1008–1009 (S.D. Iowa 2011), and that "Drivers who signed contracts prior to July 1, 2020, did not have to prove they were not independent contractors, only that they were FLSA employees." (Doc. 294, at 2; *see* Doc. 282-1, at 8–12). Plaintiffs argue the Court should have used the economic realities test, which determines whether a worker is economically dependent on the alleged employer, and has consistently been applied by federal courts in the FLSA context. (*Id.*, at 8–9). In their response, defendants do not contest that the economic realities test applies here. (Doc. 293, at 3).

In the motion for class certification, plaintiffs' briefing on Iowa minimum wage violations under Count 2 largely relied on their argument in their FLSA minimum wage claim. (Doc. 247, at 23). Responsive argument from both parties discussed the wage claims under Counts 2 and 3 together. (Docs. 257, at 18–23; 263, at 6–14). Neither party expressly mentioned the economic realities test as the applicable test for employment applicable under Count 2. Plaintiffs did, however, reference their discussion of the economic realities by citing their FLSA conditional certifications filings and the Court's order on plaintiffs' motion for FLSA conditional certification.[5] (*See* Docs. 247, at 23–24; 263, at 6).

---

[4] A district court abuses its discretion if it commits an error of law or "its conclusions rest on clearly erroneous factual determinations." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005); *Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law."). Clear error occurs when "[a] trial judge's decision or action that appears to a reviewing court to have been unquestionably erroneous." *Error-clear error*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[5] Although the Court would have expected more briefing in the filings on plaintiffs' motion for class certification expressly discussing the economic realities test, the Court does not find that

Plaintiffs are correct that federal courts regularly look to underlying economic realities of a work relationship to determine whether workers were considered employees under the FLSA, a federal statute.[6] *Walsh v. Alpha & Omega USA, Inc.*, --- F.4th ----, 2022 WL 2719984, at *2 (8th Cir. July 14, 2022); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947); *Karlson v. Action Process Serv. & Private Investigs., LLC*, 860 F.3d 1089, 1092–93 (8th Cir. 2017); *Roeder v. Directv, Inc.*, No. C14-4091-LTS, 2017 WL 151401, at *9 (N.D. Iowa Jan. 13, 2017). Six factors should be considered when determining the underlying economic realities: "[1] the degree of control exercised by the alleged employer over the business operations; [2] the relative investments of the alleged employer and employee; [3] the degree to which the employee's opportunity for profit and loss is determined by the employer; [4] the skill and initiative required in performing the job; [5] the permanency of the relationship; and [6] the degree to which the alleged employee's tasks are integral to the employer's business." *Karlson*, 860 F.3d at 1093 (affirming jury verdict based on sufficiency of the evidence in light of jury instructions on economic realities); *see also Roeder*, 2017 WL 151401, at *9 (citing essentially the same factors).

In a prior order, the Court also considered whether the parties' arguments about the economic realities test precluded conditional certification of plaintiffs' FLSA claim and found "[a]rguments about the economic realities of this payment arrangement are

---

denying certification is appropriate based on plaintiffs' choice to reference prior filings. *See Postawko v. Mo. Dept. of Corrections*, 910 F.3d 1030, 1036 (8th Cir. 2018).

[6] The Court notes that although federal courts use the economic realities test to determine whether a worker is an employee under the FLSA, the Court has found no precedent stating this test *must* be used. *See, e.g.*, *Walsh*, 2022 WL 2719984, at *2 ("We assume without deciding that the economic realities test is appropriate in determining whether a worker is an employee or independent contractor under the FLSA."); *Karlson*, 860 F.3d at 1092; *Rutherford Food Corp.*, 331 U.S. at 727 (discussing Tenth Circuit's analysis of FLSA employment using economic realities test).

better suited for the second step [of FLSA certification], either against final certification or for decertification." (Doc. 147, at 4–6); (*See also* Doc. 113, at 16 n.11; 127, at 16–21; 135, at 6–10 (each discussing or applying economic realities test)).

After reviewing the parties' arguments, the Court agrees that the Court's previous finding that the Court needed to determine whether plaintiffs and putative class members were employees or independent contractors under the Iowa common-law test expressed in *Fesler* and similar cases, (*See* Doc. 276, at 20), was a clear error of law. Section 91D.1 expressly relies on the FLSA's definition of "employee," which federal courts interpret using the economic realities test. So, the key question is whether the putative class members are employees under the FLSA. Here, the parties agree that using the economic realities test is appropriate and the Court concurs. Thus, the Court finds the economic realities test is the relevant test to determine whether plaintiffs are employees under the FLSA.

Having found it was error to apply the *Fesler* test, the Court now determines whether that error warrants reconsideration of its prior denial of plaintiffs' motion for class certification on Count 2 as to workers who signed ICOAs after July 1, 2020.

### 2. Difference in Analysis Before and After July 1, 2020, and Its Effect on Class Certification

Plaintiffs argue that although Section 91D.1 was amended to add an additional inquiry in determining whether a worker is an employee for purposes of the Section, that inquiry is "less complex than the Court's opinion suggests." (Doc. 282-1, at 9). Plaintiffs argue the new inquiry—that is, whether a worker qualifies as an independent contractor under Section 85.61(11)(c)(3) and therefore is not considered an employee— merely imposes a second, largely repetitive step following the initial step in which the Court must determine the worker is an employee under the FLSA. (*Id.*, at 9–12). Plaintiffs argue the additional second step presents limited management difficulties

9

because it is (1) common to all workers who signed ICOAs after July 1, 2020, and (2) turns on substantially similar if not identical evidence, issues, and analysis as the FLSA employee determination based on the economic realities test, which is common to all workers, regardless of when they signed their ICOAs.  (Doc. 282-1, at 9–12).  Thus, plaintiffs argue the collective interest in efficient and economical litigation counsels in favor of also certifying Drivers who signed ICOAs after July 1, 2020, and any lingering concerns with management issues can be addressed as a subclass.  (Doc. 294, at 2; *see* Doc. 282-1, at 9–12); *see* FED. R. CIV. P. 23(c)(5).

In their response, defendants renew their original argument that certification of any class under Count 2 is inappropriate.  (Doc. 293, at 3).  The Court, however, has found otherwise, (*See* Doc. 276, at 25–26), and finds no reason to revisit that finding here.

Accordingly, the Court focuses its analysis on whether application of the economic realities test instead of the Iowa common-law *Fesler* test changes the Court's analysis.  Here, the Court finds it does.  The factors in the economic realities test are generally broader than those in the *Fesler* test, and the Court agrees with plaintiffs that considering the economic realities factors would necessarily involve consideration of the factors listed under Iowa Code Section 85.61(11)(c)(3)—that is, the independent contractor exception that became part of the analysis on July 1, 2020.

For instance, questions about the owner operator's responsibility of vehicle maintenance, IOWA CODE § 85.61(11)(c)(3)(iii), and whether the owner operator bears operating costs for fuel, repairs, and supplies, etcetera, will be considered in second factor of the economic realities test, which examines the relative investments of the alleged employer and employee, *Karlson*, 860 F.3d at 1092.  Questions about whether "the owner operator determines details and means of performing services," IOWA CODE § 85.61(11)(c)(3)(v), will be considered in the first factor of the economic realities test,

10

which examines "the degree of control exercised by the alleged employer over the business operations," *Karlson*, 860 F.3d at 1092. Questions about whether "the owner operator is compensated based on work performed rather than time," IOWA CODE § 85.61(11)(c)(3)(iv), will be considered in the third factor of the economic realities test, which examines "the degree to which the employee's opportunity for profit and loss is determined by the employer," *Karlson*, 860 F.3d at 1092. The resolution of all of these questions—whether listed as a factor in the economic realities test or a necessary condition to qualify as an independent contractor under Section 85.61(11)(c)(3) exception—depends on the ICOA, which the class definition requires each member have signed.

The only question in Section 85.61(11)(c)(3) without a clear counterpart in the economic realities test is whether the contract calls the owner operator—that is, the alleged employee—an independent contractor. *Id.*, at (vi). This answer comes from the ICOA itself and will require little to no analysis because the very agreement is called an "Independent Contractor Operating Agreement" and contains a section entitled "CONTRACTOR NOT EMPLOYEE OF CARRIER." (*See* Doc. 37-2, at 17).

Further, the two other factors in the economic realities test not yet discussed will also be determined based on the ICOA. Specifically, "the permanency of the relationship" and "the degree to which the alleged employee's tasks are integral to the employer's business" both depend on the ICOA's terms, and the nature of the service arrangement described therein. *See Karlson*, 860 F.3d at 1092.

For these reasons, the Court finds applying the economic realities test in conjunction with the independent contractor exception renders class certification appropriate. The questions as to Drivers' classification as employees both before and after July 1, 2020, substantially overlap, making them common questions amongst the class members. Further, these common questions predominate over individual questions. *See Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013);

11

FED. R. CIV. P. 23(b)(3). Accordingly, the Court does not find it necessary to certify a subclass of workers who signed their ICOAs after July 1, 2020. For this reason, the Court does not reach the parties' arguments about certifying a subclass. (Doc. 282-1, at 9–14; 293, at 4–5; 294, at 4).

The Court further finds considering claims stemming from ICOAs signed both before and after July 1, 2020, ICOAs would allow for "'efficiency and economy of litigation which is a principal purpose' behind the class action device." *Elizabeth M. v. Montenez*, 458 F.3d 779, 785 (8th Cir. 2006 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982)). Given the prevalence of common questions here and the substantial overlap between the factors in the economic realities test and in Section 91D.1's independent contractor exception, concentrating the litigations of the claims in a single forum is both efficient and economical, and the Court is no longer concerned with difficulties in managing the class action. *See* FED. R. CIV. P. 23(b)(3). The Court thus finds resolution of plaintiffs' Iowa minimum wage claim by class action, regardless of the date the ICOAs were signed, will likely "achieve economies of time, effort, and expense" in the aggregate. *See Amchem*, 521 U.S. at 615.

For these reasons, the Court finds that plaintiffs' Iowa minimum wage claim satisfies Rule 23(b)(3)'s predominance and superiority criteria. *See id.*; *Dukes*, 564 U.S. at 363. As the Court found in its prior order, this claim meets all four Rule 23(a) requirements. (Doc. 276, at 23). Thus, the Court now finds plaintiffs' Iowa minimum wage claim fully satisfies the Rule 23 requirements, and class certification is appropriate.

Although the Court does not reach the parties' subclass arguments, it does find it necessary to clarify its interpretation of the existing class definition going forward. Plaintiffs request that if the Court grants its motion to reconsider as to Count 2 and certifies a subclass, the Court also include in its subclass Drivers who signed ICOAs "on or after July 1, 2020 through the date class notice issues," not just through October 23,

2020, as the Court interpreted plaintiffs' prior motion. (Doc. 282-1, at 15–16; *see also* Doc. 276, at 16–17 ("The Court notes that plaintiffs' class definition includes all those people who 'drove'—that is, in the past tense—for CRST under certain conditions enumerated in the definition.")). Defendants do not specifically respond to this argument. Because the Court does not reach the parties' arguments about certifying a subclass, the Court does not reach this argument. To be clear, however, the class definition includes Drivers who signed ICOAs after October 23, 2020, through the date class notice issues. *See* FED. R. CIV. P. 23(c)(2)(B). Plaintiffs clarify they intended to include those putative class members and defendants make no argument that they would be prejudiced by including them. Accordingly, the Court does not find it proper to limit the class solely based on its prior interpretation of the language in plaintiffs' class definition.

In sum, the Court grants plaintiffs' motion to reconsider as to Count 2. Accordingly, the Court denies as moot plaintiffs' motion to modify the proposed class definition. (Doc. 281).

In their motion to amend/correct the third amended complaint (Doc. 295), plaintiffs seek to add a named plaintiff for their proposed subclass. Because the Court does not find a subclass necessary, the Court does not grant plaintiffs' motion. Instead, the Court holds in abeyance plaintiffs' motion to amend the complaint. If, after this order, plaintiffs still wish the Court to rule on their motion to amend, the Court will do so upon request.

### C. Count 6 – Section 376.12(g)

For the following reasons, the Court grants plaintiffs' motion as to Count 6.

#### 1. The Actual Damages Requirement

Plaintiffs argue the Court made at least one, if not two, clear errors of law in its analysis of whether to certify plaintiffs' TILA claim under Section 376.12(g) as a class action.

13

Plaintiffs first argue the Court's comment that, "to show actual damages, plaintiffs and class members must show that had CRST not violated the TILA, they would have questioned their rated freight bills under Section 376.12(g) and received more money" might be a clear error of law, depending on what the Court intended by that statement.[7] (Doc. 282-1 at 17–20 (quoting Doc. 276, at 70)). Plaintiffs assert showing that a violation resulted in a plaintiff being underpaid is enough to show actual damages. (*Id.*, at 17–20). In support, plaintiffs point to the TILA's purpose, non-binding precedent, practical concerns about speculation and evidence, and this Court's order on defendants' motion to dismiss. (*See id.* (citing Doc. 150, at 15–16)). In their resistance, defendants do not take issue with plaintiffs' interpretation of what is necessary to show actual damages in a Section 376.12(g) claim.

The Court agrees with plaintiffs' interpretation now and also agreed in its prior order, though the quoted statement in its prior order was inartfully worded. To show actual damages in a Section 376.12(g) claim, a plaintiff must show only that a violation that resulted in the plaintiff being underpaid. *See, e.g.*, *Cunningham v. Lund Trucking Co.*, 662 F. Supp. 2d 1262, 1273–74 (D. Or. 2009); 49 C.F.R. §§ 376.1 et seq. (promulgated under the Motor Carrier Act, 49 U.S.C.A. §§ 14101 et seq.); 49 U.S.C. § 14704(a)(2); (Doc. 276, at 67). Here, to prevail on their Section 376.12(g) claim, plaintiffs will need to show (1) defendants violated Section 376.12(g), and (2) as a result of that violation, Drivers were underpaid—that is, had Drivers received accurate rated freight bills from CRST and compared them to what they were actually paid, they would have seen that they had been underpaid and been in a position to demand more money.

---

[7] Although plaintiffs initially offer this issue second, they address it first in their brief because the Court's intent is relevant to how the Court interprets the other issue. The Court agrees with this approach and follows plaintiffs' order of discussion here.

Having determined there is no disagreement as to the requirement of actual damages, the Court proceeds to plaintiffs' second argument on its TILA claim.

### 2. *Whether Class Certification Is Appropriate*

For the following reasons, the Court finds class certification of plaintiffs' TILA claim under Section 376.12(g) is appropriate.

### a. *Arguments*

Plaintiffs argue the Court's conclusion that "the determination of actual damages . . . depends on individual questions and calculations, not common formula or calculation" was clearly erroneous. (Doc. 282-1, at 17 (quoting Doc. 276, at 69)). Plaintiffs argue all the information that is needed to determine actual damages will be found in CRST's records. (*Id.*, at 20–21). To determine actual damages, plaintiffs assert that one would use a simple formula comparing the amount CRST charged in a customer's rated freight bill with a corresponding amount paid in a Driver's settlement statement. (*Id.*). If CRST is determined to have violated Section 376.12(g), then actual damages will be determined by applying the difference between those amounts to the formula for gross compensation laid out in the ICOA, thereby resulting in the difference owed to the Driver. (*See id.*, at 20–21 (citing Appendix B, Doc. 37-2, at 41, ICOA § 2 at 9, and Appendix A, § 4 at 28), 20 n.8 (citing "Rated Freight Bill [on load number 76279391], attached as Ex. B at CRST010420" (Doc. 286-1) and "Settlement for load number 76279391, attached as Ex. C, at CRST993180-1" (Doc. 283-3))). In keeping with the Court's conclusion in the previous section, plaintiffs assert actual damages under Section 376.12(g) do not account for a Driver's offsets, advances or other adjustment items, as actual damages under Section 376.12(h) would, which makes class certification of the Section 376.2(g) claim appropriate. (*See id.*, at 21).

Further, plaintiffs argue the cases cited by the Court in its order do not contradict this conclusion because they were based on violations of Section 376.12(h)—the other

Section the Court considered for certification—not Section 376.12(g). (*Id.*, at 21–22). Additionally, plaintiffs argue the antitrust cases cited by the Court are not analogous to the Section 376.12(g) claim here because the Court can determine individual damages from defendants' records, which was not a possibility in those cases. (*Id.*, at 22).

In resistance, defendants do not argue against plaintiffs' formulaic calculation to establish actual damages or otherwise argue a lack of common questions renders class certification of plaintiffs' Section 376.12(g) TILA claim inappropriate.

Instead, defendants argue plaintiffs continue to fail to show sufficient evidence of actual damages[8] and the Court should deny certification on that basis. Defendants note that plaintiffs cite an example of potential damages in a footnote. (Doc. 293, at 5 (citing Doc. 282-1, at 20 n.8)). Further, defendants assert "Plaintiffs themselves admit" the error supported by the footnote "may have been simply negligent." (*Id.*). Under Rule 23(b)(3) review, defendants argue plaintiffs' argument that they should be able to advance a class action based on the "claim that CRST may have underpaid not one of the named Plaintiffs and putative class representatives, but rather a putative class member for a single load out of literally hundreds of thousands that are at issue in this case" without "a single shred of evidence that CRST was engaged in a scheme to skim from driver settlements" is improper. (*Id.*). Accordingly, defendants argue any class certified at this stage would be "used as a vehicle for determining whether a claim exists," "not to adjudicate the merits of a claim." (*Id.*). In sum, for class certification to be appropriate,

---

[8] Defendants raised this issue in their resistance to plaintiffs' motion for class certification. (Doc. 257, at 26). The Court mentioned this argument in a footnote, but did not analyze the issue and denied certification of plaintiffs' Section 376.12(g) claim based on concerns about individual inquiries about actual damages predominating. (Doc. 276, at 69–71, 69 n.22). The end of the Court's footnote, which reads "The Court, however, declines certification on this ground," was intended to mean that the Court declines to deny certification on this ground.

defendants argue plaintiffs must show more evidence supporting their Section 376.12(g) claim than they do here.[9]

In reply, plaintiffs argue they have "no obligation to prove the merits of their claim at the class certification stage," only that common evidence can make out a prima facie case of the class if its allegations are true. (Doc. 294, at 4–5 (citing *Blades v. Monsanto Co.*, 400 F.3d 562, 566–67 (8th Cir. 2005), *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006)). Plaintiffs assert the Court should not require such evidence at this stage, particularly when, as here, defendants resist related discovery, thereby preventing plaintiffs from proving their claim. (*Id.*, at 5).

### b.  Analysis

Because the question of whether class certification is appropriate depends in part on the evidence plaintiffs must show, the Court begins by addressing defendants' arguments about what evidence plaintiff must show to support their Section 376.12(g) claim at the class certification stage.

Plaintiffs need not show that a plaintiff in fact suffered actual damages for certification to be appropriate. As the Court has stated, in a motion for class certification, plaintiffs "must affirmatively demonstrate . . . compliance with . . . Rule [23]—that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart v. Dukes*, 564 U.S. 338, 350–51 (2011); *see Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ("The party [seeking class certification] must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."). A court should not focus on "the final disposition of a plaintiff's claims," *Postawko v. Mo. Dep't of Corrections*, 910 F.3d 1030, 1037 (8th Cir.

---

[9] Defendants also note this Court's order on defendants' motion to dismiss and the cases cited by plaintiffs were all decided based on allegations made at the pleading stage, and "the standard at class certification is higher." (Doc. 293, at 6). Indeed, the Court must evaluate plaintiffs' arguments based on Rule 23 standards, as seen in the Court's analysis here.

2018), or "free-ranging merits inquiries," *Amgen*, 568 U.S. at 466. "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered on the merits in favor of the class." *Amgen*, 568 U.S. at 459. "To determine whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). But, in doing so, "the court must look only so far as to determine whether, given the factual setting of the case, *if the plaintiffs' general allegations are true*, common evidence could suffice to make out a prima facie case for the class." *Id.* at 567 (emphasis added). Failure of proof is "properly addressed at trial or in a ruling on a summary-judgment motion" and "should not be resolved in deciding whether to certify a proposed class." *Amgen*, 568 U.S. at 470.

In light of this guidance, defendants are incorrect that plaintiffs must show at this stage that defendants' Section 376.12(g) violation caused a plaintiff to be underpaid. Rather, at the class certification stage, plaintiffs must show that, if true, their claims and the claims of the putative class members can be resolved based on common evidence. That the class members' actual damages may vary will not defeat class certification if those damages can be calculated with a common formula or formulaic calculation. *See Blades*, 400 F.3d at 570.

Defendants' arguments as to the burden of discovery absent evidence of a scheme are also unavailing. Although examining the relevant records may impose a substantial administrative responsibility on defendants, at this point, plaintiffs have no other way to determine the accuracy of their payments. And defendants cannot evade potential liability by not producing the relevant records. Further, plaintiffs have shown a discrepancy between a rated freight bill provided to a customer and the corresponding settlement statement provided to the Driver, (Doc. 282-1, at 20 n.8), and defendants do not dispute that this evidence would support a finding of actual damages.

18

Although defendants argue this discrepancy might be due to negligence, whether defendants violated Section 376.12(g) is a common question based on the ICOA. The Court construes this argument to mean defendants might assert a defense that CRST underpaid Drivers due to negligence. But regardless, plaintiffs show evidence supporting both (1) a Section 376.12(g) violation, which does not require that defendants intend to skim money from Drivers, and (2) actual damages, which requires causation but not defendants' intent. *See Cunningham*, 662 F. Supp. 2d at 1273–74; 49 U.S.C. § 14704(a)(2). Further, whether a Section 376.12(g) violation caused plaintiffs' actual damages is a common question among plaintiffs and the putative class members. At this stage, the Court does not foresee individual questions predominating in a way that makes class certification of plaintiffs' Section 376.12(g) claim inappropriate.

Having disposed with defendants' arguments, the Court now turns to the question of whether class certification of plaintiffs' Section 376.12(g) claim is appropriate. The Court finds that it is.

The Court first notes that although plaintiffs did not detail how a formulaic calculation could be proven from CRST's records or provide Exhibits B and C in their motion for class certification, this explanation and corresponding evidence illustrate the formulaic calculation mentioned in their prior motion. (*Compare* Docs. 247, at 34–35; 263, at 25, *with* Docs. 282-3; 286-1). Certainly, plaintiffs could have been more express with their initial description of how that calculation would be made and provided these exhibits in their initial briefing. But, as discussed, the Court reviews plaintiffs' motion to reconsider under Rule 23(c)(1)(C).[10] Thus, the Court must take a close look at the

---

[10] If the Court were not reviewing plaintiffs' motion to reconsider under Rule 23(c)(1)(C), it could not consider this new evidence and more detailed argument. *See, e.g.*, *Saquil-Orozco v. United States*, No. C 13–4085–MWB, 2015 WL 4647806, at *1 (N.D. Iowa Aug. 5, 2015) ("[A] Rule 59(e) motion . . . 'cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment.'") (quoting

predominance and superiority criteria under Rule 23(b)(3) in light of this additional information. *See Amchem*, 521 U.S. at 615; *Dukes*, 564 U.S. at 363.

For the most part, the parties' initial briefing simultaneously addressed the issues of certifying plaintiffs' TILA claims under both Section 376.12(g) and Section 376.12(h). Reviewing its order, many of the issues plaintiffs note stem from the Court simultaneously addressing these two types of claims. When viewing the issue of actual damages under Section 376.12(g) separate from that of actual damages under Section 376.12(h), the Court finds common questions predominate over individual questions because common formula or formulaic calculations comparing customer rated freight bills to corresponding Driver settlement statements will show whether plaintiffs suffered actual damages. *See Blades*, 400 F.3d at 570. The Court bases this assessment on parties' arguments in their original filings on plaintiffs' motion for class certification and their arguments here, which clarify the information previously provided.

In light of the parties' additional argument regarding whether a formulaic calculation of actual damages is possible, the Court finds that plaintiffs' Section 376.12(g) claim satisfies Rule 23(b)(3)'s predominance and superiority criteria. *See Amchem*, 521 U.S. at 615; *Dukes*, 564 U.S. at 363.

Again, to prevail on their Section 376.12(g) claim, plaintiffs will need to show (1) defendants violated Section 376.12(g), and (2) as a result of that violation, Drivers were underpaid. Here, plaintiffs show the first prong is appropriate for class certification because whether defendants violated Section 376.12(g) is based on common questions

---

*Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black* Hills, 141 F.3d 1284, 1286 (8th Cir. 1998)); *Arnold v. ADT Sec. Services, Inc.*, 627 F.3d 716, 721 (8th Cir. 2010) ("[Motions to reconsider under Rule 60(b)] are not to be used to 'introduce new evidence that could have been adduced during pendency' of the motion at issue."); *Broadway v. Norris*, 193 F.3d 987, 989–990 (8th Cir. 1999) ("[Motions to reconsider under Rule 60(b)] are not a vehicle for simple reargument on the merits.").

based on the terms of the ICOAs and CRST's policies and practices as to providing Drivers with required disclosures. (*See* Docs. 247, at 34–35; 263, at 24–25).

The second showing—actual damages—is also based on a common formulaic calculation. *See Blades*, 400 F.3d at 570. Specifically, plaintiffs can calculate actual damages by applying the difference between corresponding amounts in rated freight bills and settlement statements to the formula for gross compensation laid out in the ICOA. (*See* Docs. 247, at 34–35; 263, at 24–25; 282-1, at 18, 20). CRST's records will show the amounts charged in the rated freight bills as well as the amounts charged in the corresponding settlement statements.[11]

That the class members' actual damages may vary does not defeat class certification because damages can be determined based on a formulaic calculation applied to CRST's records. *See Blades*, 400 F.3d at 570; *see also Bell Atlantic Corp. v. AT&T Corp.*, 339 F.2d 294, 305–307 (5th Cir. 2003). And any class members who did not suffer actual damages can be filtered out at a later stage. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 461 (2016); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016). Accordingly, the Court finds resolution of plaintiffs' Section 376.12(g) claim by class action would likely "achieve economies of time, effort, and expense." *See Amchem*, 521 U.S. at 615.

The Court already found plaintiffs' TILA claim under Section 376.12(g) satisfied all four Rule 23(a) requirements. (Doc. 276, at 69). Having now found this claim also satisfies both Rule 23(b)(3) requirements, the Court concludes class certification of

---

[11] Further, the Court agrees that the cases on which it relied in finding common questions did not predominate as to plaintiffs' TILA claim and were indeed based on Section 376.12(h) or other TILA claims, and not the Section 376.12(g) claim at issue again here. (*See* Doc. 276, at 70). Likewise, the concerns about individual calculations expressed in the antitrust actions do not carry over to the Section 376.12(g) claim here. (*See id.*, at 69–70).

plaintiffs' Section 376.12(g) claim is appropriate. Thus, the Court grants plaintiffs' motion to reconsider as to Count 6.

### III. MOTION TO APPOINT CLASS COUNSEL

When appointing class counsel, the Court must consider:

(1) the work counsel has done in identifying or investigating potential claims in the action;

(2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(3) counsel's knowledge of the applicable law; and

(4) the resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A). The Court may, among other items, consider additional information relevant "to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B)–(E).

The Court has reviewed information about plaintiffs' counsel, submitted in plaintiffs' motion. (Docs. 281 & 281-1). Counsel have ably represented plaintiffs since inception of the case. Counsel have experience in navigating class actions and show knowledge of and intellectual engagement with the applicable law. Thus, the Court finds plaintiffs' counsel can fairly and adequately represent the interests of the class. The Court appoints as class counsel: Getman, Sweeney & Dunn, PLLC; Martin & Bonnett, PLLC, and; Edward Tuddenham.

### IV. CONCLUSION

For these reasons, plaintiffs' motion to reconsider (Doc. 282) is **granted**. The Court certifies plaintiffs' Iowa minimum wage claim (Count 2) in full and plaintiffs' TILA claim under Section 376.12(g) (Count 6), thereby amending its previous order on class certification. (Doc. 276).

Based on the Court's rulings here and in its previous order (Doc. 276), the Court **certifies** the following Rule 23(b)(3) class as to plaintiffs' Iowa minimum wage claim (Count 2) and TILA claim under Section 376.12(g) (Count 6):

22

All Lease Operators who drove for CRST Expedited Inc. as a Team Driver, Lead Driver, or Solo Driver pursuant to an Equipment Lease to lease a truck from CRST Lincoln Sales, Inc. and an Independent Contractor Operating Agreement ("ICOAs") with CRST Expedited, Inc. and who have not leased more than one truck at a time to CRST Expedited, Inc.[12] during the applicable limitations period, subject to any equitable tolling and equitable estoppel.

Accordingly, plaintiffs' motion to certify counts 2–6 as Rule 23(b)(3) class actions (Doc. 244) is no longer held in abeyance and is **granted** as to plaintiffs' Iowa minimum wage claim (Count 2) and TILA claim under Section 372.12(g) (Count 6). Plaintiffs' motion to modify the proposed class definition (Doc. 281) is **denied as moot**. Plaintiffs' motion to amend/correct the third amended complaint (Doc. 295) is **held in abeyance**. Plaintiffs' motion to appoint class counsel (Doc. 281) is **granted**.

**IT IS SO ORDERED** this 16th day of August, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[12] In its order on plaintiffs' motion to certify class, the Court found it necessary to change "CRST" to "CRST Expedited, Inc." here for clarity. (*Compare* Doc. 247, at 7, *with* Doc. 276, at 26). Neither party has taken issue with this change.