# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ANTHONY CERVANTES, et al., | |
| Plaintiffs, | Case No. 20-CV-75-CJW-KEM |
| vs. | |
| CRST INTERNATIONAL, INC., et al., | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Currently pending before the court are two interrelated discovery motions: Plaintiffs' motion to compel (Doc. 277), and Defendants' motion for a protective order (Doc. 278). Both motions involve Defendants' obligations to conduct searches and produce a privilege log. I **grant** the motions in part and **deny** the motions in part.

Plaintiffs bring this collective action under the Fair Labor Standards Act (FLSA), alleging that Defendants (collectively, CRST) misclassified them as independent contractors. Plaintiffs seek discovery bearing on CRST's knowledge of the legality of its pay system, which Plaintiffs argue is relevant to whether CRST acted in good faith or willfully.[1] CRST generally resists based on the attorney-client and work-product

---

[1] CRST raises good faith as an affirmative defense. Under the FLSA, employees are entitled to liquidated damages unless "the employer shows that its actions were taken 'in good faith' and with 'reasonable grounds for believing' that [it] complied with the FLSA." *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941 (8th Cir. 2008) (quoting **29 U.S.C. § 260**).

> The "good faith" requirement is a subjective standard where the employer must establish "an honest intention to ascertain and follow the dictates of the FLSA." "To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions."
>
> "To avoid a liquidated damages award the employer must also prove its position was objectively reasonable." . . . "The reasonableness requirement imposes an objective standard by which to judge the employer's conduct. Ignorance alone will not exonerate the employer."

privileges (but has not produced any privilege log). CRST has offered to stipulate that it will not rely on advice of counsel to establish it acted in good faith.

Four of Plaintiffs' requests for production (narrowed by Plaintiffs throughout the meet-and-confer process) are currently at issue. In Request for Production 21, Plaintiffs seek:

> From September 18, 2015[,] to September 18, 2020, all documents containing or concerning: a. Any claim, complaint, governmental communication, governmental, internal, or third party audit, award, or legal opinion or memorandum pertaining to the legality or propriety of [CRST]'s treatment of Drivers as independent contractors, b. Any claims filed in a court, arbitral forum, or other decision-making body; government audits; and legal opinions regarding [CRST]'s non-payment of minimum wages, individually or collectively to any individual or class of worker.

Doc. 277. CRST limited its search to the following (and found no responsive documents):

- Claims for worker's compensation and unemployment insurance brought by CRST's independent contractors since January 17, 2017;
- Documents related to governmental audits of CRST involving CRST's classification of drivers as independent contractors since January 17, 2017; and
- Legal opinions or memoranda prepared by CRST's outside counsel on the legality of independent contractors.

In Requests for Production 5, 6, and 7, Plaintiffs seek:

> **Request No. 5**: From September 18, 2015[,] to September 18, 2020, all documents containing or concerning any legal analysis or opinion of FLSA lawsuits brought against other carriers based on their classification of

---

*Id.* (cleaned up) (quoting **Hultgren v. Cnty. of Lancaster**, 913 F.2d 498, 509 (8th Cir. 1990); **Martin v. Cooper Elec. Supply Co.**, 940 F.2d 896, 908 (3d Cir. 1991)). Willfulness, on the other hand, determines whether the statute of limitations can be extended and "is wholly separate from the analysis applicable to an award of liquidated damages." **Gustafson v. Full Serv. Maint. Corp.**, No. 4:11CV00443AGF, 2012 WL 2117768, at *2 (E.D. Mo. June 11, 2012). "Plaintiff bears the burden of demonstrating willfulness"—"meaning that the employer 'knew or showed reckless disregard' for whether its conduct violated the FLSA.'" *Id.* (quoting **Smith v. Heartland Auto. Servs., Inc.**, 418 F. Supp. 2d 1129, 1141 (D. Minn. 2006)).

drivers as independent contractors, including but not limited to lawsuits against Western Express, Swift Transportation Co., and Central Trucking, Inc.

**Request No. 6**: From September 18, 2015[,] to September 18, 2020, all documents concerning any legal or financial analysis or opinion pertaining to: (a) the value, efficiency, viability, and benefit to [CRST] of the Lease Purchase Program; (b) the value, efficiency, viability, and benefit to [CRST] of the Lead Driver Program; (c) [CRST]'s determination of Drivers' base compensation rates.

**Request No. 7**: From September 18, 2015[,] to September 18, 2020, all documents containing or concerning any claim, complaint, governmental communication, audit, award, legal analysis or opinion pertaining to the legality or propriety of [CRST]'s Lead Driver Program as it pertains to the Drivers.

*Id.* According to CRST, no financial opinions, reviews, or investigations responsive to Request No. 6 exist. *Id.* CRST argued that the rest of these requests seek only privileged information, pointing out that Requests No. 5 and 6, by their terms, seek only "legal analysis or opinions." CRST argued that it would be burdensome to perform searches for necessarily privileged documents and that it should not have to produce a privilege log. During the meet-and-confer process, CRST agreed to search emails sent to and from its in-house counsel related to the Lease Purchase Program or the Lead Driver Program and to prepare a privilege log based on those results if Plaintiffs provided a list of keywords to search. Plaintiffs refused, arguing that they sought more than just emails and that in any event, CRST knew better than Plaintiffs how CRST communicated about these issues and what keywords should be used. Plaintiffs concluded:

> It is important to note that the only information at issue here is attorney-client communications. It is hard to believe that Defendants and their counsel are unable to find such communications. Please confirm that Defendants will provide a privilege log for any documents that are relevant to the requests as propounded.

Doc. 277-18. CRST later summarized a telephone call between the parties, noting they had discussed that Plaintiffs' "requests are designed to discover documents covered by

3

Case 1:20-cv-00075-CJW-KEM    Document 299    Filed 09/09/22    Page 3 of 7

the attorney-client and work product privileges, yet Plaintiffs have not provided any basis" to overcome these privileges. Doc. 277-19.

In its reply brief in support of the motion to compel, Plaintiffs argue that the "requests may include relevant documents that would not be privileged"—"[f]or example, materials shared with CRST from other companies, information published by trade or industry organizations, information obtained at conferences or meetings, and any information shared outside the privilege circle."[2] Doc. 292. Plaintiffs acknowledge, however, that the requests purposefully seek privileged information, arguing that although Rule 26(b)(1) prevents a party from *obtaining* privileged materials in discovery, it does not prevent a party from *requesting* privileged materials.

As often happens with discovery disputes, I fall somewhere in the middle of the parties' arguments. I disagree with CRST that Plaintiffs' requests necessarily encompass only privileged documents. Legal opinions to and from third parties to CRST (such as legal opinions contained in industry newsletters, an example given by Plaintiffs) would not be privileged. In addition, documents discussing similar cases filed against CRST or a Department of Labor audit of CRST (requested in Request Nos. 7 and 21) may not be privileged—for example, if nonattorneys discuss whether to make changes to CRST's business structure in light of a recently filed case.[3] And the fact that decisionmakers

---

[2] This argument seems contrary to Plaintiffs' position in its meet-and-confer letter that for Requests 5 through 7, "only attorney-client communications are at issue". *See* Doc. 277-18. Plaintiffs argue that they were referring only to CRST's proposal that it search its inhouse counsel's emails, not the requests as a whole, but it seems to me that Plaintiffs had already rejected CRST's proposal and were discussing the requests generally. I also note there is no written communication from Plaintiffs rebuffing CRST's numerous statements that the requests sought anything other than privileged information. Nevertheless, I will consider Plaintiffs' argument. The parties are reminded that they must meet and confer in good faith about discovery disputes, and if they are truly discussing the issues as the rules require, there should not really be any surprises by the time a motion is filed.

[3] *See* **Helmert v. Butterball, LLC**, No. 4:08CV00342 JLH, 2010 WL 2179180, at *4 (E.D. Ark. May 27, 2010) (compelling defendant to conduct search for terms and phrases related to other similar cases filed against the defendant and for the names of relevant Supreme Court cases; the court found relevant to defendant's good-faith defense whether defendant's decisionmakers knew

knew about any similar cases and audits of CRST, whether or not conveyed to decisionmakers by inhouse counsel, would not be privileged.

On the other hand, to the extent Plaintiffs' requests encompass legal opinions sent to and from CRST's counsel to other employees of CRST (e.g., any responsive document to Requests No. 5 and 6 involving counsel), I agree that the requests are overbroad and necessarily seek nondiscoverable documents. Plaintiffs' argument—that although the rules prevent it from obtaining necessarily privileged documents, they do not prevent it from requesting necessarily privileged documents—is not well-taken, and it reflects a spirit of noncooperation and creating work for opposing counsel just for the sake of it.[4] None of Plaintiffs' cited cases involve discovery requests specifically seeking legal opinions from counsel.[5] I also disagree with Plaintiffs that information on a privilege log

---

about these cases, and although defendant argued the search would result in a number of privileged documents, defendant offered no cost estimate to support its burdensome argument).

[4] Plaintiffs do not argue that CRST has waived attorney-client or work-product privilege by raising a good-faith affirmative defense. *See also* ***Vire v. Entergy Operations, Inc.***, No. 4:15-CV-00214 BSM, 2016 WL 10576707, at *2 (E.D. Ark. Sept. 28, 2016) (holding that defendants did not have to produce a legal memo "related to defendants' decision to classify plaintiffs as exempt employees," even though it was relevant to defendants' good-faith defense, as defendants disclaimed reliance on legal advice and the memo and therefore had not waived attorney-client privilege); ***Brackett v. St. Louis Bd. of Police Comm'rs***, No. 4:12-CV-898-JAR, 2014 WL 3451197, at *1-3 (E.D. Mo. July 15, 2014) (holding that when defendants' good-faith defense rested "on prior litigation finding [defendant's employees] to be FLSA exempt executive or administrative employees and an investigation into the [defendant's employees] exempt status conducted by the Department of Labor in 2004-2005 which concluded with a finding of no violations," and defendants' disclaimed reliance on advice of counsel, defendants had not waived attorney-client privilege over communications between counsel and decisionmakers about a Second Circuit decision holding similar employees were not exempt (citation omitted)); ***Haviland v. Catholic Health Initiatives-Iowa, Corp.***, 692 F.Supp.2d 1040, 1045-46 (S.D. Iowa 2010) (holding that defendant did not have to disclose results of counsel's investigation into whether plaintiffs should be paid for missed lunches in FLSA collective action raising good-faith defense, as the investigation was protected work product and defendant stated they would not be relying on the results as part of its defense).

[5] *See* ***Ingersoll v. Farmland Foods, Inc.***, No. 10-6046-CV-SJ-FJG, 2011 WL 1131129, at *9 (W.D. Mo. Mar. 28, 2011) (holding that when party requested "all documents relating to 19 lawsuits," which necessarily encompassed large swaths of work product and attorney-client privileged documents, subpoenaed nonparty did not have to produce a privilege log and "be

5

showing that CRST sought legal advice about the specific issues in this lawsuit would not be privileged: "While the general fact of legal consultation is generally not privileged, information that would reveal the substance of a client's request for legal advice remains privileged."[6] CRST should not have to search or prepare a privilege log for those requests specifically seeking legal analysis from counsel.

CRST raises general burdensome arguments, but it has not attempted to conduct any searches for responsive documents. Thus, the court has no idea how many documents are potentially responsive to Plaintiffs' remaining requests, nor how long it would take CRST to review the documents and prepare a privilege log. In addition, I agree with Plaintiffs that without knowing the basis for CRST's good-faith defense, Plaintiffs are not in the best position to set forth how the search should be conducted. Plaintiffs have established threshold relevance for the requests to the extent they do not seek legal opinions sent between CRST's counsel and other CRST employees, and I find that CRST has waived any undue-burden argument by failing to raise it with any specificity.

Accordingly, CRST must conduct searches and respond to Plaintiff's Requests for Production Nos. 5, 6, 7, and 21, as modified to eliminate searching for legal analysis, opinions, or memos prepared by CRST's counsel or sent between CRST's counsel and CRST employees. To the extent CRST claims privilege over any documents responsive to these requests as modified, CRST must prepare and produce a privilege log.[7]

---

subject to the burden and expense of 'researching, analyzing and cataloguing potentially voluminous amounts of documents . . . for the purposes of providing an extensive privilege log in response to Plaintiffs' overly broad document requests"); *see also* **UnitedHealth Grp. Inc. v. Columbia Cas. Co.**, No. CV 05-1289 (PJS/SRN), 2010 WL 11537514, at *11–12 (D. Minn. Aug. 10, 2010) (holding that when plaintiff sought all communications and documents related to underlying action, which necessarily implicated privileged documents, defendant had to produce categorial privilege log (not document-by-document privilege log)).

[6] ***Pub. Citizen, Inc. v. United States Dep't of Educ.***, 388 F. Supp. 3d 29, 42 (D.D.C. 2019).

[7] I do not find that CRST has acted in bad faith such that it has waived the privilege, as I find its position that it should not have to produce a privilege log based on Plaintiffs' overbroad requests

CRST must conduct these searches and produce any privilege log by **Friday, October 7, 2022**. CRST should have conducted these searches earlier in time, and therefore I am not likely to find good cause to extend this deadline.[8]

Plaintiffs' motion to compel (Doc. 277) is **granted in part and denied in part**. CRST's motion for a protective order (Doc. 278) is **granted in part and denied in part**.

**SO ORDERED** on September 9, 2022.

_Kelly KE Mahoney_
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

substantially justified.

[8] To the extent CRST is unable to review every responsive document for privilege in this timeframe, I suggest the parties work out a "clawback" agreement.