IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| ANTHONY CERVANTES and MIKE CROSS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CRST INTERNATIONAL, INC. and CRST EXPEDITED, INC.,<br><br>Defendants. | Case No. 1:20-cv-00075-CJW-KEM<br><br>Honorable Judge C.J. Williams |

**DECLARATION OF CHAD BRUECK**

I, Chad Brueck, declare and state as follows:

1. I am the President of CRST Expedited, Inc. (CRST). I submit this declaration in support of Defendants' Opposition to Plaintiffs' Motion to Conditionally Certify FLSA Collective Action, For Issuance of Notice, and for Equitable Estoppel Regarding the Limitations Period.

2. This declaration is based on my personal knowledge and my review of records maintained by CRST over which I have responsibility. I have personal knowledge of the facts contained in this declaration based on my review of relevant records and, if called as a witness, I could and would testify competently as to the information contained herein.

**Background Facts**

3. CRST is a regulated, for-hire motor carrier authorized by the Federal Motor Carrier Safety Administration (FMCSA), an agency of the U.S. Department of Transportation (DOT), to provide trucking services to the shipping public nationwide.

4. CRST is an Iowa corporation that has its principal place of business in Cedar Rapids, Iowa, where it is headquartered.

5. To transport its customers' freight, CRST signs Independent Contractor Operating Agreements (ICOAs) with independent contractor owner-operators (Contractors) under which the Contractors agree to provide equipment (i.e., a commercial motor vehicle with a combined gross vehicle weight rating of 80,000 pounds) and a DOT-qualified driver.

6. Owner-operators who contract with CRST are responsible for providing their own truck and a DOT-qualified driver.

7. Approximately 7% of the Contractors already have their own trucks when they begin hauling for CRST.

8. Contractors who do not have their own trucks, and qualify, may obtain a truck from CRST Lincoln Sales, Inc. through a lease-purchase agreement.

9. At the end of the lease term, a lease-purchase operator can purchase the truck for the stipulated value agreed to by the parties.

10. The terms of these leases vary based on the age and mileage of each truck.

11. CRST dispatchers notify owner-operators of load opportunities, and the owner-operators are free to accept or reject those loads.

12. Owner-operators have complete control over what loads they haul and can pick any available load based on anticipated revenue or any other factor relevant to the Contractor.

13. They can likewise ignore or decline a load.

14. Some Contractors own and drive their own trucks, and others lease more than one truck and hire drivers to drive those trucks.

15. CRST pays those fleet operators for the completed deliveries, and fleet operators, in turn, pay their drivers for the labor performed on terms agreed upon between themselves.

16. The fleet operators determine how much to pay their drivers.

17. CRST leased no vehicles to Plaintiffs or any member of the putative collective.

18. CRST entered into ICOAs with Contractors who owned their trucks as well as those who elected to lease trucks from CRST Lincoln Sales or other sources.

19. CRST places no limitation on the source from which a Contractor may lease a truck.

20. Plaintiffs and Linda Gravelle leased trucks through CRST Lincoln Sales. Nothing required them to do so.

21. Moreover, while they were not required to hire others to haul freight, they had the opportunity to do so.

22. Each load represented a separate job, and Plaintiffs decided when and if to take another load.

23. Some owner-operators have contracted with CRST for years on a load-by-load basis while others contracted for only a few trips.

24. CRST's records reflect that the contract dates of those individuals who filed consent-to-join forms and signed ICOAs with CRST vary between approximately two months (*e.g.*, Damien Beard and Michael Brown) to more than three years (*e.g.*, Tabitha Meeks and Calvin Everette).

**Plaintiff Anthony Cervantes**

25. Anthony Cervantes applied for a contract with CRST and signed his first ICOA with CRST on January 3, 2018. Cervantes signed a second ICOA with CRST on March 14, 2018.

26. Cervantes chose to act as a lead driver, training CRST student drivers, because doing so is more profitable. He executed a Lead Driver Addendum to his ICOAs setting forth the terms of the program.

27. Cervantes hauled his last load as a Contractor with CRST on July 22, 2019.

28. CRST's records reflect that it paid Cervantes a gross amount of $419,125.02 in the 19 months he provided services between January 2018 and July 2019, for an average of $22,059 per month.

**Plaintiff Mike Cross**

29. Mike Cross previously worked for CRST as an employee driver on several occasions, signing two separate driver employment agreements with CRST, the first in November 2016 and the second in June 2017.

30. Cross terminated his first driver employment contract in March 2017 and the second in February 2018.

31. Cross elected to sign an ICOA with CRST in October 2018 and continues providing services as an independent contractor today.

32. CRST's records indicate Cross initially acted as a lead driver, executing a lead driver addendum in October 2018. In February 2019 he switched trucks and chose to stop acting as a lead driver for about ten months. Instead, he hired a co-driver, qualified by CRST, and was solely responsible for determining and paying her compensation.

**Linda Gravelle**

33. Linda Gravelle previously worked for CRST as an employee driver from approximately August 2007 to April 2009.

34. Years later, Gravelle chose to become an independent contractor with CRST, signing two separate ICOAs, the first in May 2017 and the second in June 2019.

35. With her second ICOA, Gravelle elected to enter CRST's lead driver program, which terms were contained in an addendum to her ICOA.

36. Gravelle also chose who she wanted to drive with and hired her own driver, who she teamed with during a substantial portion of her contracts. She was solely responsible for his work and setting and paying his compensation.

**Former Named Plaintiff Adam St. Amour**

37. Plaintiffs were not merely free to accept or reject loads. They were free to end their relationships with CRST at any time and take their skilled driving services to another carrier if that met their personal and professional requirements. Former named plaintiff Adam St. Amour did just that, providing his services to different carriers at different times, including two separate stints with CRST.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 4th of December, 2020 at Cedar Rapids, Iowa.

Chad Brueck

4840-3459-1699, v. 2