IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

------------------------------

ANTHONY CERVANTES and MIKE CROSS, on behalf of themselves and all others similarly situated,

Plaintiffs,

Case No.: 1:20-cv-00075-CJW-KEM

vs.

CRST INTERNATIONAL, INC. and CRST EXPEDITED, INC.,

Defendants.

------------------------------

April 5, 2022
9:13 a.m. CDT

Videotaped remote video-teleconference deposition of MICHAEL L. JOHNSON, taken by Defendants, held at Waterloo, Iowa, pursuant to notice, before Elizabeth F. Tobin, a Registered Professional Reporter and Notary Public of the State of New York.

JOB NO. 5164377

A. Correct.
Q. Do you know what the difference is between being a company driver and an owner-operator?
A. Oh, yeah.
Q. What are those differences?
A. Owner-operator you take care of all your expenses. You are responsible for your insurances as far as medical insurance. You have no benefits whatsoever except for what you obtain yourself. Where a company driver, if the company is able to, they will provide.
Q. What do you mean by if the company is able to, they will provide?
A. Well, some companies are very small and they cannot provide.
Q. Provide what?
A. Benefits.
Q. Okay. Okay.
So you said that an owner-operator covers their own expenses, they don't have benefits from the company they're contracted with?
Were there any other differences?
A. Depends on where you work. No.

A. I believe so, yes.
Q. Let me be very clear. In 2015 you signed two separate contracts with CRST, a lease for the truck and then a lease for the truck back to CRST; right?
A. Yeah, and then the operator owes --
Q. So you signed an equipment lease, just like I would lease a car from a dealership?
A. Correct.
Q. With CRST? You sign the equipment lease with CRST?
A. Correct.
Q. And then you also sign the owner-operator agreement; right?
A. Correct.
Q. Now, was it your understanding that there's anything in the owner-operator agreement that requires you to lease your truck from CRST?
A. No.
Q. That's the same for both the 2018 agreement and the 2015 agreement; is that right?
A. Correct.
Q. Did you know that other lease owner-operators for CRST could hire a second person

to lease their truck or operate their truck?
A. Yes.
Q. Did you ever consider hiring someone to operate your truck?
A. No.
Q. Why not?
A. Because it was going to be a CRST employee and you either had to buy out their contract, if they were still under contract, and they really don't have the greatest safety record. And why would -- then I look at it as myself, why would I work for another person when I could do the exact same thing myself on my own. To me it didn't make sense.
Q. So it was a personal decision not to do that?
A. Correct.
Q. Did you get insurance for your truck through CRST?
A. Correct.
Q. And did you look for different policies that were less expensive?
A. Didn't -- never knew I had an option on that either.

truth needs to be told. You know.

Q. You believe you were really an employee at CRST?

A. Yes.

Q. What --

A. A glorified employee. That's what I always called it. A glorified employee.

Q. What makes you believe that?

A. You were under the same rules as the company driver and I know that because my students, I still -- Michael, I will talk to him every day. Anesha (phonetic). That list goes on. I was a pretty good trainer, though, and a real friendly trainer. I helped -- I helped them succeed, if they wanted to stay in the industry.

I never talked anybody out or in. I just told them what the real facts were about the industry. And it's, you know, up to them to decide. It's a very rough industry. It truly, truly is.

Q. Did any of your trainees go on to become owner-operators at CRST?

A. At CRST? Let me think. I don't think so. No. They pretty much all left.

Q. When you came back, why did you agree to

be an owner-operator instead of asking to be a company driver?

A. Because of the one fact that remains is I can literally -- if I needed to and have the opportunity, I can say, I am not working today. Regardless of -- regardless of what happens, you're not going to make me work today. If need be. I know company drivers from different companies and CRST that were ill that were made to run.

The load I got sick on, they were forcing me to run. But I had to -- we called an ambulance. I mean, I was really, really, really sick. I'm cutting it off here. We got to get that load. No, I'm cutting it off here. I'm done. I cannot go any further. I had to call an ambulance. But...

Q. So you decided to be an independent contractor because you knew you could make the decision to stop running if you had to?

A. If I had to, correct.

Q. Do you have any social media?

A. Yeah. Yeah.

Q. Which platforms?

A. Facebook. That's basically it. I don't -- all the others. I do have Twitter. I do

to pick a truck. You get whatever is laying around that has wheels and tires and runs. You don't get new trucks.

Q. Okay. Just to switch gears, throughout your time with CRST when you first joined in 2015 and when you were there in 2018, who controlled what loads were offered to you?

A. My dispatcher.

Q. Did that remain constant regardless of whatever dispatcher you had?

MS. PAYNTER: Objection, form.

Q. You can answer.

MS. PAYNTER: You can answer.

A. Pretty much, yeah. You could turn down a load. You could actually -- you have that option to refuse a load. But if you did that more than once, twice, three times, dispatcher will stop offering you loads, you know. Oh, you're just going to turn that down anyway. I know that's speculation. It's our opinion. It's part of the industry. You don't refuse loads. You're telling your boss no. Even though they're not supposed to be your boss, you're supposed to be their boss, in a perfect world that's the way it would be but you do what you're pretty

J U R A T

I do hereby certify that I have read the foregoing transcript of my deposition.

________________________________

MICHAEL L. JOHNSON

Sworn and subscribed
before me
this _____ day of
___________, 2022.
A Notary Public
of the State of _________

CERTIFICATE

STATE OF NEW YORK )
) ss.
COUNTY OF SUFFOLK)

I, Elizabeth F. Tobin, a Registered Professional Reporter and Notary Public within and for the State of New York, do hereby certify:

That Michael L. Johnson, the witness whose deposition is hereinbefore set forth, was duly sworn by me remotely and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.



________________________

ELIZABETH F. TOBIN, RPR