IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION
Case No. 1:20-cv-00075-CJW-KEM
----------------------------------------x
ANTHONY CERVANTES and MIKE CROSS, on behalf of themselves and all others similarly situated,
Plaintiffs,

- against -

CRST INTERNATIONAL, INC. and CRST EXPEDITED, INC.,
Defendants.
----------------------------------------x
April 6, 2022
10:09 a.m.
Virtual Deposition

ZOOM EXAMINATION BEFORE TRIAL of a Plaintiff, MICHAEL NOBLE, pursuant to Notice, held at 4637 Stanley Court, Winston Salem, North Carolina 27101 before Mandy Fein, a Notary Public of the State of New York.



Veritext Legal Solutions
800-336-4000

and done your own IFTA reporting, right, but you chose Option 2?

A. Yes. I chose Option 2.

Q. And underneath midway down on the same page it says, Communications Systems/EOBR.

Do you know what EOBR stands for?

A. Communications -- EOBR, is that something to do with the -- I want to think it's something to do with the equipment in the truck, communication satellite, something like that.

Q. For EOBR, if I said electronic onboard recording --

A. Yes.

Q. -- does that ring a bell?

A. Yes. That's the equipment I was saying. Yeah. I just didn't know the proper.

Q. Fair enough.

A. Okay.

Q. And those initials next to Option 2, are those your initials?

A. Yes.

Q. And you wrote them there?

A. Yes.



Veritext Legal Solutions
800-336-4000

Q. And Option 2 says, Carrier shall arrange, at its expense, to have a Communications System/EOBR Installed in the Equipment and shall deduct or otherwise recover pursuant to Section 6(A) of this Agreement the weekly rent fee -- or the weekly rent set forth Section 4 of this Appendix. And then in all caps, IF CONTRACTOR INITIALS THIS OPTION, CONTRACTOR SHALL ALSO SIGN THE ATTACHED OMNITRACS, LLC, SYSTEM RECEIPT.
Do you see that?
A. Yes.
Q. So, by selecting Option 2, you elected to have CRST obtain the communications equipment you needed for your truck, correct?
A. Yes.
Q. We are going to scroll down and look at a few more and then we will be done with this. And now I am on the page Bates labeled CRST017572, and it is at the top of the page there is a box and it says, Type of coverage.
Do you see that?
A. Yes.
Q. And Number 1 is listed as

non-trucking (Bobtail) liability insurance.
Do you know what non-trucking or Bobtail insurance is?
A. It's an insurance that you have to have that is when you are Bobtailing, you don't have the trailer behind you.
Q. It is just the power unit itself, the tractor without the trailer?
A. Yes.
Q. On the right-hand column at the top it says, Initial yes to request coverage.
Do you see that?
A. Uh-huh.
Q. And did you write your initials next to yes?
A. Let me find my initials. Okay, yes.
Q. And by initialing there, what did you believe you were doing?
A. I was getting Bobtail liability insurance for my tractor, my power unit.
Q. You were getting it through CRST?
A. Yes.
Q. And if you had initialed next to no, which you did not do, but if you would have,

what would that have meant to you?

A. That I had to pay for it myself out-of-pocket.

Q. You would have had to go find somebody who would write your insurance for your Bobtail?

A. Yes.

Q. Understood.

But you elected to have CRST go ahead and obtain that coverage for you, right?

A. Yes. It is more convenient.

Q. Understood.

And I'm down now one more page Bates labeled CRST017573, and again, we've got the same type of box arrangement with the left-hand column being Type of coverage and the right-hand column being Initial yes to request coverage, and here it says, Occupational accident insurance is Number 3.

Do you see that?

A. Yeah. You said Number 3? I am looking at Number 4. Okay. Occupational, okay. I see it now.

Q. And did you initial next to yes to

obtain occupational accident insurance?
A. Yes.
Q. And you could have declined occupational accident insurance, correct?
A. Yes.
Q. Number 4 it says, Physical Damage Insurance.
Do you see that section?
A. Yes.
Q. And you elected to obtain physical damage insurance through CRST instead of obtaining it on your own, correct?
A. Yes.
Q. But you could have gone and gotten it on your own, right?
A. Yes, you could have.
Q. And you elected to get it through CRST just for the same reason, right, it is more convenient?
A. It's more convenient and it makes, you know, more sense to do it because you don't have time to do all that stuff. Some people may have the money, some people don't. You have more of a convenience.

Q. And then I'm down on the next Page 7574, at the top, Insurance for Cargo, Carrier's trailer(s) and related expenses, and again, you elected to request coverage for that type of insurance, correct?
A. Yes. Yes.
Q. And I am sorry, I cut you off, that's a bad habit of mine. Sometimes I will pause like the question is over and then I will keep going, so that's my fault.
A. Okay.
Q. And down, I am now down at the page Bates labeled CRST017576, and at the top of that page on the left-hand side, is that your signature?
A. Yes. Yes, it is.
Q. Thank you.
And so, after looking at that document would it be fair to say that was the independent contractor operating agreement that you signed with CRST Expedited?
A. Yes.
Q. And why did you decide to sign that document with CRST Expedited?

or decline those loads that were made available on the Qual Com?

A. Yes.

Q. And so, you could, if a load came across the Qual Com and it wasn't something that was attractive to you, you could refuse it, correct?

A. Yes. It was a no force dispatch.

Q. And what were your guiding, I guess, principals in deciding whether or not you accepted a load?

A. The pay, the mileage and where it was delivering to.

Q. The last one was where it was delivering to?

A. Yes.

Q. And why --

A. That was my last one.

Q. Why was the location of the delivery important to your decision process?

A. Because you have to look at what they're paying you, you look at that and then you -- you look at what they're giving you for fee. Sometimes you get a trip and it's not



Veritext Legal Solutions
800-336-4000

paying you enough to deliver that load, so therefore, you may have to eat the fuel cost up on it, you know what I'm saying? You don't get enough fuel for that load. It depends where it's going and how much they're paying you for the fuel.

Q. So, were there instances where it made sense to you where a load would come across and maybe it was did not pay enough to be profitable on the load to the destination but once you were at that destination, you would receive loads that were more profitable departing that destination, so they would balance out or in all you would say you could be profitable by making the trip there, picking up another load and then making that delivery?

A. Yeah. They could work out like that sometimes.

Q. Did you think about it that way, to you, did it matter where that destination was based on what kind of freight was coming out of that destination?

A. Yes. That makes a difference to some areas you get the load and you see where it's

going. Some loads maybe cheaper coming back out of there. So, you have to take all of that into consideration because you can take an area, the load pays good, but coming out of there you gonna lose money and most of the time you have to take a load, a lesser paying load, just to get out of that area. So, you got different factors that you have.

Q. And you weighed those factors when deciding whether or not to take a load, correct?

A. Yes.

THE VIDEOGRAPHER: Sorry, this is the videographer. We have about ten minutes to media change. Thanks.

MR. SPOLYAR: Understood. We will just go a few more minutes and then I think we can break one more time and if everybody would like but --

MS. KING: That would be good.

MR. SPOLYAR: Is now a good time for you, Rebecca?

MS. KING: Sure. Yeah. If you wanted to finish your thought, that's fine, but



Veritext Legal Solutions
800-336-4000

you.

THE VIDEOGRAPHER: Thank you. This is the videographer. The time is 2:27. We are going off the record. That concludes Media File 3. That concludes this deposition.

(Time Noted: 3:27 p.m.)

______________________

MICHAEL NOBLE

Subscribed and sworn to
before me this ________
day of _______________.

______________________

NOTARY PUBLIC

C E R T I F I C A T I O N

I, Mandy Fein, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose testimony as herein set forth, was duly sworn by me; and that the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 13th day of April, 2022.



MANDY FEIN