IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION
Case No. 1:20-cv-00075-CJW-KEM

- - - - - - - - - - - - - - - - - - -x
ANTHONY CERVANTES and MIKE CROSS, :
on behalf of themselves and all :
others similarly situated, :
:
Plaintiffs, :
- vs - :
:
CRST INTERNATIONAL, INC. and CRST :
EXPEDITED, INC., :
:
Defendants.:
- - - - - - - - - - - - - - - - - - -x

May 14, 2022
11:08 a.m. CT
Houston, Texas

VIDEOTAPED VIRTUAL REMOTE DEPOSITION UPON ORAL EXAMINATION OF GLENN WILLIAMS, held at the above-mentioned time and place, before Randi Friedman, a Registered Professional Reporter, within and for the State of New York.



Veritext Legal Solutions
800-336-4000

the load that they wanted, you might catch an attitude because you didn't take a load and leave you sitting there, and you're not making any money sitting there.

Q So "they" being the CRST representative; right?

A Uh-huh. Well, dispatcher, yeah.

Q So what you're saying is if the dispatcher offers you a load and you decline the load, then you would have to sit there?

A Yes. Declining a load for reasons, because it don't make sense, I'm not coming out a lot of money doing the load. It don't make sense to do the load because I'm covering more money trying to do the load. So it wouldn't make sense to do it.

Q Okay. So after you declined a load how long would you have to sit there?

A Sometimes it would be two-three days. And sometimes -- two-three days with a bunch of going back and forth.

Q What do you mean by "going back and forth"?

A Trying to get me to take the load I didn't want, or giving me something even more

worser. Some of the time I did take the bad loads just to get out of where I was.
Q Okay. So you're saying you would wait two to three days to get a load that you considered acceptable; right?
A Yes. Sometimes I asked, yeah, to take a load that wasn't acceptable to get out of where I was because I got tired of sitting there.
Q Right. So the dispatcher was offering loads, you were just declining them?
A Sometimes it was offered the very same load I declined, so, you know --
Q So what do you mean, they were offering the very same load?
A Let's say they give me a load from Houston to Pittsburgh, paying whatever. And then I said no, that load is not paying enough, all right. Sit there for an hour, they offer me the same load again. I say I declined it once already. Okay. Turn around, offer me the same load again a third time. Now that's when things kind of get heated, you know. No mean no.
Q So did you know if the dispatcher had any other loads to offer?
A Well, I know because he said he

A No.

MS. KROLL: Wait, wait, wait. Let her finish. Let her finish because I'm going to object to it.

BY MS. BROWN:

Q So -- okay. So you have a suspicion that you're not being paid the correct percentage, but you don't have anything else to base that belief off of?

MS. KROLL: Object to form. Now you can answer.

THE WITNESS: Okay. It ain't so much the percent. It's the amount that they're saying that the customer is paying them equaling the percentage. If the load is paying 3,000 and they're really getting 5 for it, I need to see the rate con to see what the customer is actually paying per load. They're not showing me that.

BY MS. BROWN:

Q Okay. So when you were driving with CRST, did you operate with a teammate or a team driver?

A Yeah, my ex-wife.

Q Your ex-wife.

A It was getting kind of worser. It should be a lot more than that. It should have been a lot more than what we was getting as a team.

Q So what is your ex-wife's name?

A Valerie.

Q Was she your wife at the time?

A Yes.

Q Do you know Valerie's last name?

A Williams. And I was responsible to pay her. Not CRST.

Q And why were you responsible to pay her?

A That's the CRST rule, having a team driver.

Q How long did you and Valerie work together?

A A few months that we was there at CRST.

Q You said a few months?

A A few months during the period that we were working at CRST. A few months. I keep getting these calls.

Q So was Valerie --

MS. KROLL: You want to take a

C E R T I F I C A T I O N

I, Randi Friedman, Registered Professional Reporter and Notary Public of the State of New York, do hereby certify:

THAT, the witness whose testimony is herein before set forth, was duly sworn by me, and THAT, the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related either by blood or marriage to any of the parties to this action; and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this day, May 19, 2022.



Randi Friedman, RPR

*     *     *     *     *     *     *     *     *

Cervantes, Anthony Et Al. v. CRST International, Inc., Et Al.

Glenn Williams (#5200095)

ACKNOWLEDGEMENT OF DEPONENT

I, Glenn Williams, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

______________________________ ________________

Glenn Williams Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS

______ DAY OF ________________, 20___.

__________________________

NOTARY PUBLIC