IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

- - - - - - - - - - - - - - - - x

ANTHONY CERVANTES and MIKE CROSS, on behalf of themselves and all others similarly situated,

Plaintiffs,

Case No. 1:20-cv-00075-CJW-KEM

-against-

CRST INTERNATIONAL, INC. and CRST EXPEDITED, INC.,

Defendants.

- - - - - - - - - - - - - - - - x

DATE: Thursday, February 24th, 2022
TIME: 11:30 a.m.

Videotaped deposition of ADAM ST. AMOUR, taken by Defendant, in the above-entitled action, held via Zoom, Veritext Virtual, pursuant to notice, taken before Elizabeth Willeski, a Stenographic reporter and Notary Public within and for the State of New York.

refresher course at the separate school of St. Louis, Missouri?

A Yes, ma'am.

MS. KING: Mischaracterizes prior testimony.

Q All right. So in terms of the timelines then, you changed over in 2014 to being a lease purchase operator; is that right?

A Yes.

Q That was that short period of time, about a week, when you said that you operated, had two loads that you hauled. Do you recall that testimony?

A Yes.

Q All right. So in 2014, do you recall how you learned about the opportunity to contract with CRST to become a lease purchase operator?

A Listening to other drivers. And that's a bad mistake. Usually you listen to other drivers that are doing it.

Q What do you recall other drivers telling you in 2014?

A Supposedly you could make more money as a company driver.

Q Do you recall any of them telling you how much money you could make?

A Two or $3,000 a week on an average.

Q Was that gross or net?

A That would be gross.

Q Okay. At that point in time, did that sound like a good deal for you?

A Yes.

Q Okay. Do you recall how much you were making per week as a company driver for CRST?

A Twelve to 1500. If I had a good student, it would be 15. But you take out taxes, about 1200 a week on average, 12 or 1100 depending. I never had a problem with the company side.

Q All right. So you talked with other drivers. It sounded like a good opportunity for you to make more money. Do you recall what you did after that in order to seek out the opportunity to contract with CRST?

everything we need if you have any questions.

Q Anything else that you recall in terms of advice that you were given by a CRST employee about how to be a successful lease purchase operator?

A Yes, not to refuse any loads. And that was stated in orientation more than once, you're not to refuse a loads. It's not advised to refuse loads because they're giving you your loads for a reason, to keep you moving.

Q Do you generally agree with that?

A Refusing loads --

Q That it wasn't advised to refuse loads in order to keep your truck moving?

A Yes.

Q Did anyone at orientation discuss your ability to become a fleet operator?

A You mean more than one truck?

Q Yes.

A It was brought up, but no. I had a hard enough time with one. I didn't need four.

Q So it was discussed at orientation?

A Not really with -- just with the people in the room, people wanting more than one truck, not really, they're the employees.

Q So it was other either company drivers or lease purchase operators who were there for orientation that discussed the ability to own more than one truck and operate it with CRST?

A Yes.

Q Okay. Did you ever hire someone as either an employee or contract with an individual to be your team driver?

A I tried.

Q All right. Was it successful?

A No.

Q Was your team driver always either a student driver or -- a student driver?

A Well, yeah, like, 99 percent of them were student drivers.

Q And the student drivers were paid by CRST as employees, right?

A Actually, 7 or 8 cents a mile came out of the truck to pay part of their payment. It was called the cheap co-driver.

Section 2 of this appendix relates to base plates and permits. Do you see that section?
A Yes.
Q All right. And a base plate is what?
A Registration, the insurance, all your permits.
Q Okay. This is like your license plate and permit to be able to operate your truck; is that right?
A Yes.
Q Okay. And you had the option, Option 2, where you could obtain your own base plate for your truck; is that right?
A Yes.
Q Okay. And you elected Option 1, which was to have CRST obtain the base plate and then you would pay the cost of that through your settlements; is that right?
A Yes.
Q Why did you elect to have CRST facilitate or obtain that base plate for you?
A It was a lot easier that you can keep up on it, because when your registration

is due from -- what I'm understanding was when the registration is due on the truck, it gives -- it red flags you and lets the dispatcher know that your truck needs to be registered.

Q Have you ever tried to obtain your own base plate while you have been driving?

A No.

Q Every year that you operated for CRST, you chose the option for CRST to obtain your base plates for your tractor?

A Yes.

Q And every time you made that election, it was because it was easier for you to do that?

A Yes.

Q Okay. Under Paragraph 2B, you see that it says permits, government permits and license for your tractor?

A Yes.

Q Okay. And this relates to your international fuel tax agreement permit, IFTA, and certain fuel tax reporting that's required under law; is that right?

A Yeah.

Q And you had the option, Option No. 1 to obtain your own IFTA permit. Do you see that?
A Yes.
Q And you chose Option 2, which was to have CRST obtain the IFTA permit and to perform all of the fuel tax reporting; is that right?
A Yes, because they have a program where they could actually show how many miles you've done in those states, so it's a lot easier.
Q Is that why you chose Option 2, because it was easier?
A Yes.
Q Okay. All right. Paragraph 3 of this appendix, it relates to a communication system EOBR, electronic on board recorder; is that right?
A Yeah.
Q All right. And this is the Qualcomm and your electronic logging device in your tractor?
A Yes.

Q Okay. You have the option to furnish and install your own Qualcomm and electronic logging device; is that right?

A Yeah, but they won't allow you to use any other device other than their Qualcomm.

Q Okay. It says here under Option 1, contractor shall furnish and install contractor's own compatible communication system, EOBR equipment. Do you see that?

A Yes.

Q All right. And you elected Option 2, which was to have CRST arrange for and install that communication device and electronic device in your tractor?

A Yes.

Q And as a result of that election, you were agreeing that CRST could deduct a weekly amount for rent of that equipment in your tractor?

A Yes.

Q Why was it that you elected to have CRST provide an electronic logging device and Qualcomm in your tractor?

A Because it sounds like it knew your fuel miles because it tracks where you're going.

Q And that was easier than getting your own device and making sure it was compatible with CRST's system?

A Well, not only that. They want control of your logs to make sure you're not screwing with them too.

Q They would have control over your logs if you had installed a compatible electronic logging device, correct?

A I would assume so.

Q Okay. And then Paragraph 4 relates to various deductions that you agreed to under the contract, right?

A Yes.

Q Okay. The next section that starts on page 34 of 58 of Exhibit 2 relates to insurance coverage that you elected. Do you see that?

A Yes.

Q Did you shop around to see if you could get policies that were cheaper

elsewhere?
A No one would insure me because CRST is self-insured so you have to go with your insurance.
Q So it was your understanding that you were not able to elect your own insurance coverage elsewhere?
A No, because they're self-insured.
Q Okay. So you didn't ever try to get Bobtail liability insurance for your tractor elsewhere?
A No.
Q Okay. And you didn't shop around for workers' compensation insurance, right?
A No.
Q And you didn't elect to have that coverage, right?
A No.
Q On page 35, it's hard to read because the numbering up here is a little blacked out, page 35 of 58 at the top. This looks like a fax that was sent in. Do you see that?
A Yes.

Q All right. And it's the occupational accident insurance and you elected to have that coverage through CRST, right?
A Yes.
Q And you never tried to shop around to see if you could get a rate that was better for occupational accident insurance?
A No.
Q And then physical damage insurance, same thing here, you elected to have CRST provide that coverage; is that right?
A Yes.
Q And you didn't shop around for any other coverage to see if you could get a cheaper rate for that?
A No.
Q Okay. And then I believe page 36 is the same as the last page we looked at. It's just missing a signature for the physical damage insurance. Perhaps that was the reason why you faxed in your page. Do you recall?
A Yes.
Q Okay. All right. And then the

last type of coverage, number 5 on page 37 of 58, notes insurance for cargo carriers trailers and related expenses. Do you see that you elected to have CRST provide or facilitate that coverage?

A Yes.

Q All right. And you didn't try to shop around for a cheaper rate to compare to the cost you were agreeing to here in the contract?

A Technically you need to have a DOT number for over two years for having anybody to cover you anyway. So if you don't want to have a DOT number in your name, you can't get insurance. No one will insure you.

Q Did you try to do that?

A Yeah, and that's when I found out I need my own DOT number and CRST is not going to allow you to put your DOT number on their truck.

Q When did you try to get that coverage?

A That was the second time I did the lease.

C E R T I F I C A T E

STATE OF NEW YORK )
) ss.
COUNTY OF NEW YORK)

I, ELIZABETH WILLESKI, a stenographic reporter and Notary Public within and for the State of New York, do hereby certify:

That ADAM ST. AMOUR, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 3rd day of March, 2022.



ELIZABETH A. WILLESKI, STENOGRAPHER
My Commission Expires: May 31, 2024

A C K N O W L E D G E M E N T O F D E P O N E N T

STATE OF NEW YORK)
:ss
COUNTY OF NEW YORK)

I, ADAM ST. AMOUR, hereby certify that I have read the transcript of my testimony taken under oath in my deposition of February 24, 2022; that the transcript is a true, complete and correct record of what was asked, answered and said during this deposition, and that the answers on the record as given by me are true and correct.

_______________________

ADAM ST. AMOUR

SUBSCRIBED AND SWORN BEFORE ME
THIS___DAY OF_____________, 2022.

_______________________________
Notary Public
My Commission Expires:___________