IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

Case No. 1:20-cv-00075-CJW-KEM

-----------------------------------------x

ANTHONY CERVANTES and MIKE CROSS, on behalf of themselves and all others similarly situated,

Plaintiffs,

- against -

CRST INTERNATIONAL, INC. and CRST EXPEDITED, INC.,

Defendants.

-----------------------------------------x

March 30, 2022
12:38 p.m.
Virtual Deposition

ZOOM EXAMINATION BEFORE TRIAL of a Plaintiff, ANTHONY WHISENTON, pursuant to Notice, held at 9435 N 59th Street, Glendale, Arizona 85302 before Mandy Fein, a Notary Public of the State of New York.



Veritext Legal Solutions
800-336-4000

A. No.

Q. In the lower, right-hand corner of your screen.

A. You said CRST 023292?

Q. Yes.

A. Okay.

Q. Do you see that?

A. Yes.

Q. And I am going to scroll up here and looking at Paragraph 1 (C) it says, No limitation on contractor's use of equipment.

Do you see that paragraph I am referring to?

A. Yes.

Q. Take a moment and read that paragraph and let me know when you're done.

A. Okay, and I'm reading 1C?

Q. Yes. Let me know when you're done.

A. Okay, I'm done.

Q. The last sentence of that paragraph on Exhibit 4 says, and I am going to read slowly for the court reporter, Nor is contractor consistent with Section 1E of this agreement, prohibited from using the equipment



Veritext Legal Solutions
800-336-4000

for the pick up, transportation, or delivery of property for more than one common carrier or other person or entity.

Is this the provision of the contract to which you were referring about your ability to use the truck to haul for other carriers?

A. Not -- not sure. Could you go to Section 1E?

Q. I am -- have now scrolled to Page CRST 023293, which is the following page of Exhibit 4, and I have the Paragraph 1E framed on the shared screen. Go ahead and read it, and let me know when you're finished.

A. Okay. Can you -- can you scroll up?

Q. Tell me when to stop.

A. Go, I guess, go back the other way. Sorry.

Q. Tell me when to stop.

A. Alright. Stop.

Q. Is there a particular provision that you are reading, sir, from?

A. Yes. Right now I am reading 1E, 2A.

Q. Let me know when you are finished or when you would like me to scroll further.

A. Correct.
Q. And you also wanted to hire the co-driver that John Person would be placed with, correct?
A. Correct.
Q. And you wanted to do so because you were gonna have John Person and his co-driver operate a truck that you were lease purchasing from CRST, correct?
A. Correct.
Q. And you were going to go over to CRST Malone and operate a truck that you had obtained from a separate leasing company, correct?
A. Not correct.
Q. What's incorrect about my question?
A. Meaning, that's no -- at that time that I obtaining that truck, no, I wasn't going to Malone's Division at that point.
Q. When did you obtain the second truck?
MR. SWEENEY: Object to the form of the question, although, you can respond.
A. I want to say June 24.
Q. June 24th, 2020?

A. Yes.
Q. And from where did you obtain this second truck?
A. OTR Leasing.
Q. What was your intention to do with this second truck that you obtained from OTR Leasing?
A. To work with another carrier.
Q. What carrier?
A. There was multiple carriers that I called.
Q. Did you have a specific one in mind?
A. No.
Q. Was one of them CRST Malone?
A. No.
Q. Was it your intention to hire Mr. Person and his co-driver and have them operate the truck that you were lease purchasing from CRST?
A. Can you repeat the question, please?
MR. SMEDSTAD: Would you read it back?
(The record was read back by the reporter.)

THE WITNESS: I'm sorry, Madam, could you please repeat that one more time?

(The record was read back by the reporter.)

A. Yes.

Q. And looking at Page PLT-AW-23 on June 30th Jacob Witte says to you, Anthony, these guys, referring to Mr. Person, and his co-driver, will be your employees. So, I think it is in your best interest to speak to these guys. Are you will -- it says, are you will be paying and employing and not CRST you would have to get John and whoever the other driver is that you want to agree to be your employee.

Do you see that?

A. Yes.

Q. Did you speak to John about hiring him?

A. Yes.

Q. Did you ultimately hire John and his co-driver?

A. No.

Q. Why not?

A. Because Jacob didn't think I would be

you drove for CRST, did you ever haul a load for any company other than CRST?

A. No.

Q. What was your understanding of your ability to be able to haul a load for another company while you were working for CRST?

MR. SMEDSTAD: Asked and answered.

Go ahead and answer.

A. I -- I didn't catch what Mr. Smedstad said.

Q. He just objected, but that's okay, you can answer the question.

A. My understanding was that I was gonna be able to secure loads. If I didn't like what I was being sent or, you know, if I was sitting too long, I could reach out to other brokers to secure loads to keep myself moving.

Q. Could you reach out to any other brokers or were you limited who you could reach out to?

A. We were limited to who we could reach out to.

Q. And if you reached out about a load, did CRST have to approve that?

A. Yes.

MR. SMEDSTAD: Foundation.

Q. And in your case, I think you testified you tried twice, but in neither case were you able to haul that load; is that right?

MR. SMEDSTAD: Asked and answered, leading.

Q. You can respond.

A. Yes. I answered yes, I tried twice. I even had another phone call with another company called Echo and they had their issues with CRST at the time as well.

Q. And if you got a load from another broker, did the broker pay you or did they pay CRST?

MR. SMEDSTAD: Foundation.

Go ahead and answer.

A. My understanding is that the conversation would have went through CRST first and then I would have got compensated afterwards.

Q. And what was your understanding of who would compensate you, would that be CRST or the other broker?



Veritext Legal Solutions
800-336-4000

MR. SMEDSTAD: Nothing further from me. Thank you very much, Mr. Whisenton, for your time.

MR. SWEENEY: Thank you, Mr. Whisenton.

THE VIDEOGRAPHER: I will take us off the record. The time is 3:42 p.m. We are off the record.

(Time Noted: 3:42 p.m.)

______________________
ANTHONY WHISENTON

Subscribed and sworn to
before me this _________
day of ________________.

______________________
NOTARY PUBLIC

# C E R T I F I C A T I O N

I, Mandy Fein, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose testimony as herein set forth, was duly sworn by me; and that the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 6th day of April, 2022.

MANDY FEIN