IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| ANTHONY CERVANTES and MIKE CROSS, on behalf of themselves and all others similarly situated, | Case No. 1:20-cv-00075-CJW-KEM |
| | Honorable Judge C.J. Williams |
| Plaintiffs, | |
| v. | |
| CRST INTERNATIONAL, INC. and CRST EXPEDITED, INC., | |
| Defendants. | |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS

Defendants, CRST International, Inc. and CRST Expedited, Inc. (collectively CRST), respectfully submit this Statement of Material Facts. In accordance with Local Rule 56, CRST identifies the following material facts as to which it contends there is no genuine issue to be tried:

1.     CRST is a motor carrier authorized by the U.S. Department of Transportation (DOT) to provide transportation services to customers across the United States. *Declaration of Chad Brueck* (hereafter Brueck Decl.), App'x at 184, ¶ 3.[1]

2.     CRST engages drivers to timely deliver its customers' freight. *Lizer Dep.* at 37:23-38:2, App'x at 765-66.

3.     Two types of drivers perform services for CRST: company drivers, who are employed by the company directly, and independent contractor owner-operators (Contractors) who contract with the company to make deliveries. *Abernathy Dep.* at 18:11-20:11, App'x at 385-87; *Brueck Dep.* at 16:10-16, App'x at 391; *Brueck Decl.*, App'x at 185, ¶ 5.

---

[1] References to Defendants' Appendix are rendered as [short form], App'x at [page number].

1

4. Company drivers have set schedules, are not permitted to decline loads (except for safety-related reasons), are paid on a cents-per-mile basis, and are required to abide by all company policies. *Cervantes Dep.* at 185:17-186:17, App'x at 456-57; *Daniel Dep.* at 39:4-13, App'x at 596; *Evans Dep.* at 14:18-16:20, App'x at 658-60; *Fink Dep.* at 48:12-49:16, App'x at 693-94; *Placide Dep. Vol. II* at 17:7-19:4, App'x at 822-24; *Powers Dep.* at 10:10-20, App'x at 833; *Robinson Dep.* at 25:11-26:17, App'x at 864-65; *Shines Dep.* at 14:6-15:14, App'x at 886-87; *see also Brueck Dep.* at 86:10-87:15, App'x at 392-93.

5. Company drivers are also paid on a regular basis through CRST's payroll system, and the company owns the trucks they drive. *Cervantes Dep.* at 185:17-186:17, App'x at 456-57; *Daniel Dep.* at 39:4-13, App'x at 596; *Evans Dep.* at 14:18-16:20, App'x at 658-60; *Fink Dep.* at 48:12-49:16, App'x at 693-94; *Placide Dep. Vol. II* at 17:7-19:4, App'x at 822-24; *Powers Dep.* at 10:10-20, App'x at 833; *Robinson Dep.* at 25:11-26:17, App'x at 864-65; *Shines Dep.* at 14:6-15:14, App'x at 886-887; *see also Brueck Dep.* at 86:10-87:15, App'x at 392-93.

6. Contractors set their own schedules, can (and do) decline loads offered to them for any reason, are paid on a per-load basis, and are subject to virtually none of the policies that govern employee drivers. *See Cervantes Dep.* at 185:17-186:17, App'x at 456-57; *Daniel Dep.* at 39:4-13, App'x at 596; *Evans Dep.* at 14:18-16:20, App'x at 658-60; *Fink Dep.* at 48:12-49:16, App'x at 693-94; *Placide Dep. Vol. II* at 17:7-19:4, App'x at 822-24; *Powers Dep.* at 10:10-20, App'x at 833; *Robinson Dep.* at 25:11-26:17, App'x at 864-65; *Shines Dep.* at 14:6-15:14, App'x at 886-87; *Brueck Dep.* at 86:10-87:15, App'x at 392-93; *Brueck Decl.*, App'x at 185-86, ¶¶ 5-6, 11-13, 22.

7.	Contractors provide the trucks they use to make deliveries. *Brueck Decl.*, App'x at 185-86, ¶¶ 6-10, 14, 17-19; *Evans Dep.* at 14:18-16:20, App'x at 658-60; *Fink Dep.* at 48:12-49:16, App'x at 693-94; *Powers Dep.* at 10:10-20, App'x at 833.[2]

8.	Because Contractors operate their own businesses, they are responsible for all business-related expenses. *See Cervantes Dep.* at 150:21-151:8, 241:25-242:13, App'x at 436-70; *Lomax Dep.* at 36:3-10, App'x at 773; *Powers Dep.* at 16:6-17:15, 138:4-9, App'x at 835-47; *Johnson Dep.* at 15:3-19, App'x at 756; *Placide Dep. Vol. II* at 27:5-28:2, App'x at 826-27; *accord Brueck Dep.* at 165:18-166:14, App'x at 395-96; *Reges Dep.* at 168:18-169:4, App'x at 851-52.

9.	Drivers frequently elect to become Contractors after starting out as employee drivers. *Corpening Dep.* at 28:9-18, 31:16-19, 32:10-20, App'x at 486-88; *Daniel Dep.* at 63:24-64:16, App'x at 601-02; *Dosier Dep.* at 26:19-27:1, App'x at 619-20; *Evans Dep.* at 28:15-31:9, App'x at 661-64; *Fink* 20:21-21:1, App'x at 691-92; *Powers Dep.* at 11:7-12, App'x at 834; *St. Amour Dep.* at 71:17-72:11, App'x at 907-08; *Placide Dep. Vol. II* at 19:11-20:13, App'x at 824-25; *Ridner Dep.* at 54:5-16, App'x at 856; *Thompson Dep.* at 31:21-32:6, App'x at 927-28.

10.	Another difference between company drivers and Contractors is that the latter may haul brokered loads[3] and loads for other carriers—that is, they are not required to work exclusively for CRST while under contract with the company. *Cervantes Dep.* at 223:13-23, 257:10-259:14, App'x at 462-81; *Dosier Dep.* at 37:2-10, App'x at 623; *Shines Dep.* at 87:11-91:6, 93:1-94:5, 97:1-98:10, App'x at 891-99; *Whisenton Dep.* at 78:21-79:9, 126:5-127:2, App'x at 945-51.

---

[2] The class certified by the Court under Fed. R. Civ. P. 23(a) and (b)(3) is limited to Contractors who signed Independent Contractor Operating Agreements and who leased the trucks they operated from CRST Lincoln Sales, Inc. *See Order Certifying Certain Claims as Rule 23 Class Actions*, App'x at 112-83. CRST Lincoln Sales is not a party to this lawsuit. The collective conditionally certified by the Court comprises Contractors who signed Independent Contractor Operating Agreements regardless of where those individuals obtained their trucks. *See Order Conditionally Certifying Collective Action*, App'x at 57-73.

[3] A brokered load is a load located by a Contractor (not CRST) through his or her own efforts that the Contractor then refers to CRST and hauls himself or herself under CRST's motor carrier authority.

11.     An Independent Contractor Operating Agreement (ICOA) governs the relationship between CRST and each Contractor and contains language required by the federal leasing regulations. *See Independent Contractor Operating Agreement – Anthony Cervantes* (hereafter Cervantes ICOA), App'x at 211-66; *Independent Contractor Operating Agreement – Mike Cross* (hereafter Cross ICOA), App'x at 267-322; 49 C.F.R. § 376.11(a); *Brueck Decl.*, App'x at 185, ¶ 5.

12.     The ICOA specifies the compensation paid to Contractors for hauling loads and the services the Contractors will provide. *Cervantes ICOA*, App'x at 211-66; *Cross ICOA*, App'x at 267-322; 49 C.F.R. § 376.11(a); *Brueck Decl.*, App'x at 185, ¶ 5.

13.     Under the ICOA, the Contractors assumed responsibility for all of their business and operating expenses. *Cervantes ICOA*, App'x at 221, § 5(F) ("[I]t shall be the sole responsibility of Contractor to determine the manner and means of performing all of Contractor's services under this Agreement, including, but not limited to . . . [p]aying all operating expenses[.]"); *Cross ICOA*, App'x at 277, § 5(F) (same).

14.     Appendix B to the ICOA governs compensation and provides that Contractors are paid 70% of Adjusted Gross Revenue (defined as the amount that CRST charged the customer for the load, less certain deductions) for each load they deliver. *Appendix B to Cervantes ICOA*, App'x at 250-53; *Appendix B to Cross ICOA*, App'x at 306-09.[4]

15.     Contractors are also entitled to 97% of any fuel surcharge (amounts charged to the shipper for fuel based on the price of fuel) and 70% of certain accessorial (i.e., miscellaneous) charges billed to customers. *Appendix B to Cervantes ICOA*, App'x at 250-53; *Appendix B to Cross ICOA*, App'x at 306-09.

---

[4] Appendix B identifies higher compensation percentages where the Contractor provided the trailer for a load. But that scenario did not apply to the vast majority of loads at issue in this case.

4

16.     Plaintiffs, Anthony Cervantes and Michael Cross, were Contractors who drove with CRST at various times. *Brueck Decl.*, App'x at 186-87, ¶¶ 25-32.

17.     Cervantes contracted with CRST in two stints: a period of three or four months in late 2017 to February 2018 and again for a period of 18 months from March 2018 to August 2019. *Declaration of Anthony Cervantes*, App'x at 189, ¶ 3; *Cervantes Dep.* at 172:7-20, 192:9-18, App'x at 447-58; *see also Brueck Decl.*, App'x at 186-87, ¶¶ 25-28.

18.     Cross contracted with CRST numerous times over a period of approximately two years from 2018 to 2020. *Declaration of Mike Cross*, App'x at 197, ¶ 3; *Cross Dep.* at 193:21-195:12, App'x at 579-81; *see also Brueck Decl.*, App'x at 187, ¶¶ 29-32.

19.     Cervantes filed his original complaint in the U.S. District Court for the District of Massachusetts on January 17, 2020, alleging a single cause of action for failure to pay minimum wages under the FSLA. *Class and Collective Action Complaint*, App'x at 11-23.

20.     On CRST's motion, the Court transferred the case to the Northern District of Iowa on August 5, 2020. *Order of Transfer to the U.S. District Court for the Northern District of Iowa*, App'x at 56.

21.     Cervantes subsequently amended his complaint three times; the operative Third Amended Complaint (TAC) alleges six causes of action: (i) failure to pay minimum wages under the Fair Labor Standards Act (FLSA), (ii) failure to pay minimum wages under Iowa's Minimum Wage Law, (iii) unlawful deductions under Iowa's Wage Payment Collection Law, (iv) unjust enrichment, (v) fraud, and (vi) violations of the federal leasing regulations. *Third Amended Complaint*, App'x at 24-55.

22.     In its orders conditionally certifying a collective under the FLSA and certifying a class under Federal Rule of Civil Procedure 23, the Court adopted the following collective and class definitions:

### FLSA Collective
All drivers who entered into independent contractor operating agreements ("ICOAs") with CRST Expedited, Inc. at any time on or after October 23, 2017, who have not leased more than one truck at a time to CRST.[5]

### Rule 23 Class
All Lease Operators who drove for CRST Expedited Inc. as a Team Driver, Lead Driver, or Solo Driver pursuant to an Equipment Lease to lease a truck from CRST Lincoln Sales, Inc. and an Independent Contractor Operating Agreement ("ICOAs") with CRST Expedited, Inc. and who have not leased more than one truck at a time to CRST Expedited, Inc. during the applicable limitations period, subject to any equitable tolling and equitable estoppel.

*Order Conditionally Certifying Collective Action*, App'x at 57-73; *Order Certifying Certain Claims as Rule 23 Class Actions*, App'x at 112-83.[6]

23.     All of the Contractors are either individuals or owners of corporate entities that contracted to provide transportation services to CRST. *See, e.g.*, *Cervantes ICOA*, App'x at 234 (showing signature of individual); *Cross ICOA*, App'x at 290 (same); *Declaration of Chad Brueck* (hereafter Brueck Decl.), App'x at 185, ¶¶ 5-6,

24.     All the Contractors "own[ed]" a "truck" or "truck tractor." *See Cervantes ICOA*, App'x at 214, § 1(A) ("Contractor warrants that he/she is the 'owner' of the equipment set forth in the attached Equipment Receipt and Section 1 of Appendix A"); App'x at 235 (Equipment Receipt listing truck); *Cross ICOA*, App'x at 270, § 1(A) (same); App'x at 291 (same); *see also*

---

[5] Contractors, unlike employees, have the ability to lease multiple trucks to CRST, receive the revenue associated with the loads those trucks deliver, and thereby profit off of the labor of the drivers who operate the trucks they leased to CRST. Recognizing the incongruity of these opportunities, Plaintiffs limited their class to Contractors who chose to lease a single truck to CRST.

[6] Members of the Rule 23 class and the FLSA collective are collectively referred to herein as "Contractors."

6

*Equipment Lease – Anthony Cervantes*, App'x at 323-345; *Equipment Lease – Michael Cross*, App'x at 346-367.

25.     The Equipment Lease between the Contractors and Lincoln Sales provides for the conditional lease of a truck that includes a right to purchase the truck upon performance of the conditions stated in the Equipment Lease, with an immediate right of possession. *See, e.g.*, *Equipment Lease – Anthony Cervantes*, App'x at 331 ("This Lease constitutes a lease and Lessor is merely allowing Lessee to use the Equipment, with an option to purchase it at the successful completion of the Lease Term."), 335 (detailing right to purchase); *Equipment Lease – Michael Cross*, App'x at 353 (same), 357 (same).

26.     The Contractors' trucks are registered and licensed by governmental agencies. *See, e.g.*, Appendix A to *Cervantes ICOA*, App'x at 236, § 2(A) (contractor must purchase Indiana and/or Iowa International Registration Plan license plates for contractor's tractor); Appendix A to *Cross ICOA*, App'x at 292, § 2(A) (same); *see also* Ind. Code § 9-18.1-13-4(a) ("The [Indiana Department of State Revenue] shall administer vehicle registrations that are subject to the International Registration Plan according to the terms of the International Registration Plan and rules adopted by the [Indiana Department of State Revenue][.]"); Iowa Code Ann. § 326.1 ("Apportioned registration shall be conducted in accordance with the international registration plan with respect to vehicles registered in this and other jurisdictions[.]").

27.     Contractors are responsible for all maintenance associated with their vehicles; the ICOA between CRST and the Contractors provides that "it shall be the sole responsibility of Contractor to determine the manner and means of performing all of Contractor's services under this Agreement, including, but not limited to . . . [s]electing, purchasing, and financing, . . . the Equipment and deciding when, where, and how maintenance and repairs are to be performed on

7

the Equipment." *Cervantes ICOA*, App'x at 221, § 5(B); *Cross ICOA*, App'x at 277, § 5(B); *see also Cervantes ICOA*, App'x at 226, § 9(C) ("[I]t shall be the sole financial responsibility of Contractor to select, purchase or lease, and finance the Equipment [and] to decide when, where, and how maintenance and repairs are to be performed on the Equipment[.]"); *Cross ICOA*, App'x at 282, § 9(C) (same)

28.    The ICOA further provides that Contractors are responsible for "[p]aying all operating expenses, including, but not limited to, all expenses for fuel, oil, tires and other spare parts, supplies, and equipment necessary for the safe, efficient, and lawful operation and maintenance of the Equipment." *Cervantes ICOA*, App'x at 221, § 5(F); *Cross ICOA*, App'x at 277, § 5(F).

29.    The ICOA requires Contractors to establish and fund a $250 escrow account, titled the Maintenance and Other Reserve Fund, which must be used to "to guarantee the performance of Contractor's obligations under this Agreement," including funding "all maintenance, repair, and tire-related Escrow Items and . . . all other expenses related to the operation of the Equipment under this Agreement." *Cervantes ICOA*, App'x at 225, §§ 8, 8(A)(2), 8(B)(2); *Cross ICOA*, App'x at 281, §§ 8, 8(A)(2), 8(B)(2); *see also* Appendix A to *Cervantes ICOA*, App'x at 246 ("The minimum Principal Amount in the Maintenance and Other Reserve Fund shall be two hundred fifty dollars ($250)[.]"); Appendix A to *Cross ICOA*, App'x at 302, (same).

30.    Appendix A to the ICOA lists the deductions that Contractors authorize CRST to deduct from their compensation; included among them are deductions for building the Maintenance and Other Reserve Fund and deductions for "[m]aintenance, repairs, parts, and replacement tires." *Appendix A to Cervantes ICOA*, App'x at 236-248; *Appendix A to Cross ICOA*, App'x at 292-304.

8

31. Numerous Contractors testified that they covered maintenance expenses through authorized deductions from their settlement statements. *Cervantes Dep.* at 167:8-169:2, App'x at 443-45 (testifying that he covered maintenance costs through 15¢ per mile maintenance program); *Cross Dep.* at 275:15-276:8, App'x at 590-91 (testifying he funded his maintenance escrow account through deductions from his compensation); *Fink Dep.* at 189:14-190:6, App'x at 719-20 (testifying it cost him 15¢ per mile for maintenance); *Noble Dep.* at 134:21-135:25, App'x at 814-15 (testifying he authorized deductions to pay for maintenance escrow account).

32. Contractors also testified that they covered certain maintenance expenses through out-of-pocket purchases. *Cross Dep.* at 114:5-115:12, App'x at 561-62; *Fapohunda Dep.* at 122:18-124:7, App'x at 684-86; *Ridner Dep.* at 133:1-17, App'x at 860; *Thompson Dep.* at 158:6-25, App'x at 937.

33. Contractors also testified that they claimed deductions for their trucking-related business expenses, including expenses related to truck maintenance, as part of filing their federal taxes. *Corpening Dep.* at 84:4-90:5, App'x at 530-36; *Edden Dep.* at 57:10-62:20, 62:24-63:22, 67:4-21, App'x at 647-54; *Fink Dep.* at 181:15-185:11, App'x at 714-18; *Noble Dep.* at 148:12-24, 151:13-152:5, App'x at 816-18; *Powers* 96:10-98:12, 101:20-102:8, App'x at 839-43; *Robinson* 139:25-145:3, App'x at 876-82.

34. The Contractors were responsible all operating costs associated with their vehicles; the parties' ICOA provides that "it shall be the sole responsibility of Contractor to determine the manner and means of performing all of Contractor's services under this Agreement, including, but not limited to . . . [p]aying all operating expenses, including, but not limited to, all expenses for fuel, oil, tires and other spare parts, supplies, and equipment necessary for the safe, efficient, and

lawful operation and maintenance of the Equipment." *Cervantes ICOA*, App'x at 221, § 5(F); *Cross ICOA*, App'x at 277, § 5(F).

35.     Contractors bore the costs associated with obtaining International Registration Plan license plates, International Fuel Tax Agreement (IFTA) permits, and communications systems. *Appendix A to Cervantes ICOA*, App'x at 236-248; *Appendix A to Cross ICOA*, App'x at 292-304.

36.     Contractors were also responsible for purchasing any required insurances, including collision insurance. *Cervantes ICOA*, App'x at 227, § 10; *Cross ICOA*, App'x at 283, § 10; *see also Cervantes ICOA*, App'x at 229, § 10(B)(4) ("[I]t is solely Contractor's responsibility to procure, carry, and maintain any fire, theft, uninsured and/or underinsured motorist, physical damage (collision), or other insurance coverage that Contractor may desire for the Equipment[.]"); *Cross ICOA*, App'x at 285, § 10(B)(4) (same).

37.     Appendix A to the ICOA lists the various other expenses and costs that Contractors chose to have CRST deduct from their compensation, including deductions for advances, maintenance, repairs, and other expenses. *Appendix A to Cervantes ICOA*, App'x at 236-248; *Appendix A to Cross ICOA*, App'x at 292-304.

38.     Contractors were responsible for covering their own maintenance and repair expenses. *See Statement of Facts* ¶¶ 28-34 *supra*; *see also Cervantes Dep.* at 167:8-169:2, App'x at 443-45 (testifying that he covered maintenance costs through 15¢ per mile maintenance program); *Cross Dep.* at 275:15-276:8, App'x at 590-91 (testifying he funded his maintenance escrow account through deductions from his compensation); *Fink Dep.* at 189:14-190:6, App'x at 719-20 (testifying it cost him 15¢ per mile for maintenance); *Noble Dep.* at 134:21-135:25, App'x at 814-15 (testifying he authorized deductions to pay for maintenance escrow account).

10

39.     Contractors who elected to obtain services through CRST (e.g., International Registration Plan license plates, IFTA permits, communications systems, and various insurances) authorized CRST to deduct those costs from their settlements, in accordance with the requirements of the ICOAs. *Cato Dep.* at 90:18-97:19, App'x at 411-18; *Corpening Dep.* at 44:24-57:6, App'x at 495-508; *Cross Dep.* at 149:25-158:13, App'x at 566-575; *Daniel Dep.* at 59:24-60:13, 65:13-68:19, App'x at 599-606; *Edden Dep.* at 33:5-39:24, App'x at 635-41; *Fapohunda Dep.* at 53:18-59:10, 63:21-64:23, App'x at 672-80; *Fink Dep.* at 129:5-134:21, App'x at 699-704; *Mareus Dep.* at 109:10-21, App'x at 788; *Noble Dep.* at 97:1-102:25, App'x at 805-10; *Ridner Dep.* at 69:1-71:25, App'x at 857-59; *Robinson Dep.* at 76:10-82:24, App'x at 867-73; *St. Amour Dep.* at 133:1-140:16, App'x at 916-23; *Thompson Dep.* at 108:1-114:25, App'x at 929-35; *accord Brueck Dep.* at 154:18-20, App'x at 394.

40.     Under the ICOAs, Contractors were responsible for providing "competent professional drivers who meet [CRST's] minimum driver qualification standards (part of Carrier's Policies and Procedures) and all Applicable Law." *Cervantes ICOA*, App'x at 219, § 4(D); *Cross ICOA*, App'x at 275, § 4(D).

41.     Under the ICOAs, Contractors agreed that "it shall be the sole responsibility of Contractor to determine the manner and means of performing all of Contractor's services under this Agreement, including, but not limited to . . . [s]electing, setting the compensation, hours, and working conditions, adjusting any grievances, and supervising, training, disciplining, and firing all drivers, drivers' helpers, and other workers necessary for the performance of Contractor's obligations under this Agreement." *Cervantes ICOA*, App'x at 220, § 5(A); *Cross ICOA*, App'x at 276, § 5(A).

42.     Several Contractors—including Cervantes—hired (or attempted to hire) their own drivers or co-drivers to haul loads on their behalf. *Cervantes Dep.* at 153:3-155:17, App'x at 438-40 (hired co-driver); *Cross Dep.* at 117:11-119:14, App'x at 563-65 (hired co-driver); *Dosier Dep.* at 70:14-71:17, App'x at 624-25 (discussed hiring individual as a co-driver); *Gravelle Dep. Vol. I* at 54:14-55:8, 59:7-19, App'x at 742-44 (hired three different co-drivers); *St. Amour Dep.* at 111:11-16, App'x at 912 (attempted to hire co-driver); *Williams Dep.* at 83:21-84:22, App'x at 957-58 (hired wife to be co-driver).

43.     Contractors were aware that they could hire other persons to drive their trucks, could hire co-drivers, or could hire former student drivers as co-drivers by buying out the student drivers' contracts. *Corpening Dep.* at 34:24-35:11, 38:17-40:3, App'x at 489-93; *Edden Dep.* at 27:22-30:6, App'x at 631-34; *Evans Dep.* at 50:7-24, 52:20-53:2, App'x at 665-67; *Fisher Dep.* at 129:4-13, App'x at 725; *Johnson Dep.* at 70:24-71:18, App'x at 757-58; *Lomax Dep.* at 109:22-110:20, 115:19-24, App'x at 774-76; *Meeks Dep.* at 171:4-7, App'x at 799; *Powers Dep.* at 109:12-15, App'x at 844; *Shines Dep.* at 17:1-6, 105:4-106:22, 107:6-20, App'x at 888-902; *Whisenton Dep.* at 107:7-109:6, App'x at 947-49; *Williams Dep.* at 83:21-84:15, App'x at 957-58; *see also Cervantes Dep.* at 255:5-256:8, App'x at 477-78.

44.     Under the ICOAs, Contractors were paid 70% of Adjusted Gross Revenue, which is defined as the "Gross Revenue for a particular shipment, reduced by" certain discounts. *Cervantes ICOA*, App'x at 217, § 2; *Appendix B to Cervantes ICOA*, App'x at 250, § 1(A)(2)(b); *Cross ICOA*, App'x at 273, § 2; *Appendix B to Cross ICOA*, App'x at 306, § 1(A)(2)(b).

45.     Under the ICOAs, Gross Revenue is defined as "all revenue – billed by [CRST] to [a customer] . . . in connection with shipments Contractor hauls under th[e] Agreement – for pickup and delivery charges, mileage charges, linehaul transportation charges, hourly work, accessorial

services, detention, and all other services, fuel surcharges, and other charges and surcharges." *Appendix B to Cervantes ICOA*, App'x at 250, § 1(A)(2)(a); *Appendix B to Cross ICOA*, App'x at 306, § 1(A)(2)(a).

46.     Under the ICOAs, Contractors were paid 70% of any accessorial charges billed to the customer and 97% of any fuel surcharge billed to a customer. *Appendix B to Cervantes ICOA*, App'x at 250, § 1(B)(1), (2); *Appendix B to Cross ICOA*, App'x at 306, § 1(B)(1), (2).[7]

47.     Contractors were paid according to the compensation structure described above and not on an hourly basis. *See Dosier Dep.* at 30:9-20 (testifying he was paid 70% of linehaul), 32:6-11 (same), App'x at 621-22; *Edden Dep.* at 19:3-18, 27:13-21 (same), App'x at 630-31; *Fapohunda Dep.* at 85:6-14 (same), App'x at 683; *St. Amour Dep.* at 93:17-94:25, 96:3-8 (same), App'x at 909-11; *see also Brueck Dep.* at 179:6-23 (independent contractor drivers are paid 70% of adjusted gross revenue), 185:20-186:2 (independent contractor drivers are paid 97% of billed fuel surcharge), 186:20-188:15 (independent contractor drivers are paid 70% of all accessorial charges), 190:21-194:3 (same), App'x at 397-406.

48.     The ICOAs provide that "it shall be the sole responsibility of Contractor to determine the manner and means of performing all of Contractor's services under this Agreement." *Cervantes ICOA*, App'x at 220, § 5; *Cross ICOA*, App'x at 276, § 5.

49.     Under Section 5, Contractors are responsible for selecting and providing a truck; selecting, hiring, and managing drivers; selecting routes; loading and unloading their trucks; and paying any necessary operating expenses. C*ervantes ICOA*, App'x at 220-22, § 5(A)-(H); *Cross ICOA*, App'x at 276-78, § 5(A)-(H).

---

[7] Accessorial charges are miscellaneous charges that are billed to CRST's customers for various reasons (e.g., overdimentional permit fees, tolls, detention time, layovers, etc.) and fuel surcharge is an amount billed to CRST's customers to cover a portion of the cost of fuel to deliver a shipment. *See Appendix B to Cervantes ICOA*, App'x at 250, § 1(B)(1), (2); *Appendix B to Cross ICOA*, App'x at 306, § 1(B)(1), (2).

50.     Contractors were "free to accept or reject any specific shipment offered by [CRST]." *Cervantes ICOA*, App'x at 214, § 1(C); *Cross ICOA*, App'x at 270, § 1(C).

51.     Contractors were "not prohibited from entering into separate agreements to provide other equipment and other professional truck drivers, not identified as Equipment above or in an appendix [to the ICOA] and drivers not used to service this Agreement, to other motor carriers." *Cervantes ICOA*, App'x at 214, § 1(C); *Cross ICOA*, App'x at 270, § 1(C).

52.     The ICOAs provide that the Contractors are solely responsible for "select[ing] all routes and decide all meal, rest, and refueling stops." *Cervantes ICOA*, App'x at 226, § 9(C); *Cross ICOA*, App'x at 282, § 9(C); *accord Cervantes ICOA*, App'x at 221, § 5(C) ("[I]t shall be the sole responsibility of Contractor to determine the manner and means of performing all of Contractor's services under this Agreement, including, but not limited to . . . [s]electing all routes and refueling stops[.]"); *Cross ICOA*, App'x at 277, § 5(C) (same).

53.     The ICOAs also state that "it shall be the sole financial responsibility of Contractor to select, purchase or lease, and finance the Equipment" and to "decide when, where, and how maintenance and repairs are to be performed on the Equipment." *Cervantes ICOA*, App'x at 226, § 9(C); *Cross ICOA*, App'x at 282, § 9(C).

54.     Contractors could, in fact, set their own schedules and could choose their own routes when delivering a load. *Cervantes Dep.* at 230:12-231:4, 242:18-246:14, 252:13-253:5, App'x at 466-76; *Corpening Dep.* at 64:18-65:2, 66:15-67:13, App'x at 510-13; *Cross Dep.* at 259:22-265:5, App'x at 583-89; *Edden Dep.* at 40:22-41:25, 45:9-15, App'x at 642-46; *Fisher Dep.* at 136:20-137:3, App'x at 726-27; *Gess Dep.* at 46:6-15, App'x at 737; *Gravelle Dep. Vol. II* at 23:10-24:20, App'x at 750-51; *Johnson Dep.* at 105:25-106:8, App'x at 759-60; *Lomax Dep.*

at 155:23-156:15, App'x at 781-82; *Powers Dep.* at 17:11-25, 18:1-20, App'x at 836-37; *Thompson Dep.* at 115:1-25, App'x at 936.

55.    Contractors could elect to take home time at their convenience and spent significant blocks of time at home before choosing to return to work. *Cato Dep.* at 20:8-22, App'x at 410; *Cervantes Dep.* at 145:14-146:17, App'x at 433-34; *Corpening Dep.* at 68:18-25, App'x at 514; *Edden Dep.* at 41:17-25, App'x at 643; *Fink Dep.* at 173:7-175:24, App'x at 711-13; *Meeks Dep.* at 174:14-175:5, App'x at 800-01; *St. Amour Dep.* at 115:20-24, App'x at 914.

56.    Contractors, in fact, had the right to reject loads that were offered to them by CRST. *Cervantes Dep.* at 142:4-145:13, App'x at 430-33; *Corpening Dep.* at 65:3-10, App'x at 511; *Cross Dep.* at 90:6-93:4, App'x at 557-60; *Daniel Dep.* at 77:18-81:8, App'x at 607-11; *Edden Dep.* at 42:1-43:23, App'x at 644-45; *Fapohunda Dep.* at 72:19-73:1, App'x at 681-82; *Fink Dep.* at 106:2-107:19, App'x at 695-96; *Fisher Dep.* at 87:3-19, App'x at 724; *Gravelle Dep. Vol. I* at 47:1-4, 84:9-11, App'x at 741-45; *Johnson Dep.* at 115:10-16, App'x at 761; *Lomax Dep.* at 123:16-124:4, 166:17-166:25, App'x at 777-82; *Mareus Dep.* at 112:10-113:7, App'x at 789-90; *Meeks Dep.* at 81:23-82:3, App'x at 795-96; *Noble Dep.* at 124:1-126:13, App'x at 811-13; *Powers Dep.* at 124:1-125:8, App'x at 845-46; *Robinson Dep.* at 103:9-25, App'x at 875; *Thompson Dep.* at 186:1-187:20, App'x at 938-39; *Williams Dep.* at 26:8-21, App'x at 955.

57.    Contractors often conducted profitability analyses before accepting loads—i.e., they would review the load offered, calculate their expenses, and then decide whether or not to accept the load. *Cervantes Dep.* at 97:25-98:23, 133:21-134:20, 175:11-176:13, App'x at 423-52; *Corpening Dep.* at 58:15-24, 67:14-19, App'x at 509-13; *Cross Dep.* at 90:6-93:4, App'x at 557-60; *Daniel Dep.* at 77:18-81:8, 84:14-85:23, App'x at 607-13; *Edden Dep.* at 42:1-43:23, App'x at 644-45; *Fink Dep.* at 106:2-107:19, App'x at 695-96; *Fisher Dep.* at 137:4-8, App'x at 727;

15

*Meeks Dep.* at 93:10-94:13, App'x at 797-98; *Noble Dep.* at 124:1-126:13, App'x at 811-13; *Powers Dep.* at 124:1-125:8, App'x at 845-46; *Williams Dep.* at 33:8-19, App'x at 956.

58.     Contractors had the right, under their ICOAs, to haul brokered loads,[8] including Cervantes, who did so. *Cervantes Dep.* at 223:13-23, 257:10-259:14, App'x at 462-81; *Dosier Dep.* at 37:2-10, App'x at 623; *Shines Dep.* at 87:11-91:6, 93:1-94:5, 97:1-98:10, App'x at 891-99; *Whisenton Dep.* at 78:21-79:9, 126:5-127:2, App'x at 945-51.

59.     Contractors also had the right, under their ICOAs, to haul loads for other motor carriers. *Cross Dep.* at 207:8-18, App'x at 582; *Shines Dep.* at 93:1-94:5, App'x at 896-97; *Whisenton Dep.* at 78:21-79:9, App'x at 945-46.

60.     Some Contractors chose to haul unprofitable loads in order to reach higher-paying shipping lanes or chose to drive without a load to another area of the country due to a lack of available and profitable freight. *Cervantes Dep.* at 182:25-186:18, App'x at 453-457; *Daniel Dep.* at 77:18-81:8, App'x at 607-11; *Fink Dep.* at 107:20-109:6, App'x at 696-98; *Fisher Dep.* at 152:3-22, App'x at 728; *St. Amour Dep.* at 122:5-9, App'x at 915.

61.     Many Contractors chose to sign ICOAs with CRST in order to make more money and obtain more "freedom." *Corpening Dep.* at 28:9-18, 31:16-19, 32:10-20, App'x at 486-88; *Daniel Dep.* at 63:24-64:16, App'x at 601-02; *Dosier Dep.* at 26:19-27:1, App'x at 619-20; *Evans Dep.* at 28:15-31:9, App'x at 661-64; *Fink Dep.* at 20:21-21:1, App'x at 691-92; *Powers Dep.* at 11:7-12, App'x at 834; *St. Amour Dep.* at 71:17-72:11, App'x at 907-08; *Placide Dep. Vol. II* at 19:11-20:13, App'x at 824-25; *Ridner Dep.* at 54:5-16, App'x at 856; *Thompson Dep.* at 31:21-32:6, App'x at 927-28.

---

[8] *See* Footnote 3 *supra*.

62. Contractors were aware that they could hire their own employees to drive their trucks, hire co-drivers, or accept CRST students as co-drivers. *See Statement of Facts* ¶¶ 41-45.

63. Both Cervantes and Cross hired drivers or co-drivers. *Cervantes Dep.* at 153:3-155:17, App'x at 438-40; *Cross Dep.* at 117:11-119:14, App'x at 563-65.

64. Contractors could lease multiple trucks at a time and hire employees to drive those trucks. *Edden Dep.* at 27:22-29:20, App'x at 631-33; *Placide Dep. Vol. II* at 94:10-15, App'x at 828; *Robinson Dep.* at 90:11-13, App'x at 874; *Gannon Dep. Vol. I* at 93:21-94:17, App'x at 732-33; *see also Declaration of David Tromp*, App'x at 208, ¶ 9 (driver leased up to eight trucks at one time).

65. Many Contractors, including Cervantes, elected to become lead drivers (i.e., drivers who train CRST student drivers) because doing so increased their earnings. *Cervantes Dep.* at 148:2-19, 155:18-156:22, 173:19-174:12, 195:9-13, App'x at 435-459; *Corpening Dep.* at 40:4-41:11, App'x at 493-94; *Daniel Dep.* at 98:2-3, App'x at 614; *Dosier Dep.* at 23:1-24, App'x at 618; *Robinson Dep.* at 50:1-16, App'x at 866; *Shines Dep.* at 27:24-28:22, App'x at 889-90.

66. Contractors testified that having a student driver allowed them to drive more miles at a fraction of the cost of hiring a co-driver, thereby increasing their profits.[9] *Daniel Dep.* at 50:7-51:15, App'x at 597-98; *Fink Dep.* at 147:5-152:9, App'x at 705-10; *Lomax Dep.* at 131:17-132:20, App'x at 779-80; *St. Amour Dep.* at 111:21-25, 112:13-16, App'x at 912-13.

67. Under CRST's Lead Driver Program, in exchange for agreeing to train a student and pay a small per-mile cost, lead drivers received all of the revenue attributable to the miles driven by the student. *Lead Driver Program Addendum – Anthony Cervantes*, App'x at 369-71;

---

[9] Professional truck drivers are only permitted to drive for 11 hours per day under the DOT hours-of-service regulations. *See* 49 C.F.R. Part 395. Having an additional driver allows one driver to take his/her DOT-mandated 10-hour break while the other driver continues driving. Hiring co-drivers or using student co-drivers allows Contractors to travel more miles while complying with the regulations and thus generate more revenue/income.

*Lead Driver Program Addendum – Michael Cross*, App'x at 372-74; *see also Lizer Dep.* at 74:10-76:3, App'x at 767-69; *Cross Dep.* at 187:23-189:1, App'x at 576-78.

68.     The ICOAs unambiguously state that the relationship between CRST and the Contractors was that of carrier and independent contractor and not employer and employee. *Cervantes ICOA*, App'x at 214 ("CRST Expedited, Inc. . . . and the undersigned independent contractor . . . in consideration of the mutual covenants herein contained . . . enter into this Independent Contractor Operating Agreement[.]"); *Cross ICOA*, App'x at 270 (same).

69.     The ICOAs explicitly state that "[i]t is understood and agreed that Contractor is an independent contractor for the Equipment and driver services provided pursuant to" the ICOA. *Cervantes ICOA*, App'x at 226, § 9(A); *Cross ICOA*, App'x at 282, § 9(A).

70.     The ICOAs also provide that "[CRST] and Contractor both recognize their relationship as one of CARRIER and INDEPENDENT CONTRACTOR and not of EMPLOYER and EMPLOYEE, respectively." *Cervantes ICOA*, App'x at 220, § 5; *Cross ICOA*, App'x at 276, § 5.

71.     Several other ICOA provisions reflect the Contractors' status as independent contractors. *See Cervantes ICOA*, App'x at 214, § 1(D) ("[CRST] and Contractor intend to relate to each other entirely as Independent contractors, not as employer and employee."); *Cross ICOA*, App'x at 270, § 1(D) (same); *Cervantes ICOA*, App'x at 217, § 2 ("As indicated in Section 5(F) (Operating Expenses) and Section 6 (Charge-Backs) of this Agreement, Contractor – as an independent contractor, not an employee – agrees to pay all of Contractor's operating expenses[.]"); *Cross ICOA*, App'x at 273, § 2 (same); *Cervantes ICOA*, App'x at 224, § 7(E) ("SECTION 9(F) AND OTHER PROVISIONS OF THIS AGREEMENT REFLECT THAT CONTRACTOR IS, AND BOTH CONTRACTOR AND [CRST] INTEND CONTRACTOR TO

BE, AN INDEPENDENT CONTRACTOR, NOT AN EMPLOYEE OF [CRST].”); *Cross ICOA*, App'x at 280, § 7(E) (same).

72. Plaintiffs allege CRST unlawfully deducted operating expenses for the trucks used by Contractors from the Contractors' compensation, in violation of the Iowa Wage Payment Collection Law (IWPCL), Iowa Code Ann. § 91A.5(1). *See Plaintiffs' Brief in Support of Motion to Certify Rule 23 Class Actions*, App'x at 96 (describing the "deductions at issue" under Plaintiffs' unlawful deductions claims as "the operating expenses for the trucks used by the Lease Operators including, inter alia, expenses they incurred repairing damaged trucks, insurance coverage, fuel, tolls, and trailers[.]"); *accord Third Amended Complaint*, App'x at 39, ¶ 109.

73. All deductions from the named Plaintiffs' compensation were authorized by Plaintiffs themselves in writing at the time they signed their ICOAs. *See Appendix A to Cervantes ICOA*, App'x at 236-48 (listing all authorized deductions under the ICOA); *Appendix A to Cross ICOA*, App'x at 292-304 (same).

74. The contested deductions accrued to the Plaintiffs' benefit because the deductions related to the repair and operation of Plaintiffs' trucks, which were used to perform transportation services under their ICOAs. *See Appendix A to Cervantes ICOA*, App'x at 236-48 (listing all authorized deductions under the ICOA); *Appendix A to Cross ICOA*, App'x at 292-304 (same).

75. Plaintiffs allege that their ICOAs are "procedurally and substantively unconscionable" because they were "charged fees" and because CRST made deductions from their compensation and "thereby shift[ed] to [Plaintiffs] the costs of maintaining CRST's fleet and general business operations." *Plaintiffs' Brief in Support of Motion to Certify Rule 23 Class Actions*, App'x at 97; *accord Third Amended Complaint*, App'x at 50, ¶ 181.

76.     A contract exists between Cervantes and CRST, namely, the ICOA. *Cervantes ICOA*, App'x at 234 (showing signature of individual); *Brueck Decl.*, App'x at 186, ¶ 25.

77.     A contract exists between Cross and CRST, namely, the ICOA. *Cross ICOA*, App'x at 290 (showing signature of individual); *Brueck Decl.*, App'x at 187, ¶ 31.

78.     Cervantes and Cross allege that CRST "made false representations to [them] . . . regarding the amount of money they would make as lease operators." *Third Amended Complaint*, App'x at 51, ¶ 185.

79.     Cervantes alleges that "[a] recruiter sent me . . . a Lease Purchase Information Packet that contained an Income Chart[] indicating that I would average over $3,001 per week and drive 5,000 loaded miles as a Lead Driver, and $1,800 per week if I drove solo." *Declaration of Anthony Cervantes*, App'x at 189, ¶ 5; *Cervantes Dep.*, App'x at 425-27, 119:4-121:16.

80.     Cross alleges that "CRST representatives reviewed an Income Chart with me . . . indicating that I would make an average net income of $2,500 per week." *Declaration of Mike Cross*, App'x at 198, ¶ 9.

81.     CRST's Lease Purchase Information Packet contains an "income chart" that lists several examples of what a lease purchase operator could make. *See Lease Purchase Information Packet*, App'x at 381.

82.     The income chart in the Lease Purchase Information Packet displays six potential scenarios of net weekly income based on the number of loaded miles driven by the independent contractor—two scenarios for team drivers, two for lead drivers, and two for solo drivers *See Lease Purchase Information Packet*, App'x at 381.

83. The Lease Purchase Information Packet explicitly states that the six aforementioned potential scenarios are "example Profit/Loss statements comparing the different driving positions vs. weekly miles." *See Lease Purchase Information Packet*, App'x at 380.

84. Cervantes testified that the $3,001 net weekly income example in the Lease Purchase Information Packet was based on an assumption that the independent contractor drove 5,000 miles per week. *Cervantes Dep.* at 170:24-171:24, App'x at 446-47.

85. Cervantes testified that the example weekly fixed costs and deductions listed in the Lease Purchase Information Packet were accurate. *Cervantes Dep.* at 163:3-12, App'x at 442; *Lease Purchase Information Packet*, App'x at 379.

86. Both Cervantes' and Cross' ICOAs with CRST contain an integration clause. *Cervantes ICOA*, App'x at 232, § 16(D)(1) (integration clause); *Cross ICOA*, App'x at 288, § 16(D)(1) (same).

87. Both Cervantes' and Cross' ICOAs with CRST contain a clause stating that "[CRST] does not agree to make any minimum use of the Equipment, to use the Equipment at any particular time or location, or to furnish any specified number of loads or pounds of freight to [Plaintiffs] or to guarantee any amount of revenue to [Plaintiffs]." *Cervantes ICOA*, App'x at 214, § 1(C); *Cross ICOA*, App'x at 270, § 1(C).

Dated: January 31, 2024                    Respectfully submitted,

                                           */s/ James H. Hanson*
                                           James H. Hanson (admitted *pro hac vice*)
                                           James T. Spolyar (admitted *pro hac vice*)
                                           SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
                                           10 West Market Street, Suite 1400
                                           Indianapolis, IN 46204
                                           P: 317-492-9205
                                           F: 317-684-2414

jhanson@scopelitis.com
jspolyar@scopelitis.com

Adam C. Smedstad (admitted *pro hac vice*)
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
5470 Shilshole Avenue, NW, Suite 520
Seattle, WA 98107
P: 206-288-6192
F: 206-299-9375
asmedstad@scopelitis.com

*/s/ Kevin J. Visser*
Kevin J. Visser
SIMMONS PERRINE MOYER BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
P: 319-366-7641
F: 319-366-1917
kvisser@spmblaw.com

Attorneys for Defendants,
CRST International, Inc. and CRST Expedited, Inc.

4853-6104-8481, v. 4

22