IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| ANTHONY CERVANTES and MIKE CROSS, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 1:20-cv-00075-CJW-KEM |
| v. | Honorable Judge C.J. Williams |
| CRST INTERNATIONAL, INC., and CRST EXPEDITED, INC., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................ii

I. The July 1, 2020 Amendments to the Iowa Minimum Wage Law Do Not Apply ....................1

   A. Drivers Did Not "Own" the Truck They Leased to CRST ..................................................... 2

   B. Drivers Were Not Substantially Responsible for Maintenance of the Vehicle ...................... 3

   C. Drivers Were Not Substantially Responsible for Supplying Necessary Personnel and Such Personnel Were Not Drivers' Employees ............................................................................ 4

   D. Disputed Facts Preclude a Finding That Drivers Determine the Details and Means of Performing the Services ....................................................................................................... 6

   E. Disputed Facts Preclude a Finding That There Was a Valid Contract Specifying That Drivers Were Independent Contractors ..................................................................................... 10

     i. Whether the ICOA is Unconscionable Presents a Disputed Fact Issue ............................ 11

     ii. The Contract Violates Public Policy ................................................................................. 14

II. CRST Has Not Shown That the Two-Year Statute of Limitations Applies To Drivers' Wage Claims as a Matter of Law ................................................................................................15

   A. Disputed Questions Preclude Summary Judgment on Third Year of FLSA ..................... 15

   B. Disputed Questions Regarding Equitable Tolling Preclude Summary Judgment ............. 19

III. CRST Has Not Shown That the Named Plaintiffs' Unlawful Deductions, Unjust Enrichment, and Fraud Claims Are Barred As A Matter of Law ......................................................................23

   A. The Court Should Deny Summary Judgment on the Named Plaintiffs' Unlawful Deductions Claims ........................................................................................................... 24

   B. The Court Should Deny CRST Summary Judgment on the Named Plaintiffs' Unjust Enrichment Claims ........................................................................................................... 28

   C. The Court Should Deny Summary Judgment on Named Plaintiffs' Fraud Claims ............ 31

IV. Conclusion……………………………………………………………………………………...35

**Table of Authorities**

Page(s)

**Cases**

*Am. Pipe & Const. Co. v. Utah*,
    414 U.S. 538 (1974)...........................................................................................21

*Arriaga v. Fla. Pacific Farms*,
    305 F.3d 1229 (11th Cir. 2002) ......................................................................27

*Bleimehl v. Eastman Kodak Co. Clinical Diagnostic Div.*,
    No. CIV.4-93-CV-30702, 1997 WL 33322218 (S.D. Iowa Jan. 27, 1997)..........................16

*Bonham v. Dresser Indus., Inc.*,
    569 F.2d 187 (3d Cir. 1977)...........................................................................22

*Bouaphakeo v. Tyson Foods, Inc.*,
    564 F. Supp. 2d 870 (N.D. Iowa 2008)............................................................26

*Brant v. Schneider Nat'l, Inc.*,
    43 F.4th 656 (7th Cir. 2022) ....................................................................*passim*

*Bush v. Gore*,
    531 U.S. 98 (2000)........................................................................................30

*C & J Vantage Leasing Co. v. Wolfe*,
    795 N.W.2d 65 (Iowa 2011) ..........................................................................11

*Clendenen v. Steak N Shake Operations, Inc.*,
    No. 4:17-CV-01506-JAR, 2018 WL 4679728 (E.D. Mo. Sept. 28, 2018)............................22

*CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*,
    No. 16-CV-33-LRR, 2017 WL 6210920 (N.D. Iowa Dec. 8, 2017) ................................29, 30

*Coke v. Gen. Adjustment Bureau, Inc.*,
    616 F.2d 785 (5th Cir. 1980) .........................................................................23

*Connolly Bros. Masonry v. Dept of Emp. Servs.*,
    507 N.W.2d 709 (Iowa Ct. App. 1993)..............................................................7

*Cortez v. Medina's Landscaping, Inc.*,
    No. 00 C 6320, 2002 WL 31175471 (N.D. Ill. Sept. 30, 2002).............................22

*CRST Expedited, Inc. v. Swift Transportation Co. of Arizona, LLC*,
    No. 17-CV-25-CJW-KEM, 2019 WL 2358407 (N.D. Iowa June 4, 2019)..........................29

*Dakota Gasification Co. v. Natural Gas Pipeline of America*,
    964 F.2d 732 (8th Cir. 1992) ...........................................................................5

*Davenport v. Charter Commc'ns, LLC*,
    No. 4:12-CV-0007-AGF, 2014 WL 2993739 (E.D. Mo. July 3, 2014)...................22

*Earnhardt v. Com. of Puerto Rico*,
    691 F.2d 69 (1st Cir. 1982) ...............................................................................22

*Fernandez v. Kinray, Inc.*,
    No. 13-CV-4938-ARR-SMG, 2014 WL 12778829 (E.D.N.Y. Feb. 5, 2014).......13

*Gaffney v. Dep't of Emp. Servs.*,
    540 N.W.2d 430 (Iowa 1995) ...............................................................................7

*Glus v. Brooklyn Eastern Terminal*,
    359 U.S. 231 (1959) ............................................................................................23

*Goyal v. CSX Intermodal Terminals, Inc.*,
    No. 17-CV-06081-EMC, 2018 WL 4649829 (N.D. Cal. Sept. 25, 2018)..............25

*Guy v. Ford Storage & Moving Co.*,
    No. 4:18-CV-216-JAJ-RAW, 2021 WL 1351445 (S.D. Iowa Mar. 1, 2021)..........28

*Hall v. Crow*,
    34 N.W.2d 195 (Iowa 1948) ...............................................................................34

*Helvering v. Le Gierse*,
    312 U.S. 531 (1941) ..............................................................................................5

*Herman v. RSR Sec. Servs. Ltd.*,
    172 F.3d 132 (2d Cir. 1999) ...............................................................................14

*Holland v. Fla.*,
    560 U.S. 631 (2010) .......................................................................................19, 20

*Huddleston v. John Christner Trucking, LLC*,
    No. 17-CV-549-GKF-FHM, 2018 WL 6259220 (N.D. Okla. Nov. 30, 2018).......25

*Jarrett v. ERC Props., Inc.*,
    211 F.3d 1078 (8th Cir. 2000) ........................................................................16, 19

*Johnson v. Logistics*,
    No. 16-CV-06776, 2018 WL 1519157 (N.D. Ill. Mar. 28, 2018)..........................25

*Keller v. Miri Microsystems LLC*,
    781 F.3d 799 (6th Cir. 2015) ..............................................................................5, 9

*Kolev v. Nat'l Freight, Inc.*,
    No. 21-CV-15107, 2023 WL 3033572 (D.N.J. Apr. 20, 2023)..............................25

*Kriegesmann v. Barry-Wehmiller Co.*,
    739 F.2d 357 (8th Cir. 1984) ...................................................................23

*Lockett v. Pinnacle Ent., Inc.*,
    408 F. Supp. 3d 1043 (W.D. Mo. 2019) ...................................................26

*Lyle v. Food Lion, Inc.*,
    954 F.2d 984 (4th Cir. 1992) ...................................................................14

*In re Marriage of Shanks*,
    758 N.W.2d 506 (Iowa 2008) ...................................................................11

*Marshall v. Root's Rest., Inc.*,
    667 F.2d 559 (6th Cir. 1982) ...................................................................27

*Marshall v. Sam Dell's Dodge Corp.*,
    451 F. Supp. 294 (N.D.N.Y. 1978) ...........................................................27

*Martin v. Gingerbread House, Inc.*,
    977 F.2d 1405 (10th Cir. 1992) ...............................................................14

*McLaughlin v. Richland Shoe Co.*,
    486 U.S. 128 (1988) ................................................................................16

*Menge v. Simon's Trucking, Inc.*,
    No. C20-1016-LTS, 2021 WL 3921346 (N.D. Iowa Sept. 1, 2021) .......................19

*Mode v. S-L Distribution Co., LLC*,
    No.3:18-CV-00150-KDB-DSC, 2021 WL 3921344 (W.D.N.C. Sept. 1, 2021) ...................13

*Montoya v. CRST Expedited, Inc.*,
    404 F. Supp. 3d 364 (D. Mass. 2019) .........................................................4

*Moorman Mfg. Co. v. Iowa Unemployment Comp. Comm'n*,
    296 N.W. 791 (Iowa 1941) .........................................................................3

*Mujkic v. Lynx, Inc.*,
    863 N.W.2d 37 (Ct. App. Iowa. 2015) ........................................................27

*Neil v. White Communications, L.L.C.*,
    No. 4:16-CV-00349, 2017 WL 6997895 (S.D. Iowa, Sept. 18, 2017) ...........16, 18

*State, Dep't of Hum. Servs. ex rel. Palmer v. Unisys Corp.*,
    637 N.W.2d 142 (Iowa 2001) ...............................................................29, 30

*Perez v. CRST International, Inc.*,
    No. 18-CV-0023-CJW-KEM (N.D. Iowa 2018) ...........................................20

*Phelps v. MC Communications, Inc.*,
2:11-CV-423, 2011 WL 3298414 (D. Nev. Aug. 1, 2011)....................................13

*Roeder v. Directv, Inc.*,
No. C14-4091-LTS, 2017 WL 151401 (N.D. Iowa Jan. 13, 2017) ........................16

*Ruiz v. Affinity Logistics*,
754 F.3d 1093 (9th Cir. 2014) ........................................................................5, 9

*Sinclair Ref. Co. v. Atkinson*,
370 U.S. 195 (1962) .............................................................................................15

*Spreitzer v. Hawkeye State Bank*,
779 N.W.2d 726 (Iowa 2009) .........................................................................32, 33

*State v. Pickett*,
671 N.W.2d 866 (Iowa 2003) ...............................................................................26

*Tobin v. Anthony- Williams Mfg. Co. Inc.*,
196 F.2d 547 (8th Cir. 1952) ..................................................................................6

*Union Pac. R. R. v. Johnson*,
264 N.W.2d 796 (Iowa 1978) .................................................................................3

*Valadez v. CSX Intermodal Terminals, Inc.*,
No. 15-CV-05433-EDL, 2017 WL 1416883 (N.D. Cal. Apr. 10, 2017)................25

*Walkinshaw v. Saint Elizabeth Reg'l Med. Ctr.*,
No. 4:19-CV-3012, 2021 WL 4593846 (D. Neb. Oct. 6, 2021)...........................22

*Wuebker v. Wilbur-Ellis Co.*,
418 F.3d 883 (8th Cir. 2005) ...............................................................................25

**Statutes**

29 U.S.C. § 255(a) ........................................................................................................16

Iowa Code Ann. § 91A.5(2)(c) ....................................................................................26

Iowa Code Ann. § 91A.12 ...........................................................................................30

Iowa Code § 85.61(12)(c)(3) ...............................................................................*passim*

Norris-LaGuardia Act, 29 U.S.C. § 101 *et. seq.* ........................................................15

**Other Authorities**

29 C.F.R. §531.3(d)(2)..................................................................................................27

v

29 C.F.R. §§531.3(d), 531.32(c) ...................................................................26

29 C.F.R. § 578.3(c)(3) ...............................................................................16

49 C.F.R. § 376.12(e) ..................................................................................24

49 C.F.R. § 376.12(j)(1) ...............................................................................24

Plaintiffs Cervantes and Cross oppose Defendants' motion for summary judgment because the law and disputed facts preclude the Court from granting judgment on the three issues raised by Defendants, namely: (1) applying the July 1, 2020 amendments to the Iowa Minimum Wage Law (IMWL) to bar class claims arising after that date; (2) holding that Plaintiffs' Fair Labor Standards Act (FLSA) and IMWL claims are controlled by a two year statute of limitations; and (3) entering judgment for Defendants on the individual Plaintiffs' unlawful deductions, unjust enrichment and fraud claims.

## I. The July 1, 2020 Amendments to the Iowa Minimum Wage Law Do Not Apply

Effective July 1, 2020, the Iowa General Assembly added an exemption to the IMWL, §91D.1(4), providing that the term "employee" in the IMWL does not include an independent contractor as defined in Iowa Code § 85.61(12)(c)(3). That provision states that "[a]n owner-operator who . . . owns a vehicle licensed and registered as a truck, road tractor, or truck tractor by a governmental agency, is an independent contractor while performing services in the operation of the owner operator's vehicle" if every one of six specific conditions is "substantially present." §85.61(12)(c)(3)(b). Defendants' motion asserts that uncontested facts establish that Drivers[1] "owned" the vehicle they leased to CRST and that all six conditions in §85.61(12)(c)(3)(b)(i)-(vi) were substantially present. That argument must be rejected for a number of reasons. First, as a matter of law, Plaintiffs and members of the Rule 23 Class were not "owners" of the vehicles they leased to CRST as that term is defined in § 85.61(12)(c)(3)(a), so the exemption cannot apply to them. Second, as a matter of law several of the conditions required by §85.61(12)(c)(3)(b) cannot be satisfied; even if they could, disputed facts preclude summary judgment with respect to those

---

[1] Plaintiffs use the term "Drivers," "Lease Operators," and "class members" interchangeably, consistent with Plaintiffs' motion for partial summary judgment. Doc. 328-1 ¶10.

1

conditions. Accordingly, the motion for summary judgment based on the §85.61(12) exemption must be denied.

## A. Drivers Did Not "Own" the Truck They Leased to CRST

The exemption applies only to Drivers who "own" a truck which is defined as "holding title to a vehicle or being a party to an agreement for the conditional sale or lease of the vehicle that includes the party's right to purchase upon performance of conditions stated in the agreement with an immediate right of possession." § 85.61(12)(c)(a). Because all class members lease a vehicle from CRST,[2] they can only be said to "own" their vehicles if they had the "right to purchase [the truck] *upon performance of conditions stated in the agreement*." *Id.* Drivers did not have that right for the simple reason that the ICOA permitted CRST to terminate the ICOA "for any reason upon twenty (20) days' prior written notice," ICOA ¶ 14(C), and termination immediately placed a Driver in default of his lease and precluded him from purchasing the truck. Doc. 328-1, Plaintiffs' Statement of Facts ("PLT Facts") ¶¶26(h), 29 (Lease ¶12(g) (defining events of default as including **"Lessee's ICOA with Carrier is terminated by Carrier or Lessee"**)) (emphasis in original); PLT Facts ¶30 (Lease ¶13 (giving CRST right to repossess the truck upon default)); *see also* Plaintiffs' Additional Statement of Facts ("PLT Add. Facts") ¶¶138, 162. In these circumstances, a Driver has no unconditional "*right* to purchase" the truck upon performance of the conditions statement in the Lease. To the contrary, the right to purchase the truck was <u>contingent</u> on CRST not exercising its right to terminate the ICOA/Lease, thereby permitting the Driver to complete the Lease. A right to purchase the truck that is conditioned on CRST permitting the Driver to do so, on its face, fails to satisfy the definition of "owns" in §85.61(12)(3). That is particularly true given that remedial

---

[2] Drivers lease their trucks from CRST Lincoln Sales (d/b/a CRST Equipment Solutions) whose parent company is CRST International Holdings LLC. Doc. 328-1 ¶¶2, 10.

legislation like the IMWL is to be broadly construed in favor of the workers whom it was designed to protect, and that exemptions to that statute, like §85.61(12)(c)(3), must be narrowly construed. *Union Pac. R. R. v. Johnson*, <u>264 N.W.2d 796, 800</u> (Iowa 1978) ("remedial social legislation [should] be construed liberally in favor of the workers whom it was designed to protect, and any exemption from its terms must be narrowly construed.") (internal quotations omitted); *Moorman Mfg. Co. v. Iowa Unemployment Comp. Comm'n*, <u>296 N.W. 791, 794</u> (Iowa 1941) (same).

Because Drivers do not "own" their trucks as that term is defined, the exception to the IMWL set forth in §85.61(12)(c)(3)(b) cannot apply to any of the class members.

## B. Drivers Were Not Substantially Responsible for Maintenance of the Vehicle

The first condition of the six conditions that must be met to claim the exemption is that "[t]he owner operator is responsible for the maintenance of the vehicle." §85.61(12)(c) (3)(b)(i). However, the Leases signed by the class members provide that CRST is responsible for both comprehensive and routine maintenance. PLT Add. Facts ¶143. CRST's responsibility for maintenance is incorporated in the title of the Lease –i.e. "Equipment Lease With Maintenance (Expedited) – Freightliner," –and the words "w/maintenance" are stated on the footer on every page of the lease. *Id.* All Leases provide that CRST is responsible for major portions of the truck maintenance. *Id.* For example, ¶6(b)(1) of the Lease titled "Comprehensive Maintenance Furnished During First and Second Period" of the Lease requires the Driver to bring the truck to CRST (who is referred to in the Lease as the "Maintenance Provider") so that CRST, at its expense, can "[m]aintain each unit of the Equipment at an operational level that is sufficient to adequately perform in a safe and timely manner, the intended and customary functions of the equipment," including "[r]ebuild[ing], replac[ing], and/or overhaul[ing] the engine, engine parts, transmission" etc. *Id.* In addition, CRST has sole responsibility for designation of the "Maintenance Provider" or approval of any other provider. *Id.* ¶¶143, 163. Plainly, it is CRST, not the Driver, that has

3

primary responsibility for maintenance of the vehicle under the Lease precluding Defendants from satisfying the requirement of (c)(3)(b)(i). Even if a Driver is viewed as sharing the maintenance responsibility with CRST over the course of the Lease, that shared responsibility would still not satisfy (c)(3)(b)(i) given the narrow construction that must be applied to the exclusion.

### C. Drivers Were Not Substantially Responsible for Supplying Necessary Personnel and Such Personnel Were Not Drivers' Employees

The third condition that must be met for the exemption to apply is that "[t]he owner-operator [be] responsible for supplying the necessary personnel to operate the vehicle, and the personnel are considered the owner-operator's employees." §85.61(12)(c)(3)(b)(iii).

CRST required Drivers to have a team driver but, at the same time, made clear that Drivers could satisfy that requirement by working with a CRST student driver. *See* PLT Facts ¶¶26(a)-(b), 95. CRST was responsible for assigning student drivers to class members and regarded such student drivers as CRST employees.[3] PLT Facts ¶¶94-96, 99-100, 104. Thus, the 85.61(12)(c)(3)(iii) condition cannot be met with respect to Drivers using student teammates as CRST was the one responsible for supplying and employing those personnel.

Drivers who hired experienced teammates do not satisfy the subsection (iii) condition either. First, the Lease required the Lessee (i.e. the class member) to drive the vehicle "unless the driver is ill, disabled or otherwise unable to drive the equipment" in which case, the class member could "submit a written request to substitute a competent licensed driver" for CRST's approval. PLT Add. Facts ¶177. CRST also retained complete authority to require replacement of any such

---

[3] See the District Court's description of the process by which CRST puts student drivers on payroll in *Montoya v. CRST Expedited, Inc.*, 404 F. Supp. 3d 364, 380 (D. Mass. 2019), *aff'd,* 88 F.4th 309 (1st Cir. 2023).

4

driver.[4] *Id.* Second, the ICOA also required CRST's express permission before a non-student teammate could be hired and gave CRST the right to disqualify any such driver. PLT Facts ¶¶26(b)-(c); PLT Facts 26(b)-(c); PLT Add. Facts ¶156. Thus, even with respect to Drivers who used experienced teammates, the "responsibility for supplying necessary personnel" was shared between Drivers and CRST. The Driver could propose a candidate, but CRST decided whether the candidate would work or not. Because the requirement of (c)(3)(b)(iii) must be narrowly construed, such shared responsibility fails to satisfy the requirement for the exemption. That construction is consistent with the exemption's purpose, which is to identify workers who have sufficient indicia of independence to be exempt from minimum wage coverage. The condition set forth in subsection (b)(iii) reflects the fact that the unfettered right to "supply necessary personnel" is frequently taken as a sign of independent status. *See Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 667 (7th Cir. 2022). But where, as here, that right is severely curtailed by the Lease, directly contradicted by CRST's selection and assignment to Drivers of its student driver employees and further conditioned for experienced driver "teammates" on the alleged employer approving the hiring and reserving the right to disqualify the worker, the so-called *right* here does not indicate independent status. PLT Facts ¶¶26(a)-(c), 100; PLT Add. Facts ¶¶156, 177; *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 812-813 (6th Cir. 2015) ("hiring authority may be 'illusory' if the defendant-company maintains control over the technicians' hiring ability"); *Ruiz v. Affinity Logistics,* 754 F.3d 1093, 1102-1103 (9th Cir. 2014) (where company had the ultimate discretion

---

[4] Because the Lease and the ICOA were signed at the same time and each was contingent upon entering into the other, the two documents must be construed as one. PLT Facts ¶22; *See Helvering v. Le Gierse,* 312 U.S. 531, 540-541 (1941) (requiring contracts contingent on each other to be construed together); *Dakota Gasification Co. v. Natural Gas Pipeline of America,* 964 F.2d 732, 735 (8th Cir. 1992) (hinging one contract on another heightens the need for interpreting them together).

to approve or disapprove helpers and additional drivers, it "retained absolute control over . . . [the] decision to hire helpers [and] choice of helpers."). Because §85.61(12)(c)(iii) cannot be satisfied with respect to Drivers who worked with experienced teammates, all Drivers fall outside the exemption.

Second, even if CRST's right to approve and disqualify necessary personnel alone does not preclude application of the exemption to Drivers with non-student teammates, Defendants cannot establish, as a matter of law, that experienced team drivers were employees of the Driver they worked with. The ICOA makes clear that team drivers are in the same position vis-à-vis CRST as Drivers. PLT Add. Facts ¶141. Accordingly, Drivers' teammates, who are performing exactly the same work as Drivers, are also employees of CRST. *Id*; *see Tobin v. Anthony- Williams Mfg. Co. Inc.,* 196 F.2d 547, 549-550 (8th Cir. 1952) (workers that Anthony Williams Mfg. required drivers to hire were also employees of Anthony Williams). At the very least, Plaintiffs' motion for summary judgment shows that there are factual disputes as to whether Drivers' teammates (in addition to the CRST students), were employees of CRST.

### D. Disputed Facts Preclude a Finding That Drivers Determine the Details and Means of Performing the Services

The fifth condition that Defendants must meet for Drivers to fall within the exemption is that the Drivers "determine[d] the details and means of performing the services, in conformance with the regulatory requirements, operating procedures of the carrier, and specifications of the shipper." §85.61(12)(c)(3)(b)(v). Two considerations must be kept in mind in applying this condition. First, in keeping with the narrow construction to be placed on the exemption, the provision that "operating procedures of the carrier and specifications of the shipper" should not be considered in determining whether the Driver determines the details and means of performing the services. Instead it must be read to refer to procedures and specifications controlling the ultimate

6

result the contractor is to accomplish rather than the means by which it is to be accomplished –i.e. procedures and specifications directing what is to be done, as opposed to how it is to be done. Such a reading is consistent with the law which focuses on control over the details and means as opposed to the end results. *Gaffney v. Dep't of Emp. Servs.*, 540 N.W.2d 430, 433 (Iowa 1995).  To read the provision broadly to exclude consideration of company and customer procedures *governing the details and means of performance* would lead to the absurd result that a carrier could use their operating procedures to specify all meaningful details and means of performing the job, and still claim the exemption if one detail, however small, were left to the driver. Given the remedial purposes of the IMWL, such a construction would be unreasonable.  Second, in evaluating control over the details and means of performance, it is the right to control that matters, not the exercise of control. *See Connolly Bros. Masonry v. Dept of Emp. Servs.,* 507 N.W.2d 709, 711 (Iowa Ct. App. 1993) ("[T]he determinative question is, did the employer have the right to direct workers as to the manner and means of doing work. The right of control is considered to be the principal test. The fact that an employer fails to exercise control does not mean that the right of control does not exist.") (citations omitted).

With those considerations in mind, Defendants' summary judgment motion fails to show that (c)(3)(b)(v) is satisfied. Defendants begin by citing the ICOA provision which says, "it shall be the sole responsibility of Contractor to determine the manner and means of performing all Contractors services under this Agreement." Doc. 328-2 at App. 100 (ICOA ¶5(A)). Like the ICOA provisions labeling Drivers independent contractors, boilerplate language that Drivers control the manner and means is of no significance unless it is consistent with the economic reality of the Drivers' work. *See Brant,* 43 F.4th at 665-674 (ICOA terms are not controlling where they are illusory or contrary to the economic reality). It is necessary to examine the economic reality of

7

the actual controls that the Driver's allegedly had, not generalized statements in the contract inserted unilaterally by CRST.

CRST next argues that Drivers had the right to reject loads that were offered to them. But CRST's motion to decertify belies that claim. *See* Doc. 342 at 16 (citing Driver testimony that CRST put pressure on Drivers not to turn down loads by exercising CRST's right to put them at the bottom of the list and make them wait for indefinite periods for another load—something Drivers could not afford to do given the need to earn enough each week to cover their lease payments and advances received from CRST). The fact that Drivers had no way of knowing if the next load would be better or worse or when it would be offered also put enormous pressure on Drivers not to turn down loads. PLT Facts ¶¶45-48.

CRST cites the fact that Drivers were solely responsible for selecting their routes and meal, rest, and refueling stops. Defendants' motion to decertify cites conflicting evidence regarding Driver's right to control these aspects of performance. *See* Doc. 342 at 15 (citing testimony indicating that CRST gave Drivers routing instructions and had the right to require a driver to take a certain route), *id*. at 18-19 (citing testimony that CRST had the right to tell Drivers when and where to buy fuel). In addition, CRST's control over the pick-up and delivery times that Drivers had to meet effectively controlled their route and opportunities for rest. PLT Facts ¶¶62-66. More importantly, the "ability to determine a driving route is simply a freedom inherent in the nature of the work and not determinative of the employment relation." *Brant,* 43 F.4th at 668. It would be unreasonable to assume that the Legislature intended control over such non-consequential decisions to satisfy the exemption requirement.

CRST claims that Drivers could decide when to work and when to take time off, but the evidence shows that the restrictions concerning use of the vehicle by anyone other than the Driver

and the obligation to repay CRST's advances each week on threat of termination, (an obligation deliberately created by CRST through its extension of easy credit) meant, as a matter of economic reality, that Drivers could not take time off whenever they pleased. PLT Facts ¶¶26(d), 29; PLT Add. Facts ¶177. To the contrary, Drivers testified that they rarely took time off. PLT Add. Facts ¶¶142, 161. It was only when CRST, through its control over loads assignment, permitted a Driver to earn enough to cover his lease payments and advances that that a Driver could afford to take off from work. *Id.*

CRST cites Driver testimony that they had the right, under their ICOAs, to haul brokered loads. But the deposition citations relied upon by CRST show that Drivers' ability to haul brokered loads was severely limited by the need to obtain CRST's permission to do so – something it frequently declined to do. *See* Doc. 334-2 at 20; Doc. 346 at 11, n. 3; PLT Facts ¶¶50-52, 54. As with hiring helpers, where a Driver has to obtain his or her alleged employer's permission to do something, he no longer has the unfettered control over the details and means of performing his job that an independent contractor would have. *See, e.g. Keller,* 781 F.3d at 812-813 (6th Cir. 2015); *Ruiz,* 754 F.3d at 1102-1103.

CRST cites the fact that "[m]any Contractors, including Cervantes, testified they elected to become lead drivers (i.e., drivers who train CRST student drivers)" as evidence of Driver control over details and means. This assertion conveniently omits the fact that it was CRST that required Drivers to work in two-man teams; CRST, not Drivers, controlled that "detail and means." PLT Facts ¶26(a). Moreover, CRST also exercised control over a Driver's choice between a student and an experienced team driver by, on the one hand, controlling the financial benefits associated with student drivers, PLT Add. Facts ¶¶171-72, and, on the other, requiring its approval of non-

student teammates and imposing costs on Drivers tempted to hire non-student team drivers. PLT Facts ¶26(b); PLT Add. Facts ¶156.

Finally, Defendants argue that Drivers had the right to deduct operating expenses from their taxable income, but CRST even exercised control with respect to that mundane detail of work by insisting that Drivers furnish CRST copies of their tax returns. PLT Facts ¶ 38. CRST also insisted on paying certain taxes owed by the Drivers. PLT Add. Facts ¶216.

In contrast to the contested evidence discussed above, Plaintiffs' motion for summary judgment sets forth evidence of CRST's extensive rights to control details and means of Driver performance including: what loads it would offer to Drivers; requiring Drivers to comply with the same CRST policies and customer policies as its employee drivers; controlling, through its negotiations with its customers, when Drivers had to pick-up and deliver loads; reserving the right to prohibit Drivers from taking certain routes; electronically collecting an enormous amount of data about Driver performance, including locations, speed, engine rpms, hard braking incidents, and hours of service and retaining he right to use the data collected to, *inter alia*, discipline Drivers for practices CRST disapproved of. Doc. 337 at 17-20.

Because the evidence shows conclusively that CRST had the right to control the details and means of Driver performance, or at the very least, that there are fact questions regarding the degree of CRST's control, Defendants have not shown, as a matter of law, that they have satisfied the fifth condition for the §85.61(12)(c)(3)(v) exemption. Accordingly, with respect to this factor as well, their motion for summary judgment on the exemption must be denied.

### E. Disputed Facts Preclude a Finding That There Was a Valid Contract Specifying That Drivers Were Independent Contractors

The sixth condition for claiming the exemption requires CRST to show that "[t]he owner-operator enter[ed] into a contract which specifies the relationship to be that of an independent

10

contractor and not that of an employee." §85.61(12)(c)(3)(b)(vi). The ICOA does label Drivers as independent. However, there is a fact question whether the ICOA is an enforceable contract or is, instead, unenforceable as unconscionable and against public policy. It would be unreasonable to suggest that the Legislature intended to allow the sixth condition for the exemption to be satisfied with an unenforceable contract.

### i. Whether the ICOA is Unconscionable Presents a Disputed Fact Issue

An agreement is unconscionable "where no person in his or her right senses would make it on the one hand, and no honest and fair person would accept it on the other hand." *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 80 (Iowa 2011); Doc. 150 at 21 (finding "plaintiffs' allegations on [unconscionability] sufficient [to defeat Defendant's motion to dismiss] in light of the intentional scheme they describe"). Several factors are considered to assess this standard, including: "assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness." *Id.* (quoting *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 181 (Iowa 1975)). In Iowa, a contract may be found to be unconscionable as a result of procedural or substantive unfairness, or some combination of the two. *See In re Marriage of Shanks*, 758 N.W.2d 506, 516-18 (Iowa 2008) (analyzing as separate issues whether contract was substantively or procedurally unconscionable). Procedural unconscionability involves an advantaged party's exploitation of a disadvantaged party's lack of understanding, unequal bargaining power, as well as the use of fine print and convoluted language. *Id.* at 515-17. Substantive unconscionability involves whether the substantive terms of the agreement are so harsh or oppressive that no person in his or her right senses would make it. *Id.* at 515–16. Unconscionability is determined at the time the agreement was entered. *C & J Vantage Leasing Co.*, 795 N.W.2d at 81.

This Court has already found that the question whether the contract was procedurally and substantively unconscionable presents a question common to the class, thereby permitting the class to raise the unconscionability of the contract, on a class basis, as a defense to Defendants' claim that §85.61(12)(c)(3) bars claims arising after July 2020. Doc. 276 at 48 ("[T]he questions of whether the contracts were substantively and procedurally unconscionable are common questions given the fact that the ICOA's and Leases were materially the same for all Drivers and the Drivers' shared circumstances under which they signed the contracts. . . . Thus, common evidence could make a prima facie showing of unjust enrichment for both plaintiffs and class members.").

Evidence supporting procedural unconscionability includes, *inter alia*, that CRST lured Drivers with the same marketing materials and recruiters that required Drivers to contact its recruiters and commit to attend the required on-site orientation in person in Cedar Rapids, PLT Add. Facts at ¶208; the Agreements were pre-printed forms, drafted by CRST and presented to Drivers on a take-it-or leave it basis, PLT Facts at ¶23; that CRST did not give Drivers adequate time to review the documents before signing, PLT Add. Facts ¶209; that CRST did not permit Drivers an opportunity to seek legal advice before signing, *Id.* ¶¶199, 210; that most Drivers did not complete a higher education degree beyond high school nor were they sophisticated in understanding form contracts like the ICOA and Lease, which were nearly eighty pages in length, *Id.* ¶153, and that CRST pressured Drivers into signing by only offering one-way transportation to the place of signing. *Id.* ¶154.

That the Agreement was substantively unconscionable is evident from the language of the ICOA that imposed no obligation on CRST to offer any minimum amount of work, PLT Facts ¶25, while effectively precluding Drivers from working for other carriers through a dense thicket of CRST requirements, approvals, certifications, reports plus additional fees to be paid by the Driver

12

to CRST for each and every such trip, *Id.* ¶¶81-83. The Agreement was also unconscionable because it gave CRST the right to terminate the contracts at-will which would automatically place a Driver in default of his or her Lease and impose all of the draconian financial consequences such default entails, *Id.* ¶¶26(h), 29, 30; required Drivers to indemnify CRST for all of its costs and attorney's fees if they tried to challenge their independent contractor label, even if such a suit was successful, PLT Add. Facts ¶¶211-12; and, in the event such a suit was successful, required Drivers to agree to a fundamental forfeiture of their FLSA and IMWL rights whereby Drivers would forfeit their escrow accounts, return all monies received from CRST under the ICOA, and receive only minimum wage for their hours of work as calculated by CRST instead of all the remedies guaranteed under the Iowa and federal minimum wage statutes. *Id.* ¶212. This Court found that ¶9(F) was "facially invalid under the FLSA." *Id.* ¶213. It reserved judgment on ¶7(E), Doc. 147 at 14-15, but should find that it too is facially invalid.[5] The Seventh Circuit recently held similar

---

[5] While there are cases going the other way, the better reasoned cases make clear that a provision calling for workers to indemnify their alleged employer if their FLSA suit is unsuccessful is just as intimidating to workers as a broader indemnity provision.

> [I]t is clear that in enacting the FLSA, Congress intended to protect plaintiffs' ability to bring claims – a policy that applies before the parties know whether or not the claim will be successful . . . By enacting provisions for attorneys' fees for prevailing plaintiffs but not prevailing defendants, the drafters of the FLSA and NYLL made a clear policy choice intended to encourage citizens to bring wage and hour claims. I agree with plaintiffs that defendants should not be able to use the indemnification provision in the Agreement as an 'end run' around this scheme. Requiring plaintiffs to indemnify defendants for the cost of litigating an unsuccessful FLSA claim would deter plaintiff from bringing suit in the first place.

*Fernandez v. Kinray, Inc.*, No. 13CV4938ARRSMG, 2014 WL 12778829, at *7 (E.D.N.Y. Feb. 5, 2014) (collecting cases); *see also Mode v. S-L Distribution Co., LLC*, No.3:18-CV-00150-KDB-DSC, 2021 WL 3921344, at *17 (W.D.N.C. Sept. 1, 2021); *Phelps v. MC Communications, Inc.*, No. 2:11-CV-423, 2011 WL 3298414 at *7 (D. Nev. Aug. 1, 2011). Defendants have ample protection from frivolous suits through the fee shifting provisions of Rule 11. To allow a defendant to demand more than that – i.e. indemnification in the event a party's FLSA claim is unsuccessful – runs directly counter to the Congressional policy underlying the FLSA. The Court indicated that

provisions, by themselves, are enough to establish substantive unconscionability:

> These contractual provisions seem to have been designed to evade federal and state employment law, to nullify remedies under those laws, and to discourage workers from asserting their rights. . . . The inference of substantive unconscionability based on the indemnity and rescission provisions discussed above is fairly strong. In combination, [Plaintiff] alleges more than enough for us to infer plausibly that his contracts were so "unreasonably favorable" to Schneider that they were void as unconscionable.

*Brant,* 43 F.4th at 677. As this Court has noted, under Iowa law unconscionability renders a contract unenforceable rather than void. Doc. 276 at 40 n. 15. But an unenforceable contract cannot satisfy the requirements of §85.61(12)(c)(3)(b)(vi).

### ii. The Contract Violates Public Policy

The provisions of ¶¶ 7(E) and 9(F) also render the ICOA unenforceable as against public policy. The indemnity provisions of ¶7(E) and the reformation provisions of 9(F) serve only one purpose – to intimidate Drivers from enforcing their FLSA rights. *See Brant,* 43 F.4th at 677; *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 143–44 (2d Cir. 1999) (indemnity actions violate the FLSA); *Lyle v. Food Lion, Inc.,* 954 F.2d 984, 987 (4th Cir. 1992) (same); *Martin v. Gingerbread House, Inc.,* 977 F.2d 1405, 1406–08 (10th Cir. 1992) (same).

As explained above, these provisions are contrary to the public policy expressed in the FLSA because they have the effect of chilling a worker's right to vindicate his FLSA rights. The provisions are also contrary to public policy as expressed in Sections 7 of the National Labor Relations Act, 29 U.S.C. §157, and constitute unfair labor practices under Section 8(a) by intimidating, threatening and coercing employees from joining together and engaging in concerted

---

the threat of "paying defendants' attorneys' fees if plaintiffs are unsuccessful has far less of a chilling effect" than the reformation provisions in ¶9(F). Doc. 147 at 15. However, given the fees typically associated with large FLSA collective actions, the threat of being held liable for Defendants' attorney's fees is extremely chilling as the above cases hold.

activity for their mutual aid and protection with regard to the terms and conditions of their employment.

In addition to running afoul of the FLSA and the NLRA, the contract is also unenforceable under the Norris-LaGuardia Act, 29 U.S.C. § 101 *et. seq*. The Norris–La Guardia Act protects an employee's right to engage in "concerted activities for the purpose of ... mutual aid or protection." 29 U.S.C. § 102. Any agreement that infringes on this right is unenforceable. *Id.* § 103. The Norris-LaGuardia Act deprives the federal courts of jurisdiction to grant legal or equitable relief that would interfere with the right of employees to engage in concerted activities. Prohibiting employees from banding together to assert their rights under laws affecting their terms and conditions of employment is exactly the type of activity the Norris-LaGuardia Act was designed to prevent. The Norris-LaGuardia Act applies to any concerted activity, it is not limited to union disputes. *Sinclair Ref. Co. v. Atkinson*, 370 U.S. 195, 202 (1962), overruled on other grounds, *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235 (1970).

It is inconceivable that the Legislature intended to grant companies an exemption from paying minimum wages to their employees (and all the additional obligations owed by Iowa employers to the employees and the public) on the basis of an ICOA that is unenforceable both because it is unconscionable and because it is contrary to public policy. At the very least, condition (vi) of the exemption requires a lawful, enforceable contract which the ICOA is not. Accordingly, Defendants have failed to show that they have satisfied §85.61(12)(c)(3)(vi) as a matter of law, thereby precluding summary judgment with respect to the exemption.

## II. CRST Has Not Shown That the Two-Year Statute of Limitations Applies To Drivers' Wage Claims as a Matter of Law

### A. Disputed Questions Preclude Summary Judgment on Third Year of FLSA Liability

Defendants claim that they are entitled to summary judgment as to Plaintiffs' minimum wage claims under the FLSA to the extent those claims accrued more than two years from the date that each collective member filed their consent to sue form. Doc. 334-2 at 30-31. The FLSA statute of limitations may be extended to three years for willful violations. 29 U.S.C. § 255(a). An employer commits a "willful" violation of the FLSA when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1082 (8th Cir. 2000)). "Conduct evincing disregard for the [Act] and an indifference to its requirements is the culpable recklessness which may amount to a willful violation." *Bleimehl v. Eastman Kodak Co. Clinical Diagnostic Div.*, No. CIV.4-93-CV-30702, 1997 WL 33322218, at *6 (S.D. Iowa Jan. 27, 1997) citing *TWA Inc. v. Thurston*, 469 U.S. 1111, 126-27 (1985). Such reckless disregard can arise, among other situations, where the employer should have inquired further into whether its conduct was in compliance with the Act and failed to make adequate further inquiry. 29 C.F.R. § 578.3(c)(3). In determining whether to grant summary judgment on the question of willfulness, this Court has cautioned that "willfulness is an issue best left to the jury," *Roeder v. Directv, Inc.*, No. C14-4091-LTS, 2017 WL 151401, at *33 (N.D. Iowa Jan. 13, 2017) (denying summary judgment on willfulness issue in misclassification case finding that evidence that alleged employer also hired employees to do the same work as the plaintiffs and was aware of the plaintiffs' hours of work was sufficient to permit the issue to go to the jury). *See also Neil v. White Communications, L.L.C.*, No. 4:16-CV-00349, 2017 WL 6997895, at *9 (S.D. Iowa, Sept. 18, 2017) (denying summary judgment on willfulness where factfinder could conclude that defendant was aware of its FLSA obligations, knew plaintiff was working overtime, and genuine issue of fact existed over how it determined to categorize plaintiff as exempt employee). Here, there is evidence that CRST

16

deliberately disregarded the risk of violating the FLSA classifying Lease Operators as independent contractors and failing to pay them the minimum wage.

There is ample evidence to create a fact issue as to whether Defendants showed reckless disregard in classifying Drivers as independent contractors. The record reflects that CRST made considerable efforts to insulate itself from liability for FLSA violations for treating Lease Operators as independent contractors by inserting Paragraphs 9(F) and 7(E) in the ICOA. As discussed in more detail below, those Paragraphs, which were first inserted in the ICOA in 2012, PLT Add. Facts ¶ 207, required Drivers to indemnify CRST if they unsuccessfully brought an action alleging employee status and required a complete reformation of the ICOA if such a suit were successful. These patently illegal and unenforceable paragraphs were clearly inserted for the sole purpose of deterring Drivers from asserting their FLSA rights. *See* Doc. 147 at 14 (finding ¶ 9(F) to be patently invalid under the FLSA); *Brant v. Schneider*, 43 F.4th 656, 677 (7th Cir. 2022) (finding similar paragraphs to be unconscionable and contrary to public policy). A finder of fact could reasonably conclude that the inclusion of those illegal provisions in the contract reflected CRST's guilty knowledge as of 2012 that Lease Operators were employees for purposes of the FLSA.

At the very least those provisions demonstrate that CRST was concerned about the FLSA's potential application to Lease Operators, and CRST's discovery responses reveal they made no inquiries into the FLSA's applicability. Defendants initially refused to reply to Plaintiffs' document requests 5, 6, 7, and 21 that sought documents showing Defendants' efforts to determine whether Lease Operators were misclassified. *See* Declaration of Michael J.D. Sweeney ("Sweeney Decl.") at ¶ 4. They responded only after the Court's Order on Plaintiffs' motion to compel. Doc. 299; Sweeney Decl. at ¶¶ 5-6. In its order, the Court allowed Defendants to assert privilege over

attorney-client communications because "CRST has offered to stipulate that it will not rely on advice of counsel to establish it acted in good faith." Doc. 299 at 2. Nonetheless, the Court ordered:

> Accordingly, CRST must conduct searches and respond to Plaintiff's Requests for Production Nos. 5, 6, 7, and 21, as modified to eliminate searching for legal analysis, opinions, or memos prepared by CRST's counsel or sent between CRST's counsel and CRST employees. To the extent CRST claims privilege over any documents responsive to these requests as modified, CRST must prepare and produce a privilege log.

*Id.* at 6. Defendants produced a privilege log with entries from January 22, 2019 to September 4, 2020, a time period irrelevant to the willfulness claim as it covers only that period within the two-year FLSA statute of limitations.[6] Sweeney Decl. at ¶ 6. Defendants also produced 101 documents, only 23 of which were dated prior to October 23, 2018, the two-year FLSA statute of limitations. *Id*. None of the produced documents that were created prior to the two-year statute of limitations address the issue of misclassification of employees as independent contractors. *Id*. at ¶ 6. When Plaintiffs inquired of Defendants' 30(b)(6) witness as to reviews of the ICOA for legal compliance, he responded:

> "I don't know much about the Fair Labor Standards Act or what was reviewed or determined. I can say that we review it with fair regularity in terms of probably every two years, at most, but I don't know specifically what those particular discussions were."

PLT Add. Facts ¶ 139. As in *Neil,* 2017 WL 6997895, at *9, a finder of fact could find from the absence of any documentation of inquiries or explanations as to how CRST concluded that Drivers were properly classified as independent coupled with this vague statement from the witness designated to testify about CRST's efforts to ensure compliance with the FLSA that CRST made

---

[6] The Court conditionally certified a three-year FLSA statute of limitations period for Drivers who drove for CRST Expedited at any time after October 23, 2017. Doc. 147 at 9. Defendants' willfulness is only relevant the time prior October 23, 2018, the two-year FLSA statute of limitations.

no genuine effort to determine the legality of treating Drivers as independent contractors but, instead, recklessly pursued that policy in the hope that Paragraphs 7(E) and 9(F) would insulate it from liability. Accordingly, summary judgment on the willfulness issue should be denied.

In addition, CRST has asserted a good faith defense to liquidated damages and has not moved for summary judgment on this issue. *See* Doc. 155 at 51, ¶ 6. Because many of the facts CRST will likely rely on to show good faith will be relevant to a finding of willfulness, it is inappropriate to decide willfulness on summary judgment here. *See Menge v. Simon's Trucking, Inc.*, No. C20-1016-LTS, 2021 WL 3921346, at *8 (N.D. Iowa Sept. 1, 2021) (inappropriate to grant employer summary judgment where many of the facts defendant relied on to show that violation of the FLSA was not willful would also go to the issue of good faith and were disputed); *see also Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1084 (8th Cir. 2000) (the issues of good faith and willfulness in the context of FLSA violations, though distinct, are intertwined).

### B. Disputed Questions Regarding Equitable Tolling Preclude Summary Judgment On Limitations

Defendants' motion for summary judgment regarding the two-year statute of limitations should be denied with respect to Plaintiffs' FLSA and IMWL claims based on Plaintiffs' equitable tolling defense, which raises disputed facts. A party is entitled to equitable tolling of a statute of limitations "if he shows (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Fla.,* 560 U.S. 631, 649 (2010). The need for "flexibility, for avoiding mechanical rules" in applying equitable tolling follows "a tradition in which courts of equity have sought to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied threaten the evils of archaic rigidity." *Id.* at 650 (internal quotations omitted).

Here, paragraphs 7(E) and 9(F) of the ICOA – the patently illegal indemnification and reformation paragraphs that purported to impose draconian consequences on Drivers if they challenged the independent contractor label that CRST imposed on them—constitute an "extraordinary circumstance." Whether those paragraphs in fact "stood in the way of" timely filing of FLSA and IMWL claims presents a question of causation which can be proven on a class-wide basis through circumstantial evidence, as this Court has recognized. Doc. 276 at 57. In this case, the conclusion that those paragraphs would cause Drivers not to pursue such claims is manifest from a mere reading of the provisions and common sense. Even if not conclusive on their face, the paragraphs certainly support an inference to that effect. Declarations from Named Plaintiff Cervantes and Opt-In Linda Gravelle attesting to the fact that the paragraphs deterred them, PLT Add. Facts ¶214, likewise support the chilling effect those paragraphs had as does the fact that no claims alleging employee status of ICOA drivers under the FLSA or Iowa law were filed until 2017, five years after the offending paragraphs were inserted in the contract.[7] PLT Add. Facts ¶207. While it may be that some Drivers did not read the ICOA or ignored the notice they were sent, PLT Add. Facts ¶207, that would not vitiate the coercive effect of the provisions on all Drivers. The offending paragraphs required indemnification by a Driver, even if he were not the one challenging employee status, ICOA ¶7(E), and reformation of all Drivers' contracts. And even if only one Driver were successful in establishing employee status, ICOA ¶9(F) is a clear effort to enlist Drivers who were aware of the crushing economic results of indemnification and reclassification to dissuade other Drivers, including those who may not have read the ICOA, from

---

[7] *Perez v. CRST International, Inc.*, No. 18-CV-0023-CJW-KEM (N.D. Iowa 2018) (The plaintiff in *Perez* originally filed suit in California Superior Court on April 5, 2017. CRST removed to the Central District of California on May 30, 2017, and the matter was eventually transferred to Northern District of Iowa on February 14, 2018. *See* 18-CV-0023, Doc. 1 (Notice of Removal); Doc. 36 (text docket orders dated May 30, 2017 noting transfers)).

20

complaining or taking action to challenge their misclassification. PLT Add. Facts ¶¶214-15. By providing that even passive participants were subject to these provisions, and that they survived the termination of the contract, CRST endeavored to extend the intimidation and chilling effects of these paragraphs to the entire workforce through Drivers who were aware of the provisions. *Id.* Additionally, it is reasonable to infer that Drivers who did read the paragraphs were deterred from challenging their status because of them, and that they would have filed claims but for the offending paragraphs. PLT Add. Facts ¶214. Had they done so, it is also reasonable to assume that FLSA and Rule 23 class notice would have been disseminated far earlier than it was in this case, alerting Drivers – even those unaware of the offending paragraphs and/or their FLSA/IMWL rights – to those rights and their ability to vindicate those rights free from the threats incorporated in the ICOA (just as the FLSA notice in this case did). One of the most important purposes of FLSA notice is to alert workers who might otherwise be unaware of the FLSA to their right to pursue such claims. If the offending paragraphs delayed the filing of a class/collective action even by one Driver, that effectively delayed tolling of limitations for all Drivers with respect to the IMWL and delayed issuance of FLSA notice – precisely the result that Defendants intended by inserting the patently illegal paragraphs in the ICOA. Granting all Drivers equitable tolling in this situation is the only way to ensure that the remedial purposes of the FLSA and IMWL can be achieved and that schemes, such as those employed by CRST in this case, are not permitted to frustrate those purposes by deliberately deterring Drivers from filing. *Cf. Am. Pipe & Const. Co. v. Utah,* 414 U.S. 538, 552 (1974) (holding that, in order to further the purposes of Rule 23, equitable tolling of the statute of limitations upon the filing of a class action applies to all class members, even to "class members who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceedings.").

Actions beyond the control of the affected workers that cause delay in the filing of wage claims and the dissemination of class/FLSA notice, including actions far less egregious than the deliberate insertion of the offending paragraphs in this case, typically result in tolling of limitations. *See Bonham v. Dresser Indus., Inc.*, 569 F.2d 187, 193 (3d Cir. 1977) (tolling limitations on ADEA case because of defendant's failure to post required notice of ADEA rights); *Earnhardt v. Com. of Puerto Rico*, 691 F.2d 69, 72–73 (1st Cir. 1982) (same collecting cases); *Cortez v. Medina's Landscaping, Inc.*, No. 00 C 6320, 2002 WL 31175471, at *5–6 (N.D. Ill. Sept. 30, 2002) (failure to post FLSA notice). Even circumstances that involve no misconduct whatsoever can give rise to equitable tolling. *See Clendenen v. Steak N Shake Operations, Inc.*, No. 4:17-CV-01506-JAR, 2018 WL 4679728, at *4 (E.D. Mo. Sept. 28, 2018) (District courts in the Eighth Circuit "commonly grant equitable tolling for the time it takes the court to rule on a conditional certification motion."); *Walkinshaw v. Saint Elizabeth Reg'l Med. Ctr.*, No. 4:19-CV-3012, 2021 WL 4593846, at *2 (D. Neb. Oct. 6, 2021) (granting equitable tolling to workers inadvertently omitted from original FLSA notice).

It is important to note that the cases cited in the preceding paragraph above apply equitable tolling based on the inference that workers would have pursued their FLSA rights in a timelier fashion had the defendant posted the FLSA poster or had court notice of their FLSA rights issued in a timelier fashion. *See, e.g. Davenport v. Charter Commc'ns, LLC*, No. 4:12-CV-0007-AGF, 2014 WL 2993739, at *7 (E.D. Mo. July 3, 2014) (granting tolling for court delay in ruling on collective action motion and noting that "declarations from putative opt-in plaintiffs indicating their desire to opt-in and their inability to have done so are not required to establish a basis for equitable tolling of the FLSA statute of limitations or to demonstrate diligent pursuit of claims").

Equitable tolling is particularly appropriate in this case because it arises out of Defendants' deliberate attempts to subvert the FLSA and IMWL by preventing workers from pursuing their rights. *See Coke v. Gen. Adjustment Bureau, Inc.,* 616 F.2d 785, 790 (5th Cir. 1980) ("Perhaps in no circumstance is equitable tolling of a time limitation more justified than where a defendant, through misleading conduct, has induced a plaintiff to delay filing suit until the limitations period has run."); *Kriegesmann v. Barry-Wehmiller Co.,* 739 F.2d 357, 358-359 (8th Cir. 1984) ("The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of deliberate design or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge."). As the Supreme Court stated in upholding a claim for equitable tolling of limitations,

> To decide the case we need look no further than the maxim that no man may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations.

*Glus v. Brooklyn Eastern Terminal,* 359 U.S. 231, 232-233 (1959) (footnotes with case citations omitted). Statutes of limitations are designed to protect defendants from stale claims, but that is hardly a reason for barring an employee's suit when the failure to file is due to the employer's deception. Because Defendants intended to prevent Drivers from bringing claims and because there is evidence from which it can be inferred that their efforts were successful, Plaintiffs equitable tolling defense requires the Court to deny Defendants motion for summary judgment on limitations. [8]

### III. CRST Has Not Shown That the Named Plaintiffs' Unlawful Deductions, Unjust Enrichment, and Fraud Claims Are Barred As A Matter of Law

---

[8] In its Order granting conditional certification, the Court denied equitable tolling back to 2012 "without prejudice to reassertion" after discovery. Doc. 147 at 9. In accordance with that ruling Plaintiffs will be filing a renewed motion for equitable tolling back to 2012.

23

**A. The Court Should Deny Summary Judgment on the Named Plaintiffs' Unlawful Deductions Claims**

CRST argues that Named Plaintiffs' unlawful deductions claims fail as a matter of law because (1) the Federal Truth in Leasing Act (TILA), 49 C.F.R. § 376.12, allegedly preempts the claims; (2) the deductions were allegedly made with "written authorization [and] for any lawful purpose accruing to the benefit of the employee"; and (3) the Owner-Operator Exemption in the Iowa Wage Payment Collection Law ("IWPCL") bars claims that accrued after July 1, 2020. None of these arguments support summary judgment. Plaintiffs address CRST's first and second argument below. The third argument, regarding the Owner-Operator Exemption, is addressed in Section I above.

CRST's preemption argument is based on TILA regulations at 49 C.F.R. § 376.12(e) ("[t]he lease shall clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items."); and 49 C.F.R. § 376.12(j)(1) ("[t]he lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance."). As this Court recognized, "[t]he TILA promulgates leasing regulations which promote full disclosure between the carrier and the owner-operator of the elements, obligations and benefits of leasing contracts signed by both parties[.]" Doc 150 at 11 *citing Fox v. Transam Leasing, Inc*., 839 F.3d 1209, 1211 (10th Cir. 2016). As such it is clear that the regulations are not intended to dictate any particular allocation of expenses or preempt state statutes which do require a particular allocation.

CRST does not even bother with a cursory analysis of field or conflict preemption. *See Wuebker v. Wilbur-Ellis Co.,* 418 F.3d 883, 886 (8th Cir. 2005). Instead, it cites a single out-of-circuit case which found that the TILA preempted the plaintiffs' claims for unlawful deductions

24

under California Labor Code. *Valadez v. CSX Intermodal Terminals, Inc.*, No. 15-CV-05433-EDL, 2017 WL 1416883, at *9, *12 (N.D. Cal. Apr. 10, 2017). CRST's reliance on *Valadez* is misplaced. Numerous courts have rejected the court's holding in *Valadez*, because "[t]here is no indication in [TILA], and their authorizing statute, . . . or in the purpose statement of the agency that issued the regulations . . . that the TIL[A] require[s] anything more than disclosure." *Goyal v. CSX Intermodal Terminals, Inc.*, No. 17-CV-06081-EMC, 2018 WL 4649829, at *3–4 (N.D. Cal. Sept. 25, 2018) (finding that conflict preemption does not apply because it is possible to comply with both state labor law and TILA and that obstacle preemption does not apply because state law requiring a certain allocation does not obstruct the disclosure purpose of the TILA regulations); *Huddleston v. John Christner Trucking, LLC*, No. 17-CV-549-GKF-FHM, 2018 WL 6259220, at *11–12 (N.D. Okla. Nov. 30, 2018) (finding "the reasoning in *Goyal* persuasive" over the court's decision in *Valadez*); *Johnson v. Logistics*, No. 16-CV-06776, 2018 WL 1519157, at *7 (N.D. Ill. Mar. 28, 2018) (finding *Valadez* unpersuasive and holding that the TILA does not preempt the unlawful deduction claims under Illinois state law); *Kolev v. Nat'l Freight, Inc.*, No. 21-CV-15107, 2023 WL 3033572, at *6 (D.N.J. Apr. 20, 2023) ("[T]here is no apparent reason why an employer could not violate the [Illinois Wage Payment and Collection Act] and the [New Jersey Wage Payment Law] by improperly withholding funds from an employee, and simultaneously comply with TIL[A] regulations by disclosing the basis for the withholding in a contract."). *Id.* (*citing Portillo v. Nat'l Freight, Inc.*, 606 F. Supp. 3d 72, 100 (D.N.J. 2022) ("While the TIL[A] regulations certainly contemplate the possibility that a carrier [] might contractually allocate certain business-related expenses to owner-operators, they do not indicate that certain agreements and deductions are always valid."). For the reasons set forth in these cases the Court should find that the TILA does not preempt Plaintiffs' unlawful deductions claims under the IWPCL.

As for CRST's argument that the ICOA authorized the deductions for "lawful purposes accruing to the benefit of the employee," there are two responses. First, as explained above, the ICOA is not an enforceable contract and therefore it cannot be viewed as containing enforceable authorizations. *See* Section I(E) above. Second, CRST fails to support its claim that the deductions for lease payments and operating expenses were for the benefit of the Drivers with any evidence. It merely asserts, without citation to facts or legal authority, that the deductions benefited Plaintiffs because they "related to the repair and operation" of the trucks Plaintiffs used to haul loads for CRST, Doc. 340 at 26, and that without the deductions, Plaintiffs "would not have been able to successfully operate their business." *Id.*

There is very little Iowa law interpreting what deductions are for the benefit of the employee, although CRST's deductions for repairs to the trucks that Cervantes and Cross leased are expressly prohibited under the IWPCL, as "losses due to . . . damage to property." Iowa Code Ann. § 91A.5(2)(c), since their trucks were, by the terms of the Lease, the property of CRST. PLT Add. Facts ¶¶138, 162. As for other deductions, Iowa courts "interpret a statute consistently with other statutes concerning the same or a related subject." *State v. Pickett*, 671 N.W.2d 866, 871 (Iowa 2003). The Fair Labor Standards Act is probably the most analogous statute. *See Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) ("[T]he FLSA may be used to establish . . . an employer's violation of the IWPCL for not paying all wages due its employees.") (quotation omitted); *see also Lockett v. Pinnacle Ent., Inc.*, 408 F. Supp. 3d 1043, 1049 (W.D. Mo. 2019) (finding that the IWPCL is "interpreted consistent with the FLSA"). Under the FLSA, expenses may only reduce a worker's minimum wage if the expense is primarily for the benefit of the worker, 29 C.F.R. §§531.3(d), 531.32(c). CRST argues that the deductions at issue here benefited Plaintiffs because without them they "would not have been able to

successfully operate their business." *Id.* But such expenses incurred in order to be able to perform a job are the quintessential example of expenses that are primarily for the benefit of the employer, 29 C.F.R. §531.3(d)(2) (tools of the trade, uniforms, and other expenses incidental to carrying on the employer's business are for the primary benefit of the employer). *See, e.g., Arriaga v. Fla. Pacific Farms,* 305 F.3d 1229, 1241-1244 (11th Cir. 2002) (transportation costs incurred by foreign workers in order to be able to perform the job were for the benefit of the employer); *Marshall v. Root's Rest., Inc.,* 667 F.2d 559, 560 (6th Cir. 1982) (cost of uniforms must be reimbursed promptly); *Marshall v. Sam Dell's Dodge Corp.,* 451 F. Supp. 294, 304 (N.D.N.Y. 1978) (automobile expenses incurred by salesman are primarily for the benefit of the employer even though the employee could use the automobile for personal use). These FLSA rules are consistent with the interpretation given to the IWPCL in *Mujkic v. Lynx, Inc.,* 863 N.W.2d 37 (Ct. App. Iowa. 2015) (deductions from employee escrow account to reimburse employer for damage to the employee's vehicle were not for the benefit of the employee). These cases make sense. If an employer could lawfully shift the costs of performing a job to the worker on the theory that the worker benefits from having a job, there would be no limit to the costs that could lawfully be shifted as workers always derive some benefit from having a job. Given this law, it is clear that the operating expenses and maintenance costs that Plaintiffs incurred solely in order to perform their job with CRST were not for the benefit of Plaintiffs and could not be deducted from their wages even if there were a valid authorization.

Plaintiffs recognize that in ruling on Plaintiffs' Rule 23 class certification motion the Court stated that, "[d]etermining whether the operating expenses were CRST's business expenses or expenses accruing to a class members' benefit would hinge in substantial part on whether the class

member purchased that truck." Doc. 276 at 36. That concern does not apply to Plaintiffs as neither purchased the trucks they used to haul loads with CRST. *See* PLT Add. Facts ¶¶ 201-02.

Even if Plaintiffs had purchased their trucks, Plaintiffs urge the Court to reconsider the holding cited above because purchase of the truck at the end of the lease had no bearing on who benefited from operating expenses and repairs during the course of the Lease. Lease payments gave Drivers no equity in their trucks. *See* PLT Add. Facts ¶ 166. Assuming CRST allowed a Driver to make all required lease payments, the Driver only had the right to purchase the truck at its stipulated loss value when the Lease ended, which was CRST's estimate of the trucks fair market value at that point in time. *See* PLT Facts ¶ 89. Contributing to the costs of maintenance may have prevented the actual value of the truck from falling below the stipulated price, but it did not reduce that price in any way.[9] PLT Add. Facts ¶¶ 203-05. Expenses paid during the term of the lease merely allowed the driver to perform his job – exactly the kind of expense that is for the primary benefit of the employer.[10]

### B. The Court Should Deny CRST Summary Judgment on the Named Plaintiffs' Unjust Enrichment Claims

---

[9] Although contributing to maintenance did not reduce the purchase price in any way, a Driver who failed to contribute to maintenance could end up owing CRST additional rent if the truck's actual value fell below CRST's estimate. *See* PLT Add. Facts ¶¶ 203-05.

[10] Plaintiffs recognize that the court in *Guy v. Ford Storage & Moving Co.* found deductions for lease payments, maintenance expenses, and insurance premiums to be for the plaintiffs' benefit. No. 4:18-CV-216-JAJ-RAW, 2021 WL 1351445, at *1 (S.D. Iowa Mar. 1, 2021). However, it is not clear from that case whether paying those costs reduced the ultimate price the drivers paid when they purchased their truck. Moreover, to the extent the case suggests that expenses are for the worker's benefit if they allow them to perform their job, Plaintiffs respectfully submit that that was clear error. As noted above, if having a job were enough to make an expense for the benefit of the employee then there would be no limit to the costs an employer could impose on workers. An employer could require a worker to contribute to his son's college tuition as a condition of continued employment and, because that would permit the worker to continue working, the charge would by definition be for the benefit of the employee. That is not what IWPCL §91A.5 intended.

CRST asserts that the Named Plaintiffs' unjust enrichment claims fail for two reasons, neither of which is compelling—1) An adequate statutory remedy exists; and 2) The "existence of the ICOA" precludes unjust enrichment. First, Iowa law does not require that no adequate statutory remedy exist for unjust enrichment claims.[11] In its order on Rule 23 class certification, this Court noted that "[t]o prove unjust enrichment under Iowa law, a plaintiff must show: '(1) enrichment of the defendant, (2) at the expense of the plaintiff, (3) under circumstances that make it unjust for the defendant to retain the benefit.'" Doc. 276 at 39 (*quoting Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 577 (Iowa 2019)). CRST's argument is based on *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, No. 16-CV-33-LRR, 2017 WL 6210920, at *14 (N.D. Iowa Dec. 8, 2017), *aff'd*, 920 F.3d 560 (8th Cir. 2019)). However, contrary to the decision in *CMI Roadbuilding*, the Iowa State Supreme Court previously only considered, but did <u>not</u> adopt, a fourth element for unjust enrichment requiring no adequate legal remedy. *State, Dep't of Hum. Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154–55, n. 2 (Iowa 2001) (*citing Iowa Waste Sys., Inc. v. Buchanan Cty.*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000)) (acknowledging that the Iowa Court of Appeals identified a fourth element "that there be no at-law remedy available to the plaintiff"). Instead, the Iowa Supreme Court determined that "no independent principle exists that restricts restitution to cases where alternative remedies are inadequate." *Id.* (noting that "[t]he adequacy of a legal remedy is a general limitation on the exercise of equity jurisdiction and is properly considered when restitution is sought in equity . . . ."); *see also CRST Expedited, Inc. v. Swift Transportation Co. of Arizona, LLC,* No. 17-CV-25-CJW-KEM, 2019 WL 2358407, at *23 (N.D. Iowa June 4, 2019) (quoting *Palmer*, 637 N.W.2d at 154 n. 2 ( "The Iowa Supreme Court stopped

---

[11] This Court has held that Iowa law applies to the Plaintiffs' unjust enrichment claims. Doc. 276 at 45.

short of adopting the Court of Appeals' holding . . . .'")). As the U.S. Supreme Court has found, when federal courts examine state law, the court must be "mindful of the full measure of respect we owe to interpretations of state law by a State's highest court." *Bush v. Gore*, 531 U.S. 98, 137 (2000). Accordingly, the Court should interpret unjust enrichment consistent with the Iowa Supreme Court's decision in *Palmer* and find that unjust enrichment under Iowa law does not require that Plaintiffs establish no adequate legal remedy exists.

Even if the Court considers whether an adequate statutory remedy exists, the Named Plaintiffs' unlawful deduction claims are an insufficient alternative remedy. In *CMI Roadbuilding, Inc.*, the court found that the plaintiffs' statutory claims for misappropriation of trade secrets were an adequate remedy, even though the statutory and unjust enrichment claims were time-barred. 2017 WL 6210920, at *14. In making this determination, the court noted that the statutes at issue provided for unjust enrichment as a remedy. *Id.*, 2017 WL 6210920, at *14 (*citing* 18 U.S.C. § 1836(b)(3)(B)(i)(II) and Iowa Code § 550.4) (noting statutory language that permitted the court to award damages for the unjust enrichment resulting from the misappropriation). Here, the unlawful deduction claims do not provide for unjust enrichment as a statutory remedy. *See* Iowa Code Ann. § 91A.12. Moreover, this Court has already found that there are scenarios in which Plaintiffs could recover for their unjust enrichment claims, despite failing on their unlawful deduction claims. Doc. 276 at 45 (explaining that the circumstances under which Plaintiffs prevail on their unjust enrichment claims, "would not exist if the Drivers can recover under their unlawful-deductions claim"). Thus, the unlawful deductions claims do not provide an adequate statutory remedy.

Second, there is ample evidence that the ICOA and Lease are unconscionable and void, permitting the unjust enrichment claim to proceed. CRST claims that "the existence of the ICOA between Plaintiffs and CRST precludes Plaintiffs' unjust enrichment claim." Doc. 340 at 27.

However, this Court has already found that, since the ICOA and Lease are alleged to be unconscionable and void, "their existence does not preclude an unjust-enrichment claim." Doc. 276 at 40. CRST's motion does not cite any evidence to suggest that the ICOA and Lease are valid, nor does it address the Court's prior holding. Questions of fact still exist as to whether the ICOA and Lease are unconscionable and void, and accordingly, the Court should deny summary judgment on Plaintiffs' unjust enrichment claims. PLT Facts ¶¶ 23, 25; PLT Add. Facts ¶¶ 153-54, 195, 208-214.

### C. The Court Should Deny Summary Judgment on Named Plaintiffs' Fraud Claims

CRST claims that Plaintiffs' fraud claim fails because, as a matter of law: (1) Defendants made no false representation; (2) Plaintiffs did not rely on the alleged false representations; and (3) the ICOA integration clause precludes Plaintiffs' fraud claim. None of these arguments has been established as a matter of law and, accordingly the motion should be denied.

With regard to false statements, Defendants' sole argument is that the numbers displayed in the CRST Contractor Weekly Net Income Sample ("Income Chart") in the Lease Information Packet were mere "examples" of what the Plaintiffs "could" have made. Doc. 334-2 at 23-24. But Defendants cite no cases to suggest that simply because the Information Packet referred to the earnings amounts as "examples" that a finder of fact could not conclude that they were knowingly false statements provided for the specific purpose of deceiving Plaintiffs into believing that they would receive sufficient loads to allow them to earn the stated amounts. Indeed, this Court has already recognized that the Income Chart may be sufficient evidence that CRST made at least one false representation to Drivers about the amounts they would make. *See* Doc. 256 at 56 ("At minimum, plaintiffs show evidence supporting such representations in the income chart that they allege Drivers received at the mandatory orientation and in the ICOAs they signed."). In stark

contrast to these promises, the evidence shows that in some weeks, Plaintiffs had no income at all and that in most weeks they made nowhere close to those amounts. *See* PLT Add. Facts ¶ 183.

Moreover, the misleading nature of the Income Chart is reinforced by other false statements Defendants made to Cervantes and Cross regarding the income they could expect to make. For example, a CRST recruiter sent Cervantes a CRST Driver's settlement reflecting that the Driver netted approximately $3,001 per week, and the recruiter told Cervantes that he could make $3,001 per week as a lead driver and $1,800 as a solo driver, after expenses. PLT Add. Facts ¶¶ 178, 179. A CRST recruiter told Cross over the phone that he would net $2,500 per week. PLT Add. Facts ¶ 180. CRST recruiters arranged for Cervantes and Cross to attend CRST's mandatory orientation where recruiters and representatives reiterated the same promises about potential earnings, with particular focus on the amounts set forth in the Income Chart. PLT Add. Facts ¶ 181. Even the ICOA signed by Cervantes and Cross incorporated those promises. PLT Add. Facts ¶ 182. Taken as a whole, these statements made to Cervantes and Cross are clearly sufficient to create a fact issue regarding the first element of fraud, that Defendants knowingly made false statements with the intent to deceive Plaintiffs.

Under Iowa law, courts consider the following factors in assessing justifiable reliance: (1) the sophistication and expertise of the plaintiff in financial . . . matters; (2) the existence of long-standing business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the . . . transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations. Doc. 150 at 8-9; *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 737 (Iowa 2009). In cases involving oral representations, courts also

consider "whether the oral representation clearly contradicts a written agreement." *Id.* No one factor is dispositive. *Id.* at 738.

There is ample evidence that Plaintiffs relied upon the false statements about their earnings when they signed their ICOAs.[12] Indeed, Defendants do not dispute that there is sufficient evidence to show reliance when Cervantes and Cross began work. Defendants' summary judgment motion focuses solely on whether Cervantes and Cross can continue to claim reliance on the false promises after each returned to work for CRST following a brief hiatus of a few days or weeks.[13] Doc. 334-2 at 24. However, Cervantes testified that, after the brief hiatus in his employment, he continued to try to drive the miles necessary to make the promised earnings, and tried "to make it work" with CRST because he believed CRST would abide by their initial promises – testimony that strongly indicates he continued to rely on the false promises made when he was initially hired. PLT Add. Facts ¶ 186. Moreover, Cervantes and Cross were both compelled to continue working under the ICOAs to keep up with their Lease payments and trucking expenses. PLT Add. Facts ¶ 189. Thus, even if they had reason to be skeptical of the initial promises that induced them to work for CRST, the finder of fact could reasonably conclude that they continued to be injured by those promises because they could not afford to leave, as this Court recognized in denying Defendants' motion to dismiss. *See* Doc. 150 at 10.

---

[12] *See* PLT Add. Facts ¶ 184 (Cervantes and Cross testified that they signed the ICOA based on promises made by recruiters, reflected in the Income Chart, and reiterated during the orientation, that that they would not have signed the ICOA and Lease had they known they would not be compensated as promised in CRST's recruitment materials, and that the amount they were told they would earn "was the single most important reason" they decided to sign the ICOA and Lease).
[13] Cervantes briefly left CRST at the end of February 2018 and returned in March 2018. PLT Add. Facts ¶ 185. Cross' first break from CRST lasted only 72 hours, during which he stayed in his leased truck. He began driving again when CRST called him and offered a payment plan. PLT Add. Facts ¶ 190. Cross' second break was of a few weeks; he left in December 2020 and signed a new Lease in January 2021, but continued to work under his October 2018 ICOA. PLT Add. Facts ¶ 191. Cross left permanently in January 2021. PLT Add. Facts ¶¶ 193, 194.

33

Compounding the pressure on Cervantes and Cross to continue driving to pay their lease payments and other deductions were CRST's new promises that if they returned to work, things would be different. For example, after Cervantes briefly left in February 2018 because he was not making the income CRST's recruiters told him he would make, CRST representatives, including driver manager Phil Klopp, contacted him and told him that if he came back and drove as a lead driver he would make $3,000 in net income a week. PLT Add. Facts ¶ 187. Based on those representations, Cervantes returned a few weeks later, in March 2018. PLT Add. Facts ¶ 188. Cross also testified that he returned to work with CRST based on CRST's newly made promises that things would improve for him and that he could be profitable. PLT Add. Facts ¶ 192. Contrary to those promises, when he returned to the job, CRST failed to give Cross a student and as a result he went without working for nine days, while CRST continued to make deductions from his pay. PLT Add. Facts ¶ 193.

Further, even if the Court were to conclude that Plaintiffs cannot show continued injury from CRST's false promises after they returned, that would only affect the amount of Plaintiffs' damages. It does not support summary judgment on the claim. *See* Doc. 276 at 54.

Finally, CRST argues that the mere existence of the ICOAs' integration and "anti-reliance" clauses bar Plaintiffs' fraud claim as a matter of law. This Court rejected that argument when it denied Defendants' motion to dismiss that argued the very same thing. As this Court recognized, under Iowa law, the fact that "the ICOA is completely integrated, and disclaim[s] any guarantees of revenue. . . . [is] not dispositive." *See* Doc. 150 at 8, *citing N.W. Bank & Tr. Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 726 (8th Cir. 2003) ("Under Iowa law, contractual disclaimers are ineffective to bar a plaintiff from asserting a claim for fraudulent inducement."); *Hall v. Crow*, 34 N.W.2d 195, 199 (Iowa 1948) ("[W]here there is evidence of fraudulent misrepresentations in the

inception of a contract[,] such misrepresentations can be the basis for either an action to rescind or for damages, *despite the limiting provisions of a contract.*") (emphasis added)).

Defendants' motion does not argue that the ICOA provisions made Plaintiffs' reliance on the false representations unjustified. Even if they had made such an argument, there is sufficient evidence to support a finding of justifiable reliance notwithstanding the ICOA. The ICOA is a contract of adhesion drafted by CRST that offered no right of negotiation. PLT Add. Facts. ¶ 195. There is no question that the Plaintiffs and Defendants were on unequal footing both with respect to access to relevant information, relative sophistication and bargaining power (Plaintiffs had none). Defendants aggressively recruited Cervantes and Cross using hard-sell tactics and made consistent representations about the amounts of earnings they could make. *See supra* Section III(A); *see also* PLT Add. Facts ¶ 208. Defendants drafted the ICOA and presented it to Cervantes and Cross on a take-it-or leave it basis before either of they had an opportunity to actually drive for CRST and discover the falsity of the earnings promises. PLT Add. Facts ¶¶ 195, 200; *see also* PLT Add. Facts ¶ 210. Neither Plaintiff completed college or was sophisticated in understanding form contracts like the ICOA, which was eighty pages in length. PLT Add. Facts ¶¶ 197, 198. Defendants did not give Cervantes or Cross adequate time or a meaningful opportunity to review it or ask questions, nor did Defendants permit them an opportunity to seek legal advice before signing. PLT Add. Facts ¶¶ 199, 200; *see also* PLT Add. Facts ¶¶ 209, 210. Accordingly, Defendants' motion for summary judgment with respect to the fraud claim must be denied.

## IV. Conclusion

For the reasons set forth above, the Court should deny in its entirety Defendants' motion for partial summary judgment.

Respectfully submitted this 6th day of March 2024.

By: */s/ Rebecca King*

GETMAN, SWEENEY & DUNN, PLLC
Rebecca King (*PHV*)
Michael J.D. Sweeney (*PHV*)
Anamaria Segura (*PHV*)
260 Fair Street
Kingston, NY 12401
(845) 255-9370
rking@getmansweeney.com
msweeney@getmansweeney.com
asegura@getmansweeney.com

MARTIN & BONNETT, P.L.L.C.
Dan Bonnett (*PHV*)
Susan Martin (*PHV*)
Jennifer Kroll (*PHV*)
Michael M. Licata (*PHV*)
4747 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
(602) 240-6900
dbonnett@martinbonnett.com
smartin@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

Edward Tuddenham
23 Rue Du Laos
Paris, France
33 684 79 89 30
edwardtuddenham@gmail.com

ATTORNEYS FOR PLAINTIFFS