# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ANTHONY CERVANTES and MIKE CROSS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CRST INTERNATIONAL, INC. and CRST EXPEDITED, INC.,<br><br>Defendants. | No. 20-CV-75-CJW-KEM<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO DAMAGE AND PREJUDGMENT INTEREST ALLOCATION** |

## *I. BACKGROUND*

This matter is before the Court on the continuation of the bench trial. The Court previously entered Findings of Fact and Conclusions of Law in which it found in favor of defendant on all of plaintiffs' claims except their Truth in Leasing Act ("TILA") claims. (Doc. 455). In reaching its conclusions as to the TILA damages, the Court found defendant's expert's aggregate TILA damage calculation of $1,794,000.00 was correctly calculated and rejected plaintiffs' expert's calculation exceeding $5.1 million. (*Id.*, at 42-44). Neither expert, however, calculated the allocation of damages for individual class members. The Court found the appropriate solution was to reopen discovery to allow the parties to identify, plaintiff-by-plaintiff, the amount of TILA damage each class member suffered based on a finding of total aggregate damages of $1,794,000.00.[1]

[1] To be clear, defendant's expert, Dr. Chen Song's workpapers showed TILA damages amounting to $1,794,049, but at trial she rounded the figure to $1,794,000.00. (Trial Vol. IX Tr. 1845:13-20).

The Court anticipated the parties could reach an agreement on this calculation, but they did not, requiring a further evidentiary presentation as part of the continued bench trial. As it turned out, at the continuation of the trial defendant had no criticism of plaintiffs' calculation of the amount of damages each class member suffered. Rather, the parties disputed whether the Court should award prejudgment interest and, if so, the methodology for determining the accrual date. Thus, it is for the Court here to determine the allocation of individual damages and prejudgment interest.

## *II. INDIVIDUAL DAMAGE CALCULATION*

As an initial matter, the Court understands clearly that defendant continues to object to any award of TILA damages to any plaintiffs, arguing that plaintiffs had an obligation to prove up individual damages at the beginning of the trial and failed to do so. The Court rejects that objection, as it has in the past. Defendant has not disputed that it failed to fully and properly compensate drivers under TILA. The only question was which drivers and how much did defendant underpay them. It would be a perversion of justice were the Court to allow defendant to evade its responsibility to fairly compensate drivers that it admits it underpaid.

So, the Court moves on to the allocation of total damages to individual plaintiff class members. Plaintiffs' expert, Dr. Brian Kriegler, testified about his method for allocating the $1.794 million in TILA damages to class members using defendant's expert, Dr. Chen Song's, workpapers. Dr. Kriegler proposed allocating the TILA damages for the "Historic Period," October 23, 2016, through April 23, 2023, based on data in Dr. Song's SAS program that showed her calculation of each class member's actual principal TILA damages during the Historic Period. (Tr., at 1844:15-23, 1845:13-1851:11 (Dr. Kriegler's description of his method)); (Tr., at 1928:6-12 (Dr. Song acknowledging she calculated damages on an individual basis during the Historical Period)). Dr. Song's work papers showed that named class member Cervantes and 2,046

class members suffered no actual TILA damages (Tr., at 1850:16-22, 1905:18-1906:4, 1930:23-1931:1), but that 997 other class members suffered damages and that their individual damage amounts for the Historical Period totaled $1,710,145.[2] (Tr., at 1850:16-1851:11).

Dr. Song's work papers showed that she calculated $83,816 in damages for the "Extrapolation Period" of April 24, 2023, to November 3, 2023, which the Court awarded as part of its $1.794 million damage award. (Tr., at 1854:9-1855:12; 1960:19-1961:1). Dr. Kriegler proposed allocating those damages proportionally among the class members who had actual principal TILA damages during the Historical Period. (Tr., at 1855:13-19). The sum of Dr. Song's Historic Period damages and Extrapolation Period damages was $39 less than the Court's award of $1.794 million ($1,710,145 + $83,816= $1,793,961), so Dr. Kriegler proposed that amount also be distributed proportionally among the class members with damages during the Historic Period. (Tr., at 1855:20-1856:13). Using this method, Dr. Kriegler allocated the full $1.794 million in TILA damages to the individual class members shown to suffer damages. (*Id.*).

After making the calculations described above, Dr. Kriegler identified 91 class members with damages less than $1 that he testified were likely due to computational rounding errors in Dr. Song's calculations. Dr. Kriegler set damages for those individuals at zero, which reduced the total amount allocated by $6.40. (Tr., at 1856:14-1857:12).

[2] Dr. Kriegler testified that when he re-ran Dr. Song's workpapers, he calculated $1,710,145 in TILA damages during the Historical Period; however, Dr. Song's workpapers include an Excel output file that reflected $1,710,233 in the Historical Period. (Tr., at 1851:12-21). Although Dr. Kriegler testified that he did not know the precise reason for this $88 difference, he noted that such minor differences were not unusual and could be attributed to running Dr. Song's workpapers on a different version of the SAS program from the one Dr. Song used. (Tr., at 1851:22-1854:8).

Applying the method described above to the data and dollar amounts in Dr. Song's workpapers, Dr. Kriegler arrived at the individual allocations of the total principal TILA damages set forth in Exhibit 252 (Doc. 507-1). (Tr., at 1859:4-1861:25 (describing the first column showing each class member's social security number and the second column shows the total damage allocation)). Exhibit 263 (Doc. 507-9) lists each Driver's damages for the Historic Period (column B) and total damages including Extrapolation Period damages (column C). (Tr., at 1862:5 -1865:20). Class members with no TILA damages in Dr. Song's workpapers have $0 allocated to them in Exhibits 252 and 263, and the remaining 997 class members have damages of $1 or more. (Tr., at 1857:13-22; 1866:9-1867:7 (only class members that Dr. Song found to have suffered a TILA injury receive damages under Dr. Kriegler's proposed allocation)).

Defendant did not offer an alternative methodology for allocating TILA damages. Rather, during her testimony Dr. Song agreed with Dr. Kriegler's calculations. (Tr., at 1958:23-1959:17). As for the Extrapolation Period allocation, defendant pointed out that named plaintiff Mr. Cross, who had damages during the Historical Period but did not work during the Extrapolation Period, would, nevertheless, receive a pro-rata share of the extrapolation damages under Dr. Kriegler's allocations. (Tr., at 1891:8-1892:22). But defendant declined to provide underlying data for the extrapolation period (Doc. 503-1, 503-2), and offered no other reasonable or logical method of allocation during the Extrapolation Period (Tr., at 1959:18-1962:1). Dr. Kriegler stated that without data from defendant showing which class members worked during the Extrapolation Period, pro rata distribution of those damages was reasonable. (Tr., at 1891:8-1892:22). Even Dr. Song was unable to offer any better way of distributing the Extrapolation Period damages.

Thus, the Court awards TILA damages to the 997 individual class members identified by Dr. Kriegler who suffered $1 or more in TILA damages, with damages allocated as Dr. Kriegler calculated.

## *III. PREJUDGMENT INTEREST*

"Prejudgment interest serves 'to reimburse the claimant for the loss of the use of its investment or its funds from the time of the loss until judgment is entered.'" *Am. Milling Co. v. Brennan Marine, Inc.*, 623 F.3d 1221, 1226 (8th Cir. 2010) (quoting *Arco Pipeline Co. v. SS Trade Star*, 693 F.2d 280, 281 (3d Cir. 1982)). "[P]rejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable." *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986). Because TILA does not contain any provisions concerning prejudgment interest, an award of prejudgment interest in a case is a matter within the Court's discretion. *Am. Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys.*, 325 F.3d 924, 937 (7th Cir. 2003); *see also Abou-Khadra v. Mahshie*, 4 F.3d 1071, 1084 (2d Cir. 1993) ("Since the RICO statute does not contain any provision concerning the award of prejudgment interest, the district court had discretion as to whether to award such interest."). Nevertheless, prejudgment interest is presumptively available to victims of federal law violations. *Gorenstein Enters. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989).

Whether an award of prejudgment interest is appropriate depends on the circumstances of the case. *Dakota, Minn. & E. R.R. Corp. v. Ingram Barge Co.*, No. C15-1038-LTS, 2018 WL 9870041, at *1 (N.D. Iowa, May 29, 2018) ("[P]rejudgment interest is not an absolute right, as it depends on the circumstances of each case."). The circumstances include considering the relative equities and fairness of the award and the remedial purpose of the statute underlying the claims. *Cedar Rapids Lodge & Suites,*

*LLC v. JFS Dev., Inc.*, No. 09-CV-175-LRR, 2012 WL 5269015, at *4 (N.D. Iowa Oct. 24, 2012).

Plaintiffs assert that "this Court has already recognized in its Findings of Fact and Conclusions of Law, Doc. 455 at 44, it is appropriate to award pre-judgment interest in this case." (Doc. 511, at 15). That is not accurate. In its Findings of Fact and Conclusions of Law, the Court only directed the parties to "address pre- and post-judgment interest" in their briefing. (Doc. 455, at 44). It made no conclusive finding at that time as to the prejudgment interest issue. Nevertheless, the Court finds it appropriate to exercise its discretion to award prejudgment interest in this case.

Here, granting pre-judgment interest to the class members is consistent with the Interstate Commerce Commission's objectives in developing the TILA regulations "to eliminate or reduce opportunities for skimming and other illegal or inequitable practices; and to promote the stability and economic welfare of the independent trucker segment of the motor carrier industry." *Owner-Operator Indep. Drivers Ass'n v. New Prime, Inc.*, 398 F.3d 1067, 1070 (8th Cir. 2005) (quoting 43 Fed. Reg. 29,812 (July 11, 1978)). Defendant admittedly miscalculated the funds it owed to the drivers under the leases, and those drivers have been without those funds for some time now. Prejudgment interest would help to make the drivers whole on their losses.

Defendant argues that the Court should not award pre-judgment interest because the TILA damages are unliquidated until final judgment is entered, and prejudgment interest should not be awarded on unliquidated damages. (Doc. 512, at 7-9). Defendant cites *Philipp v. ANR Freight System, Inc.*, 61 F.3d 669, 674 (8th Cir. 1995) to show a court need not award pre-judgment interest, but in that case the court affirmed the denial of prejudgment interest when liability was not clear. That is not this case; defendant conceded the TILA claim early on and only the amount of damages remained in dispute. Defendant also relies on *Nebraska Public Power District v. Borg-Warner Corp.*, 621

F.2d 282, 287 n.10 (8th Cir. 1980), but that case is also distinguishable because there the court relied on Nebraska law which explicitly required a showing of liquidated damages. 621 F.2d at 285. Defendant's reliance on *Miller v. Robertson*, 266 U.S. 243, 259 (1924), to show prejudgment interest is only available for liquidated damages is also misplaced because the damages in that case resulted from a breach of contract and not a violation of federal law which presumes the availability of prejudgment interest. Moreover, the Supreme Court has long since "expressed the opinion that the distinction between cases of liquidated and unliquidated damages 'is not a sound one.'" *Kansas v. Colorado*, 533 U.S. 1, 9 (2001) (quoting *Funkhouser v. J. B. Preston Co.*, 290 U.S. 163, 168 (1933)). Indeed, the distinction between liquidated and unliquidated damages "has long since lost its hold on the legal imagination," and the Supreme Court's decisions "since 1933 have consistently acknowledged that a monetary award does not fully compensate for an injury unless it includes an interest component." *Id.* In *City of Milwaukee v. Cement Division, National Gypsum Co.*, 515 U.S. 189 (1995), the Supreme Court expressly rejected the rule that prejudgment interest cannot be awarded for unliquidated damages. 515 U.S. at 196–98. Although the *City of Milwaukee* case was an admiralty case, the import of that holding remains because as in admiralty cases, as noted above, there is a general presumption that prejudgment interest be awarded in cases involving violations of federal law. In short, the Court rejects defendant's contention that prejudgment interest is available only in cases of liquidated damages.

Regardless, the Court finds the damages here sufficiently certain to award prejudgment interest. As the Eighth Circuit noted in *Nebraska Public Power*, "[a] claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion." 621 F.2d at 285. Here, the Court found TILA damages based on defendant's expert's own calculations based on defendant's own records.

Thus, the Court finds an award of prejudgment interest appropriate. Both parties agree that the interest amount should be calculated using the rate under Title 28, United States Code, Section 1961, compounded annually, at the time the Court enters judgment. (Doc. 503, at 12; Doc. 504, at 8). But that does not end the dispute, unfortunately, because the parties are also fighting over the accrual date for such an interest award. Plaintiffs offer two alternative methods for the accrual date; a Midpoint of the class period method or a "Net Interest" method. (Doc. 511, at 10-12). Each arrives at a calculation of prejudgment interest of approximately $510,000, with the "Net Interest" calculation yielding slightly more. (*Id.*). Defendant argues that if the Court awards prejudgment interest, it should accrue no earlier than July 25, 2025, the date the Court entered its Findings of Fact and Conclusions of Law, asserting that it was only then that the amount of damages became certain. (Doc. 512, at 9–10).

The Court quickly rejects defendant's argument. Based on its own records, defendant could have determined years ago how much it underpaid its contract drivers and compensated them for their losses as soon as defendant realized the errors. It did not have to await a bench trial and a Court's finding, especially when the Court relied upon defendant's own calculations to determine the amount of loss. Moreover, defendant's argument is essentially the same one it made that prejudgment interest should not be awarded on unliquidated or uncertain damages, a premise this Court rejected above.

The more difficult question is which of plaintiffs' two alternative methods for arriving at an accrual date is most reasonable. Both have issues, as defendant points out. (Doc. 512, at 10-13). Plaintiffs also acknowledge weaknesses in both methods, but assert both are reasonable. (Doc. 511, at 18-22). The Court agrees that both methods are arguably reasonable, but finds the midpoint method is the better of the two methods.

Dr. Kriegler's Midpoint methodology calculates pre-judgment interest on the aggregate damage amount for the class period – i.e. $1,793,993.60 – from the midpoint of the class period, April 28, 2020, to the time of entry of judgment. (Tr., at 1868:10-1871:13). Dr. Kriegler explained this method with a demonstrative exhibit assuming judgment was entered on July 31, 2026, when the § 1961 interest rate was 4.08%. (Tr., at 1868:23-1871:13; Doc. 511-1 (Ex. A)). Based on those assumptions, the aggregate pre-judgment interest owed to the class using the midpoint methodology totaled $510,084.84 (Interest = $\$1,793,993.60\ (1 + .0408)^{6.2575342} - \$1,793,993.60$). (Tr., at 1871:6-13). Dr. Kriegler further explained that each class member's allocated share of that total pre-judgment interest amount can then be calculated by dividing the total pre-judgment interest amount by the total amount of principal TILA damages and then multiplying that fraction by each class member's proportionate share of the principal TILA damages—i.e. $510,084.84/ $1,793,993.60 x (each class member's allocated principal TILA damages amount). (Tr., at 1871:14-22). Of course, these were merely sample calculations; the calculation of actual interest owed will have to be made after entry of the final judgment. Defendant is correct that this method will create the possibility that "two class members with equal underpayment amounts but different periods of time spent in an underpaid status [will] receive the same amount of interest, despite the disparity in the lengths of time they were underpaid." (Doc. 512, at 10). But the Net Interest method is far more complicated to apply, fraught with the potential for more error, and as defendant points out, has even greater equality and accuracy issues. (*Id.*, at 9).

Thus, the Court finds the appropriate accrual date for prejudgment interest is the midpoint date as calculated by Dr. Kriegler.

## *IV. CONCLUSION*

For the reasons stated above:

1. Judgment shall entered on plaintiffs' TILA claim in favor of the 997 class members who suffered $1.00 or more of TILA damages, in the aggregate amount of $1,794,000.000, to be allocated to the individual class members as set forth in plaintiffs' Exhibit 252 (Docs. 507-1—507-2).

2. Plaintiff Cross and class members who are allocated principal TILA damages on Ex. 252 are awarded pre-judgment interest at the rate of 3.98% calculated pursuant to the Midpoint method described by Dr. Kriegler during the hearing on August 27, 2026.

3. Plaintiffs are directed to calculate the total prejudgment interest due to the plaintiffs and class members and allocate that prejudgment interest in accordance with the method described by Dr. Kriegler at the August 27, 2026 hearing. No later than 7 days from the date of this Order, plaintiffs must submit the total prejudgment interest amount and the individual allocations of that amount on a revised version of Ex. 252 that shows the individual damage amounts and the prejudgment interest amounts for plaintiffs and each of the 997 class members receiving damages. The revised version of Ex. 252 shall identify each class member by the last four digits of their social security numbers and the initials of their first and last names.

4. Judgment shall enter against plaintiff Cervantes and the other class members who were determined to have suffered no TILA damages.

5. The parties' joint motion for an extension of time to file motions for attorneys' fees, costs, and expenses (Doc. 510) is **granted**. The time for any party to file a motion for attorneys' fees and related non-taxable expenses or submit a notice of a bill of taxable costs pursuant to Fed. R. Civ. P. 54(d)(1)& (2) is extended to thirty (30) days following: (1) the issuance of any mandate from the court of appeals to this Court

affirming the final judgment entered in this Court; (2) entry of final judgment in this Court following any reversal and remand from the court of appeals; or (3) such other time as set by the Court. At such time, the procedure for filing a motion for attorneys' fees and related non-taxable costs or submitting a notice of bill of taxable costs as extended shall be the same procedure set forth in Fed. R. Civ. P. 54(d).

**IT IS SO ORDERED** this 20th day of November, 2026.

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa